1   element of an offense when if the element involves the

2   nature of his conduct or a result thereof, it is his

3   conscious object to engage in conduct of that nature or

4   to cause such a result.  And if the element involves the

5   attendant circumstances, he is aware of the existence of

6   such circumstances where he believes or hopes that they

7   exist.

8          Secondly, a person acts knowingly with

9   respect to a material element of an offense if the

10  element involves the nature of his conduct or the

11  circumstances he is aware that his conduct is of such a

12  nature or that such a circumstance exists.  And if the

13  element involves a result of his conduct, he is aware

14  that it is practically certain that his conduct will

15  cause such a result; and thirdly -- or thirdly, I should

16  say, because it's one or the other or the third -- or

17  thirdly, a person acts recklessly with respect to a

18  material element of an offense where he consciously

19  disregards a substantial and unjustifiable risk that the

20  material element exists or will result from his conduct.

21  The risk must be of such a nature and degree that

22  considering the nature and intent of the actor's conduct

23  and the circumstances known to him, its disregard

24  involves a gross deviation of the standard of conduct

25  that a reasonable person would observe in the actor's

1    situation.

2              You have heard testimony from both sides as

3    well as having had it read into the record that initially

4    the Commonwealth has introduced evidence of a statement

5    that it claims was made by the defendant.  Before you may

6    consider the statement as evidence against the defendant,

7    you must find that a crime was, in fact, committed; that

8    the defendant, in fact, made the statement; and that the

9    statement was voluntary.  Otherwise, you must disregard

10   the statement.  Each juror should ultimately decide these

11   questions for himself or herself and thereby individually

12   accept or reject the defendant's statement as evidence.

13             You must not follow -- I'm sorry.  You must

14   not allow the fact that I admitted the statement into

15   evidence to influence you in any way during your

16   deliberations.  You may not consider the statement as

17   evidence against the defendant unless you find that the

18   defendant, in fact, made the statement.

19             Obviously, the words alleged -- allegedly

20   written or spoken by the defendant should not be used

21   against him unless he or she actually uttered those words

22   or wrote those words.  Only so much of the statement that

23   was actually made by the defendant may be considered as

24   evidence against him or her.

25             If you find the defendant made the statement,

1      then you may weigh it along with other evidence in the

2      case to determine whether he has been proven guilty

3      beyond a reasonable doubt.  You may not consider a

4      statement as evidence against the defendant unless you

5      find that he made that statement voluntarily.  This means

6      that you must be satisfied by a preponderance of the

7      evidence that it is more likely than not the defendant

8      made the statement voluntarily.

9              I will now define the word voluntary to you.

10             A defendant's statement is always regarded as

11     voluntary if it is made spontaneously; that is, not in

12     response to police questioning.  This is true even though

13     the defendant is intoxicated, mentally ill or influenced

14     by some internal compulsion to speak.  However, if a

15     defendant makes a statement in response to police

16     questioning, the basic test for voluntariness is this:

17     To be voluntary, the defendant's statement must be the

18     product of an essentially free will and choice.  If the

19     defendant's will and ability to choose are overborne

20     through physical and mental pressures, any statement that

21     he or she makes is involuntary.

22             The reason the law prohibits involuntary

23     statements are grounded in our constitution.  The

24     prohibition is based on strong public policy that

25     disapproves the use of police of improper methods to

1    extract involuntary confessions or admissions.

2    Furthermore, our system of enforcing the law should not

3    operate in any way to take advantage of persons who are

4    physically or in a mentally weakened condition to the

5    point where they cannot give a knowing, intelligent and

6    voluntary statement.

7              If voluntariness is at issue, the prosecution

8    has the burden of proving by a preponderance of the

9    evidence that it is more likely than not the statement

10   was voluntary.  You should consider the totality of the

11   circumstance and all of the relative -- I'm sorry, all of

12   the relevant evidence excluding the statement as to

13   whether or not the defendant's statement was voluntary.

14             If you find the defendant made the statement

15   voluntarily, you may then consider the statement as

16   evidence against him.  You should consider the facts and

17   circumstances surrounding the making of the statement

18   along with all other evidence in the case in judging its

19   truthfulness and deciding how much weight, if any, the

20   statement deserves on the question of whether the

21   defendant has been proven guilty.

22             I want to advise you as to the standards by

23   which you must be guided when you deliberate.

24             In order to return a verdict, each juror must

25   agree.  Your verdict must be unanimous.  A majority vote

1  is not permissible.

2  You as jurors have a duty to consult with

3  each other and to deliberate with a view to reaching a

4  unanimous agreement if it can be done without violence to

5  your individual judgment.  That is to say each juror must

6  decide the case for himself or herself, but only after an

7  impartial consideration of the evidence with his and her

8  fellow jurors.

9  In the course of such deliberations, a juror

10  should not hesitate to re-examine his or her own views

11  and to change his or her own opinion if convinced it was

12  erroneous, but no juror should surrender his or her

13  honest conviction as to the weight or effect of the

14  evidence or as to the guilt or innocence of the defendant

15  solely because of the opinion of his or her fellow jurors

16  or for the mere purpose of returning a unanimous verdict.

17  In deliberating on your verdict, you must not be

18  influenced by anything outside of the evidence presented

19  in this case and the law as has been given by the Court.

20  Certain exhibits have been admitted into

21  evidence and will go with you to the jury room.  Exhibits

22  which have been admitted into evidence, other than

23  Exhibit 11 and Exhibit 20, will go with you to the jury

24  room.  If there are exhibits not sent out to you and you

25  request to see them and it is legally permissible, I will

Case 5:13-cv-02688-WLO-PT Document 2-4 Filed 11/01/13 Page 6 of 85

1   make those exhibits available to you upon written request

2   from the foreman.

3           You should review and consider these exhibits

4   in your deliberations to the extent that you find them

5   persuasive.  In considering these exhibits, you should

6   apply the same general principles which I have already

7   given you concerning evidence in this case.

8           Does either attorney have anything further

9   with regard to the general instructions?

10          MR. CONRAD:  May we approach, Your Honor?

11          THE COURT:  You may.

12          (The following occurred at sidebar:)

13          MR. CONRAD:  Your Honor, with regard to the

14  Court's instruction on the structuring -- the verdict on

15  structuring, I would make a technical objection to that.

16  It's not anywhere in the statutes they've charged and

17  it's not before the jury, so I want it placed on the

18  record.

19          THE COURT:  Those matters were brought to the

20  Court's attention through motions of counsel.  They will

21  be taken judicial notice of as what is charging the

22  activity in dealing with these proceeds under, and that

23  was accepted by another judge as part of this case and

24  has been ruled on by the Court that they are appropriate

25  matters for the Court to consider, having taken judicial

1    notice of those.  Am I correct, Counsel?

2              MR. PORTMAN:  Yes, Your Honor.

3              THE COURT:  But I note your objection for the

4    record.

5              MR. CONRAD:  All right.  Secondly, one last

6    one.  With regard to the culpability requirements, the

7    only thing, I don't think the Court noted -- and,

8    Counsel, you correct me -- but just if they don't find

9    those levels, they must find him not guilty.  I'm not

10   sure the Court covered that.  In other words, if they

11   don't find -- if they don't find one of the three levels

12   of culpability, then it must be not guilty.

13             MR. PORTMAN:  I'm not sure how the jury

14   instruction is -- I don't recall.

15             MR. CONRAD:  I don't know that you covered

16   the alternative if they don't.

17             THE COURT:  I'll make a brief statement

18   relative to that.

19             MR. CONRAD:  If it doesn't rise to that, then

20   they cannot --

21             MR. PORTMAN:  No objection to that, Your

22   Honor.

23             MR. CONRAD:  Thank you.

24             (End of sidebar discussion.)

25             THE COURT:  I've given you the elements of

1    the offense or offenses as charged here.  I have also

2    given you the three possible culpability issues, which

3    are intentionally, knowingly or recklessly.

4            Obviously, you need to find that the elements

5    of the offense have been proven beyond a reasonable

6    doubt, and, if so, you have the ability to find the

7    defendant guilty; if not, you are required to find the

8    defendant not guilty.

9            With regard to the three culpability

10   standards, you must find that the defendant, as to the

11   elements of the offense intentionally, knowingly or

12   recklessly; committed those elements; and if you find

13   beyond a reasonable doubt that he did, then you have the

14   ability to find him guilty.  If you find that

15   intentionally, knowingly or recklessly were not proven

16   beyond a reasonable doubt, then you must find the

17   defendant not guilty.

18            Does that satisfy both counsel?

19            MR. CONRAD:  Thank you, Your Honor.

20            MR. PORTMAN:  Yes, Your Honor.

21            THE COURT:  Thank you.

22            Now, when you retire to deliberate, which you

23   will be doing very shortly, on your verdict, you will

24   select one of your number as a foreman or a forelady who

25   will lead you in your discussions and who will announce

1  your verdict when you return to court.  Please keep in

2  mind, however, that the foreman or forelady has only one

3  vote, the same as the rest of you.

4          In closing, I suggest that each of you will

5  be able to deliberate more easily and in a way that will

6  be better for all concerned if each of you treat your

7  fellow jurors and their views with the same courtesy and

8  respect as you would treat other persons in your everyday

9  life.

10          Thank you very much for your attention in

11  this matter.  And, Mr. bailiff, I would ask you to lead

12  the jurors into the jury room.

13          However, very briefly before we do that, we

14  have now reached the point in the trial where it becomes

15  necessary to excuse, with our thanks, the alternate

16  jurors.  As alternate jurors, you have performed an

17  important service by being present throughout the trial

18  and listening to all of the evidence.  You were able to

19  step in in the event any juror would have been unable to

20  complete the trial because of illness, personal emergency

21  or other good reason.  Fortunately, that did not happen,

22  but, therefore, I must excuse now the two of you because

23  only 12 jurors are permitted to participate in the

24  deliberations.

25          As soon as the jury retires, the bailiff will

1  escort you back to the jury room and ask that the

2  alternates, he may escort you back to my chambers.  Thank

3  you for your willingness to serve.  Please let him excuse

4  those two first for just one moment.

5       When the bailiff returns to the courtroom, I

6  will be giving him this envelope.  In this envelope is

7  what's called the verdict slip.  It will have a place at

8  the end of the verdict slip for the foreman to sign if

9  and when the jury has reached a verdict.

10      You will have to reach a verdict on each of

11  the counts.  And you'll see when the foreman opens this

12  or the forelady opens this and reviews it with you, there

13  will be a vote of guilty or not guilty at some point in

14  time on each of the 58 counts individually.

15      Okay.  Thank you, Mr. Battisti.

16      (The jury retired to begin deliberations

17  at 2:08 p.m.)

18      THE COURT:  If anything should come up about

19  those somewhere in the future, I'm going to keep those

20  right here.

21      MR. PORTMAN:  Part of the record, Your Honor?

22      THE COURT:  They are part of the record, yes.

23  They are part of the record, but I didn't want them to be

24  mixed in with the other two exhibits.

25      MR. CONRAD:  Thank you, Your Honor.

SUSAN A. MILTON, OFFICIAL COURT REPORTER

1       MR. PORTMAN:  Thank you, Your Honor.

2       (Jury returned with a question at 3:08 p.m.)

3       THE COURT:  Ladies and gentlemen, the

4  foreperson has sent to me a question.  That question is,

5  with the intent to break the law, may we have the Judge's

6  instructions at the end relative to culpability?  Is that

7  correct?

8       THE FORELADY:  Yes, sir.

9       THE COURT:  Who is the foreperson?

10      THE FORELADY:  (Indicating).

11      THE COURT:  I'm going to read to you the

12  elements of the offense and then I'm going to read to you

13  the elements of culpability.  I will repeat this at the

14  end of each.

15      If the Commonwealth has proved beyond a

16  reasonable doubt the elements of the offense and the

17  elements of culpability, you will be required to find the

18  defendant guilty.  If the Commonwealth has not proven the

19  elements of the offense beyond a reasonable doubt or they

20  have not proven one or more than one of the ways of

21  culpability beyond a reasonable doubt, then you shall

22  find the defendant not guilty.

23      Is there any objection to that part relative

24  to counsel?

25      MR. CONRAD:  No, Your Honor.

1          MR. PORTMAN:  Your Honor -- no, Your Honor.

2          THE COURT:  Thank you.

3          The defendant has been charged with dealing

4    in proceeds of unlawful activity.  To find the defendant

5    guilty of this offense, you must find that the following

6    elements have been proven beyond a reasonable doubt:

7    First, that the defendant conducted a financial

8    transaction.

9          I read to you what the definition of a

10   financial transaction was in this case.  It is the

11   depositing of cash in certain amounts at a financial

12   institution, and that financial institution in this case

13   is ten of our local banks.

14         Second, the defendant conducted these

15   financial transactions to avoid a transaction reporting

16   requirement under state or federal law.  In this case,

17   the Commonwealth alleges the defendant was required to

18   report those transactions under, and I read to you the

19   federal statutes that are applicable.

20         In order to find the defendant guilty of each

21   of those elements, a culpability factor comes into play.

22   And that is established if the Commonwealth proves beyond

23   a reasonable doubt that the defendant did these acts

24   intentionally, knowingly or recklessly.

25         A person acts intentionally with respect to a

1    material element of the offense when if the element

2    involves the nature of his conduct or the result thereof,

3    it is his conscious object to engage in conduct of that

4    nature or to cause such a result.  And if the element

5    involves the attendant circumstances, he is aware of the

6    existence of such circumstances or he believes or hopes

7    that they exist.

8           Two, a person acts knowingly with respect to

9    a material element of the offense when if the element

10   involves the nature of his conduct or the attendant

11   circumstances he is aware that his conduct is of that

12   nature and that such circumstances exist.  And if the

13   element involves a result of his conduct, he is aware

14   that it is practically certain that his conduct will

15   cause such a result.

16          Or, thirdly, a person acts recklessly with

17   respect to a material element of an offense when he

18   consciously disregards a substantial and unjustifiable

19   risk that the material element exists or will result from

20   his conduct.  The risk must be of such a nature and

21   degree that in considering the nature and intent of the

22   actor's conduct and the circumstances known to him, its

23   disregard involves a gross deviation from the standard of

24   conduct that a reasonable person would observe in the

25   actor's situation.

```
 1            Now, those are the definitions of both the
 2   elements of the offense as well as the elements of
 3   culpability.
 4            Before I continue, I'm going to ask counsel
 5   if they have anything.
 6            MR. PORTMAN:  Yes, Your Honor.  If we may
 7   approach?
 8            THE COURT:  You may.
 9            (A sidebar discussion was held off the
10   record.)
11            THE COURT:  Counsel have brought to my
12   attention and I do want to clear this up so there's no
13   question regarding what I read on the elements of the
14   charge itself.  I think it is quite clear that it is not
15   the bank's responsibility to avoid, but rather the
16   defendant here in order to prove him guilty of this
17   offense.  So I am going to read once again just the
18   elements of the offense.
19            The defendant has been charged with dealing
20   in proceeds of unlawful activity.  To find the defendant
21   guilty of this offense, you must find that the following
22   elements have been proven beyond a reasonable doubt:
23   First, that the defendant conducted a financial
24   transaction.  To conduct a financial transaction means to
25   initiate or conclude or participate in initiating or
```

1    concluding such a transaction.  In this case, the

2    allegations are that he made cash deposits in certain

3    amounts to a bank.

4            The second part of that is the defendant

5    conducted these financial transactions to avoid a

6    transaction reporting requirement under state or federal

7    law.  In this case, the Commonwealth alleges the

8    defendant was required to report the transactions under

9    the provisions that I read you from the federal statute.

10           Does that correct it?

11           (A sidebar discussion was held off the

12   record.)

13           THE COURT:  In this particular instance, the

14   allegations are that the defendant conducted the

15   financial transaction in an effort to not have the bank

16   file the transaction reports.  If you find the defendant

17   is culpable either in intentionally, knowingly or

18   recklessly acting in that regard and the Commonwealth has

19   proven that beyond a reasonable doubt, then you should

20   find the defendant guilty.  If the Commonwealth has not

21   proven either the culpability or the elements of the

22   offense, then you shall find the defendant not guilty.

23           MR. CONRAD:  Thank you, Your Honor.

24           MR. PORTMAN:  Thank you, Your Honor.

25           THE COURT:  At this point in time, the

1    bailiff will return you to the deliberations room.

2              (Jury resumed deliberations at 3:20 p.m.)

3              MR. CONRAD:  Thank you, Your Honor.

4              MR. PORTMAN:  Thank you, Your Honor.

5              (Jury returned with a question at 3:50 p.m.)

6              THE COURT:  I have received a second question

7    from the jury.  The question is, could we see evidence 11

8    and 20; 20 to reaffirm that he knew about the CTA [sic]?

9              My response to them -- and we specifically

10   went over 11 because of the items taken and which I said

11   could not come into evidence, that is not going to go out

12   with them.  And it's my clear understanding of the law

13   that once the statement has been read into the record,

14   which it has on two occasions, that it is improper for me

15   to send that out with them.  And I'm merely going to tell

16   them that it is their recollection that controls relative

17   to that statement and it may not go out with them.

18             MR. CONRAD:  And 20, Your Honor -- I'm

19   sorry -- what is 20?

20             MR. PORTMAN:  That's the statement.

21             MR. CONRAD:  Okay.  What was 11?  They asked

22   for 11, also.

23             THE COURT:  Eleven is the search warrant of

24   the house, and it has the attached --

25             MR. PORTMAN:  Cover sheet and the return of

SUSAN A. MILTON, OFFICIAL COURT REPORTER

1   the inventory.

2              MR. CONRAD:  They want to see that, also?

3              THE COURT:  They wanted to see that; but

4   because of the items that are contained in the inventory

5   we have eliminated, I'm not allowing it to go out, Your

6   Honor.

7              You may bring in the jury.

8              MR. CONRAD:  Thank you, Your Honor.

9              (Jury returned to the courtroom.)

10             THE COURT:  Ladies and gentlemen of the jury,

11  I have received a second question.  That question is,

12  could we see evidence 11 and 20; 20 to reaffirm he knew

13  about the CTA [sic]?

14             These two particular items were specifically

15  not sent back to the jury deliberations room.  The item

16  number 11, which is the search warrant relative to the

17  house, items were not presented into evidence

18  specifically regarding what this is about and, therefore,

19  it will not go back to the jury.

20             Relative to the statement, which is item

21  number 20 -- Exhibit Number 20, the law is quite clear

22  that once a statement has been read into the record,

23  which it has on probably two and a half occasions, that

24  statement shall not go back with the jury, and it is the

25  jury's personal recollection of what was read into the

SUSAN A. MILTON, OFFICIAL COURT REPORTER

1    record or testified to from that statement that controls.

2    So those two items will not go back with you, but it is

3    your personal recollection relative to 20 that

4    controls, specifically regarding the statement.

5         So I thank you for your question and I ask

6    you to return to the deliberations room.

7         (Jury resumed deliberations.)

8         THE COURT:  May I see counsel up front for

9    just a moment.

10        (The jury returned to the courtroom at 5:33

11   p.m.)

12        THE COURT:  Members of the jury, in light of

13   your communication with the bailiff, I am now going to

14   permit you to separate and return home at this time.  I

15   would like you in the jury room at 8:30 tomorrow morning.

16   And I implore you do not discuss or deliberate at that

17   time until all 12 of you are physically present in the

18   room.  So I don't want any talking, once you get here,

19   about the case until the 12 of you are together.

20        Please remember that you are not to discuss

21   this case with anyone outside of the jury deliberation

22   room.  You're to avoid reading, listening to or watching

23   any media accounts of this matter.

24        You are not to conduct any individual

25   investigations of the facts of this case, nor are you to

1    make any attempts to visit any of the locales of the

2    incident or incidents.  In the event that anyone attempts

3    to interfere with you, you are to report that matter

4    immediately to one of our court officers.

5                    Also, remember that you may not discuss this

6    case with your fellow jurors outside of the jury

7    deliberation room.  So cease all discussions of this case

8    until you return tomorrow morning to the jury

9    deliberation room and all of you are present.  You are

10   specifically instructed by the court personnel to -- you

11   will then be specifically instructed by the court

12   personnel to resume your deliberations.

13                   Now, ladies and gentlemen, there is newspaper

14   coverage of this case in both the morning and evening

15   paper, so I am telling you please, no one is to review or

16   look at what is in the morning or evening paper from this

17   morning tonight or tomorrow morning.  Reports in the

18   paper are not evidence.  They are not facts and you

19   should not be in any way swayed by anything that's in

20   those articles.  So you are directed to have no contact

21   with our local papers whatsoever until you have finished

22   your deliberations tomorrow.

23                   So at this point you are all excused.  The

24   bailiff will take you back and excuse you.  And then,

25   again, please, 8:30 tomorrow morning in the room and

1   we'll continue deliberations at that point.  Thank you

2   very much.

3                    (The proceedings recessed at 5:36 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        REPORTER'S CERTIFICATE

2

3            I HEREBY CERTIFY that I was present upon the

4    hearing of the above-entitled matter and there reported

5    stenographically the proceedings had and the testimony

6    produced, and I further certify that the foregoing is a

7    true and correct copy of my said stenographic notes.

8            In testimony whereof, I have hereunto subscribed

9    my hand this 17th day of June, 2008.

10

11

12

13

14                    _____
                      _Susan a. Milton_____
15                      Susan A. Milton
                        Official Court Reporter

16

17            AND, NOW, _____, _____,

18   this transcript is approved and ordered to be filed.

19                    _____

20                      Howard F. Knisely, Judge

21

22

23

24

25

                SUSAN A. MILTON, OFFICIAL COURT REPORTER

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF LANCASTER
CRIMINAL

DEFENSE ATTORNEY

COPY

----------------------------------- :

COMMONWEALTH OF PENNSYLVANIA      :
                                  :
              vs.                 :      Number 5995-2006
                                  :
LEVI L. STOLTZFOOS                :
----------------------------------- :

JURY TRIAL
VOLUME 4 OF 4

Before:  Honorable Howard F. Knisely, Judge

Date  :  Thursday, May 8, 2008

Place :  Courtroom No. 3
         50 North Duke Street
         Lancaster, Pennsylvania 17602

APPEARANCES:

     STEVAN K. PORTMAN, ESQUIRE
     ASSISTANT ATTORNEY GENERAL
         For - The Commonwealth

     JEFFREY A. CONRAD, ESQUIRE
     CLYMER & MUSSER
     408 West Chestnut Street
     Lancaster, Pennsylvania 17602
         For - The Defendant

ORDERED 5-16-08   LODGED _____ FILED _____

SUSAN A. MILTON, OFFICIAL COURT REPORTER

P R O C E E D I N G S

(3:40 p.m.)

1

2

3　　　　THE COURT:  Can I have counsel approach

4　please.

5　　　　(A sidebar discussion was held off the

6　record.)

7　　　　THE COURT:  All right, counsel.

8　　　　Would you bring the jurors in please.

9　　　　(Jury returned to render the verdict at 3:40

10　p.m.)

11　　　　THE COURT:  Ladies and gentlemen of the jury,

12　thank you for your efforts.  Welcome back to the

13　courtroom.

14　　　　Would the forelady please rise.  Would you

15　kindly hand the verdict slips to the bailiff.  You may be

16　seated for just a moment.

17　　　　Would you kindly hand that back to the

18　forelady please.

19　　　　Madam Forelady, at this point in time, I'm

20　going to ask you to read the verdict; however, in light

21　of the fact that there are 58 counts and that I have

22　reviewed the verdict and all 58 counts have the same

23　result, you may indicate when you say what the verdict

24　is, that it is on Counts 1 through 58.  So would you

25　begin at the top please and read us your verdict.

1    THE FORELADY:  We find the defendant guilty.

2    THE COURT:  And is that on Counts 1 through

3    58 conclusive?

4    THE FORELADY:  Yes, sir.

5    THE COURT:  Are there any of those counts

6    that the result is different than guilty?

7    THE FORELADY:  No, sir.

8    THE COURT:  Counsel, is there any reason the

9    verdict should not recorded?

10    MR. PORTMAN:  No, Your Honor.

11    MR. CONRAD:  No, Your Honor.

12    THE COURT:  Could you kindly hand the verdict

13    to the bailiff again.  Would you please rise.

14    THE CLERK:  Would you please rise.  Harken to

15    your verdict as the Court has recorded it, in the issue

16    between the Commonwealth of Pennsylvania and Levi L.

17    Stoltzfoos, Docket Number 5995 of 2006, and, now, this

18    date, May 8th, 2008, we, the jury, impaneled in the above

19    case, find the defendant, on Counts 1 through 58,

20    avoiding transaction reporting requirements, guilty.  So

21    say you all?

22    If you agree with this verdict, please

23    respond by saying I do.

24    THE JURY:  Yes.

25    THE CLERK:  If you do not agree with this

Case 5:13-cv-02688-WLD-PT Document 42-4 Filed 11/19/13 Page 25 of 85

1   verdict, please say you do not.

2           Hearing none, please be seated.

3           THE COURT:  Ladies and gentlemen, thank you

4   very much for your service and your efforts in this case.

5   The fact that you came back early this morning as I

6   requested, you were all promptly here and spent the

7   entire day working on this case, we know that you took it

8   seriously, that you reviewed it completely and that your

9   efforts are to be commended.

10          Is there anything from counsel at this point

11  in time?

12          MR. CONRAD:  No, Your Honor.

13          MR. PORTMAN:  No.

14          THE COURT:  If you would kindly take the

15  jurors back to my chambers, or if they want to gather

16  their things and wait in my chambers for me, I would like

17  to greet them for just a moment before we go back to the

18  other materials.

19          Okay.  Please follow the bailiff.  And I

20  would like to have a moment to speak with you before you

21  leave.

22          (Jury left the courtroom.)

23          THE COURT:  Mr. Conrad, would you bring your

24  client up front please.

25          In the matter of Levi L. Stoltzfoos, Number

1    5995 of 2006, Mr. Stoltzfoos, you have now, as a result

2    of this jury verdict, been found guilty of 58 counts

3    under 5111(a)(3) of the Pennsylvania Crimes Code or

4    Pennsylvania Criminal Statutes Annotated.  At this point

5    in time, as counsel for the Commonwealth moved for and I

6    accepted that Count 59, for record purposes, will be

7    formally nol prossed if we have not marked that on the

8    record yet.

9            Mr. Stoltzfoos, I have obviously heard all

10   the testimony in this case, but I want to be completely

11   fair when I am required to sentence you.  So I am

12   directing that the Adult Probation and Parole Office

13   prepare, within the next 60 days, a presentence

14   investigation.  That particularly is they gather as much

15   information as the Probation and Parole Office can

16   relative to your family background history, work history,

17   prior record history, all of those kind of things, to

18   give me a full and complete picture of Levi Stoltzfoos

19   before sentencing.  So I hereby direct that order and I

20   will sign an order to that effect today.

21           Counsel for the Commonwealth.

22           MR. PORTMAN:  Your Honor, I have a motion

23   with respect to bail.  Mr. Stoltzfoos is on bail and I do

24   note that he has appeared every day for trial.  I just

25   ask that a condition of continuing bail, that he not

1    leave the Commonwealth.

2           THE COURT: Counsel.

3           MR. CONRAD: No objection, Your Honor.

4           THE COURT: Commonwealth is being generous to

5    you, sir, whether you understand that or not. And I will

6    accept the Commonwealth's proposal.

7           I am going to require him to be on Bail

8    Administration from this moment on, which means you will

9    be reporting weekly to Bail Administration just so they

10    can keep in touch with what's going on with you. Make

11    sure you're still around. And the other condition of

12    continued bail at this amount is that you do not leave

13    the Commonwealth of Pennsylvania.

14           THE DEFENDANT: Okay.

15           THE COURT: After the presentence

16    investigation has been completed, Mr. Conrad and the

17    Commonwealth will be notified to come back before me for

18    sentencing and you will appear before me at that time.

19           Do you have any questions about what I've

20    indicated?

21           THE DEFENDANT: Not what you have indicated,

22    no.

23           THE COURT: So in that the Commonwealth has

24    agreed to allow you to remain out, obviously you're going

25    to remain out, but you do have a weekly requirement.

1    I would appreciate your taking him down to

2  Bail Administration from here so that he can check in

3  with them.  Then he should do an intake at the Probation

4  Office in light of the fact that they're going to have to

5  prepare a Presentence Investigation so they know how to

6  get in touch with you so that they can gather the

7  information from both sides, both the Commonwealth as

8  well as yourself, for the Presentence Investigation.

9    MR. CONRAD:  Your Honor, I know that he has

10  been meeting with Jane Ott regularly.  In fact, Miss Ott

11  has been in contact with me throughout the day today, so

12  she is well aware of that.

13    She's now gone for the day.  She asked me to

14  e-mail her at the conclusion of the trial.  She left at

15  3:00 today.

16    THE COURT:  Is there an expectation for him

17  to meet with her tomorrow?

18    THE DEFENDANT:  I see her next Wednesday, if

19  necessary.

20    THE COURT:  Well, I do want you to go to the

21  Probation Office, fill out the intake sheet, now that you

22  have been found guilty because they need updated

23  information so they can do the Presentence Investigation.

24  Once I receive the Presentence Investigation, you will be

25  called for sentencing at that time, notification to

1      Counsel and the Commonwealth.

2                MR. CONRAD:  Very well.

3                THE COURT:  You may be excused.

4                MR. CONRAD:  Thank you, Your Honor.

5                MR. PORTMAN:  Thank you, Your Honor.

6                (The proceedings concluded at 3:50 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

REPORTER'S CERTIFICATE

1

2

3      I HEREBY CERTIFY that I was present upon the

4   hearing of the above-entitled matter and there reported

5   stenographically the proceedings had and the testimony

6   produced, and I further certify that the foregoing is a

7   true and correct copy of my said stenographic notes.

8      In testimony whereof, I have hereunto subscribed

9   my hand this 17th day of June 2008.

10

11

12

13

14         _____

15         Susan A. Milton
           Official Court Reporter

16

17         AND, NOW, _____, _____

18   this transcript is approved and ordered to be filed.

19

20                          _____
                            Howard F. Knisely, Judge

21

22

23

24

25

IN THE COURT OF COMMON PLEAS
LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL

**DEFENSE ATTORNEY**

_____

COMMONWEALTH OF PENNSYLVANIA                :
                                           :
              vs.                          :   No. 5995-2006
                                           :
LEVI LAPP STOLTZFOOS                        :
                                           :
_____        :

SENTENCING

BEFORE:   HONORABLE HOWARD F. KNISELY

DATE  :   Tuesday, July 22, 2008

PLACE :   Courtroom Number 3
          Lancaster County Courthouse
          50 North Duke Street
          Lancaster, Pennsylvania

APPEARANCES:

      STEVAN KIP PORTMAN, ESQUIRE
      Deputy Attorney General
      Environmental Crimes Section
      Strawberry Square
      Harrisburg, PA  17120
         For - The Commonwealth

      JEFFERY A. CONRAD, ESQUIRE
      Clymer & Musser
      408 West Chestnut Street
      Lancaster, PA  17603
         For - The Defendant

ORDERED:  7/25/08       FILED:          LODGED:

BRIDGET A. MARCHIO, RPR, OFFICIAL COURT REPORTER
LANCASTER COUNTY COURT REPORTERS

INDEX TO WITNESSES

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| Daniel Licklider | 24 | -- | -- | -- |
| Santo Bocchinfuso | 31 | -- | -- | -- |


INDEX TO EXHIBITS

| Commonwealth Exhibit Nos.: | MARKED |
|---|---|
| 1 - Cash Equivalents | 38 |
| 2 - Letter Written by Levi Stoltzfoos | 39 |

| Defendant's Exhibit Nos.: | MARKED |
|---|---|
| 1 - Tax Form | 11 |

1                    P R O C E E D I N G S

2                      (10:02 a.m.)

3          MR. CONRAD:  May I approach, Your Honor?

4          THE COURT:  Yes, you may.

5          This is the time and place for the sentencing on the

6   Commonwealth versus Levi Lapp Stoltzfoos, docketed at Number

7   5995 of 2006.

8          Before we begin, may I have the court reporter swear

9   in Mr. Stoltzfoos?

10                     LEVI LAPP STOLTZFOOS,
         called as a witness, having first been duly sworn or
11         affirmed, was examined and testified as follows:

12         THE COURT:  Thank you.

13         Now, have all parties had an opportunity to review

14   the presentence investigation?

15         MR. CONRAD:  Yes, Your Honor.

16         MR. PORTMAN:  No, Your Honor.

17         THE COURT:  You do not have a copy of the

18   presentence investigation?

19         MR. PORTMAN:  No, I do not.

20         MR. STEINER:  I can provide a copy, Your Honor.  I

21   did deliver a copy to the District Attorney's Office.  That's

22   where the file was.

23         THE COURT:  Do you have an additional copy?

24         MR. STEINER:  Yes, I do.

25         THE COURT:  Why don't you give that to Mr. Portman.

1          Mr. Conrad, are there any additions or corrections

2    in the presentence investigation that you would like to bring

3    to my attention?

4          MR. CONRAD:  Yes, Your Honor.

5          If we could start with the -- actually, I guess

6    maybe the first page on the court -- the present offense.

7    Down at the bottom of the page, it says, detainers or charges

8    pending on 5/16 of '08, the defiant trespass.  I'd like to

9    note for the record, Your Honor, that that was dropped at the

10   preliminary hearing.

11         THE COURT:  That was brought to all of our attention

12   the minute that it happened or, otherwise, there would have

13   been different consequences.  So, yes, that is clearly known.

14         MR. CONRAD:  Yes, sir.

15         Court's indulgence for a moment, sir.

16         Your Honor, with regard to his employment status --

17         THE COURT:  Could you just say the page number?

18         MR. CONRAD:  Yes, sir.  It's Number 19.

19         THE COURT:  Very well.

20         MR. CONRAD:  He first worked at New Holland Custom

21   Woodwork from 1987 until 1992.  His reason for leaving was

22   that he was assaulted by a co-worker.

23         He then went on to work for Fisher's, Your Honor,

24   from, I believe, 1992 to 1995.

25         And he then went on to work for a company called

1    Heritage after that.

2          And then, Your Honor, he went to New Holland Quality

3    Custom Cabinetry.

4          So we just wanted to note what his prior work

5    history was prior to that.

6          Under financial condition, on Page 19 still, it

7    states that Mr. Stoltzfoos states that he owns clothing,

8    furniture, and 1994 Ford Ranger pickup truck.  He indicated

9    that he owes money to his, as it is in this report, his

10   attorney, for legal fees.  And he owes $100,000 in credit

11   card debt.

12         Your Honor, for the record, he doesn't owe me

13   anything, sir.  He, rather, owes his father some money for

14   legal fees that he borrowed from his father.

15         And finally, Your Honor, with regard to the

16   Pennsylvania Commission on Sentencing, the guidelines that

17   were attached at the very last page, I believe that the

18   guidelines that were created, it appears as though there

19   were -- an M-1 was listed as having an offense gravity score

20   of two.

21         I'd only note for the record, Your Honor, that he

22   actually had three misdemeanors.  Those three would be under

23   other miscellaneous misdemeanors down at the bottom.

24   Those three, we would agree, though, would give him a prior

25   record score of one.  I just wanted to point that out for the

1   Court, there was some discrepancy there.

2           Additionally, over then in the guideline range,

3   whoever prepared these indicated that the mitigated range was

4   nine to 12 in the mitigated range.  The offense gravity score

5   is an 8.  The standard range then is 12 to 18 months per the

6   guidelines.

7           I'd note, however, Your Honor, that it is plus or

8   minus nine.  Therefore, that would reduce that down to

9   potentially three months in the mitigated range.

10          THE COURT:  That is correct.  And that is my review

11  of the sentencing guideline code also.

12          MR. CONRAD:  Very well.

13          Your Honor, I'd also note for the record, we can do

14  this now or later on, but at some point, with regard to the

15  amount of time already served, Mr. Stoltzfoos was

16  incarcerated on these charges on October the 30th of 2006 and

17  he was released from the Lancaster County Prison on November

18  the 9th of 2006, which gives him approximately 10 days

19  already served towards this sentence or whatever sentence the

20  Court may impose.

21          THE COURT:  Is there anything else with regard to

22  additions or corrections on the presentence investigation

23  report?

24          MR. CONRAD:  Court's indulgence.

25          No, sir.

1      THE COURT:  Mr. Portman, is there anything from your

2  side relative to the presentence investigation?

3      MR. PORTMAN:  No, Your Honor.

4      THE COURT:  Mr. Conrad, on behalf of Mr.

5  Stoltzfoos, what would you like to bring to the Court's

6  attention?

7      MR. CONRAD:  Your Honor, with regard to this case,

8  and, of course, the Court has already heard and ruled on the

9  constitutionality of the statute for which Mr. Stoltzfoos

10  has been convicted of, Your Honor, we have alleged it is an

11  unconstitutional statute.  Of course, the Court ruled that it

12  was constitutional.

13      I raise that once again, however, Your Honor, just

14  to place it on the record, that we would find it to be

15  unconstitutional.

16      Additionally, with regard to what has occurred in

17  this case, which is the fact that this gentleman now faces a

18  lifetime of incarceration on these charges, if the Court were

19  to sentence him consecutively with regard to the forfeiture

20  itself, Your Honor, we would argue that the amount of money

21  that has been seized from this gentleman, from my client,

22  Levi Stoltzfoos, in this case, Your Honor, violates the 8th

23  and 14th Amendments of the United States Constitution,

24  Article 1, Section 13 of the Constitution, the Commonwealth

25  of Pennsylvania, in that it is cruel and unusual the amount

1   of money that has been taken here.

2        Seizing the aforementioned funds in advance of the

3   final disposition of the charges on this particular docket is

4   an illegal deprivation of his property without due process in

5   violations of the 5th and 14th Amendments of the

6   Constitution, and in violation of Article 1, Section 9 of the

7   Constitution.

8        So, again, Your Honor, we would make those and place

9   those on the record.

10       Your Honor, that being said --

11       THE COURT:  The Court would reaffirm its denial

12  relative to those motions.  And the fact that the law is as

13  the law is and written by the legislature and that the Court

14  has found and continues to be the statute, its penalty

15  provisions, both criminal and civil, as constitutional.

16       Thank you.

17       MR. CONRAD:  Your Honor, additionally as preliminary

18  matters, the Commonwealth filed a sentencing memorandum in

19  this case.  And, Your Honor, we would object to the

20  sentencing memorandum in this case.  We would object for

21  numerous reasons, not the least of which, this is a hearsay

22  document.  There is improper hearsay that has been brought in

23  this.

24       And additionally, Your Honor, with regard to the

25  Commonwealth's sentencing memorandum, it relies on prior bad

1    acts, which there's never been any notice given that the

2    prior bad acts were going to be used in this particular case.

3          In fact, those prior bad acts were ruled not

4    admissible in the case.  And yet here they are before the

5    Court on the sentencing memorandum.

6          Your Honor, because of that and because I can't take

7    back from the Court what the Court has already read, I would

8    have to offer some additional information relevant to those

9    and we'd like to be able to do so.

10         If the Court does rule that the Court is going to

11   rely on this or at least entertain this, I would have some

12   additional documentation to counter that, as well.

13         So I would ask Your Honor to -- ask the Court to

14   exclude the Commonwealth's sentencing memorandum for those

15   reasons.

16         THE COURT:  Response from the Commonwealth?

17         MR. PORTMAN:  Your Honor, the sentencing memorandum

18   outlines the defendant's financial history from 1987 through

19   2003.

20         The defendant, in various writings that he has filed

21   as of record in this courthouse, in which he has sued the

22   Commonwealth in six separate instances, requesting, I believe

23   it was $100,000,000 in damages, and throughout this trial has

24   indicated all this money was legitimately earned.

25         He has made numerous representations that, you know,

1   he earned every bit of money that he has that was seized was

2   earned through savings and work.  And we intend, through the

3   documentation that was submitted with the sentencing

4   memorandum, as well as testimony today, to submit to the

5   Court documents that were seized from the defendant would

6   support the information contained within the sentencing

7   memorandum.

8          Although the source of the funds was not an issue at

9   trial, I submit that the defendant has made the source of

10  those funds an issue with respect to requesting any return of

11  those monies, which the Court is aware that those funds have,

12  in fact, been seized by the U.S. Attorney's Office, pursuant

13  to subpoena, so those funds are no longer in possession of

14  the Commonwealth.

15         But in as much as the defendant continues to assert

16  that the money he obtained was obtained legitimately, I

17  believe it's incumbent upon the Commonwealth at his

18  sentencing to present to the Court facts in evidence to

19  indicate that it was not obtained, in fact, legally.

20         THE COURT:  With regard to these matters, I concur

21  with the Commonwealth 100 percent.

22         Mr. Stoltzfoos, throughout the course of his trial,

23  with his comments continuously claims that every penny is his

24  earned money.  And if the Commonwealth wishes to show that

25  that is a fabrication and an outright inappropriate way to

1   categorize the funds which were used in the dealing of the

2   proceeds that were unlawful activities of these offenses, it

3   is certainly my belief that the Commonwealth has the right to

4   bring that to my attention.

5        MR. CONRAD:  All right, sir.  With that then, I

6   would present the following to the Court.

7        If I could mark it as Exhibit 1, I will do so.

8        (Defendant's Exhibit Number 1 marked.)

9        MR. CONRAD:  Your Honor, with regard to Defense

10   Exhibit 1, what I've provided to the Court today is a tax

11   form that was prepared.

12        The Commonwealth may today try to rely on

13   speculation, innuendo on charges that they've never been able

14   to prove, can't prove in a court of law, couldn't prove in a

15   court of law if they tried.  What is absolutely clear in this

16   case is what was before the Court with regard to the amount

17   of money this gentleman paid.

18        Throughout the years of 1988, when the man first

19   began employment, to 2006, this gentleman paid $521,183 --

20   or, I'm sorry, made $521,183.26.  He paid taxes to the

21   Federal Government in the amount of $63,838.  He earned a

22   living, he paid his taxes.

23        With regard to the Pennsylvania State Income taxes,

24   there again, Your Honor, he paid and made Pennsylvania and

25   reported $466,578, and, again, paid $12,504 in state income

1   tax.

2          Additionally, Your Honor, with regard to interest

3   income that this gentleman was able to make during the years

4   1987 through 2005, he made some $66,881 in interest income.

5          So, Your Honor, what we present to the Court and

6   continue to maintain, and what Mr. Stoltzfoos would like us

7   to be able to tell you is this:  That he was a hardworking

8   man.  He is not a perfect man.  As the Court's indicated, he

9   does have a prior record.  The Court has seen that he has had

10  some failings in his lifetime.

11          But, Your Honor, on this particular instance, on

12  these particular facts, this man was putting money in the

13  bank.  And as was indicated at trial and the Court saw, he

14  had much accumulated by 1999.  He was afraid of a Y2K scare

15  that the entire country was going through just before 2000.

16  He withdrew his money at that --

17          THE COURT:  We're not going to go through things

18  that the jury has already ruled on.

19          MR. CONRAD:  Yes, sir.

20          THE COURT:  I understand what you want to go through

21  relative to this.  But the jury has found him guilty and did

22  not believe his defense relative to the Y2K scandal, those

23  things.  Relative to the issues of where the money came from,

24  I'm going to listen to every bit of it.

25          But I don't want -- and I'm not stopping you with

1   what you were going to say, I just want to remind you that

2   the jury has found him guilty at this point in time of 58

3   counts.

4          MR. CONRAD:  Your Honor, the only point to make is

5   that this gentleman has a distrust of the government, had a

6   distrust and still has a distrust.

7          What he did in this particular case, as the Court

8   has seen, and the jury has found him guilty of, is simply

9   putting his money in under the $10,000 limit in order to

10  avoid filing the form.

11         Your Honor, the argument that we're making, the plea

12  that we have today, is that those actions he didn't know were

13  criminal.  The guidelines on this particular case, there are

14  three subsections under the -- dealing in unlawful proceeds

15  section.

16         The two have knowing mens rea and the one has none

17  at all.  And that's the one that they brought charges against

18  Mr. Stoltzfoos.

19         He faces the same penalties as those who knowingly

20  go about trying to subvert the government.  He's not a drug

21  dealer or a terrorist.  He's a simple man.  He's not a

22  perfect man, Your Honor, but he is a simple man.  And he

23  never intended to break the law.  He did unintentionally

24  break the law.  He did recklessly break the law, which is

25  what the jury found him guilty of, but he didn't mean to,

1    Your Honor.

2         This man now faces the loss of everything that he's

3    ever owned.  All the monies have been taken by the Federal

4    Government.  They were initially seized in the search

5    warrants, and now the Federal Government has control of all

6    these funds.

7         This man stands before the Court penniless.  Were he

8    in Federal Court, Your Honor, we would argue that he couldn't

9    have been convicted, for the federal law doesn't permit this

10   Subsection C that we have here in Pennsylvania.

11        Federal law, they would have had to show that he

12   knowingly violated the law.  I submit to you they couldn't

13   have done so.

14        But here in Pennsylvania, they brought it under that

15   particular subsection, so he stands before the Court found

16   guilty.

17        Your Honor, the guidelines in this particular case

18   give the Court the opportunity to go anywhere from three to,

19   what was it, 27 months, I believe.  And that would be on each

20   one of these.  But essentially, Your Honor, they charged 58

21   counts and he's been convicted of 58 counts, but it's all the

22   same act.

23        He is and grew up Amish.  He moved away from the

24   Amish sect of his life and has been shunned now in his adult

25   years in that he violated some of their provisions and did

1  not want to comply with that so now he's been shunned from

2  the church.

3         He has an eighth grade education.  He is a very,

4  very simple man.  Everyone that has dealt with him has

5  indicated the same thing, Your Honor, he is a very simplistic

6  man.

7         He had goals and aspirations to save up a million

8  dollars, get married, own a home in Florida, own a home up

9  here in Pennsylvania, raise a family.  Those dreams are now

10 entirely shattered.

11        Your Honor, this Court has the power to put this man

12 in jail for a very long time.  Your Honor, I'd be asking the

13 Court today to show mercy to this man, and, Your Honor, to

14 give him a probationary sentence.

15        He's already served 10 days.  He's already put 10

16 days out in the Lancaster County Prison.  Ten days that he's

17 not gonna get back and 10 days that were very difficult for

18 him.

19        He does get picked on, Your Honor.  He's different.

20 He's just different.  When you deal with Levi Stoltzfoos,

21 he's just a different fella.  It wasn't a good 10 days for

22 him.  I would just beg the Court not to incarcerate this man.

23 He's not a man that's going to do well in prison.  I would

24 argue, Your Honor, he's not a man that deserves prison.  He

25 was not robbing banks.  He was out putting his money into a

1    bank, and in doing so, he did it inappropriately.

2         One of the things that I tried to point out the

3    whole entire way through the trial was that nobody took this

4    fella aside and said, Levi, you can't do what you're doing.

5    No one did that.  They just allowed him to continue to delve

6    deeper and deeper and deeper into what he thought was a

7    lawful conduct.

8         Your Honor, the Court has the power to impose a

9    probationary sentence.  I'd ask the Court to do that.  Your

10   Honor, we beg the Court -- in fact, he'll beg the Court.  He

11   has words to say to the Court today that he is prepared to

12   read.  We beg the Court to give him probation.

13        If the Court does find to give him any kind of

14   prison sentence, Your Honor, in addition to what he's already

15   served, I beg the Court to go to the very mitigated

16   guidelines.  And in this particular case, on these particular

17   facts, Your Honor, I'd argue that they would be -- it would

18   be worthy of that.

19        Your Honor, additionally, with regard to the funds,

20   and this Court has seen, we've had so many people come before

21   this Court having done horrible, heinous crimes.  And for

22   those heinous crimes didn't face what Mr. Stoltzfoos faces in

23   having everything that he's ever owned taken from him.

24        The Court has the power to impose a jail sentence

25   or, as the Statute indicates, or a fine or both.  Your Honor,

1    I'd ask the Court to impose the minimum.

2         And, additionally, Your Honor, this Court has the

3    power to decide if he should have some of those monies back.

4    In other words, Your Honor, I would argue to the Court this:

5         You have the power to say he may have all the funds

6    back.  The Federal Government -- if the Federal Government

7    now wants to try to take his money, they can try to do so for

8    it is in their hands right now.  But as to you, Your Honor,

9    you would have the power to decide what this Court could do.

10        And, Your Honor, even if the Court finds and the

11   Court has found, we respect that decision, this is a

12   Constitutional law, the Court still, though, holds the power

13   to decide what should be done with those funds and how much,

14   if any, should be given back to this man.

15        I would argue, Your Honor, and request that the

16   Court return the funds to him, at least from the Lancaster

17   County Court of Common Pleas' perspective.

18        If the Federal Government and their agents now want

19   to try and come down on this man and seize everything he has,

20   let the Federal Government do it, Your Honor.  It's them that

21   started this.  They're the ones that had this law instituted

22   in the first place, and they're the ones that chose to go

23   under Pennsylvania's law rather than the federal law.  They

24   could have gone federal, but they chose to go with

25   Pennsylvania, because, as the Court saw, that particular

1  provision, Subsection C, under that particular statute, gave

2  them the ability to do this to a man that had no intent.

3       Had they tried to do it in federal law, they would

4  have had to show a much higher standard, but they didn't.

5  So, Your Honor, I would argue to the Court this:

6       The fight is a federal fight.  Let them fight it

7  out.  This Court has the power to return this man's property.

8  The prospect of taking every single thing he owns for this

9  crime would be unjust.

10       If a man walks up and punches a little old lady in

11  the face, that's a horrible crime, yet we can't seize every

12  asset that he has.

13       This man put his money in under $10,000.  And as the

14  Court has seen, he's not a drug dealer, terrorist or anything

15  else.  He's just a guy that put his money in wrong.  And for

16  that, everything is taken.

17       So, again, Your Honor, just to summarize, Your

18  Honor, we'd simply ask, again, that the Court impose a

19  probation sentence on these violations or, at a minimum, go

20  to the very bottom of the guidelines and give him 10 days

21  credit and run them concurrent.

22       And, additionally, Your Honor, again, to give him

23  his monies back and give him his properties back and let him

24  go before the federal court and see how he's gonna make out.

25       That's what we're requesting, Your Honor.

1    THE COURT:  Mr.  Stoltzfoos, what would you like to
2  say?

3    THE DEFENDANT:  Your Honor, I am sorry for the
4  inconvenience that I caused the banks and their personnel.

5    MR. CONRAD:  Keep your voice up.  You can do it.  Go
6  slow so she can keep up.

7    THE DEFENDANT:  I can't do it.

8    THE COURT:  Would you like to pass that up to me and
9  have me read it or would you rather take the --

10    MR. CONRAD:  Your Honor, I'll read it for the Court.

11    Your Honor, I'm sorry for the inconvenience that I
12  caused the bank and their personnel.

13    I did not mean to do anything wrong.  I did not mean
14  or intend to commit a crime.  I had no idea that it was
15  illegal to put my money into the bank the way I did.

16    I've always distrusted the government.  I didn't
17  want to fill out any of their forms.  But I had no idea that
18  not wanting to fill·out a form would literally cost me every
19  penny and jeopardize my freedom.

20    The government has wiped me out.  They've taken
21  everything that I own.  I'm not a terrorist.  I'm not a drug
22  dealer.  I'm not a gang member.  I've always been just a
23  simple, hardworking man.  I worked for my money.  I saved and
24  saved.  I paid my taxes on my money.

25    Back during the Y2K scare, I took money out of the

1    bank and no one arrested me.  After the scare, I put money

2    back in and no one arrested me.  Now these men came and took

3    everything that I owned because I put my money in the bank

4    under $10,000 at a time.

5         I still can't believe all this is happening to me.

6    Your Honor, I beg your mercy today.  I beg you not to let

7    this injustice stand.  You have the power to right this

8    wrong.  I beg you to use the power that God has entrusted you

9    with to do two things:

10        Please don't send me to jail.  Please don't leave me

11   penniless.

12        THE COURT:  Mr. Stoltzfoos, do you believe that if I

13   borrow $50,000 from anybody over here and I never intend to

14   pay them back nor do I pay a penny of that back, that that's

15   my money?

16        Mr. Stoltzfoos, this is for you to answer me and --

17        THE DEFENDANT:  Can you repeat the question?

18        THE COURT:  If I borrow $50,000 from a man over

19   there and I never have the intention to pay that man back

20   that $50,000, is that 50,000 my money or his money?

21        THE DEFENDANT:  It would be your money, but he would

22   have the opportunity to sue you.

23        THE COURT:  I never intended to pay him back.

24   I stole the money from him, didn't I?

25        THE DEFENDANT:  That wasn't my intent.  Maybe that

1  was --

2          THE COURT:  Excuse me.  You're answering my

3  question, not yours.

4          THE DEFENDANT:  Okay.  If that would have been your

5  intention, I don't know what the law is on that.

6          MR. CONRAD:  Your Honor, if I could address one --

7          THE COURT:  No.  I wanted Mr. Stoltzfoos' response

8  to that.

9          The Commonwealth --

10          MR. CONRAD:  Your Honor, can I have the Court's

11  indulgence just one moment?

12          We've talked about that matter, sir.  If I could

13  just -- just one moment, sir.

14          THE COURT:.  I believe it's the Commonwealth's turn.

15  We'll come back to you.

16          MR. PORTMAN:  Sorry, Your Honor.

17          Your Honor, with respect to Defense Exhibit 1, which

18  was presented to the Court this morning, I just want to note

19  that the defendant, having the ability to do so, has not

20  supplied the backup documentation for the years 1988 through

21  2006, excluding tax year 2007, which may or may not have been

22  filed as of this date.

23          So without the backup documentation, Your Honor, I

24  submit that the Court has -- that relying on Defense Exhibit

25  1 is without support and should be -- the Court should not

1    pay any attention to Defense Exhibit 1.

2         On the other hand, the Commonwealth is prepared to

3    present to the Court copies of the defendant's -- well, the

4    defendant's original exhibits, original tax returns, that

5    were provided as exhibits to the sentencing memorandum.  If

6    the Court so desires and if counsel so requests, the Court

7    -- the Commonwealth will, in fact, present those to the

8    Court.

9         MR. CONRAD:  Mr. Portman, you have tax returns there

10   from 1987 through 2005?

11        MR. PORTMAN:  We have them from 1999 through 2005.

12        MR. CONRAD:  You have the official tax returns.

13   We've asked --

14        THE COURT:  Excuse me.  The Court asks questions

15   here.  If you want to ask questions, ask permission of the

16   Court.  This is Mr. Portman's opportunity to speak.

17        MR. PORTMAN:  And also submitted as backup

18   documentation to the Commonwealth's sentencing memorandum is

19   a statement from the Social Security Administration for Mr.

20   Stoltzfoos, which is outlined in the sentencing memorandum.

21   And if the Court so requires, and if the defendant will not

22   stipulate to, we'll present that to the Court, as well, this

23   morning.

24        THE COURT:  For the purpose of the items listed on

25   the first page of Mr. Stoltzfoos' Exhibit Number 1, I have

1  not reviewed each and every year, but at least my reviews of

2  the years that I have before me and the actual tax returns,

3  it appears to me that the numbers included here are

4  accurate -- accurately reflecting those years.  And I'm just

5  talking about the first page.  That's the only one I've

6  looked at.

7       MR. PORTMAN:  Correct, Your Honor.  That would be

8  correct through tax years 1999 through 2005, which were

9  attached as exhibits to this -- Commonwealth's sentencing

10  memorandum.

11       THE COURT:  Those are the only ones that I'm

12  speaking of.  I would say that those items are accurately

13  reflected; is that correct?

14       MR. PORTMAN:  Yes, Your Honor.

15       For tax years 1988, though, through 1998, the

16  Commonwealth is not in possession of those tax returns and

17  cannot comment on their validity.

18       THE COURT:  Very well.  I understand your position.

19       MR. PORTMAN:  With the Court's indulgence, we would

20  present some testimony.

21       THE COURT:  Call your first witness.

22       MR. PORTMAN:  Thank you.

23       Your Honor, the Commonwealth would call Daniel

24  Licklider to the stand.

25

                          DANIEL LICKLIDER,
        called as a witness, having first been duly sworn or
           affirmed, was examined and testified as follows:

                        .  DIRECT EXAMINATION

BY MR. PORTMAN:

    Q    Please state your name for the record.

    A    Daniel O. Licklider.

    Q    By whom are you employed?

    A    Commonwealth of Pennsylvania.

    Q    In what capacity?

    A    As a field investigator for the Attorney General's
office.

    Q    You were involved in the criminal investigation
involving the defendant, Levi Stoltzfoos, which brings us
here today?

    A    That's right.

    Q    You were, in fact, the lead investigator on that
case?

    A    That's correct.

    Q    Were you present during the execution of a search
warrant at Levi Stoltzfoos' parents' house at 30 Groffdale
Road, Leola, Pennsylvania, Lancaster County?

    A    I was.

    Q    You have in front of you a report that you prepared;
is that correct?  .·

    A    Yes, sir.

```
 1       Q    And is that report supplemental number 10?

 2       A    Yes, sir.

 3       Q    And does that contain a list of documents that were

 4   seized from the residence during the course of the execution

 5   of the search warrant?

 6       A    Yes, sir.

 7       Q    Now, I'd like you to go to the first tabbed page,

 8   please.

 9       A    Yes, sir.

10       Q    And there's a list of items throughout the report

11   that identify certain types of documents and cards, business

12   cards and so forth, that were seized, correct?

13       A    That's correct.

14       Q    Would you please go to the first item that's

15   highlighted 2-B and identify what that is?

16       A    Yes.  There's nine Coco Plex Cinema complimentary

17   passes.

18       Q    And on the next page, those items that are

19   highlighted, please.

20       A    Yes.  There are 15 Regal entertainment food

21   complimentary passes.

22       Q    Those are for movie theaters?

23       A    And the expiration date was 12/31/06.

24       Q    And the third highlighted, on Page 3.

25       A    BBNB Visa check card, there was one of them; Blue
```

1    Ball National Bank, there was two cards; Dauphin Deposit

2    Bank, there was two cards; the Library System of Lancaster

3    County, there was two cards.

4         There was a Providence Bank bonus card, one of them;

5    Walden Books Before Reader, one card; a First USA -- there

6    was two First USA credit cards.

7         Q    The next page, please.

8         A    There was three Sprint phone cards.  There was one

9    Sprint Visa phone card.  There was one MI Visa phone card.

10   There was an NRA Long Distance Advantage card.  There was a

11   Best Western Gold Crown Club Card.  There was one Blockbuster

12   Membership class card.  There was a Hollywood Video card.

13   There was an AZ Video Superstore's card.  There was an AMC

14   movie watcher cards, two of them.  There was Columbia House

15   membership cards, two of them.

16        Q    Next page, please.

17        A    There was a platinum -- one platinum club card.

18   There was a Philadelphia Flyers fan club card.  There was a

19   Savers Club of America card.  There was an entertainment

20   membership card.  There was a bonus book card.  There was an

21   Encore Travel Savings card.  There was a bank card Holders of

22   America card.  There was a credit card protection agency

23   card.  There was a Staples membership card.

24        There was $93 worth of Regal Cinemas marketplace

25   movie tickets.  There was 10 free admission tickets to A

1    Bargain Cinemas.  There was one Auto Advantage gold card.

2    There was one Craftsman club card.

3         There was a Family Fund Saver club card.  There was

4    two of them, I'm sorry.  There was a Field and Stream club

5    card.  There was a Shopper's Advantage card.  There was an

6    entertainment member card.  There was a half price Hotel Lord

7    card.  There was a Dinner On Us club card one.  There was a

8    CVS support line direct card.

9         There was a Goods' furniture card.  There was a

10   Wells Fargo Visa credit card.  There was a Unitrin Savings

11   card.  There was one New York State driver's license in the

12   name of Levi Stoltzfoos with an expiration date of 4/23/10.

13        There was a Boscov's Department Store card.  There

14   was 81 Regal Entertainment Group readmission tickets.  There

15   were five AMC readmit movie passes with an expiration date of

16   9/30/07.

17        There was documentation for Jen Worth Financial, a

18   mutual fund share class disclosure form, and they were Class

19   A shares, investment services.  There was information on that

20   on a Simple IRA.  There was a Susquehanna Investment

21   Services, LLC, account summary.  The account name of Levi

22   Stoltzfoos with an ending balance of $45,788.75

23        There was a Terra Securities Corporation account

24   form.  The account type, simple, and the date was 9/29/05.

25   There was an individual retirement account, Calvert Simple.

1    The date on that was 9/25/05.

2          There was 82 Blockbuster free movie rental tickets.

3    There was 250 Blockbuster free game rental tickets.  There

4    was 297 Blockbuster rental rain check tickets.  There were

5    125 Movie Town emergency pass tickets.  There was UCO

6    Theaters readmission tickets, there was 35 of them.  There

7    were 50 AMC Theaters admission tickets.  There was another

8    AMC Theaters custom service pass, 87 of them.  There was also

9    readmit passes to AMC Theaters, 79 of them.  AMC Theaters

10   guest passes, there was 19 of them.  AMC Theaters difference

11   pass, there was 12 of them.  Cinema Central Emergency Pass,

12   there was four of them.

13         Carmike Cinemas, admit one refunds, there was 15 of

14   them.

15         There were 119 United Arts Theaters emergency

16   passes.  And there was 566 Regal Cinemas emergency admission

17   passes.  And there was 1,410 Regal entertainment group

18   readmission tickets.

19         There were 551 Sheetz, six fill-up Sheetz gas and

20   receive six MTO sub tickets.  There were three Aunt Annie's

21   one regular cone tickets; three of them.  There was an Aunt

22   Annie's -- or Aunt Anne's, I've got to try them all free

23   cones, there was 52 of them.

24         There was an Aunt Anne's cream cone club card, 123

25   of them.

1          Aunt Annie's Pretzel, one free pretzel.  Aunt

2    Annie's Pretzel just baked reward cards, 310 of them.

3          And then there was the Aunt Anne's, the pretzel

4    stamp, which you would affix to each one of the cards that

5    made the stamp for the purchase, there was one of them found.

6          Then there was also 75 free cinnamon sugar pretzel

7    tickets for Aunt Anne's.  And there was 80 jalapeno pretzel

8    tickets to get them.  And there were 50 Glazin raisin pretzel

9    tickets to get them.  Almond pretzels, there was 75 of them.

10   The garlic pretzel, there was 75 of them.  The pretzel dog,

11   there were 49 of those tickets.  The whole wheat pretzel,

12   there was 75 tickets for them.  The sour cream and onion

13   pretzel, there was 73 for them.

14       Q    In addition to those items, did you have an occasion

15   to be in the attic area of the house?

16       A    Yes, sir, I did.

17       Q    And in addition to yourself, were there other agents

18   from the Office of Attorney General that were present during

19   the execution of the search warrant?

20       A    Yes.  Agent Bocchinfuso was in the attic.  He was in

21   charge of doing the search up there.  And he went through all

22   the items in the attic.  He called me up, showed me what was

23   there, and I went back down to Mr. Stoltzfoos' bedroom.  But

24   Sonny Bocchinfuso, the agent, he's the one that did the

25   analysis.

1      Q      Now, the items that you just testified to, they're

2   here in court today?

3      A      Yes, sir, they are.

4      Q      You've had an opportunity to review them on several

5   occasions?

6      A      Yes, sir, I did.

7      Q      The defense attorney made a reference on Defense

8   Exhibit 1, which you don't have, let me get that for you, and

9   there was also an indication in the presentence memorandum

10   -- I'm sorry, the presentence report, that the defendant has

11   a hundred thousand dollars in credit card debt.

12          Do you have any independent recollection of a

13   conversation with the defendant regarding existence of credit

14   card debt?

15      A      Yes, sir, I did, at the New Holland Police

16   Department.

17      Q      And what was the defendant's response or statements

18   with respect to the outstanding credit card information that

19   you had uncovered?

20      A      He told me, he said, that wasn't a criminal matter;

21   that was a civil matter.

22      Q      Did he indicate to you whether or not he ever

23   intended to pay back the credit card money that he took out

24   as advances?

25      A      No, sir.

1    Q    And in the course of the search, did you also obtain
2  a binder, which I'm holding, which is blue in color?

3    A    Yes, sir.  That was in Mr. Stoltzfoos' bedroom.

4    Q    Did that contain copies of income tax returns, as
5  well as a Social Security tax statement?

6    A    Yes, sir.

7         MR. PORTMAN:  I have nothing further for Mr.
8  Licklider, Your Honor.

9         THE COURT:  Your next witness.

10        MR. PORTMAN:  Yes, Your Honor.

11        MR. CONRAD:  Your Honor, does the defense have the
12 opportunity to ask any questions of this witness?

13        THE COURT:  You had the opportunity to speak.  It's
14 their opportunity to speak.

15        MR. CONRAD:  I'd just place an objection on the
16 record as to that, Your Honor.

17        THE COURT:  You may certainly respond to these.

18                         SANTO BOCCHINFUSO,
            called as a witness, having first been duly sworn or
19          affirmed, was examined and testified as follows:

20                       DIRECT EXAMINATION

21 BY MR. PORTMAN:

22   Q    Please state and spell your name for the record.

23   A    It's Santo, S-a-n-t-o, Bocchinfuso,
24 B-o-c-c-h-i-n-f-u-s-o.

25   Q    And by whom are you employed?

1    A    The Pennsylvania Attorney General.

2    Q    In what capacity?

3    A    As a narcotics agent.

4    Q    And were you present at the execution of a search

5  warrant at Levi Stoltzfoos' house in Lancaster County,

6  Pennsylvania?

7    A    I was.

8    Q    And did you have an opportunity to be in the attic

9  and observe any items up in the attic?

10    A    Yes, I was.

11    Q    And would you please tell us what you observed in

12  the attic of the Stoltzfoos residence?

13    A    What appeared to be a flea market.

14    Q    Could you be more specific on what you saw?

15    A    I jotted down what I saw and made a list.

16         There were over 3,000 DVDs and CDs.

17    Q    Okay.  Now, did those appear to be used, new?

18    A    Brand new, still in the cellophane and duplicates of

19  same movies and recording.

20    Q    Do you recall how they were packaged or what

21  condition they were in, such as boxes, loose, whatever?

22    A    No, they were in boxes in rows.

23    Q    Neatly arranged?

24    A    Neatly arranged.

25         There was hockey equipment.  There were fans.  This

1    is all brand new.

2    Q    When you say fans, what do you mean?

3    A    Electric fans.  Electric motor fans.

4    There was stereo equipments.  There were lock sets

5    that you would put in doors still in the packages.

6    There was bicycle equipment.  There were office

7    supplies, paper, pens, etc, etc.  Surf cases.  Lamps,

8    footballs, exercise equipment, car care equipment and vacuum

9    cleaner.  These were items that we did not seize.

10   Q    But there was more than one of those items as you

11   testified to?

12   A    Yes.

13   Q    What type of experience, if any, do you have in

14   financial investigations?

15   A    Prior to being with the Attorney General, I was a

16   detective with the Philadelphia Police Department for 24

17   years.  I was employed by the Philadelphia Police Department

18   for over 28 years, 24 as a detective, and the last 15 I did

19   exclusively economic crime and specialized in traveling

20   criminals.

21   I was a member of, or still a member of, and past

22   president of the National Association of Bunco Investigators,

23   which is an organization that specifically targets traveling

24   criminals involved in scams, shoplifting, etc.

25   Q    When you say traveling defendants, what do you mean?

1    A    People -- well, the stores make it easy, especially

2    the national chains, all their stores are laid out exactly

3    alike.  So if you want to shoplift high-priced items, you

4    know exactly where to go.  If you've been in one store, you

5    know where to go in the other stores.  And it's getting to be

6    more and more common for people to shoplift and return in the

7    major stores.  Like I say, they make it very easy.

8    Q    Now, within the past two weeks, did you have an

9    opportunity to sit down with Mr. Clyder and myself and review

10    the various items that were seized from Mr. Stoltzfoos'

11    residence?

12    A    Yes, I did.

13    Q    And you have in front of you several graphs, charts?

14    A    Yes.

15    Q    And are you familiar with the items that are listed

16    on there?

17    A    Yes.

18    Q    And do you recall seeing in those items prepaid

19    telephone calling cards?

20    A    Yes.

21    Q    And the list in front of you, does that accurately

22    reflect what you observed?

23    A    Yes.

24    Q    Would you please identify those for us?

25    A    Do the entire or just the total?

1      Q     If you could please identify the calling cards, the
2    price, quantity, and value.
3      A     Okay.  Axis Telephone $20 cards, there were 18 of
4    them, for a value of $360.  AT&T $60 cards, there were seven,
5    for a total of $420.  AT&T $30 cards, there were eight, for a
6    total of $240.
7           Homeland Telephone $20 cards, 67 of them, for a
8    value of $1,340.  AMC Entertainment cards, $25 each, 32 of
9    them for $800.  Regal $10 cards, 32 of them for $320.  And
10   Telefyne, T-e-l-e-f-y-n-e, $5 cards, there were 100, for
11   $500, making it a total of $3,980.
12     Q     Postage stamps were also found; is that correct?
13     A     Yes, 37 cent stamps, there were 440 in one location
14   and 560 in the other for a total value of $370.
15     Q     If you would please turn to the next page.  If you
16   could just take a moment to look through that.
17           Do you recall seeing those items that are listed on
18   that page?
19     A     Yes, I do.
20     Q     Would you please tell us what is listed there and
21   the value for each as you go through it?
22     A     Okay.  These are gift cards or store credits.  When
23   you return an item and you don't have the receipt, rather
24   than give you cash, they give you a store credit.  And the
25   major stores, they'll give you a gift card.

BRIDGET A. MARCHIO, RPR, OFFICIAL COURT REPORTER
LANCASTER COUNTY COURT REPORTERS

1    And there is one from Bealls, B-e-a-l-l-s.
2  Actually, one for $50 and one for $20.
3    From Blockbuster, one dated 12/02/2002 for $350.
4  Three dated 9/08/2004 for $150.  Fifteen dated 10/09/2005,
5  for $450.  That's it for Blockbuster.
6    There was one for Border's, B-o-r-d-e-r apostrophe
7  S, dated 2/12/2006 for $63.39.  There was one from Boscov's
8  dated 4/12/2004 for $26.71.  One dated 1/04/2005 for $324.36.
9  Another one dated 1/14/2005 for $108.12.  And one dated
10  12/15/2006 for $238.50.
11    There was one from Dillard's, D-i-l-l-a-r-d
12  apostrophe S, dated 3/07/2006 for $42.27.  One from FYE dated
13  3/05/2006 for $168.77.
14    From K-Mart, there was one dated 7/17/2004 for
15  $1,484.55.  One dated 8/31/2004 for $435.83.  One dated
16  9/16/2004 for $430.  One dated 9/28/2004 for $207.25.  One
17  dated November 27, 2004 for $422.37.  One dated 3/19/2005,
18  for $480.  One dated 10/09/2005 for $143.35.
19    From Kohl's Department Store, one dated 6/13/2002 --
20  excuse me, five of them, for $500.  On 7/07/2002, five of
21  them for $500.  On 6/01/2003, one for a hundred dollars.  On
22  5/16/2004, one for a hundred dollars and three for $300.
23    And from Sears, 12/01/2006, one for 116.59.  On
24  12/10/2006, one for 116.59.
25    From Sun Coast, one dated 3/08/2006 for $100.  And

1    one dated 3/08/2006 for $6.49.

2            From Wal-Mart, one for $168.78 on 3/08/2006.

3    Another one on 3/08/2006 for $167.99.  One on 2/10/2006 for

4    $173.78.  And one on 2/11/2006 for $233.12, for a total of

5    $8,268.81.

6        Q    If you could go through the items listed on the very

7    last page.

8            MR. CONRAD:  Your Honor, I'm going to object at this

9    time with regard to what's on the last page of the

10   Commonwealth exhibit.

11           Sir, have you had this marked as an exhibit just so

12   I can reference this?

13           MR. PORTMAN:  No, it hasn't.

14           MR. CONRAD:  Your Honor, I will be objecting to

15   anything that's going to be coming up.

16           Again, I believe at this point -- my objection would

17   be as to this:  It appears as though for him to testify to

18   what's on the last page of this would require expert

19   testimony.

20           THE COURT:  May I see what we're talking about?  I

21   don't have a copy of what you're referring to.  You're

22   talking about the last page of this document?

23           MR. CONRAD:  Yes, sir.

24           THE COURT:  Could I have counsel approach, please?

25           (Sidebar discussion held off the record.)

1    MR. CONRAD:  Your Honor, if we could have that

2  marked as an exhibit, though, just for the record and noted

3  that the last page of that exhibit will not be permitted.

4    MR. PORTMAN:  It's not an exhibit, Your Honor; it's

5  a recollection.  But we'll mark it as C.

6    THE COURT:  Could you remove the last page?

7    MR. PORTMAN:  I'll remove the last page and we'll

8  mark it as Commonwealth's 1.

9    THE COURT:  For the record, at sidebar, we indicated

10  that there's no need to go into matters on the last page of

11  this particular grouping.

12    I also indicated to counsel, as to the first

13  gentleman who testified who just gave us listings of things

14  that were taken in the search warrant, I did not permit cross

15  examination.  That has been the case to this point, but

16  should there be any request or qualification to go beyond

17  just the listing of things taken, I will certainly give the

18  opportunity for counsel to cross-examine.

19    (Commonwealth's Exhibit Number 1 marked.)

20    MR. PORTMAN:  No further questions then, Your Honor,

21  for the witness.

22    THE COURT:  Thank you.  You may step down.

23    Are there any further items or witnesses?

24    MR. PORTMAN:   There is one further item I wish to

25  submit to the Court, Your Honor.  I'm going to have it marked

1    as Commonwealth's Exhibit 2.

2            (Commonwealth's Exhibit Number 2 marked.)

3            MR. PORTMAN:  It consists of a letter with

4    attachments that the defendant submitted to the Governor of

5    Pennsylvania, Ed Rendell.  It is signed by the defendant on

6    the fifth page, and it has attachments to it, which are

7    copies of civil filings that the defendant has filed against

8    the Commonwealth of Pennsylvania.

9            And I submit it to the Court as an exhibit, because

10   it indicates, in the defendant's own words, his current state

11   of mind.  And I believe it's pertinent to the sentencing of

12   the defendant today.

13           MR. CONRAD:  Your Honor, obviously the defense would

14   object to those exhibits.

15           THE COURT:  Mr. Conrad, --

16           MR. PORTMAN:  I have a copy for the defense without

17   the attached exhibits.

18           THE COURT:  -- on behalf of Mr. Stoltzfoos, I did

19   receive this letter, which I'm going to allow you to look

20   over and go over with Mr. Stoltzfoos.  I have not given a

21   copy of that to Mr. Portman.  But I have read that

22   correspondence, which came to me in support of Mr.

23   Stoltzfoos.

24           MR. PORTMAN:  Your Honor, with respect to

25   Commonwealth's Exhibit 2, I draw the Court's attention to the

1  fifth page, the bottom of the page of a P.S. section.  And I
2  wish specifically to point out to the Court the defendant's
3  statement as follows in the bottom of the P.S. section:
4      After five years from date of money taken, it means
5  the governments are inadequate and I will take justice by
6  force.  I am justified to declare war now, but I'll give the
7  Court a fair chance to prevail.  There is no getting on with
8  my life until I get justice.
9      THE COURT:  Is there anything else on behalf of the
10  Commonwealth?
11      MR. PORTMAN:  No, Your Honor.
12      THE COURT:  The Court imposes sentence for the
13  following reasons:
14      Mr. Stoltzfoos is 39 years of age, which shows he
15  has sufficient maturity to understand the significance of his
16  acts.  The defendant is intelligent enough to understand the
17  significance of his acts since he did complete the eighth
18  grade of school and has had a consistent work history since
19  that time.  He can read, write and understand the English
20  language.
21      As indicated by counsel, in addition to that which
22  was covered in the presentence investigation, he has had a
23  consistent work history, predominantly in the cabinet making,
24  woodworking areas, and the Court has noted that.  It does
25  indicate that he can follow directions.

1    　　　　The defendant does have a prior criminal record,

2    which includes a retail theft in 1992, a retail theft in

3    1994, criminal mischief in 2002, simple assault in 2002,

4    retail theft in 2002, disorderly intoxication in 2004,

5    resisting an officer in 2004, and defiant trespass in 2004.

6    　　　　I have reviewed the sentencing memorandum relative

7    to the issues that are pertinent to the charges before me.

8    I find that although Mr. Stoltzfoos was clearly a hardworking

9    man, he certainly has failings.  Whether it is the distrust

10   of the government or the Y2K matters that he brings to the

11   Court's attention, it is not the government that caused these

12   charges or convictions.  It was Mr. Stoltzfoos' own greed and

13   avarice which are solely to blame.

14   　　　　On 58 separate times, he made deposits for which he

15   has been found guilty.  He knew from the very beginning in

16   almost the first contact with the bank employees that what he

17   was planning on doing was wrong, that there were consequences

18   to that wrong act.  Yet over the next two months, continued

19   on 58 separate occasions to violate the laws of the State of

20   Pennsylvania.

21   　　　　He knew from the very first contact with the bank

22   employee who explained to him what they were doing and why

23   that he was planning to subvert the recording requirements,

24   which is what this statute is all about.

25   　　　　Mr. Stoltzfoos purposely used 10 different banks to

1    subvert those reporting requirements and to distribute

2    hundreds of thousands of dollars in January and February of

3    2006 in an effort to avoid IRS and Pennsylvania reporting

4    requirements.

5         I note that Mr. Stoltzfoos has never been married

6    and has no children; also that he has no learning

7    disabilities.

8         Although he was raised Amish, he left the church in

9    the early 1990s and, of course, as counsel indicated, has

10   since been shunned by that church.

11        You have used, both at trial and today, the Amish

12   faith, I assume, as an alleged defense.  I find that to be a

13   clear slap in the face of the good law-abiding Amish citizens

14   of Lancaster County.  You are not Amish and you did not

15   behave like the good, honest Amish people of Lancaster

16   County.

17        As indicated by the sentencing guidelines, it is

18   correct, as brought to the attention of the Court by counsel,

19   and he was obviously correct, as indicated, the standard

20   range of sentencing here is 12 to 18 months for each

21   individual count.  And there is a plus or minus nine months

22   as the mitigated and aggravated range for each count.

23        It is not for the Court to determine today, and I

24   did determine prior to trial, that being charged under

25   Subsection C of 5111 does not require, and the Commonwealth

1   was not asking, to show a specific knowledge of unlawful

2   activity; and, therefore, I kept it out of the trial.

3          However, you clearly, through all of your

4   statements, have begged the Court to understand that you are

5   a simple man and that all of this was earned legitimately.

6          I need not make that determination today as I did

7   keeping it out from the ears of the jury, but it is extremely

8   difficult for me to buy that you claim to be a simple man,

9   yet the items found in your house show an extremely different

10  schemed individual.

11         The maximums here by law, if you were to be

12  sentenced consecutively on each count, would be 1,160 years

13  in prison and a fine of $1,080,400.

14         Your counsel has clearly and vigorously requested

15  the Court for probation.  The Commonwealth, on the contrary,

16  has requested a significant jail sentence, in the range of 30

17  to 60 months.

18         As I've indicated, and I will repeat it one more

19  time, the government did not cause these charges or

20  convictions.  It was your own greed and avarice that is

21  solely to blame.  You did exactly what the act indicates you

22  may not do lawfully.

23         I have considered the presentence investigation

24  report in detail and make it part of this record.  The Court

25  has considered the sentencing guidelines and the penalties

1   authorized by the legislature, and in this particular
2   section, unlike most all of the sections under the Crimes
3   Code, it not only has a penalty relative to a fine, a penalty
4   relative to imprisonment, but also a penalty which is called
5   a civil penalty, which you can be made liable to the
6   Commonwealth for.
7        The Court has considered the character and the
8   statements of the defendant, as well as the arguments of
9   counsel.  Incarceration is warranted because a lesser
10  sentence would depreciate the seriousness of the crime.
11       After considering all of the foregoing, the sentence
12  of the Court is as follows:
13       On Count 1, dealing with proceeds of unlawful
14  activity, it is the sentence of the Court that you shall be
15  incarcerated in the State Correctional Institution for a
16  period of one to five years.
17       Count 2, dealing with proceeds of unlawful activity,
18  it is the sentence of the Court that you be sentenced to the
19  State Correctional Institution for a period of one to five
20  years.  Counts 1 and 2 are consecutive to each other.
21       The sentence relative to Count 3 through Count 58
22  shall be an identical one to five years in the State
23  Correctional Institution; however, each of those counts shall
24  be concurrent with Count 2.
25       Because you have been convicted of felony counts,

1     there is a mandatory $250 DNA sampling and that sampling must

2     occur.

3           Relative to Count 1, there shall be no fine.  That

4     shall be the same for each and every one of the 58 counts.

5     There shall be court costs relative to each of those 58

6     counts.

7           Under Section 5111(c), the civil penalty, which

8     shall be imposed by the Court, under (c)(1) is the value of

9     the property, funds or monetary instruments involved in the

10    transaction, and that amount in total is $540,200.

11          Counsel for the Commonwealth, is there anything else

12    relative to sentencing?

13          MR. PORTMAN:  No, Your Honor.

14          THE COURT:  Counsel for the defendant, is there

15    anything else relative to sentencing?

16          MR. CONRAD:  Your Honor, just to request that with

17    regard to Mr. Stoltzfoos' case and the sentence imposed, Your

18    Honor, there is an appeal that we will be preparing to file.

19    And, Your Honor, we would request that he be able to remain

20    out on bail, bail pending the appeal.

21          I have spoken with MaryJean Glick from the Public

22    Defender's Office.  She and I have had extensive

23    conversations about the appeal and I know it's well underway

24    at this point.  In fact, we have the boxes today prepared to

25    hand over to the Public Defender's Office, as well, because

1    the appeal is being prepared at this time.

2         MR. PORTMAN:  Your Honor, the Commonwealth would

3    object to bail pending appeal based on the defendant's

4    actions.  Although he wasn't charged, he did involve himself

5    in some unusual -- I shouldn't say unusual, pattern of

6    conduct that he has been known for.

7         And I submit to the Court that should he be on bail

8    pending appeal, he's more likely than not to commit other

9    crimes and/or flee the jurisdiction of this court.  He's been

10   known to travel to Florida and out to the Midwest.  And I ask

11   the Court not to grant bail pending appeal.

12        MS. GLICK:  Your Honor, I have a motion for bail

13   pending appeal.

14        THE COURT:  Would you, for the record, say who you

15   are.

16        MS. GLICK:  I'm sorry, Your Honor.  I had initially

17   intended to enter my appearance first.

18        My name is MaryJean Glick.  I'm an attorney with the

19   Public Defender's Office.  And I do have an entry of

20   appearance, if I may hand that to the clerk.  And I do have a

21   motion pending for bail pending appeal.  And if I may also

22   give the court clerk the original of that.  I have copies for

23   everyone else.

24        THE COURT:  I think the original of that should

25   actually come to His Honor.

1          MS. GLICK:  Thank you.

2          MR. CONRAD:  Your Honor, I'll also note for the

3     record, as well, that it was as court-appointed counsel from

4     the Lancaster County Court of Common Pleas, Mr. Karl, Chief

5     Public Defender, had assigned me to the case, to defend the

6     case.

7          Ms. Glick, all along, was then going to take over

8     any appeal.  I'll just note that for the record, sir.

9          THE COURT:  In response to both the request orally

10    and the written motion --

11         MR. PORTMAN:  Just to reiterate, Your Honor --

12         THE COURT:  If I may.

13         MR. PORTMAN:  Sorry.

14         THE COURT:  The written motion by the Public

15    Defender's Office, I will read the following order:

16         And Now, this 22nd day of July 2008, upon

17    consideration and motion to continue bail pending appeal, it

18    is hereby ordered that the defendant shall be remanded to the

19    custody of the Department of Corrections State Correctional

20    Institution in Camp Hill.

21         The only outstanding matter at this point in time --

22    or two matters, excuse me.

23         First of all, being the defendant's acknowledgment

24    of post sentence procedures following his sentencing and also

25    the issues that were raised and I said I would rule on after

1    sentencing, and that is the matters of return of property.

2         Counsel, have you had an opportunity to review with

3    him the defendant's acknowledgement of post sentence

4    procedures following his sentencing?

5         MR. CONRAD:  I have not done so, Your Honor.

6         THE COURT:  There is a form just below there.  I

7    would appreciate it if you would take a moment and review

8    that with your client.  And if he has any questions, I will

9    be more than glad to answer those questions.

10        MR. CONRAD:  Very well, Your Honor.

11        THE COURT:  Mr. Stoltzfoos, I know I had Mr. Conrad

12   review those rights, both post-sentence rights as well as

13   appellate rights with you, do you understand that even though

14   you have those rights and you're knowledgeable of them now,

15   the Public Defender's Office, who has entered their

16   appearance and indicated they would be representing you on

17   appeal, will certainly see that any of those rights that you

18   wish to pursue are pursued, because the Court has -- you will

19   have no need to indicate any indicia relative to the case.

20   It has already been taken over by the Public Defender's

21   Office for execution of any of the appellate rights that you

22   and the Public Defender's Office deem appropriate.

23        Do you understand all that, sir?

24        It's a mouthful.  What I'm saying is, if you would

25   like to make a statement relative to the fact that she has

1  entered her appearance on your behalf and will see that all
2  of your rights are protected as you wish them to be --
3          MR. CONRAD:  He understands that, Your Honor.
4          THE COURT:  -- pursuant to law, within the guise of
5  the law.
6          Is that a correct statement?
7          MS. GLICK:  That's correct, Your Honor.
8          Your Honor, we just have one housekeeping matter if
9  we could address before the record is closed.
10          THE COURT:  If I may, because I have one more.
11          Count 59, which was a charge of receiving stolen
12  property, was my understanding that that would be nolle
13  prossed upon sentencing in this matter.
14          MR. PORTMAN:  That's correct, Your Honor.
15          THE COURT:  Therefore, the Court will accept the
16  nol-pros with costs on the County relative to Count 59.
17          Now, if you have another matter.
18          Would you like to approach?
19          MS. GLICK:  Your Honor, I've spoken with Mr.
20  Portman and I think we're in agreement that none of the
21  exhibits have been returned to the parties who presented them
22  either at trial or at sentencing.
23          I'm just asking that they be made part of the record
24  and given to the clerk so they can be sent up, along with the
25  appeal.

1        THE COURT:  I do have the exhibits from today that I

2   have made sure went directly into the file.  And I know that

3   we had a different reporter for the trial.

4        MS. GLICK:  Correct.  Mr. Portman says he didn't get

5   any of them back.

6        THE COURT:  It was my understanding that the

7   reporter was holding on to all of those.  So if you would

8   just make those -- and, honestly, I don't remember whether it

9   was Joyce or Susan.

10       MS. GLICK:  I think it may have been both, Your

11  Honor.

12       I think we wanted to put that on the record.

13       THE COURT:  Certainly those items that are in the

14  possession of the court reporters' office that were evidence

15  at the time of trial will be put into the file.

16       MS. GLICK:  Thank you, Your Honor.

17       THE COURT:  Now, as to the only outstanding matter

18  which I understand is before us will be the issues of return

19  of property.

20       As I have indicated, in the civil penalty portion of

21  the sentence, those matters with regard to dollars and cents

22  have been resolved and, therefore, are moot based on my order

23  of civil penalty and those dollars will not be returned.

24       There were a number of items that would be of a

25  personal property nature.

1          Has counsel had an opportunity to review what those

2    items are and what may or may not be returned?

3          MR. PORTMAN:  Not specifically, Your Honor, but I

4    would point out to the Court that the Commonwealth has been

5    served with a subpoena by the U.S. Attorney's Office relevant

6    to this case under their docket number 07-CV-2788, under the

7    heading of United States of America versus $56,724.55 U.S.

8    Currency, et al, requesting that we provide to them, number

9    one, all documents and tangible things seized during the

10   search of Mr. Stoltzfoos' residence.

11         Two, all documents and tangible things seized

12   pursuant to said search.

13         And, three, all evidence related to the prosecution

14   of the defendant.

15         The Commonwealth intends to comply with their

16   request, Your Honor.  That would indicate, I think, all of

17   the personal property seized, as well as other items.

18         But I'm sure with counsel, if there's anything of a

19   personal, personal nature, not subject to the contraband or

20   such, that arrangements can be made with the defendant

21   through the U.S. Attorney's Office.

22         THE COURT:  At this point, the motion for return of

23   property, based on what has been previously returned and has

24   been denied relative to the cash taken from him and in lieu

25   of the civil penalty rendering that issue as far as this

1  Court is concerned is moot, and with regard to the subpoena
2  from the United States Government, but for the personal
3  items, again, which may be returned by agreement of Mr.
4  Portman and Mr. Conrad, if not requested by the U.S.
5  Government, I would direct that any issues for the return of
6  property at this point in time be directed at the United
7  States Attorney's Office in that they will be -- they have,
8  at this point, all the money and will have, pursuant to the
9  subpoena, all of the personal items which may still be in
10 evidence of possible prosecution be it the civil arena.
11         MR. PORTMAN:  Your Honor, there is one more matter.
12         The U.S. Attorney's Office, in seizing the assets or
13 the currency, the money from Mr. Stoltzfoos, only took that
14 money which was deposited and did not seize any of the
15 interest that had been in those accounts or any deposits that
16 were not related to the structure.  The balance of those
17 funds, which are currently at $38,648.45, are in the
18 possession of the Commonwealth.
19         We'd ask that those funds -- that the Court order
20 that those funds be applied to the civil penalty on behalf of
21 Mr. Stoltzfoos.
22         MR. CONRAD:  Your Honor, with all due respect, the
23 man needs something to defend himself.
24         I would ask the Court to please give the man at
25 least that much so he has something to defend himself in

1  federal court.

2          THE COURT:  I will not direct that that be directed

3  towards the civil part of the sentence.  I will not direct

4  that be returned to the defendant.  But I certainly will

5  leave that matter open for defense counsel to file some

6  action relative to that interest, as I did not know until

7  this was brought to my attention this moment, that there were

8  any other outstanding proceeds.

9          As of today, I will not rule on that one way or the

10  other.  Certainly by motion of either side, so that I can see

11  exactly what we're talking about and where, I will consider

12  that.

13          MR. PORTMAN:  Thank you, Your Honor.

14          THE COURT:  So I'm not eliminating either, but I'm

15  not going to rule that way from the seat of my pants this

16  morning.

17          Mr. Stoltzfoos, just a last item, if I may.

18          Is this your signature on the third page of the

19  acknowledgement of post sentence procedures?

20          THE DEFENDANT:  Yes, it is, Your Honor.

21          THE COURT:  Have you had a chance to review that

22  with Mr. Conrad?

23          THE DEFENDANT:  A little bit, yeah.

24          THE COURT:  Do you understand that you will be fully

25  protected relative to both your post sentence motions and

1    your appellate motions by counsel who has already entered

2    their appearance on your behalf?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Thank you.   That will be all.

5              (The proceedings concluded at 11:30 a.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

**'REPORTER'S CERTIFICATE**

2

3     I HEREBY CERTIFY that I was present upon the

4  hearing of the above-entitled matter and there reported

5  stenographically the proceedings had and the testimony

6  produced; and I further certify that the foregoing is a true

7  and correct copy of my said stenographic notes.

8     In testimony whereof, I have hereunto subscribed my

9  hand this 11th day of August 2008.

10

11

12

13     _____

14     Bridget A. Marchio, RPR
       Official Court Reporter

15

16

17     AND NOW, _____, _____, this

18  transcript is approved and ordered to be filed.

19

20

21     _____

22     HOWARD F. KNISELY, Judge

23

24

25

BRIDGET A. MARCHIO, RPR, OFFICIAL COURT REPORTER
LANCASTER COUNTY COURT REPORTERS