# APPENDIX A-1

IN THE SUPERIOR COURT OF PENNSYLVANIA

MIDDLE DISTRICT

*10|17*

COMMONWEALTH OF PENNSYLVANIA

vs.

LEVI LAPP STOLTZFOOS

No. 30 Middle District Appeal 2009

BRIEF FOR APPELLANT

Appeal from the Judgment of Sentence of
the Court of Common Pleas of Lancaster County, Pennsylvania
Information No. 5995 of 2006
imposed July 22, 2008
as finalized by September 9, 2008 denial of Post-Sentence Motion
Right to Direct Appeal restored by the Court of Common Pleas,
which granted Defendant's Motion for Post Conviction Collateral Relief
on December 5, 2008

OFFICE OF THE PUBLIC DEFENDER
MaryJean Glick
Senior Assistant Public Defender
Attorney I.D. No. 76608
150 North Queen Street
Suite 210
Lancaster, Pennsylvania 17603
Telephone:  (717) 299-8131

## TABLE OF CONTENTS

PAGE

Table of Citations . . . . . . . . . iv

Statement of Jurisdiction . . . . . . . . 1

Statement of the Scope and Standard of Review . . . . . 2

Order in Question . . . . . . . . . 6

Statement of Question Presented . . . . . . . 7

Statement of the Case . . . . . . . . 9

Summary of the Argument . . . . . . . . 23

Statement Pursuant to Pennsylvania Rule of Appellate Procedure 2119(f) . . 25

Argument . . . . . . . . . 28

I.  The trial court erred in ruling that 18 Pa .C.S. §5111(a)(3) was not void for
vagueness . . . . . . . . . 28

A.  18 Pa.C.S. §5111(a)(3) is void for vagueness because subsection three contains
no mens rea, the catchall provision of 18 Pa.C.S. §302 provides for a mens rea of
intentionally, knowingly or recklessly, yet the mens rea for subsections one and two
of the statute require knowing and intentional conduct; thus, the ordinary person is
required to guess as to the necessary mens rea for the proscribed offense . . 30

B.  18 Pa.C.S. §5111(a)(3) is void for vagueness because the title of the statute:
"Dealing in proceeds of unlawful activities," contains an element not required by
subsection three, thus leaving the ordinary person to guess at the conduct which is
proscribed . . . . . . . . 45

II.  The trial court erred in ruling that 18 Pa.C.S. §5111(a)(3) was not void for
overbreadth, where the statute criminalizes the depositing of lawfully acquired
cash into financial institutions in a manner intended to maintain the depositer's
constitutional right to privacy in his financial records . . . . 50

III.  The trial court erred in instructing the jury that the Commonwealth was
alleging that Mr. Stoltzfoos was guilty of a federal crime, set forth at 31 U.S.C.
§5324, which instruction was irrelevant, improper, and highly prejudicial . . 54

PAGE

IV. The evidence was insufficient to sustain Mr. Stoltzfoos' conviction for 58 counts of dealing in unlawful proceeds where the Commonwealth presented insufficient evidence of a state or federal transaction reporting requirement, which Mr. Stoltzfoos had allegedly avoided . . . . . 58

V. The $540,200 civil penalty, imposed pursuant to 18 Pa.C.S. §5111(c), constituted an excessive fine and cruel and unusual punishment . . 62

VI. The assignment of an Offense Gravity Score of eight to the newly created offense set forth in 18 Pa.C.S. §5111(a)(3), despite the significant difference in criminal liability from that required for a conviction under subsections (1) or (2), was a violation of Mr. Stoltzfoos' right to equal protection of the laws . . 67

VII. The trial court erred in refusing to exclude the Commonwealth's Sentencing Memorandum, and in permitting the testimony of Daniel Licklider and Santo Bocchinfuso, where the purpose of the Memorandum and testimony were to attempt to prove that the money Mr. Stoltzfoos had deposited was the proceeds of unlawful activity . . . . . . . 71

VIII. By refusing to permit defense counsel for Mr. Stoltzfoos to cross-examine the Commonwealth's witnesses at sentencing, the trial court violated Mr. Stoltzfoos' right to the assistance of counsel, and his right to confront the witnesses against him . . . . . . . . 77

IX. In imposing sentence, the trial court improperly based its sentence upon its belief, which was neither alleged nor proved at trial, and evidence of which should not have been admitted at sentencing, that the money Mr. Stoltzfoos deposited was the proceeds of unlawful activities . . . . . 80

X. By demanding that Mr. Stoltzfoos answer the trial court's hypothetical legal question about property rights in borrowed money, by refusing to permit Mr. Stoltzfoos to consult with his attorney regarding the court's question, and by refusing to permit defense counsel to address the court on Mr. Stoltzfoos' behalf, the trial court violated Mr. Stoltzfoos' right to remain silent at sentencing, and his right to the assistance of counsel . . . . . 83

Conclusion . . . . . . . . 86

Appendix A – Statement of Errors Complained of on Appeal

Appendix B – Trial Court Order Denying Postsentence Motion, September 9, 2008

Appendix C - Trial Court Rule 1925 Opinion, March 26, 2009

Proof of Service . . . . . . . 88

TABLE OF CITATIONS

CONSTITUTIONS                                                              PAGE

Pennsylvania Constitution, Article I, Section One      .      .      .      .      .      2, 66

Pennsylvania Constitution, Article I, Section Eight   .      .      .      .      .      2, 51

Pennsylvania Constitution, Article I, Section Nine    .      .      .      .      2, 28, 50, 76, 82

Pennsylvania Constitution, Article I, Section Thirteen       .      .      .      .      15, 62, 65

Pennsylvania Constitution, Article I, Section Fourteen       .      .      .      .      2

United States Constitution, Fifth Amendment      .      .      .      .      2, 28, 50, 82, 84

United States Constitution, Sixth Amendment      .      .      .      .      2, 76, 82, 84

United States Constitution, Eighth Amendment      .      .      .      .      2, 15, 62, 63, 65

United States Constitution, Fourteenth Amendment  .      .      .      .      2, 15, 28, 50, 66

STATUTES

1 Pa.C.S. §1924      .      .      .      .      .      .      .      .      .      45, 46

1 Pa.C.S. §1928      .      .      .      .      .      .      .      .      .      29

7 U.S.C. §2024      .      .      .      .      .      .      .      .      .      40, 41

18 Pa.C.S. §302      .      .      .      .      .      .11, 29, 30, 32, 33, 34, 35, 37

18 Pa.C.S. §2506      .      .      .      .      .      .      .      .      .      35

18 Pa.C.S. §2910      .      .      .      .      .      .      .      .      .      34

18 Pa.C.S. §3925      .      .      .      .      .      .      .      .      .      9

18 Pa.C.S. §5111

                    2, 7, 9, 10, 11, 21, 23, 28, 29, 30, 31, 32, 33, 34, 35, 37, 44, 45, 48, 49, 50, 51, 52, 53

                                          57, 58, 62, 64, 65, 66, 67, 68, 74, 85

23 Pa.C.S. §5312      .      .      .      .      .      .      .      .      .      46

26 U.S.C. §2503      .      .      .      .      .      .      .      .      .      43

STATUTES                                                                    PAGE

31 C.F.R. §103.22     .     .     .     .     .     .     .     . 10, 44, 56, 59, 60

31 U.S.C. §5313     .     .     .     .     .     .     .     . 10, 42, 56, 59, 60

31 U.S.C. §5316     .     .     .     .     .     .     .     .     . 63

31 U.S.C. §5322     .     .     .     .     .     .     .     . 42, 44

31 U.S.C. §5324     .     .     .     . .7, 10, 14. 23, 42, 43, 44. 54, 55, 56, 57, 68

42 Pa.C.S. §742     .     .     .     .     .     .     .     .     . 1

42 Pa.C.S. §5327     .     .     .     .     .     .     .     . 9, 55, 59

42 Pa.C.S. §9721     .     .     .     .     .     .     .     . 25

42 Pa.C.S. §9725     .     .     .     .     .     .     .     . 25, 79

42 Pa.C.S. §9781(c)(2)     .     .     .     .     .     .     . 5, 80

42 Pa.C.S. §9796     .     .     .     .     .     .     .     . 34

62 P.S. §1407 .     .     .     .     .     .     .     .     . 36

204 Pa. Code. §304.3 .     .     .     .     .     .     .     . 68

205 Illinois Statutes 685 §7     .     .     .     .     .     .     . 48

Act 82 of 2002     .     .     .     .     .     .     .     . 30

Arizona Revised Statute §13-2317     .     .     .     .     .     . 48

Florida Statute §869.104     .     .     .     .     .     .     . 48

H.B. No. 1728, Session of 2009     .     .     .     .     .     . 33, 64, 68

Nevada Revised Statutes §207.195     .     .     .     .     .     . 48

New Jersey Code 2C:21-25     .     .     .     .     .     .     . 48

Rhode Island Statute §11-9.1-15     .     .     .     .     .     . 48

RULES

Pennsylvania Rule of Appellate Procedure 1925     .     .     .     .     . 22

RULES                                                                          PAGE

Pennsylvania Rule of Appellate Procedure 2119   .   .   .   .   .      24

Pennsylvania Rule of Criminal Procedure 704   .   .   .   .   .      77

Pennsylvania Rule of Evidence 404   .   .   .   .   .   .   .      56, 57

CASES

Carey v. Population Services, 431 U.S. 678 (1977)   .   .   .   .   .      52

Chapman v. United States, 500 U.S. 453 (1991)   .   .   .   .   .      66

Cheek v. United States, 498 U.S. 192 (1991).   .   .   .   .   .      39

Colautti v. Franklin, 439 U.S. 379 (1979)   .   .   .   .   .   .      31, 39

Commonwealth v. Archino, 56 Pa. Super. 645 (1914)   .   .   .   .      48

Commonwealth v. Barbono, 56 Pa. Super. 637 (1913)   .   .   .   .      48

Commonwealth v. Barnhart, 722 A.2d 1093 (Pa. Super. 1998)   .   .   .      49

Commonwealth v. Barud, 545 Pa. 297, 681 A.2d 162 (1996)   .   .   . 28, 29, 46, 50

Commonwealth v. Bethea, 474 Pa. 571, 379 A.2d 102 (1977)   .   .   .      27

Commonwealth v. Boyer, 856 A.2d 149 (Pa. Super. 2004)   .   .   .   .      79

Commonwealth v. Brady, 470 Pa. 420, 368 A.2d 699 (1977)   .   .   .      47

Commonwealth v. Bullock, 868 A.2d 516 (Pa. Super. 2005)   .   .   .      66

Commonwealth v. Catanch, 398 Pa. Super. 466, 581 A.2d 226 (1990)   .   .      79

Commonwealth v. Charles, 339 Pa. Super. 284, 488 A.2d 1126 (1985)   .   .   26, 76

Commonwealth v. Cohen, 529 Pa. 552, 605 A.2d 1212 (1992)   .   .   .      3, 70

Commonwealth v. Cornish, 403 Pa. Super. 492, 589 A.2d 718 (1991)   .   .      5

Commonwealth v. Cottam, 420 Pa. Super. 311, 616 A.2d 988 (1992)   .   .      79

Commonwealth v. Cotto, 562 Pa. 32, 753 A.2d 217 (2000)   .   .   .   .      29

Commonwealth v. Davidson, 595 Pa. 1, 938 A.2d 198 (2007)   .   .   . 28, 29, 50

| CASES | PAGE |
|---|---|
| Commonwealth v. Davis, 438 Pa. Super. 425, 652 A.2d 885 (1995). | 4, 70 |
| Commonwealth v. DeJohn, 486 Pa. 32, 403 A.2d 1283 (1979) | 51 |
| Commonwealth v. Derstine, 418 Pa. 186, 210 A.2d 266 (1965) | 46 |
| Commonwealth v. Dietterick, 429 Pa. Super. 180, 631 A.2d 1347 (1993) | 3, 54 |
| Commonwealth v. Dodge, 859 A.2d 771 (Pa. Super. 2004) | 5 |
| Commonwealth v. Duda, 592 Pa. 164, 923 A.2d 1138 (2007) | 51, 53 |
| Commonwealth v. Duncan, 572 Pa. 438, 817 A.2d 522 (2003) | 51 |
| Commonwealth v. Franklin, 397 Pa. Super. 265, 580 A.2d 25 (1990) | 4, 70 |
| Commonwealth v. Fries, 362 Pa. Super. 163, 523 A.2d 1134 (1987) | 79 |
| Commonwealth v. Gallagher, 592 Pa. 262, 924 A.2d 636 (2007) | 32, 33, 34, 35 |
| Commonwealth v. Hamilton, 766 A.2d 874 (Pa. Super. 2001) | 3, 54 |
| Commonwealth v. Harley, 924 A.2d 1273 (Pa. Super. 2007) | 67 |
| Commonwealth v. Hess, 532 Pa. 607, 617 A.2d 307 (1992). | 52 |
| Commonwealth v. Lee, 594 Pa. 266, 935 A.2d 865 (Pa. 2007) | 2 |
| Commonwealth v. Losch, 369 Pa. Super. 192, 535 A.2d 115 (1987) | 25, 80 |
| Commonwealth v. Ludwig, 593 Pa. 6, 874 A.2d 623 (2005) | 29, 35 |
| Commonwealth v. Lurie, 524 Pa. 56, 569 A.2d 329 (1990) . | 36, 37 |
| Commonwealth v. Martin, 416 Pa. Super. 507, 611 A.2d 731 (1992) | 4 |
| Commonwealth v. Martin, 328 Pa. Super. 498, 477 A.2d 555 (1984) | 5, 80 |
| Commonwealth v. McKetta, 469 Pa. 223, 364 A.2d 1350 (1976) | 59, 60 |
| Commonwealth v. Medley, 725 A.2d 1225 (Pa. Super. 1999) | 74 |
| Commonwealth v. Mehalic, 382 Pa. Super. 264, 555 A.2d 173 (1989) | 5, 80 |
| Commonwealth v. Monica, 528 Pa. 266, 597 A.2d 600 (1991) | 26 |

CASES                                                                    PAGE

Commonwealth v. Mouzon, 571 Pa. 419, 812 A.2d 617 (2002)    .      .      .      25

Commonwealth v. Owens, 437 Pa. Super. 64, 649 A.2d 129 (1994).      .      .   3, 54, 57

Commonwealth v. Parmar, 551 Pa. 318, 710 A.2d 1083 (1998)    .      .      .     32, 33

Commonwealth v. Pond, 846 A.2d 699 (Pa. Super. 2004)    .      .      .    32, 33, 34

Commonwealth v. Real Property Known as 5444 Spruce Street, 574 Pa. 423,

       832 A.2d 396 (2003)  .      .      .      .      .      .      .    62, 64, 65

Commonwealth v. Rekaskie, 566 Pa. 85, 778 A.2d 624 (2001)    .      .      .      51

Commonwealth v. Robinson, 507 Pa. 5322, 491 A.2d 107 (1985)    .      .      .      76

Commonwealth v. Ruffo, 360 Pa. Super. 180, 520 A.2d 43 (1987)  .      .      .      79

Commonwealth v. Scullin, 414 Pa. Super. 442, 607 A.2d 750 (1992)    .      .      4

Commonwealth v. Smart, 387 Pa. Super. 518, 564 A.2d 512 (1989).      .      .    5, 79

Commonwealth v. Smith, 543 Pa. 566, 673 A.2d 893 (1996)    .      .      .      27

Commonwealth v. Smithton, 429 Pa. Super. 55, 631 A.2d 1053 (1993)    .      .    4, 80

Commonwealth v. Smothers, 920 A.2d 922 (Commw. 2007)    .      .      .      64

Commonwealth v. Spencer, 344 Pa. Super. 380, 496 A.2d 1156 (1985)    .      .      5

Commonwealth v. Stafford, 749 A.2d 489 (Pa. Super. 2000)    .      .      .      57

Commonwealth v. Story, 476 Pa. 391, 383 A.2d 155 (1978).      .      .      .    4, 70

Commonwealth v. Widmer, 560 Pa. 308, 744 A.2d 745 (2000)    .      .      .    3, 58

Dream Mile Club v. Tobyhanna Township Board of Supervisors, 150 Pa. Commw. 309,

       615 A.2d 931 (1992)  .      .      .      .      .      .      .      .      60

Estelle v. Smith, 451 U.S. 454 (1981)    .      .      .      .      .      .    26, 82

Gonzales v. Carhart, 550 U.S. 124 (2007)    .      .      .      .      .      31

H.L. v. Matheson, 450 U.S. 398 (1981)  .  .  .  .  .  .  .  50

Helsel v. Puricelli, 927 A.2d 252 (Pa. Super. 2007)  .  .  .  .  .  46

Liparota v. United States, 471 U.S. 419 (1985)  .  .  .  .  .  40

Mitchell v. United States, 526 U.S. 314 (1999)  .  .  .  .  .  26, 82

Morissette v. United States, 342 U.S. 246 (1952)  .  .  .  .  .  37, 38, 39

Pirillo v. Takiff, 462 Pa. 511, 341 A.2d 896 (1975)  .  .  .  .  .  52

Ratzlaf v. United States, 510 U.S. 135 (1994)  .  .  .  .  .  42, 45

United States v. Averso, 762 F.Supp. 441 (D.N.H. 1991)  .  .  .  .  39, 44, 68

United States v. Bajakajian, 524 U.S. 321 (1998)  .  .  .  .  63, 64, 65

United States v. Caldwell, 408 U.S. 665 (1972)  .  .  .  .  .  50

United States v. Ismail, 97 F.3d 50 (4th Cir. 1996)  .  .  .  .  .  44

United States v. MacPherson, 42 F.3d 183 (2d Cir. 2005)  .  .  .  .  .  43

United States v. Miller, 425 U.S. 435 (1976)  .  .  .  .  .  .  51

United States v. Mussaleen, 35 F.3d 692 (2nd Cir. 1994)  .  .  .  .  .  39

IN THE SUPERIOR COURT OF PENNSYLVANIA

MIDDLE DISTRICT


| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | |
| | : | |
| vs. | : | No. 30 MDA 2009 |
| | : | |
| LEVI LAPP STOLTZFOOS | : | |


BRIEF FOR APPELLANT

STATEMENT OF JURISDICTION

Jurisdiction for this appeal from the judgment of sentence of the Court of Common Pleas of Lancaster County, Pennsylvania, is conferred upon this Court by 42 Pa.C.S. §742, which authorizes appeals to this Court from final orders of the Courts of Common Pleas.

## STATEMENT OF THE SCOPE AND STANDARD OF REVIEW

In the instant case, claims are raised that 18 Pa.C.S. §5111(a)(3) is unconstitutionally vague and overbroad, in violation of the Fifth and Fourteen Amendments to the United States Constitution and Article One, Sections Eight and Nine of the Constitution of the Commonwealth of Pennsylvania; that the civil penalty was an excessive fine, and cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments to the United States Constitution, and Article One, Section Fourteen of the Constitution of the Commonwealth of Pennsylvania; and that the assignment of an Offense Gravity score of eight to a violation of 18 Pa.C.S. §5111(a)(3) was a violation of Mr. Stoltzfoos' right to equal protection of the laws as set forth in the Fourteenth Amendment to the United States Constitution and the Constitution of the Commonwealth of Pennsylvania, Article One, Section One.

Additionally, a claim has been raised that the trial court violated Mr. Stoltzfoos' right to the assistance of counsel, and to confront the witnesses against him by refusing to permit him to cross-examine the Commonwealth's witnesses at sentencing, in violation of the Sixth and Fourteenth Amendments to the United States Constitution, and Article One, Section Nine of the Constitution of the Commonwealth of Pennsylvania.  Finally, a claim has been raised that the trial court violated Mr. Stoltzfoos' right to remain silent and his right to the assistance of counsel by demanding that he answer a hypothetical legal question without permitting him to speak with his counsel or to have his counsel speak on his behalf, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article One, Section Nine of the Constitution of the Commonwealth of Pennsylvania.

Each of these claims is a question of law, and the trial court's legal determinations are reviewed by this Court *de novo*.  Commonwealth v. Lee, 594 Pa. 266, 935 A.2d 865 (2007).

The scope of review is plenary.

"In reviewing a claim of error by the trial court in charging a jury, . . . [t]he key inquiry is whether the instruction on a particular issue adequately, accurately and clearly presents the law to the jury, and is sufficient to guide the jury in its deliberations." Commonwealth v. Hamilton, 766 A.2d 874, 878 (Pa. Super. 2001). "In reviewing jury instructions for prejudicial and reversible error, the charge must be read and considered as a whole." Commonwealth v. Dietterick, 429 Pa. Super. 180, 188, 631 A.2d 1347, 1352 (1993). "Error cannot be based upon isolated excerpts; it is the general effect of the charge that controls." Id. "If [the appellate court] conclude[s] that a charge is erroneous, [it] will grant a new trial unless the error is deemed harmless." Id. at 188-189, 631 A.2d at 1352. An error is deemed harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless. Id. at 189, 631 A.2d at 1352. If a charge is both erroneous and harmful to the defendant, he is entitled to a new trial. Commonwealth v. Owens, 437 Pa. Super. 64, 78, 649 A.2d 129, 136 (1994).

The scope of review is the entire charge to the jury. Commonwealth v. Hamilton, 766 A.2d 874 (Pa. Super. 2001).

"A claim challenging the sufficiency of the evidence is a question of law." Commonwealth v. Widmer, 560 Pa. 308, 319, 744 A.2d 745, 751 (2000). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." Id. "When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." Id.

The scope of review is plenary.

A decision on the admission or exclusion of evidence is within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. Commonwealth v. Cohen,

529 Pa. 552, 605 A.2d 1212 (1992); <u>Commonwealth v. Franklin</u>, 397 Pa. Super. 265, 580 A.2d

25 (1990), <u>allocatur</u> <u>denied</u>, 527 Pa. 641, 593 A.2d 415 (1991).  To receive evidence excluded by

a rule of evidence is error.  <u>Commonwealth v. Franklin</u>, <u>id.</u>  The trial court, in its discretion, may

not ignore the rule of evidence.  <u>Id.</u>

 An error in the admission or exclusion of evidence requires reversal unless the

Commonwealth establishes that the error was harmless.  <u>Commonwealth v. Story</u>, 476 Pa. 391,

383 A.2d 155 (1978).  An error is harmless only if the reviewing court is convinced beyond a

reasonable doubt that such error was harmless.  <u>Id.</u>  In <u>Commonwealth v. Davis</u>, the Superior

Court observed:

> An error will be deemed harmless where the appellate court is
> convinced beyond a reasonable doubt that the error could not have
> contributed to the verdict.  Guidelines for determining whether an
> error is harmless include: (1) whether the error was prejudicial to
> the defendant, or if prejudicial, whether the prejudice was de
> minimis; (2) whether the erroneously admitted evidence was
> merely cumulative of other untainted evidence which was
> substantially similar to the erroneously admitted evidence; or (3)
> whether the evidence of guilt was so overwhelming as established
> by the properly admitted and uncontradicted evidence that the
> prejudicial effect of the error was so insignificant by comparison to
> the verdict.

438 Pa. Super. 425, 431, 652 A.2d 885, 888 (1995) (internal citations omitted).

 The scope of review is the record of the proceeding in which the evidentiary ruling

occurred.

 Sentencing is a matter vested within the sound discretion of the trial court and the lower

court's judgment of sentence will not be disturbed absent abuse of discretion.  <u>Commonwealth v.</u>

<u>Martin</u>, 416 Pa. Super. 507, 611 A.2d 731 (1992); <u>Commonwealth v. Scullin</u>, 414 Pa. Super. 442,

607 A.2d 750 (1992); <u>Commonwealth v. Smithton</u>, 429 Pa. Super. 55, 631 A.2d 1053 (1993).  An

abuse of discretion in sentencing occurs when, in reaching a conclusion, the law is overridden or

misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will as demonstrated by the evidence on the record. Commonwealth v. Spencer, 344 Pa. Super. 380, 496 A.2d 1156 (1985). The sentencing court must exercise its discretion in accordance with the applicable provisions of the Sentencing Code. Commonwealth v. Cornish, 403 Pa. Super. 492, 589 A.2d 718 (1991). A sentence within the statutory limits constitutes an abuse of discretion where the sentence is so manifestly excessive as to constitute too severe a punishment. Commonwealth v. Smart, 387 Pa. Super. 518, 564 A.2d 512 (1989); Commonwealth v. Mehalic, 382 Pa. Super. 264, 555 A.2d 173 (1989); Commonwealth v. Martin, 328 Pa. Super. 498, 477 A.2d 555 (1984).

"The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds . . . the sentencing court sentenced within the guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable." 42 Pa.C.S. §9781(c)(2); see Commonwealth v. Dodge, 859 A.2d 771 (Pa. Super. 2004).

The scope of review is plenary.

<u>ORDER IN QUESTION</u>

"After considering all of the foregoing, the sentence of the Court is as follows:

On Count 1, dealing with proceeds of unlawful activity, it is the sentence of the Court that you shall be incarcerated in the State Correctional Institution for a period of one to five years.

Count 2, dealing with proceeds of unlawful activity, it is the sentence of the Court that you be sentenced to the State Correctional Institution for a period of one to five years.  Counts 1 and 2 are consecutive to each other.

The sentence relative to Count 3 through Count 58 shall be an identical one to five years in the State Correctional Institution; however, each of those counts shall be concurrent with Count 2.

Because you have been convicted of felony counts, there is a mandatory $250 DNA sampling and that sampling must occur.

Relative to Count 1, there shall be no fine.  That shall be the same for each and every one of the 58 counts.  There shall be court costs relative to each of those 58 counts.

Under Section 5111(c), the civil penalty, which shall be imposed by the Court, under (c)(1) is the value of the property, funds or monetary instruments involved in the transaction, and that amount in total is $540,200."


BY THE COURT:

HOWARD F. KNISELY
JUDGE


Dated:  July 22, 2008

6

STATEMENT OF QUESTIONS PRESENTED

I.  Did the trial court err in ruling that 18 P.C.S. §5111(a)(3) was not void for vagueness?

Answered in the negative by the court below.

II.  Did the trial court err  in ruling that 18 Pa.C.S. §5111(a)(3) was not void for overbreadth,

where the statute criminalizes the depositing of lawfully acquired cash into financial institutions

in a manner intended to maintain their constitutional right to privacy in their financial records?

Answered in the negative by the court below.

III.  Did the trial court err  in instructing the jury that the Commonwealth was alleging that Mr.

Stoltzfoos was guilty of a federal crime, set forth at 31 U.S.C. §5324, which instruction was

irrelevant, improper, and highly prejudicial?

Answered in the negative by the court below.

IV.  Was the evidence insufficient to sustain Mr. Stoltzfoos' conviction for 58 counts of dealing in

unlawful proceeds where the Commonwealth presented insufficient evidence of a state or federal

transaction reporting requirement, which Mr. Stoltzfoos had allegedly avoided?

Answered in the negative by the court below.

V.  Was the $540,200 civil penalty, imposed pursuant to 18 Pa.C.S. §5111(c), an excessive fine

and cruel and unusual punishment?

Answered in the negative by the court below.

VI.  Was the  assignment of an Offense Gravity Score of eight to the newly created offense set

forth in 18 Pa.C.S. §5111(a)(3), despite the significant difference in criminal liability from that

required for a conviction under subsections (1) or (2), a violation of Mr. Stoltzfoos' right to equal

protection of the laws?

The question was not directly addressed by the court below.

VII.  Did the trial court err in refusing to exclude the Commonwealth's Sentencing

Memorandum, and in permitting the testimony of Daniel Licklider and Santo Bocchinfuso,

where the purpose of the Memorandum and testimony were to attempt to prove that the money

Mr. Stoltzfoos had deposited was the proceeds of unlawful activity?

Answered in the negative by the court below.

VIII.  By refusing to permit defense counsel for Mr. Stoltzfoos to cross-examine the

Commonwealth's witnesses at sentencing, did the trial court violate Mr. Stoltzfoos' right to the

assistance of counsel, and his right to confront the witnesses against him?

Answered in the negative by the court below.

IX. In imposing sentence, did the trial court improperly base its sentence upon its belief, which

was neither alleged nor proved at trial, and evidence of which should not have been admitted at

sentencing, that the money Mr. Stoltzfoos deposited was the proceeds of unlawful activities?

Answered in the negative by the court below.

X.  By demanding that Mr. Stoltzfoos answer the trial court's hypothetical legal question about

property rights in borrowed money, by refusing to permit Mr. Stoltzfoos to consult with his

attorney regarding the court's question, and by refusing to permit defense counsel to address the

court on Mr. Stoltzfoos' behalf, did the trial court violate Mr. Stoltzfoos' right to remain silent at

sentencing, and his right to the assistance of counsel?

Answered in the negative by the court below.

STATEMENT OF THE CASE

By Information docketed to Number 5995 of 2006, Levi Stoltzfoos was charged with fifty-eight counts of dealing in proceeds of unlawful activity, a violation of 18 Pa.C.S. §5111, and one count of receiving stolen property, a violation of 18 Pa.C.S. §3925. The alleged violations of 18 Pa.C.S. §5111 arose from Mr. Stoltzfoos' deposits of cash, in amounts ranging from $5,200 to $10,000, into ten Lancaster County banks between January 6, 2006 and February 11, 2006.[1]

Defense counsel[2] for Mr. Stoltzfoos filed an Omnibus Pretrial Motion on May 11, 2007, in which he alleged, *inter alia*, that 18 Pa.C.S. §5111(a)(3) was unconstitutionally vague because it lacked a mens rea element, and because it did not require that the money deposited have been the proceeds of unlawful activity. The Omnibus Pretrial Motion also included Motions in Limine asking to exclude evidence of Mr. Stoltzfoos' credit card and cash advance activity, his purchasing and returning habits, and his possession of phone cards, movie passes, vouchers, gift cards and similar items from the trial, as Mr. Stoltzfoos was not charged with any offenses related to his acquisition and possession of these items. Finally, the Omnibus Pretrial Motion included a Motion for Return of Property, seeking return of the money seized from Mr. Stoltzfoos' bank accounts, alleging, *inter alia*, that the Commonwealth had not alleged that the money was the proceeds of unlawful activities, that Mr. Stoltzfoos' possession of the money was lawful, and that the money had been earned by Mr. Stoltzfoos over the previous twenty years.

On June 4, 2007, the Commonwealth filed a Motion for Court to take Notice of Federal Law and Regulations, pursuant to 42 Pa.C.S. §5327. The Commonwealth alleged that Mr.

---

[1]   The receiving stolen property charge was nol prossed prior to trial. N.T., p. 22.

[2]   Mr. Stoltzfoos was represented by the firm of Pyfer and Reese from January 17, 2007, until November 8, 2007, when the court granted John Pyfer's Motion to Withdraw as Counsel. Jeffrey Conrad was appointed counsel for Mr. Stoltzfoos on February 29, 2008, and represented Mr. Stoltzfoos at trial.

Stoltzfoos acted to avoid a State or Federal reporting requirement, specifically the filing of a Cash Transaction Report, as required under 31 U.S.C. §5313(a) and 31 C.F.R. §103.22(b).

In the Motion, the Commonwealth also alleged that Mr. Stoltzfoos committed a federal offense, entitled "Structuring transactions to evade reporting requirement prohibited," as set forth at 31 U.S.C. §5324(a), which carries a criminal penalty of up to five years imprisonment, unless the structuring occurs while violating another law of the United States or as part of a patter of illegal activity involving more than $100,000 in a 12-month period, in which case the criminal penalty includes up to ten years imprisonment. 31 U.S.C. §5324(d).

The Commonwealth asked the court to "determine that the cited laws and regulation are laws that apply to the case at bar and that the Commonwealth may refer to such laws and regulations in its case in chief, cross examination, and rebuttal; and such other relief as the Court deems is in the interest of justice." The Honorable Michael J. Perezous signed an Order, granting the Commonwealth's Motion, on June 5, 2007.

A suppression hearing was held on May 5, 2008, before the Honorable Howard F. Knisely. After testimony was presented regarding suppression of Mr. Stoltzfoos' statement to police, the court noted that the Commonwealth had agreed not to introduce, in its case-in-chief, any of the evidence which defense counsel had sought to exclude; i.e., evidence of Mr. Stoltzfoos' credit card and cash advance activity, his purchasing and returning habits, and his possession of phone cards, movie passes, vouchers, gift cards and similar items, thus making the Motions in Limine moot, unless any of the aforementioned items were raised by the defense at trial. N.T.,[3] p. 23.

Defense counsel presented argument regarding the constitutionality of 18 Pa.C.S. §5111(a)(3), arguing that it was vague because there was no mens rea requirement. N.T., p. 24.

---

[3]     N.T. denotes notes of Suppression Hearing, Pretrial Motions and Trial, May 5-8, 2008.

Counsel further argued that in order to convict a defendant of a virtually identical federal statute, the government was required to prove that the defendant knew that structuring his deposits was illegal. N.T., pp. 24-25. Defense counsel further argued that, as written, §5111(a)(3) was essentially a strict liability statute and, therefore, unconstitutional. N.T., p. 25. Defense counsel also argued that the statute was vague and overbroad because it would reach anyone who deposited less than $10,000 in the bank, if their intent was to avoid the reporting requirement, and it criminalized a variety of protected lawful conduct. N.T., pp. 25-27. Defense counsel argued that because the statute did not criminalize only those who were depositing the proceeds of unlawful activities, it was overbroad. N.T., p. 28.

The Commonwealth argued that 18 Pa.C.S. §5111(a)(3) was a strict liability crime, reaching anyone who deposited cash with the intent of avoiding a cash transaction report, regardless of the amount deposited. N.T., pp. 28-29.

Defense counsel argued that although he believed the statute was unconstitutional, that if the court found the statute constitutional, it should apply the mens rea requirement set forth in 18 Pa.C.S. §302. N.T.,p p. 29-30.

The court denied the Motion to Suppress Evidence, finding that Mr. Stoltzfoos' statements were made when not in custody. N.T., p. 31. The court noted that the Motion to Dismiss Count 59 was moot, and denied the Motion to Quash Counts 1 through 58. N.T., pp. 31-32. Finally, the court ruled that a mens rea would apply to §5111(a)(3), as set forth in 18 Pa.C.S. §302(c), and that the Commonwealth must prove that Mr. Stoltzfoos acted intentionally, knowingly, or recklessly with respect to a material element of the offense. N.T., pp. 32-33. The court also held that it would not address the Motion for Return of Property until after the proceedings had been completed. N.T., p. 23.

A jury trial was held before Judge Knisely on May 5-8, 2008.

11

It was uncontested that Mr. Stoltzfoos made fifty-eight deposits of cash in Lancaster County banks in amounts under $10,000 to avoid the banks' making any report to the government regarding his deposits. N.T., pp. , 61-63, 91-92, 245, 249, 251. There was evidence that the money which was being deposited had been withdrawn in 1999, before the turn of the century. N.T., pp. 145, 175.

Although Mr. Stoltzfoos deposited cash in amounts under $10,000 in order to avoid a report being made, there was no evidence that Mr. Stoltzfoos was aware that structuring cash deposits to avoid a report being made was illegal. N.T., pp. 161-162, 168, 184-185, 189, 193. Furthermore, there was evidence that Mr. Stoltzfoos had structured financial transactions in 1999 and 2001, in order to avoid having the bank fill out a form, without consequences; thus, he had no reason to conclude that this conduct was illegal. N.T., pp. 146, 153, 247, 260.

Agent Daniel Licklider testified that "according to the Bank Secrecy Act," a financial institution has to fill out a form called a currency transaction report if a customer makes a cash deposit over $10,000. N.T., pp. 124-125.

Lisa Krick, the Corporate BSA Office for Susquehanna Bancshares, Inc., testified that she was responsible for implementing and enforcing the Bank Secrecy Act laws, and the Patriot Act, and the regulatory requirements associated with those two federal statutes. N.T., p. 218. Ms. Krick testified that Susquehanna Bancshares and any other financial institution governed by a federal regulator was required to generate a cash transaction report on a cash deposit or withdrawal in excess of $10,000, and to submit the form to FINCEN, the financial enforcement network. N.T., pp. 219-220.

During the court's charge to the jury, the court stated as follows with regard to the charged offense:

In this particular case, Levi L. Stoltzfoos is charged under a section which is entitled dealing in proceeds of unlawful activities. To find the defendant guilty of this offense you must find that the following elements have been proven beyond a reasonable doubt: First the defendant conducted a financial transaction. . . .

. . .

Second, the defendant conducted these financial transactions to avoid a transaction reporting requirement under state or federal law.

In this case the Commonwealth alleges that the defendant was required to report the transactions under the following provisions of law:  Under the Federal United States Code, Title 315, 313[4] reports on domestic coins/currency transactions are found in the Federal Code of Regulations, Title 31, Part 103.22; b, a financial institution other than casinos.  Each financial institution other than a casino shall file a report of each deposit, withdrawal, exchange or currency or other payment or transfer, by, through or such other financial institution which involves a transaction of currency of more than $10,000.

Additionally, the Commonwealth alleges the defendant structured each transaction, in violation of 31 U.S.C. which is the United States Code, Section 5324, structuring transactions to evade reporting requirement prohibited, which states, in relevant part, the domestic coin and currency transactions involving financial institutions.  No person shall, for the purpose of evading the reporting requirements of section 5313(a) or 5325, or any regulation prescribed under any such section, reporting or recordkeeping requirements imposed by any order issued under section 5326 or the recordkeeping requirements imposed by any regulation prescribed under 21 -- section 21 of the Federal Deposit Insurance Act, or that the person would cause or attempt to cause a domestic financial institution to fail to file such a report;

and thirdly, the value of the property involved in the transaction was $542,000 [paragraph added before "and thirdly" for clarity"].

Culpability required under this particular Act is that to establish a material element of this offense, a person acts either intentionally, knowingly or recklessly with regard to the elements of the offense.  A person acts intentionally with respect to a material element of an offense when if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result.  And if the element involves the attendant circumstances, he is aware of

---

[4]     This appears to be a transcription error.  It is fairly clear that the court was referring to Title 31, section 5313 of the United States Code.

the existence of such circumstances where he believes or hopes
that they exist.

Secondly, a person acts knowingly with respect to a
material element of an offense if the element involves the nature of
his conduct or the circumstances he is aware that his conduct is of
such a nature or that such a circumstance exists. And if the
element involves a result of his conduct, he is aware that it is
practically certain that his conduct will cause such a result;

and thirdly -- or thirdly, I should say, because it's one or the
other or the third -- or thirdly, a person acts recklessly with respect
to a material element of an offense where he consciously
disregards a substantial and unjustifiable risk that the material
element exists or will result from his conduct. The risk must be of
such a nature and degree that considering the nature and intent of
the actor's conduct that a reasonable person would observe in the
actor's situation. [paragraph added before "and thirdly" for
clarity].

N.T., pp. 285-289.

Defense counsel objected to the court's instruction to the jury regarding the

Commonwealth's allegation that Mr. Stoltzfoos had violated 31 U.S.C. §5324, by structuring his

financial transactions to avoid a reporting requirement, arguing that Mr. Stoltzfoos was not

charged with this offense and it was not before the jury. N.T., p. 293. The court overruled the

objection, stating that the statute "will be taken judicial notice of as what is charging the activity

in dealing with these proceeds under, and that was accepted by another judge as part of this case

and has been ruled on by the Court that they are appropriate matters for the Court to consider,

having taken judicial notice of those." N.T., pp. 293-294.

At the close of trial, the jury found Mr. Stoltzfoos guilty of all fifty-eight counts of

dealing in proceeds of unlawful activity. N.T., pp. 310-311.

On June 16, 2008, the Commonwealth filed a lengthy Sentencing Memorandum, with

seven attached "Exhibits." This Memorandum alleged that Mr. Stoltzfoos' motive "was to

prevent the Internal Revenue Service (IRS) or other governmental agency from learning that he

had at least $540,000 in cash." Sentencing Memorandum, June 16, 2008, p. 1. The

14

Commonwealth claimed that Mr. Stoltzfoos' total income from 1987 to 1999 was $369,733, and that his claim that the $540,000 he deposited in 2006 was "savings from his work history" was "ludicrous and false." Id. at pp. 1-2.  Rather, the Commonwealth claimed that the source of Mr. Stoltzfoos' money was Mr. Stoltzfoos' alleged participation in two "scams"-- "a credit-card-bust out and point-of-sale." Id. at p. 2.  The Commonwealth based this allegation on alleged deposits by Mr. Stoltzfoos between August 1995 and December 1999, totaling $433,736, deposits of $105,017 between June and September 2001, debit transactions between August 1995 and February 2003, totaling $454,528, the alleged deposit of $190,000 in cash into his safe deposit box between August 26, 1999 and November 26, 1999, and alleged purchases and returns by Mr. Stoltzfoos from Radio Shack and Sears between September and December 2002.  Id. at p. 3. Further, the Commonwealth alleged that Mr. Stoltzfoos did not save the money he earned, based upon his alleged purchase of vehicles, clothing, compact discs, DVDs, gifts, and tickets to sporting events, and its seizure from his residence of hundreds of pre-paid telephone calling cards which it alleged he must have purchased or obtained "through criminal means." Id. at p. 3.

Mr. Stoltzfoos appeared for sentencing before Judge Knisely on November 14, 2008.

At the beginning of the sentencing hearing, the court asked the court reporter to swear in Mr. Stoltzoos. N.S.H.,[5] p. 3.  Defense counsel noted that the correct sentencing guidelines for each offense were twelve to eighteen months in the standard range, with a mitigated range of three to twelve months and an aggravated range of eighteen to twenty-seven months. N.S.H., p. 6.

Defense counsel objected to the seizure and forfeiture of the $540,200 which Mr. Stoltzfoos had deposited as violative of the Eighth and Fourteenth Amendments to the United States Constitution and Article One, Section Thirteen of the Constitution of the Commonwealth

---

[5]      N.S.H. denotes Notes of Sentencing Hearing, July 22, 2008.

15

of Pennsylvania. N.S.H., pp. 7-8. The court held that the civil penalty was constitutional.

N.S.H., p. 8.

Defense counsel objected to the Sentencing Memorandum filed by the Commonwealth,

arguing that it was improper hearsay, and that it alleged prior bad acts which had been found

inadmissible at trial. N.S.H., pp. 8-9. The Commonwealth argued that because Mr. Stoltzfoos

had claimed, in separate lawsuits and "throughout this trial" that "all this money was legitimately

earned," that the Sentencing Memorandum and testimony to support it were appropriate at

sentencing because Mr. Stoltzfoos had "made the source of those funds an issue" by requesting

the return of the money seized. N.S.H. pp. 9-10. The Commonwealth noted that the money

which the Commonwealth had seized had been seized by the U.S. Attorney's Office, but claimed

that it was still entitled to offer evidence that the money was not obtained legally, because of Mr.

Stoltzfoos' claim that he obtained the money legitimately. N.S.H., p. 10.

The court responded,

> With regard to these matters, I concur with the
> Commonwealth 100 percent. Mr. Stoltzfoos, through the course of
> his trial, with his comments continuously claims that every penny
> is his earned money. And if the Commonwealth wishes to show
> that that is a fabrication and an outright inappropriate way to
> categorize the funds which were used in the dealing of the
> proceeds that were unlawful activities of these offenses, it is
> certainly my belief that the Commonwealth has the right to bring
> that to my attention.

N.S.H., pp. 10-11.

In response to the Commonwealth's sentencing memorandum, defense counsel presented

an exhibit which alleged that Mr. Stoltzfoos earned $521,183.26 in wages between 1988 and

2006, and $66,881 in interest between 1988 and 2005. N.S.H., pp. 11-12; Defendant's Exhibit 1.

In his comments to the court, defense counsel argued that Mr. Stoltzfoos had withdrawn

much of his money from the bank in 1999 because he was worried about Y2K. N.S.H., p. 12.

The court interrupted defense counsel, stating, "We're not going to go through things that the jury has already ruled on." N.S.H., p. 12. The court continued, "I understand what you want to go through relative to this. But the jury has found him guilty and did not believe his defense relative to the Y2K scandal, those things." N.S.H., p. 12.

Defense counsel further argued that Mr. Stoltzfoos avoided the reporting requirement because of his distrust of the government, that he did not know that avoiding the reporting requirement was illegal, that he had lost all of his money, and that under the circumstances, a sentence of probation was appropriate. N.S.H., pp. 13-16.

The court asked Mr. Stoltzfoos what he would like to say, and Mr. Stoltzfoos began reading a statement to the court, but stopped after the first sentence, stating "I can't do it." N.S.H., p. 19. Mr. Stoltzfoos passed the statement to his attorney, who read the statement for him. N.S.H., p. 19.

The court then directed a question to Mr. Stoltzfoos and the following exchange occurred:

> THE COURT: Mr. Stoltzfoos, do you believe that if I borrow $50,000 from anybody over here and I never intend to pay them back nor do I pay a penny of that back, that that's my money?[6]
> Mr. Stoltzfoos, this is for you to answer me and --
>
> THE DEFENDANT: Can you repeat the question?
>
> THE COURT: If I borrow $50,000 from a man over there and I never have the intention to pay that man back that $50,000, is that 50,000 my money or his money?
>
> THE DEFENDANT: It would be your money, but he would have the opportunity to sue you.
>
> THE COURT: I never intended to pay him back. I stole the money from him didn't I?

---

[6]     Although this is not clear from the record, after the court asked the question, Mr. Stoltzfoos attempted to confer with his attorney, which is when the court interrupted to tell Mr. Stoltzfoos that the question was for him to answer. Appellate counsel for Mr. Stoltzfoos was in the courtroom during the sentencing hearing and observed Mr. Stoltzfoos attempt to confer with his trial counsel.

THE DEFENDANT:  That wasn't my intent.  Maybe that was --

THE COURT:  Excuse me.  You're answering my question, not yours.

THE DEFENDANT:  Okay.  If that would have been your intention, I don't know what the law is on that.

MR. CONRAD:  Your Honor, if I could address one --

THE COURT:  No.  I wanted Mr. Stoltzfoos' response to that.
     The Commonwealth --

MR. CONRAD:  Your Honor, can I have the Court's indulgence just one moment?
     We've talked about that matter, sir.  If I could just -- just one moment sir.

THE COURT:  I believe it's the Commonwealth's turn.  We'll come back to you.[7]

N.S.H. pp. 20-21.

The Commonwealth objected to the defense exhibit, stating that counsel had failed to provide backup documentation regarding Mr. Stoltzfoos' earnings and interest income.  N.S.H., pp. 21-22.  The Commonwealth then offered its copies of Mr. Stoltzfoos' tax returns from 1999 through 2005 to the court, if the court wanted them and defense counsel requested them.  N.S.H., p. 22.   Defense counsel attempted to ask the Deputy Attorney General about the tax returns to determine what years the returns covered and the court stopped him, stating:  "The court asks questions here.  If you want to ask questions, ask permission of the Court.  This is Mr. Portman's opportunity to speak."  N.S.H., p. 22.  The Commonwealth also offered a copy of Mr. Stoltzfoos' statement from the Social Security Administration.  N.S.H., p. 22.  The court noted that Mr. Stoltzfoos' exhibit appeared to match the 1999 to 2005 tax returns which the Commonwealth had presented.  N.S.H., pp. 22-23.

---

[7]      Other than to attempt to cross-examine the Commonwealth's witnesses, and to make objections, defense counsel was not given another opportunity to speak, and, at one point, was stopped even from asking the Deputy Attorney General a question about an exhibit being offered.  N.S.H., p. 22.

The Commonwealth called Daniel Licklider, a field investigator for the Attorney General's Office, to testify. N.S.H., pp. 23-24. Agent Licklider testified regarding numerous items which were seized from Mr. Stoltzfoos' residence, including theater tickets, free food tickets, free movie tickets, and numerous buyer's club cards. N.S.H., pp. 25-30. Agent Licklider also testified that he had a conversation with Mr. Stoltzfoos about his credit card debt, and that Mr. Stoltzfoos had told him that the matter was civil, not criminal. N.S.H., p. 30.

Defense counsel asked for permission to cross-examine Agent Licklider, and the court refused, stating "You had the opportunity to speak. It's their opportunity to speak." N.S.H., p. 31. Defense counsel stated that he was objecting on the record, and the court replied "You may certainly respond to these." N.S.H., p. 31.

Next, the Commonwealth called Agent Santo Bocchinfuso, a narcotics agent for the Pennsylvania Attorney General, to testify. N.S.H., pp. 31-32. Agent Bocchinfuso testified regarding items observed in the attic of Mr. Stoltzfoos' residence, including over 3,000 new DVD's and CDs, hockey equipment, electric fans, stereo equipment, lock sets, bicycle equipment, office supplies, and exercise equipment. N.S.H., pp. 32-33. Agent Bocchinfuso testified that he also reviewed $3,980 in prepaid telephone cards seized from Mr. Stoltzfoos' residence, $370 in postage stamps, and $8,268.81 in retail store gift cards. N.S.H., pp. 34-35.

The court commented:

> For the record, at sidebar, we indicated that there's no need to go into matters on the last page of this particular grouping.
> I also indicated to counsel, as to the first gentleman who testified who just gave us listings of things that were taken in the search warrant, I did not permit cross examination. That has been the case to this point, but should there be any request or qualification to go beyond just the listing of things taken, I will certainly give the opportunity for counsel to cross-examine.

N.S.H., p. 38.

In imposing sentence, the court commented:

> I have reviewed the sentencing memorandum relative to the issues that are pertinent to the charges before me. I find that although Mr. Stoltzfoos was clearly a hardworking man, he certainly has failings. Whether it is the distrust of the government or the Y2K matters that he brings to the Court's attention, *it is not the government that caused these charges or convictions. It was Mr. Stoltzfoos' own greed and avarice which are solely to blame.*
> On 58 separate times, he made deposits for which he has been found guilty. He knew from the very beginning in almost the first contact with the bank employees that what he was planning on doing was wrong, that there were consequences to that wrong act. Yet over the next two months, continued on 58 separate occasions to violate the laws of the State of Pennsylvania.
> He knew from the very first contact with the bank employee who explained to him what they were doing and why that he was planning to subvert the recording requirements, which is what this statute is all about.
> Mr. Stoltzfoos purposely used 10 different banks to subvert those reporting requirements and to distribute hundreds of thousands of dollars in January and February of 2006 in an effort to avoid IRS and Pennsylvania reporting requirements.
> . . .
> You have used, both at trial and today, the Amish faith, I assume, as an alleged defense. I find that to be a clear slap in the face of the good law-abiding Amish citizens of Lancaster County. You are not Amish and you did not behave like the good, honest Amish people of Lancaster County.
> . . .
> It is not for the Court to determine today, and I did determine prior to trial, that being charged under Subsection C of 5111 does not require, and the Commonwealth was not asking, to show a specific knowledge of unlawful activity; and, therefore, I kept it out of the trial.
> However, you clearly, through all of your statements, have begged the Court to understand that our are a simple man and that all of this was earned legitimately.
> I need not make that determination today as I did keeping it out from the ears of the jury, but it is extremely difficult for me to buy that you claim to be a simple man, yet the items found in your house show an extremely different schemed individual.
> . . .
> *As I've indicated, and I will repeat it one more time, the government did not cause these charges or convictions. It was your own greed and avarice that is solely to blame.* You did exactly what the act indicates you may not do lawfully.

20

N.S.H., pp. 41-44.

The court imposed an aggregate sentence of two to ten years incarceration, no fine, and a civil penalty, under 18 Pa.C.S. §5111(c), of $540,200.

Trial counsel for Mr. Stoltzfoos made an oral motion for bail pending appeal, to which the Deputy Attorney General objected. N.S.H., pp. 45-46.

Appellate counsel for Mr. Stoltzfoos then entered her appearance on the record, and filed a Motion for Bail Pending Appeal. N.S.H., p. 46. In response to the oral and written motions for bail pending appeal, the court ordered that Mr. Stoltzfoos be remanded to the custody of the Department of Corrections. N.S.H., p. 47.

The court noted that the Motion for Return of Property was moot to the extent that it involved the money that had been seized, as Mr. Stoltzfoos had been assessed that amount as a civil penalty. N.S.H. p. 50. With regard to the personal items seized, the Deputy Attorney General indicated that he had been subpoenaed by the U.S. Attorney's Office and was required to turn over all of the personal items seized to them, thus rendering the issue of the return of any personal property moot. N.S.H., pp. 50-51.

Appellate counsel for Mr. Stoltzfoos filed a Post-Sentence Motion on August 1, 2008. On September 9, 2008,[8] the Court filed an Order, denying the Post-Sentence Motion.

Unfortunately, because the court ordered service of it Order, denying the Post-Sentence Motion, to Mr. Stoltzfoos' previous defense counsel, appellate counsel did not learn of the denial of the motion until November 13, 2008. Upon learning of the denial of the Post-Sentence Motion, appellate counsel filed a Motion for Post Conviction Collateral Relief Act on December

---

[8]       The trial court signed the Order, denying the Post-Sentence Motion on August 9, 2008, but for some reason, the Order was not filed until September 9, 2008.

5, 2008, seeking restoration of Mr. Stoltzfoos' direct appeal rights.  The court granted the Motion for Post Conviction Collateral Relief on December 5, 2008.

On December 31, 2008, appellate counsel for Mr. Stoltzfoos filed a timely Notice of Appeal.  Pursuant to Pennsylvania Rule of Appellate Procedure 1925, appellate counsel for Mr. Stoltzfoos filed a timely Statement of Errors Complained of on Appeal on January 26, 2009.  The Commonwealth filed a Response to Constitutional Claims Raised in Statement of Matters Complained of on Appeal on February 13, 2009.  The court filed an Opinion on March 26, 2009.

Further facts will be provided in the argument section of this brief.

## SUMMARY OF THE ARGUMENT

The trial court erred in ruling that 18 Pa .C.S. §5111(a)(3) was not void for vagueness. 18 Pa.C.S. §5111(a)(3) is void for vagueness because subsection three contains no mens rea, the catchall provision of 18 Pa.C.S. §302 provides for a mens rea of intentionally, knowingly or recklessly, yet the mens rea for subsections one and two of the statute require knowing and intentional conduct; thus, the ordinary person is required to guess as to the necessary mens rea for the proscribed offense.  Furthermore, 18 Pa.C.S. §5111(a)(3) is void for vagueness because the title of the statute: "Dealing in proceeds of unlawful activities," contains an element not required by subsection three, thus leaving the ordinary person to guess at the conduct which is proscribed.

The trial court erred in ruling that 18 Pa.C.S. §5111(a)(3) was not void for overbreadth, where the statute criminalizes the depositing of lawfully acquired cash into financial institutions in a manner intended to maintain the depositer's constitutional right to privacy in his financial records.

The trial court erred in instructing the jury that the Commonwealth was alleging that Mr. Stoltzfoos was guilty of a federal crime, set forth at 31 U.S.C. §5324, which instruction was irrelevant, improper, and highly prejudicial.

The evidence was insufficient to sustain Mr. Stoltzfoos' conviction for 58 counts of dealing in unlawful proceeds where the Commonwealth presented insufficient evidence of a state or federal transaction reporting requirement, which Mr. Stoltzfoos had allegedly avoided.

The $540,200 civil penalty, imposed pursuant to 18 Pa.C.S. §5111(c), constituted an excessive fine and cruel and unusual punishment.

The assignment of an Offense Gravity Score of eight to the newly created offense set forth in 18 Pa.C.S. §5111(a)(3), despite the significant difference in criminal liability from that

required for a conviction under subsections (1) or (2), was a violation of Mr. Stoltzfoos' right to equal protection of the laws.

The trial court erred in refusing to exclude the Commonwealth's Sentencing Memorandum, and in permitting the testimony of Daniel Licklider and Santo Bocchinfuso, where the purpose of the Memorandum and testimony were to attempt to prove that the money Mr. Stoltzfoos had deposited was the proceeds of unlawful activity.

By refusing to permit defense counsel for Mr. Stoltzfoos to cross-examine the Commonwealth's witnesses at sentencing, the trial court violated Mr. Stoltzfoos' right to the assistance of counsel, and his right to confront the witnesses against him.

In imposing sentence, the trial court improperly based its sentence upon its belief, which was neither alleged nor proved at trial, and evidence of which should not have been admitted at sentencing, that the money Mr. Stoltzfoos deposited was the proceeds of unlawful activities.

By demanding that Mr. Stoltzfoos answer the trial court's hypothetical legal question about property rights in borrowed money, by refusing to permit Mr. Stoltzfoos to consult with his attorney regarding the court's question, and by refusing to permit defense counsel to address the court on Mr. Stoltzfoos' behalf, the trial court violated Mr. Stoltzfoos' right to remain silent at sentencing, and his right to the assistance of counsel.

<u>STATEMENT PURSUANT TO PENNSYLVANIA RULE OF</u>

<u>APPELLATE PROCEDURE 2119(f)</u>

Mr. Stoltzfoos contends that his sentence is inappropriate under the Sentencing Code. Specifically, 42 Pa. C.S. §9721 requires the sentencing court to impose a sentence of confinement that "is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community and on the rehabilitative needs of the defendant." 42 Pa. C.S. §9721.

Section 9725 of the Sentencing Code provides the criteria that the Court must follow in fashioning a sentence of total confinement:

> The court shall impose a sentence of total confinement if, having regard to the nature and the circumstances of the crime and the history, character and condition of the defendant, it is of the opinion that the total confinement of the defendant is necessary because:
>
> (1) there is undue risk that during a period of probation or partial confinement the defendant will commit another crime;
>
> (2) the defendant is in need of correctional treatment that can be provided most effectively by his commitment to an institution; or
>
> (3) a lesser sentencing would depreciate the seriousness of the crime of the defendant.

42 Pa. C.S. §9725.

A substantial question exists where the defendant sets forth a plausible argument that the sentence violates a particular provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing scheme. <u>Commonwealth v. Mouzon</u>, 571 Pa. 419, 435, 812 A.2d 617, 627 (2002). Information considered by the sentencing court must be relevant and accurate, and the court may not commit an error of law in sentencing. <u>Commonwealth v. Losch</u>, 369 Pa. Super. 192, 204, 535 A.2d 115, 120-121 (1987).

25

In the instant case, the court imposed a sentence of two to ten years incarceration, based upon its improper belief that the money Mr. Stoltzfoos deposited was the proceeds of unlawful activities. This belief was supported by the court's improper admission of the Commonwealth's Sentencing Memorandum and its admission of testimony by two Commonwealth investigators, designed to prove the Commonwealth's allegation that the money Mr. Stoltzfoos deposited was illegally obtained. The court's belief was also supported by its improper refusal to permit defense counsel to cross-examine the Commonwealth's witnesses at sentencing, in violation of Mr. Stoltzfoos' right to the assistance of counsel, and his right to confront the witnesses against him. See, e.g., Commonwealth v. Monica, 528 Pa. 266, 274, 597 A.2d 600, 604 (1991) (noting defendant's right to the assistance of counsel at sentencing); Commonwealth v. Charles, 339 Pa. Super. 284, 292-293, 488 A.2d 1126, 1130 (1985) (noting that defendant was not denied the right to cross-examine witnesses at sentencing, because his attorney cross-examined the victim-witness thoroughly).

Finally, the sentence was also based upon the court's negative reaction to Mr. Stoltzfoos' answers to the court's "hypothetical" question about property rights in borrowed money, which the court demanded that Mr. Stoltzfoos answer, in violation of his Fifth Amendment right to remain silent at sentencing. Mitchell v. United States, 526 U.S. 314, 326 (1999) ("[w]e reject the position that either petitioner's guilty plea or her statements at the plea colloquy functioned as a waiver of her right to remain silent at sentencing"); Estelle v. Smith, 451 U.S. 454, 462-463 (1981) ("[w]e can discern no basis to distinguish between the guilt and penalty phases of respondent's capital murder trial so far as the protection of the Fifth Amendment privilege is concerned").

Because Mr. Stoltzfoos contends that his sentence was the product of a sentencing hearing replete with irrelevant and prejudicial evidence, and one in which the court violated his

constitutional right to the assistance of counsel, to confront the witnesses against him, and to remain silent, he has raised a substantial issue on appeal.  See Commonwealth v. Smith, 543 Pa. 566, 574, 673 A.2d 893, 896 (1996); Commonwealth v. Bethea, 474 Pa. 571, 576-580, 379 A.2d 102, 106-107 (1977).

ARGUMENT

I. The trial court erred in ruling that 18 Pa.C.S. §5111(a)(3) was not void for vagueness.[9]

A claim that a statute is void for vagueness is a claim that it violates the substantive due process guarantees of the United States and Pennsylvania Constitutions, as set forth in the Fifth and Fourteenth Amendments to the United States Constitution, and Article One, Section Nine of the Constitution of the Commonwealth of Pennsylvania. Commonwealth v. Barud, 545 Pa. 297, 301, 681 A.2d 162, 163-164 (1996).

There is a "presumption that the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth when promulgating legislation." Commonwealth v. Davidson, 595 Pa. 1, 16, 938 A.2d 198, 207 (2007) (internal quotations omitted). "[D]uly enacted legislation is presumed valid and unless it clearly, palpably and plainly violates the Constitution, it will not be declared unconstitutional." Id. at 16-17, 938 A.2d

---

[9]       Appellate counsel notes that the trial court claims that the Statement of Errors is "neither concise nor helpful to the Court in identifying the substantive issues that [Mr. Stoltzfoos] intends to raise on appeal." Trial Court Opinion, March 26, 2009, p. 3.  The trial court also suggests that the number of issues raised are an "attempt by a 'disgruntled appellant' to punish the Court." Id. Finally, the trial court has accused appellate counsel of misstating or mischaracterizing the actions and findings of the court.

        In twelve years of writing appeals, appellate counsel has only once raised so many issues in a Statement of Errors; however, she believes the issues raised in teht instant case were raisedas clearly and concisely as possible.  It is common, due to time constraints, to raise slightly more issues in the Statement of Errors than are eventually briefed in Superior Court, since by then appellate counsel has had more time to research and consider the issue and any points raised by the Commonwealth and the court in its Opinion Sur Appeal.  In the instant case, appellate counsel has elected to brief ten issues, having consolidated two of the issues, and eliminated two issues.  This is not a typical case, nor is the number of issues raised typical for appellate counsel.  Prior to this case, appellate counsel believes that the largest number of issues which she has briefed has been seven, almost ten years ago, when issues of ineffective assistance of counsel could still be raised on direct appeal.

        Appellate counsel assures the Superior Court that she has never attempted to "punish the Court" by raising a large number of issues on appeal.  In fact, appellate counsel was taken aback by the level of hostility which the court directed at Mr. Stoltzfoos and his trial counsel at sentencing.  All issues raised, however, are ones which appellate counsel genuinely believes are appropriate and require this Honorable Court's consideration.  Respectfully, appellate counsel represents that she has not misstated or mischaracterized the actions and findings of the court, either in the Statement of Errors or in this brief.  Appellate counsel takes no particular joy in arguing that a trial court has erred.  Respectfully, it is her job to so when she believes that a trial and/or sentencing have been conducted improperly or unfairly.

at 207.  Thus, "the party challenging the constitutionality of a statute bears a heavy burden of

persuasion." Id.

     "[A]s a general proposition, statutory limitations on our individual freedoms are reviewed

by courts for substantive authority and content, in addition to definiteness or adequacy of

expression." Commonwealth v. Ludwig, 593 Pa. 6, 16, 874 A.2d 623, 628 (2005).  "[T]he void

for vagueness doctrine requires that a penal statute define the criminal offense with sufficient

definiteness that ordinary people can understand what conduct is prohibited and in a manner that

does not encourage arbitrary and discriminatory enforcement." Commonwealth v. Barud, 545

Pa. 297, 304, 681 A.2d 162, 165 (1996).  "A vague law impermissibly delegates basic policy

matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the

attendant dangers of arbitrary and discriminatory application." Commonwealth v. Cotto, 562 Pa.

32, 37, 753 A.2d 217, 220 (2000).  "Due process requirements are satisfied if the statute provides

reasonable standards by which a person may gauge their future conduct." Barud at 305, 681

A.2d at 165.  The statute must "give fair warning of the conduct it criminalizes."

Commonwealth v. Davidson, 595 Pa. at 17, 938 A.2d at 207.  It is unconstitutional if it is "so

vague that persons of common intelligence must necessarily guess at its meaning and differ as to

its application." Id.  Penal statutes must be construed strictly.  1 Pa.C.S. §1928.

     In the instant case, Mr. Stoltzfoos contends that 18 Pa.C.S. 5111(a)(3) is void for

vagueness because there is no way for an ordinary person to determine whether the statute is a

strict liability offense, whether it requires mens rea as set forth in 18 Pa.C.S. §302, or whether

the requisite mens rea is knowing and intentional conduct as is required in subsections one and

two of the statute.  Further, the statute is void for vagueness because the title of the statute

implies that subsection three applies only to persons dealing in unlawful activities, yet subsection

three contains no such reference.

A. <u>18 Pa.C.S. §5111(a)(3) is void for vagueness because subsection three contains no mens rea,</u>

<u>the catchall provision of 18 Pa.C.S. §302 provides for a mens rea of intentionally, knowingly or</u>

<u>recklessly, yet the mens rea for subsections one and two of the statute require knowing and</u>

<u>intentional conduct; thus, the ordinary person is required to guess as to the necessary mens rea</u>

<u>for the proscribed offense.</u>

18 Pa.C.S. §5111 provides as follows:

§5111.  Dealing in proceeds of unlawful activities
(a) Offense defined.--A person commits a felony of the first degree
if the person conducts a financial transaction under any of the
following circumstances:

(1) With knowledge that the property involved represents the
proceeds of unlawful activity, the person acts with the intent to
promote the carrying on of the unlawful activity.

(2) With knowledge that the property involved represents the
proceeds of unlawful activity and that the transaction is designed in
whole or in part to conceal or disguise the nature, location, source,
ownership or control of the proceeds of unlawful activity.

(3) To avoid a transaction reporting requirement under State or
Federal law.

The statute was amended by Act 82 of 2002, approved June 28, 2002, which amended numerous

sections of Title 18, apparently as a response to the terrorist attacks of September 11, 2001.  The

Act states that it amends Title 18 "further providing for double jeopardy, for terroristic threats

and for bomb threats; providing for weapons of mass destruction; and further providing for false

alarms to agencies of public safety, for false reports to law enforcement authorities, for dealing in

proceeds of unlawful activities, for facsimile bombs, for interception of communications and for

possessing or dealing in firearms."  Act 82 of 2002.  Prior to Act 82, 18 Pa.C.S. §5111 provided

as follows:

§5111.  Dealing in proceeds of unlawful activities

(a) Offense defined.  A person commits a felony of the first degree if the person, knowing that the property involved in a financial transaction represents the proceeds of unlawful activity, conducts a financial transaction which involves the proceeds of unlawful activity under any of the following circumstances:

(1) With the intent to promote the carrying on of the unlawful activity.

(2) Knowing that the transaction is designed in whole or in part:

  (i) to conceal or disguise the nature, location, source, ownership or control of the proceeds of unlawful activity; or

  (ii) to avoid a transaction reporting requirement under State or Federal law.

18 Pa.C.S. §5111, as it existed in 2001.

As amended, the culpability requirement for subsection (3) cannot be clearly determined, thus leaving the ordinary person to guess as to the necessary mens rea.  When evaluating the constitutionality of a statute, "scienter requirements alleviate vagueness concerns," they "narrow the scope" of a statute's prohibition, and "limit prosecutorial discretion."  Gonzales v. Carhart, 550 U.S. 124, 149-150 (2007).  "[T]he constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of mens rea."  Colautti v. Franklin, 439 U.S. 379, 395 (1979).  The absence of a scienter requirement may result in a statute which is "little more than a trap for those who act in good faith."  Id. (internal quotations omitted).

The apparently deliberate removal of the "knowing" mens rea from the newly created subsection (3), which had formerly been a part of subsection (2)(ii), creates the appearance that it was the legislature's intention to remove any mens rea from subsection (3), thus creating a strict liability offense.  In fact, this was the Deputy Attorney General's argument to the trial court

during the suppression hearing.[10]  N.T., pp. 28-29.  This conclusion, however, is clearly

inconsistent with appellate caselaw regarding strict liability offenses.

      "The fact that a criminal statute is silent with regard to a culpability requirement does not

mean that the Legislature intended to dispense with the same."  Commonwealth v. Gallagher,

592 Pa. 262, 267, 924 A.2d 636, 638 (2007).  "Absolute criminal liability statutes are an

exception to the centuries old philosophy of criminal law that imposed criminal responsibility

only for an act coupled with moral culpability."  Commonwealth v. Pond, 846 A.2d 699, 706 (Pa.

Super. 2004) (internal quotations omitted).  "Such so-called statutory crimes are in reality an

attempt to utilize the machinery of criminal administration as an enforcing arm for social

regulation of a purely civil nature, with the punishment totally unrelated to questions of moral

wrongdoing or guilt."  Id.  "The more serious the penalty, such as a lengthy term of

imprisonment, the more likely it is that the legislature did not intend to eliminate the mens rea

requirement."  Id. at 707.

      "[T]he imposition of absolute liability for a crime is generally disfavored and an offense

will not be considered to impose absolute liability absent some indication of a legislative

directive to dispense with mens rea.  Commonwealth v. Gallagher, 592 Pa. 262, 267, 924 A.2d

636, 639 (2007).  "When the General Assembly plainly indicates a legislative purpose to impose

absolute liability . . . the Commonwealth does not have to establish a mens rea element to

establish the defendant is guilty of a crime."  Commonwealth v. Parmar, 551 Pa. 318, 330, 710

---

[10]     The court's basis for concluding that §5111(a)(3) was constitutional is unclear, as it provided no explanation at trial for its ruling that the statute was constitutional.  The court did not interpret the statute as creating a strict liability offense, however, as it instructed the jury on the catchall mens rea provision of 18 Pa.C.S §302.  N.T., pp. 287-289.  In its March 26, 2009 Opinion, the court did not engage in its own analysis of the constitutionality of the statute, but stated that "relative to the constitutionality issues," it "continues to agree with the Commonwealth and thus adopts its well-reasoned analysis for purposes of appellate review."  Trial Court Opinion, March 26, 2009, p. 5.  The Commonwealth's analysis changed considerably, however, as it argued that §5111(a)(3) was a strict liability offense at trial, but argued that the statute was not unconstitutional because the catchall mens rea provision of 18 Pa.C.S. §302 applied, in its response to the Statement of Errors.  N.T.T., pp. 28-29, Commonwealth's Response to Constitutional Claims Raised in Statement of Matters Complained of on Appeal, February 13, 2009, pp. 2-3.

A.2d 1083, 1089 (1998) (plurality opinion). No such plain indication of an intent to impose strict liability is present in 18 Pa.C.S. §5111(a)(3). The only evidence of such an intent in the instant case is the apparently deliberate removal of the "knowing" mens rea from the newly created subsection (3), which had formerly been a part of subsection (2)(ii), and had required "knowing" conduct.

It bears noting, however, that an amendment to 18 Pa.C.S. §5111 has been proposed, which amends subsection (3) to provide that "[a] person commits a felony of the third degree if the person knowingly conducts a financial transaction to avoid a transaction reporting requirement under State or Federal law." H.B. No. 1728, Session of 2009, introduced June 17, 2009. This suggests that the removal of the knowing mens rea from subsection (3) may have been unintentional. It also suggests, however, that the correct mens rea is not that set forth in 18 Pa.C.S. §302.

"In the absence of plain legislative intent, we must consider the purpose for the . . . statute[], the severity of punishment and its effect on the defendant's reputation and, finally, the common law origin of the crime[] to determine whether the legislature intended to impose absolute criminal liability." Parmar at 332, 710 A.2d at 1089.

In the instant case, a violation of 18 Pa.C.S. §5111 is a felony of the first degree, punishable by up to twenty years incarceration, a criminal penalty of $100,000 or twice the value of the property involved in the transaction, and a substantial civil penalty. These penalties are well beyond anything which may be considered a strict liability crime. Parmar at 332-333, 710 A.2d at 1090 (crimes subject to one year incarceration and five years incarceration not intended as strict liability offenses).

Citing Pond and Gallagher, the Commonwealth argues that the statute is not unconstitutionally vague, because since there is no legislative intent or purpose to impose strict

33

liability, the mens rea provisions of 18 Pa.C.S. §302 apply.  Commonwealth's Response,

February 13, 2009, pp. 2-3.

18 Pa.C.S. §302(c) provides that "[w]hen the culpability sufficient to establish a material

element of an offense is not prescribed by law, such element is established if a person acts

intentionally, knowingly or recklessly with respect thereto."

In Pond, our Superior Court concluded that the statute setting forth the penalty for failing

to comply with Megan's Law registration requirements was not a strict liability statute despite

the fact that it contained no mens rea requirement, because the catchall culpability provisions of

18 Pa.C.S. §302 applied.  846 A.2d 699, 706 (Pa. Super. 2004).  Unlike 18 Pa.C.S. §5111,

however, the statute at issue in Pond (then codified at 42 Pa.C.S. §9796) did not contain a

different culpability level in other subsections of the statute, from that provided in the subsection

at issue, or in 18 Pa.C.S. §302.  Pond, 846 A.2d at 704-705.

In Gallagher, our Supreme Court held that although 18 Pa.C.S. §2910, Luring a child into

a motor vehicle or structure, did not contain a mens rea requirement, it was not a strict liability

statute.  592 Pa. 262, 266-270, 924 A.2d 636, 638-641 (2007).  Instead, the Court held that the

catchall provision set forth in 18 Pa.C.S. §302 applied.  Id.  As in Pond, the statute in Gallagher

did not contain other subsections which set forth different culpability levels from that provided in

the subsection at issue, or in 18 Pa.C.S. §302.

In the instant case, however, it is not clear whether the requisite culpability for 18 Pa.C.S.

§5111(a)(3) is prescribed by the statute itself, since subsections (a)(1) and (a)(2) provide a

culpability requirement of "knowledge" and "intent," or by 18 Pa.C.S. §302.  Under these

circumstances, it is equally likely that the legislature's intention was to require intentional or

knowing conduct to sustain a conviction for a violation of §5111(a)(3), thus making subsection

(3) unconstitutionally vague.

34

In Commonwealth v. Ludwig, our Supreme Court considered the constitutionality of a statute criminalizing drug delivery resulting in death, a violation of 18 Pa.C.S. §2506. 583 Pa. 6, 874 A.2d 623 (2005). The statute provided that "[a] person commits murder of the third degree who administers, dispenses, delivers, gives, prescribes, sells or distributes any controlled any controlled substance or counterfeit controlled substance in violation of section 13(a)(14) or (30) of the . . . . Controlled Substance, Drug, Device and Cosmetic Act, and another person dies as a result of using the substance. 18 Pa.C.S. §2506(a). The question was whether the statute was void for vagueness, or whether it could be clearly determined whether the crime was a strict liability offense, was subject to the mens rea requirements of 18 Pa.C.S. §302, or was subject to the mens rea requirement for third degree murder. The Court found that the mens rea for third degree murder was clearly set forth, that the culpability required for third degree murder was malice, and that drug delivery resulting in death was defined as a form of third degree murder; thus, the culpability requirements of §302 did not apply. Id. at 19-20, 874 A.2d at 630-631. In so holding, the Court noted that §2506 is part of Chapter 25 of the Crimes Code, which sets forth various degrees of criminal homicide, including third degree murder. Id. at 20, 874 A.2d at 631.

In the instant case, however, the newly enacted subsection (3) of §5111 is so vague as to the level of mens rea required that an ordinary person cannot understand what conduct is prohibited. Even if this Honorable Court concludes that it is possible to determine the mens rea required for a violation of §5111(a)(3), there remains a separate issue regarding whether that level of culpability applies only to the element of avoiding a transaction reporting requirement, or whether the Commonwealth must also show a level of culpability with regard to the fact that structuring a financial transaction to avoid a reporting requirement is illegal. See, e.g., Commonwealth v. Gallagher, 592 Pa. 262, 268-270, 924 A.2d 636, 640-641 (2004) (requiring a

level of culpability not only with regard to the element of luring, but with regard to the age of the child allegedly lured).

Subsections (1) and (2) of the statute not only require knowing and intentional conduct, these subsections require that the person know that the property with which they are dealing represents the proceeds of criminal activity.  Under these circumstances, it would be improper to require the government to prove anything less than that a person charged with a violation of subsection (3) knew that structuring financial deposits to avoid a transaction reporting requirement was illegal.  To hold otherwise would be to unfairly penalize a defendant for unknowingly breaking the law by structuring his financial transactions to the same harsh degree as someone who knew that his financial transactions involved the proceeds of criminal activity.

In Commonwealth v. Lurie, our Supreme Court held that in order to sustain a conviction of a defendant charged with violations of the Medicaid Fraud Abuse and Control Act, the Commonwealth must prove that he acted knowingly or intentionally in presenting a fraudulent claim, despite the fact that one section of 62 P.S. §1407(a) required knowing and/or intentional conduct, but other sections were silent on the question of mens rea.  524 Pa. 56, 64, 569 A.2d 329, 333 (1990).  The Court noted that because each subsection of the statute charged required what was essentially fraudulent behavior, that each subsection required knowing or intentional conduct, i.e., "conduct involving guilty knowledge." Id. at 61-64, 569 A.2d 329, 331- 333.  The Court further noted that this construction of the statute was appropriate because the penalties for a violation of any subsection of the statute were the same--each constituted a third-degree felony--and it would have been absurd for the legislature to permit the same substantial penalty for reckless or negligent conduct, as it had prescribed for similar knowing and intentional conduct. Id. at 62-63, 569 A.2d 329, 332.  The Court observed that to require different mens rea for certain subsections despite equivalent penalties would be to unfairly penalize a "provider who recklessly

36

or negligently submitted a claim for services not delivered," in the same manner as one "who

schemed to intentionally defraud the medical assistance program." Id. at 62-63, 569 A.2d 329,

332.

"[W]hen the proscribed conduct necessarily involves deceitful acts and acts of fraud,

criminal intent or guilty knowledge is an essential element of the offense." Commonwealth v.

Lurie, 524 Pa. 56, 64, 569 A.2d 329, 333 (1990) (finding that defendant charged with violations

of the Medicaid Fraud Abuse and Control Act must have acted knowingly or intentionally in

presenting a fraudulent claim).  In the instant case, it is clear that a violation of subsection (3)

requires deceitful and/or fraudulent acts.  Thus, only criminal intent or guilty knowledge is

sufficient to sustain a conviction, and that criminal intent or guilty knowledge requires that the

defendant knew that his conduct was illegal.

Subsections (1) and (2) of 18 Pa.C.S. §5111 require knowledge and intent, and they

require that the defendant know that the property involved in the financial transaction represents

the proceeds of unlawful activity.  To the contrary, subsection (3) sets forth no mens rea,

requiring only the actus reus of conducting a financial transaction to avoid a transaction reporting

requirement.  To apply the mens rea requirements set forth in 18 Pa.C.S. §302, or to require only

that the defendant knowingly avoided a transaction reporting requirement, without requiring that

he knew that what he was doing was illegal would be absurd, permitting the same extremely

serious penalty to a person who had been only reckless, and who was unaware that he was

violating a law, as to someone knowingly dealing in the proceeds of unlawful activity.

Morissette v. United States, 342 U.S. 246, 251-252, 263-265 (1952) (mens rea of intent cannot

consist solely of an intent to commit the actus reus; rather, a guilty mind is required, one which

intends to commit a crime or wrong).

37

In <u>Morissette v. United States</u>, the defendant was charged with knowingly converting the property of the United States when he salvaged spent bomb casings which he located on the site of a practice bombing range. 342 U.S. 246, 247-248 (1952). The defendant argued that he believed the property was abandoned and had not intended to steal it. Id. at 248-249. The trial court refused to instruct the jury on the defendant's claim, informing them that if they believed the government's testimony--that he took the bomb casings without permission, that they belonged to the United States Government, and were worth one cent or more, that he was guilty. <u>Id</u>. at 249. The court further instructed the jury that "[t]he question on intent is whether or not he intended to take the property," and it overruled defense counsel's objection, arguing that the court should instruct that the defendant's intent must have been felonious. <u>Id</u>. at 249.

The United States Supreme court noted that "[t]he contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion." <u>Id</u>. at 250. Crime arises from "concurrence of an evil-meaning mind with an evil-doing hand." <u>Id</u>. at 251. "It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil." <u>Id</u>. The Court noted that the crimes of stealing, larceny, and its "variants and equivalents," had always required intent. Id. at 261. The Court also noted that Congress had "at times required a specific intent or purpose which will require some specialized knowledge or design for some evil beyond the common-law intent to do injury." <u>Id</u>. at 264-265. The Court found that "knowing conversion requires more than knowledge that defendant was taking the property in his possession," and that "he must have had knowledge of the facts, though not necessarily the law, that made the taking a conversion." <u>Id</u>. at 270-271.

In <u>Morissette</u>, the government had to prove not only that the defendant intended to take the property, but that he did so knowing that it was wrong--that it was the property of someone

else.  Similarly, in the instant case, to sustain a conviction for structuring, the Commonwealth should have been required to prove that Mr. Stoltzfoos not only knew that he was structuring, but that he knew doing so was illegal.

"The requirement that [an] act must be willful or purposeful . . . relieve[s] the statute of the objection that it punishes without warning an offense of which the accused was unaware." Colautti v. Franklin, 439 U.S. at 395 f.n.13.  Under numerous circumstances, appellate courts have "required actual knowledge of the illegality of certain conduct to support a conviction." United States v. Mussaleen, 35 F.3d 692, 698 (2nd Cir. 1994)  These cases have involved statutes "that either explicitly or through judicial interpretation require[d] actual knowledge [of the illegality of the conduct] to satisfy the mens rea element of the crime."  Id.  Generally, they have involved offenses which are not common law offenses, but are statutorily-created offenses, the criminality of which is not immediately apparent to the ordinary citizen.  See, e.g., Morissette v. United States, 342 U.S. 246, 265 (1952) (the law has "at times required a specific intent or purpose which will require some specialized knowledge or design for some evil beyond the common-law intent to do injury").

One such example is the federal laws prohibiting failure to file an income tax return and attempting to evade income taxes.  The United States Supreme Court held that the mens rea of "willfully" required the government to prove the specific intent to violate the law in both instances.  United States v. Averso, 762 F.Supp. 441 (D.N.H. 1991), citing Cheek v. United States, 498 U.S. 192, 201 (1991).  In requiring the government to prove an intentional violation of the law, the Supreme Court cited the "proliferation of statutes and regulations" in the area of tax law, and noted the complexity of the tax laws and the difficulty of the average citizen in understanding them.  Cheek at 199-200.

In <u>Liparota v. United States</u>, the defendant was charged with knowingly using, transferring, acquiring, altering or possessing food stamps in any manner not authorized by the statute or the regulations.  471 U.S. 419 (1985).  The trial court had instructed the jury that the word "knowingly" required that the jury found that the defendant knew what he was doing and was aware of the nature of his conduct, but refused to instruct the jury that the defendant had to have known that what he was doing violated the law.  Id. at 422.  On appeal, the Commonwealth argued that it was not required to prove any mental state with regard to the fact that the acquisition of food stamps was not authorized by statute or regulation.  The defendant argued that without applying knowledge to the element that his conduct was illegal, the court had "dispense[d] with the only morally blameworthy element in the definition of the crime." <u>Id</u>. at 423.

The United States Supreme Court held that "[a]bsent indication of contrary purpose in the language or legislative history of the statute, we believe that [7 U.S.C.] §2024(b)1) requires a showing that the defendant knew his conduct to be unauthorized by statute or regulations." <u>Id</u>. at 425. The Court further noted:

> . . . The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion.  It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil.  Thus, in <u>United States v. Gypsum Co.</u>, we noted that certainly far more than the simple omission of the appropriate phrase from the statutory definition is necessary to justify dispensing with an intent requirement and that criminal offenses requiring no mens rea have a generally disfavored status.  Similarly, in this case, the failure of Congress explicitly and unambiguously to indicate whether mens rea is required does not signal a departure from this background assumption of our criminal law.
> This construction is particularly appropriate where, as here, to interpret the statute otherwise would be to criminalize a broad range of apparently innocent conduct.  For instance, §2024(b)(1) declares it criminal to use, transfer, acquire, alter, or possess food

stamps in any manner not authorized by statute or regulations. The statute provides further that 'coupons issued to eligible households shall be used by them only to purchase food in retail food stores which have been approved for participation in the food stamp program at prices prevailing in such stores.' This seems to be the only authorized use. A strict reading of the statute with no knowledge-of-illegality requirement would thus render criminal a food stamp recipient who, for example, used stamps to purchase food from a store that, unknown to him, charged higher than normal prices to food stamp participants. Such a reading would also render criminal a nonrecipient of food stamps who 'possessed' stamps because he was mistakenly sent them through the mail due to administrative error, 'altered' them by tearing them up, and 'transferred' them by throwing them away. Of course, Congress could have intended that this broad range of conduct be made illegal, perhaps with the understanding that prosecutors would exercise their discretion to avoid such harsh results. However, given the paucity of material suggesting that Congress did so intend, we are reluctant to adopt such a sweeping interpretation.

In addition, requiring mens rea is in keeping with our longstanding recognition of the principle that ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity. Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability. Although the rule of lenity is not to be applied where to do so would conflict with the implied or expressed intent of Congress, it provides a time-honored interpretive guideline when the congressional purpose is unclear. In the instant case, the rule directly supports petitioner's contention that the Government must prove knowledge of illegality to convict him under §2024(b)(1).

Id. at 425-429 (some internal citations, quotations, footnotes, and emphasis omitted).

In holding that the government was required to prove that the defendant knew his conduct was illegal, the court noted that a violation of §2024(c) required that the defendant knew that the food stamps he presents have been received, transferred or used in violation of the statute or the regulations. Since this subsection of the statute required that the defendant know that his conduct was illegal, the Court was unwilling to interpret the same "knowing" requirement in

41

another subsection of the statute such that the defendant was not required to know that his

conduct was illegal. Id. at 429-430.

Finally, the court noted that the possession of food stamps was not the sort of public

welfare offense which may be deemed criminal without a mental element, such as possession of

an unregistered firearm, or adulterated or misbranded drugs, which presented a danger to the

public, without the defendant's knowledge of the illegality of his conduct. Id. at 433.

The United States Supreme Court faced a question similar to that in the instant case in

Ratzlaf v. United States, when it was asked to determine whether the federal structuring statute,

set forth at 31 U.S.C. §§5322 and 5324, required the government to prove not only that the

defendant knowingly structured financial transactions to avoid a transaction reporting

requirement, but that he did so, knowing that structuring was illegal. 510 U.S. 135, 136 (1994).

The Court held that the government was required to prove that the defendant "acted with

knowledge that his conduct was unlawful." Id. Although the United States Supreme Court based

its holding on the use of the word "willfully" in §5322, many of the principles which the Court

considered in deciding the case are equally applicable here.

The Court observed:

> Undoubtedly there are bad men who attempt to elude official
> reporting requirements in order to hide from Government
> inspectors such criminal activity as laundering drug money or tax
> evasion. But currency structuring is not inevitably nefarious.
> Consider, for example, the small business operator who knows that
> reports filed under 31 U.S.C. §5313(a) are available to the Internal
> Revenue Service. To reduce the risk of an IRS audit, she brings
> $9,500 in cash to the bank twice each week, in lieu of transporting
> over $10,000 once each week. That person, if the United States is
> right, has committed a criminal offense, because she structured
> cash transactions 'for the specific purpose of depriving the
> Government of the Information that Section 5313(a) is designed to
> obtain.' . . . Nor is a person who structures a currency transaction
> invariably motivated by a desire to keep the Government in the
> dark. But under the Government's construction an individual

42

would commit a felony against the United States by making cash deposits in small doses, fearful that the bank's reports would increase the likelihood of burglary, or in an endeavor to keep a former spouse unaware of his wealth.

Courts have noted many occasions on which persons, without violating any law, may structure transactions in order to avoid the impact of some regulation or tax. This court, over a century ago, supplied an illustration:

The Stamp Act of 1862 imposed a duty of two cents upon a bank-check, when drawn for an amount not less than twenty dollars. A careful individual, having the amount of twenty dollars to pay, pays the same by handing to his creditor two checks of ten dollars each. He thus draws checks in payment of his debt to the amount of twenty dollars, and yet pays no stamp duty. . . .While his operations deprive the government of the duties it might reasonably expect to receive, it is not perceived that the practice is open to the charge of fraud. He resorts to devices to avoid the payment of duties, but they are not illegal. He has the legal right to split up his evidences of payment, and thus to avoid the tax.

In current days, as an amicus noted, countless taxpayers each year give a gift of 10,000 on December 31 and an identical gift the next day, thereby legitimately avoiding the taxable gifts reporting required by 26 U.S.C. §2503(b).

In light of these examples, we are unpersuaded by the argument that structuring is so obviously "evil" or inherently "bad" that the "willfulness" requirement is satisfied irrespective of the defendant's knowledge of the illegality of structuring.

510 U.S. 135, 144-146.

Thus, as in cases of criminal violations of the tax code, and criminal violations of food stamp regulations, the Court found that the defendant must know that his conduct is illegal, i.e., morally blameworthy, in order to be convicted, at least in part because the act of structuring itself is not obviously wrong, or obviously illegal.[11]

---

[11]    31 U.S.C. §5324 was amended in 1994, so that criminal sanctions for structuring are now contained within §5324, and to eliminate the requirement that structuring be willful. Pub.L. No. 103-325, 108 Stat. 2160, 2253. See United States v. MacPherson, 42 F.3d 183, 188-189 (2d Cir. 2005). Since that time, the federal appellate courts have held that a defendant may be convicted of structuring without knowing that structuring is illegal. Id.

As the United States District Court of New Hampshire observed, with regard to the federal structuring statute set forth in 31 U.S.C. §5324, "[u]nderstanding one's duties under the structuring statute is certainly more difficult and less common than understanding one's duty to file a tax return."   United States v. Averso, 762 F.Supp. 441, 447 (D.N.H. 1991). "In order to understand one's legal duty not to structure a currency transaction one must be familiar with one federal regulation, 31 C.F.R. §103-22(a)(1), and one statute prohibiting the conduct. 31 U.S.C. §5324." Id. To know that structuring is a criminal act, one must be familiar with an additional federal statute. 31 U.S.C. §5322(a)" Id.

Nothing about the act of structuring financial transactions to avoid a reporting requirement is inherently evil or criminal. "Law abiding citizens frequently structure transactions to avoid a report, regulation, or tax without violating the law." United States v. Ismail, 97 F.3d 50, 57 (4th Cir. 1996).

As the United States District Court of New Hampshire observed in United States v. Averso:

> There are many occasions in the life of a businessman in which he structures transactions in order to avoid the impact of some regulation or tax. One may structure a company to reduce tax liability, one may structure a transaction over the course of several years to change the way a regulation affects them. If one is not trying to deprive the government of something to which the government is entitled, there is nothing illegal about such structuring.

762 F.Supp. 441, 446 (D.N.H. 1991).

Thus. where the mens rea applicable to 18 Pa.C.S. §5111(a)(3) is ambiguous, both regard to the level of culpability, and with regard to whether a defendant must know that structuring is illegal in order to be convicted thereof, the rule of lenity must apply, to give the defendant "fair

warning . . . of what the law intends to do if a certain line is passed." <u>Ratzlaf v. United States</u>,

510 U.S. 135, 148 (1994).

For the foregoing reasons, this Honorable Court should hold that 18 Pa.C.S. §5111(a)(3)

is void for vagueness.  In the alternative, this Honorable Court should find that to be

constitutional, a conviction for a violation of §5111(a)(3) requires that the accused have

knowingly violated the law prohibiting structuring, knowing that such structuring was illegal.

B.  <u>18 Pa.C.S. §5111(a)(3) is void for vagueness because the title of the statute: "Dealing in</u>

<u>proceeds of unlawful activities," contains an element not required by subsection three, thus</u>

<u>leaving the ordinary person to guess at the conduct which is proscribed</u>.

18 Pa.C.S. §5111 provides, in relevant part, as follows:

> §5111.  Dealing in proceeds of unlawful activities
> (a) Offense defined.--A person commits a felony of the first degree
> if the person conducts a financial transaction under any of the
> following circumstances:
>
> . . .
>
> (3) To avoid a transaction reporting requirement under State or
> Federal law.

Although the title of the statute is "Dealing in proceeds of unlawful activities," there is no

mention of this element of the offense in the newly created subsection three.  The ordinary

person would understand, given the title of the statute, that he would not run afoul of it unless he

was, in fact, conducting financial transactions which involved the proceeds of unlawful activity.

In fact, however, no such requirement is contained in the definition of the offense set forth in

subsection three.

1 Pa.C.S. §1924 provides that "[t]he title and preamble of a statute may be considered in

the construction thereof."  The statute also provides that "[t]he headings prefixed to titles, parts,

45

articles, chapters, sections and other divisions of a statute shall not be considered to control but may be used to aid in the construction thereof." 1 Pa.C.S. §1924. Although it does not explicitly so state, the statute strongly suggests that although the headings prefixed to the title are not controlling, the title should be considered relevant in its construction. In the instant case, the title creates an insurmountable obstacle to the ordinary persons ability to understand what conduct is prohibited, and it encourages the arbitrary and discriminatory enforcement of the statute. Commonwealth v. Barud, 545 Pa. 297, 304, 681 A.2d 162, 165 (1996).

Numerous Pennsylvania cases have considered the title of a statute in its construction, with varying results. It should be noted, however, that the issue before this Honorable Court is not merely the proper construction of the statute, but whether the statute's meaning can be determined with sufficient clarity to save it from being unconstitutional, given the disconnect between the title and subsection three.

In Helsel v. Puricelli, our Superior Court considered the claim of a grandfather for visitation rights under 23 Pa.C.S. §5312, entitled "When parents' marriage is dissolved or parents are separated." 927 A.2d 252 (Pa. Super. 2007). The parents had previously separated for more than six months, but were reconciled at the time the grandfather sought visitation rights. Id. at 254. The statute provided that "when parents have been separated for six months or more" the court may grant partial custody or visitation rights upon application of a grandparent. 23 Pa.C.S. §5312. The Court held that the grandfather could not apply for visitation rights under the statute, finding that the title clearly showed that the statute applied only when the parents' marriage iss dissolved or the parents are separated. Id. at 256. Thus, the Court used the title of the statute to limit the conditions under which a grandparent could seek visitation rights.

In Commonwealth v. Derstine, our Supreme Court considered the application of the Small Loans Act to a $200 loan made by the defendant to a businessman, for the operation of his

business. 418 Pa. 186, 187, 210 A.2d 266, 267 (1965).  The title of the act was "Regulating the business of loaning money in sums of six hundred dollars or less, either with or without security, to individuals pressed by lack of funds to meet immediate necessities, fixing the rates of interest and charges therefor; requiring the licensing of lenders; and prescribing penalties for the violation of this act." Id. at 188, 210 A.2d at 268.  The Court noted that "[t]he title is always a part of a statute or ordinance and, as such, must be considered in construing the enactment." Id. at 189, 210 A.2d at 268 (citations omitted).  Thus, the Court found that the lender was not in violation of the act, because although the loan was for less than $600, at a rate of interest greater than 6% per annum, it was not covered by the statute because the Commonwealth had not proved that the defendant "was engaged in the business of lending money to individuals pressed by lack of funds to meet immediate necessities." Id.

In Commonwealth v. Brady, our Supreme Court held that the Immunity Act could not be used to confer immunity or any witness called to testify before an indicting grand jury, but applied only those witnesses who testified before investigative grand juries.  470 Pa. 420, 426-427, 368 A.2d 699, 702-703 (1977).  In reaching this conclusion, the Court looked to the title of the act, which referred to "certain" grand juries, as well as the "entire thrust of the act." Id. at 427, 368 A.2d at 703.

Similarly, if this Honorable Court finds that the structuring statute is not void for vagueness, it should use the title of the statute, "Dealing in proceeds of unlawful activities," to limit the persons to whom the prohibition against structuring applies.

In the instant case, appellate counsel for Mr. Stoltzfoos contends that the body of the statute contains sufficient ambiguity that it is impossible to construe it without consideration of the title.  When the title is considered, it is clear that subsection three either includes elements

regarding the source of the money not specifically stated in subsection three, or that the subsection is misplaced in §5111.[12]

Appellate counsel for Mr. Stoltzfoos has located no other state which criminalizes the act of structuring financial transactions to evade a reporting requirement, with a misleading title, requiring that the money used have been illegally obtained. <u>See</u> Arizona Revised Statute §13-2317, titled "Money laundering; classification; definitions;" Florida Statute §869.104, titled "Structuring transactions to evade reporting or registration requirements prohibited;" 205 Illinois Statutes 685 §7, titled "Prohibitions; structuring a transaction;" Nevada Revised Statutes §207.195, titled, "Use of monetary instrument proceeding or derived from unlawful activity; conducting financial transaction with intent to evade regulation governing records of casinos;" New Jersey Code 2C:21-25, titled., "Money laundering and illegal investment; crime;" Rhode Island Statute §11-9.1-15, titled, "Laundering of monetary instruments."

While, arguably, the title "money laundering" has traditionally been applied to illegally obtained money, the term could conceivably include financial transactions with lawfully obtained money, which were structured to evade a cash transaction report. To the contrary, "Dealing in proceeds of unlawful activities" clearly refers to persons whose financial transactions involve the proceeds of unlawful activities, not just persons seeking to evade a reporting requirement.

Because the title of §5111 is not reconcilable with the offense described in subsection three, an ordinary person simply cannot what conduct is prohibited, and the statute encourages arbitrary and discriminatory enforcement. <u>See</u>, <u>e.g.</u>, <u>Commonwealth v. Barnhart</u>, 722 A.2d 1093,

---

[12]    It appears that a challenge to 18 Pa.C.S. §5111(a)(3) should have been made on the basis that it violates Article III, Section Three of the Constitution of the Commonwealth of Pennsylvania, which provides that "[n]o bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compiling the law or a part thereof." This provision has been interpreted to mean that "[w]hile the title of an act need not be complete index to its contents, a misleading title is neither in letter nor in spirit a compliance with the constitutional mandate that the subject of the bill must be clearly expressed in the title." <u>Commonwealth v. Barbono</u>, 56 Pa. Super. 637 (1913); see also <u>Commonwealth v. Archino</u>, 56 Pa. Super. 645 (1914).

1098 (Pa. Super. 1998) (noting that for conviction under section 5111, "an underlying illegal activity" must first occur).

For the foregoing reasons, this Honorable Court should hold that 18 Pa.C.S. §5111(a)(3) is void for vagueness.