# APPENDIX A.2

II. The trial court erred in ruling that 18 Pa.C.S. §5111(a)(3) was not void for overbreadth, where the statute criminalizes the depositing of lawfully acquired cash into financial institutions in a manner intended to maintain the depositer's constitutional right to privacy in his financial records.

A claim that a statute is overbroad is a claim that it violates the substantive due process guarantees of the United States and Pennsylvania Constitutions, as set forth in the Fifth and Fourteenth Amendments to the United States Constitution, and Article One, Section Nine of the Constitution of the Commonwealth of Pennsylvania. Commonwealth v. Barud, 545 Pa. 297, 301, 681 A.2d 162, 163-164 (1996).

"A statute is overbroad if by its reach it punishes constitutionally protected activity as well as illegal activity."[13] Commonwealth v. Barud, 545 Pa. at 305, 681 A.2d at 165. "[I]n determining whether a statute is unconstitutional due to overbreadth, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." Commonwealth v. Davidson, 595 Pa. 1, 18, 938 A.2d 198, 208 (2007) (internal quotations omitted). "The overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." Id. at 18-19, 938 A.2d 208. "[I]f a statute's overbreadth is substantial, it may not be enforced against anyone until it is narrowed to reach only unprotected activity." Id. at 19, 938 A.2d 208 (internal quotations omitted).

A statute may also be overbroad if it "sweeps excessively broadly so as to be beyond the state's legitimate police powers . . . or is arbitrary and capricious because it leads to the

---

[13]     Although the Commonwealth suggests that overbreadth claims are generally limited to the First Amendment, any constitutionally protected right may be abridged by an overbroad law. See e.g., H.L. v Matheson, 450 U.S. 398, 434 (1981) Marshall, Brennan and Blackmun, JJ., dissenting (noting numerous privacy rights established by the United States Constitution which may not be abridged by law, including the right to an abortion, the decision to marry, to procreate, and to use contraceptives). In addition to the more traditionally recognized First Amendment right of free speech which may be abridged by an overbroad law, the United States Supreme Court has recognized a right of philosophical or associational privacy which must be protected. United States v. Caldwell, 408 U.S. 665, 719 f.n.2 (1972) Douglas, J, dissenting (citing numerous cases recognizing the right of privacy in one's philosophy, opinions, and associations).

imposition of punishment bearing little relation to any legitimate governmental interest." Commonwealth v. Duda, 592 Pa. 164, 185, 923 A.2d 1138, 1150 (2007) (internal citations omitted).

The Commonwealth correctly observes that the United States Supreme Court has held that a person has no right to privacy in his bank records. United States v. Miller, 425 U.S. 435 (1976). As the Commonwealth concedes, however, Pennsylvania has rejected Miller, holding that under Article One, Section Eight of the Constitution of the Commonwealth of Pennsylvania, Pennsylvanians have a right to privacy in their financial records even though they have been disclosed to their banks. Commonwealth v. DeJohn, 486 Pa. 32, 49, 403 A.2d 1283, 1292 (1979) (departing from holding of Miller, and finding that "under Article I, Section 8 of the Pennsylvania Constitution bank customers have a legitimate expectation of privacy in records pertaining to their affairs kept at the bank"); see also Commonwealth v. Duncan, 572 Pa. 438, 449, 817 A.2d 522, 462 (2003) (same); Commonwealth v. Rekaskie, 566 Pa. 85, 94, 778 A.2d 624, 630 (2001) ("an individual's bank records [are] constitutionally protected, even though such records constitute[] information disclosed to a third party").

18 Pa.C.S. §5111(a)(3) criminalizes a depositer's decision to structure his financial transactions so that the state and federal government are not notified, by way of a cash transaction report, of his financial dealings. The statute criminalizes certain cash transactions even if the money involved has been lawfully acquired, and there is no evidence that the structuring of those transactions is being done to further a crime, such as tax evasion.

Under these circumstances, 18 Pa.C.S. §5111(a)(3) violates the right to privacy in one's bank records, in violation of Article I, Section Eight of the Constitution of the Commonwealth of Pennsylvania, by criminalizing a person's attempts to keep private what the Pennsylvania

Constitution says he has a constitutional right to keep private.[14] Furthermore, as the statute requires no underlying criminal conduct, nor any allegation that the structuring at issue is being done for an illegal purpose, the government has no legitimate interest in violating that privacy interest. See Carey v. Population Services, 431 U.S. 678, 686 (1977) (where law infringes on constitutional right, the law "may be justified only by compelling state interests, and must be narrowly drawn to express only those interests") ; Pirillo v. Takiff, 462 Pa. 511, 529, 341 A.2d 896, 905 (1975) (state must have compelling interest to justify infringement of constitutional rights). As enacted, §5111(a)(3) does not just infringe on a person's right to privacy in his bank records, it criminalizes the mere exercise of that right. Where the Pennsylvania Constitution protects a person's right of privacy in his bank records, the legislature may not criminalize the mere act of structuring his financial transactions so that this privacy is preserved.

In order to justify criminalizing structuring, given the right to privacy in one's bank records, the state must have a compelling interest. Commonwealth v. Hess, 532 Pa. 607, 620, 617 A.2d 307, 314 (1992) (in balancing state interests with individual constitutional guarantees, "four factors must be considered:  (1) Whether the state interest sought to be achieved can be effectively accomplished in some manner which will not infringe upon interests protected by constitutional rights; (2) Whether the state interest is sufficiently compelling when compared with the interests affected, justifies any infringement of those interests; (3) Whether the state interest is sufficiently compelling to justify the degree of infringement that is necessary to effectuate that interest; (4) Whether the provision under challenge represents the narrowest possible infringement consistent with effectuating the state interest involved"). Such a

---

[14]     Clearly, this is precisely what Levi Stoltzfoos did.  He made a statement to police that he "decided to put money in bank and have one year CD's opened by 4/23/06 . . . so that he could "buy new truck this fall." N.T., p. 91-92.  Indicating that he "knew that when you withdrew $10,000 cash or deposit $10,00 cash, a form has to be filled out," he further stated that he "don't want no part of government investigation or harassment." N.T., p. 92.  Thus, he made all cash deposits in amounts less than $10,000, to keep his bank records private.

compelling interest would exist if the state was seeking to regulate some underlying criminal conduct, beyond the act of structuring itself, such as regulating financial transactions which are the proceeds of unlawful activity, or which are being structured to accomplish an illegal purpose, such as tax evasion. See Commonwealth v. Duda, 592 Pa. 164, 185, 923 A.2d 1138, 1150 (2007) (statute is overbroad if it "sweeps excessively broadly so as to be beyond the state's legitimate police powers . . . or is arbitrary and capricious because it leads to the imposition of punishment bearing little relation to any legitimate governmental interest"). Such is the case with Section 5111(a)(1) and (2). However, Section 5111(a)(3) infringes on the constitutional right to privacy in one's bank records without any legitimate, let alone compelling, interest in doing so.

For the foregoing reasons, this Honorable Court should hold that 18 Pa.C.S. §5111(a)(3) is void for overbreadth.

III. The trial court erred in instructing the jury that the Commonwealth was alleging that Mr. Stoltzfoos was guilty of a federal crime, set forth at §31 U.S.C. 5324, which instruction was irrelevant, improper, and highly prejudicial.

"In reviewing a claim of error by the trial court in charging a jury, . . . [t]he key inquiry is whether the instruction on a particular issue adequately, accurately and clearly presents the law to the jury, and is sufficient to guide the jury in its deliberations." Commonwealth v. Hamilton, 766 A.2d 874, 878 (Pa. Super. 2001). "In reviewing jury instructions for prejudicial and reversible error, the charge must be read and considered as a whole." Commonwealth v. Dietterick, 429 Pa. Super. 180, 188, 631 A.2d 1347, 1352 (1993). "Error cannot be based upon isolated excerpts; it is the general effect of the charge that controls." Id. "If [the appellate court conclude[s] that a charge is erroneous, [it] will grant a new trial unless the error is deemed harmless." Id. at 188-189, 631 A.2d at 1352. An error is deemed harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless. Id. at 189, 631 A.2d at 1352. If a charge is both erroneous and harmful to the defendant, he is entitled to a new trial. Commonwealth v. Owens, 437 Pa. Super. 64, 78, 649 A.2d 129, 136 (1994).

During the charge to the jury, the court stated that "the Commonwealth alleges the defendant structured each transaction, in violation of 31 U.S.C. which is the United States Code, Section 5324, structuring transaction to evade reporting requirement prohibited."[15]  31 U.S.C. §5324 does not set forth a transaction reporting requirement, which Mr. Stoltzfoos was alleged to have avoided.  Rather, it sets forth a federal criminal offense, and describes its elements, which

---

[15]      As is noted in the Statement of the Case, the court also instructed the jury that "the Commonwealth alleges that the *defendant* was required to report the transactions under the following provisions of law." Defense counsel is aware of no statute which requires the defendant to report a financial transaction--the responsibility belongs to the financial institution. Unfortunately, this misstatement is part of the standard jury instruction, and defense counsel offered no objection to it prior to the jury charge. Thus, defense counsel has not raised the issue on direct appeal. Defense counsel believes, however, that this erroneous instruction, given several times, was confusing enough to merit a new trial, despite the court's last-minute attempt, during instructions to the jury in response to a question, to correct the misstatement, after objections from defense counsel were apparently made off the record. N.T., pp. 286, 299, 302. Trial Court Opinion, March 26, 2009, p. 8.

involve attempting to cause a financial institution to fail to file a transaction report or to omit or misstate information in the report, or to structure financial transactions to evade the reporting requirement. 31 U.S.C. §5324. The offense is punishable by up to five years in prison, or up to ten years if the accused violated the section "while violating another law of the United States or as part of a pattern of any illegal activity involving more than $100,000 in a 12-month period." 31 U.S.C. §5324(d). As such, the instruction was both irrelevant and prejudicial, it was completely unrelated to the instant charge, and left the jury believing (incorrectly) that Mr. Stoltzfoos had been charged with a federal crime.

The court first opines that the objection to its instruction regarding 31 U.S.C. §5324 was waived, because defense counsel should have objected when the court granted the Commonwealth's Motion for Court to take Notice of Federal Law and Regulations, pursuant to 42 Pa.C.S. §5327. Trial Court Opinion, March 26, 2009, pp. 5-6.[16] While it is true that the court granted the Commonwealth's Motion, this Motion was not a Motion asking the Court to take Judicial Notice of the laws cited within. Instead, the Motion sought to have the court determine "that the cited laws and regulations are laws that apply to the case at bar and that the Commonwealth may refer to such laws and regulations in its case in chief, cross examination, and rebuttal." Although the court granted the Motion, the laws and regulations contained within the Motion were never referenced by the Commonwealth or the court at trial.

Furthermore, there is no indication in the record that defense counsel knew that 31 U.S.C. §5324 would be mentioned in the court's charge to the jury. Defense counsel appropriately and timely objected when the court incorrectly charged the jury that the Commonwealth alleged that Mr. Stoltzoos had structured his transactions in violation of 31 U.S.C. §5324. N.T., p. 293.

---

[16]   It should be noted that trial counsel did not represent Mr. Stoltzfoos at the time that this Motion was filed, nor when the court granted the motion. The Motion was granted on June 5, 2007. Trial counsel did not enter his appearance in the case until March 2008.

The court also found that it had properly cited the "pertinent part" of section 5324, as this "limited section served to explain the action prohibited under 18 Pa.C.S. §5324." Respectfully, this makes no sense. The only federal laws which were relevant in the instant case were those setting forth a transaction reporting requirement which Mr. Stoltzfoos was alleged to have avoided. 31 U.S.C. §5324 sets forth a separate criminal offense of "structuring transactions to evade reporting requirement." It had no relevance to the instant trial, any more than it would have been relevant, in a trial for burglary, for the court to state that the Commonwealth alleges that the defendant has also committed the federal offense of burglary, to "explain the action prohibited" under the state statute.

31 U.S.C. §5313 and 31 C.F.R. §103.22 set forth transaction reporting requirements which could properly have been presented to the jury during the court's instructions to it, had the court actually taken judicial notice of their applicability in the jury's presence, or the Commonwealth had presented testimony or a stipulation as to their applicability in its case in chief. See Argument Section IV, *infra*.

Here, as part of the charge to the jury, the court introduced classic evidence of other crimes, wrongs, or acts, which Mr. Stoltzfoos had allegedly committed, in this case, by stating that the Commonwealth was alleging that he had committed the federal offense of structuring transactions to evade a reporting requirement. This allegation of criminal activity by Mr. Stoltzfoos was clearly inadmissible pursuant to Pennsylvania Rule of Evidence 404, which provides:

> Character evidence not admissible to prove conduct; exceptions; other crimes
> (b) Other Crimes, Wrongs, or Acts
> (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.

(2) Evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

(3) Evidence of other crimes, wrongs or acts proffered under subsection (b)(2) of this rule may be admitted in a criminal case only up on a showing that the probative value of the evidence outweighs its potential for prejudice.

Pennsylvania Rule of Evidence 404.

Informing the jury that the Commonwealth alleged that Mr. Stoltzfoos was guilty of a federal crime was highly prejudicial and improper. See Commonwealth v. Stafford, 749 A.2d 489, 495 (Pa. Super. 2000) (defendant may not be stripped of the presumption of innocence by evidence of uncharged crimes or prior bad acts). Not only had no such charge been filed against Mr. Stoltzfoos, the mere suggestion that he was guilty of a federal crime was likely to sway the jury against him.

Aside from being irrelevant and prejudicial, the charge to the jury was confusing and misleading. The jury could have believed that it should find Mr. Stoltzfoos guilty of trying to avoid a transaction reporting requirement under state or federal law because he had been charged with violating 31 U.S.C. §5324, which includes a requirement that he "structured transactions to evade reporting requirements," thus creating a dilemma in which the jury could have believed that Mr. Stoltzfoos' alleged violation of 31 U.S.C. §5324 was all it needed to find Mr. Stoltzfoos guilty of violating §5111(a)(3). The jury charge was both erroneous and harmful to the defendant; thus, he is entitled to a new trial. Commonwealth v. Owens, 437 Pa. Super. 64, 78, 649 A.2d 129, 136 (1994). For the foregoing reasons, the judgment of sentence should be vacated, and the case remanded for a new trial.

IV.  The evidence was insufficient to sustain Mr. Stoltzfoos' conviction for 58 counts of dealing in unlawful proceeds where the Commonwealth presented insufficient evidence of a state or federal transaction reporting requirement, which Mr. Stoltzfoos had allegedly avoided.

"A claim challenging the sufficiency of the evidence is a question of law." Commonwealth v. Widmer, 560 Pa. 308, 319, 744 A.2d 745, 751 (2000).  "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." Id.  "When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." Id.

In order to convict Mr. Stoltzfoos of a violation of 18 Pa.C.S. §5111(a)(3), the Commonwealth needed to prove the existence of a transaction reporting requirement under State or Federal law, which Mr. Stoltzfoos was trying to avoid in conducting his financial transactions.

During the trial, Agent Daniel Licklider testified that "according to the Bank Secrecy Act," a financial institution has to fill out a form called a currency transaction report if a customer makes a cash deposit over $10,000.  N.T., pp. 124-125.  In addition, Lisa Krick, the Corporate BSA Office for Susquehanna Bancshares, Inc., testified that she was responsible for implementing and enforcing the Bank Secrecy Act laws, and the Patriot Act, and the regulatory requirements associated with those two federal statutes. N.T., p. 218.  Ms. Krick testified that Susquehanna Bancshares and any other financial institution governed by a federal regulator was required to generate a cash transaction report on a cash deposit or withdrawal in excess of $10,000, and to submit the form to FINCEN, the financial enforcement network. N.T., pp. 219-220.  However, neither witness cited to the specific federal regulation or regulations, which Mr. Stoltzfoos was allegedly trying to avoid.

58

The trial court found that it "took judicial notice of the federal regulations, pursuant to 42 Pa.C.S. §5327;" therefore, "witness testimony on the reporting requirements was not necessary." Trial Court Opinion, March 26, 2009, p. 9.

42 Pa.C.S. §5327(a) provides that "[a] party who intends to raise an issue concerning the law of any jurisdiction or governmental unit thereof outside this Commonwealth shall give notice in his pleadings or other reasonable notice."  Section 5327(c) provides that "[t]he court, not jury, shall determine the law of any governmental unit outside this Commonwealth."  If the trial court had taken judicial notice of the applicable federal regulations which Mr. Stoltzfoos was alleged to have avoided, this would have been the proper method for establishing the existence of these regulations.  See Commonwealth v. McKetta, 469 Pa. 223, 229, 364 A.2d 1350, 1353 (1976) ("[i]t would appear to be self-evident that it is peculiarly the function of the judge to find and interpret the law applicable to the issues in a trial, and in a jury case, to announce his finding of law to the jury for their guidance").

Prior to trial, on June 4, 2007, the Commonwealth filed a Motion for Court to take Notice of Federal Law and Regulations, pursuant to 42 Pa.C.S. §5327.  The Commonwealth alleged that Mr. Stoltzfoos acted to avoid a State or Federal reporting requirement, specifically the filing of a Cash Transaction Report, as required under 31 U.S.C. §5313(a) and 31 C.F.R. §103.22(b).

The Commonwealth asked the court to "determine that the cited laws and regulation are laws that apply to the case at bar and that the Commonwealth may refer to such laws and regulations in its case in chief, cross examination, and rebuttal; and such other relief as the Court deems is in the interest of justice."  The Honorable Michael J. Perezous signed an Order, granting the Commonwealth's Motion, on June 5, 2007.

31 U.S.C. §5313 and 103 C.F.R. §103.22 set forth transaction reporting requirements which could properly have been presented to the jury during the court's instructions to it, had the

59

court actually taken judicial notice of their applicability in the jury's presence, or the

Commonwealth had presented testimony or a stipulation as to their applicability in its case in

chief. Commonwealth v. McKetta, 469 Pa. 223, 228-229, 364 A.2d 1350, 1352-1353 (1976)

(finding that court properly determined that Ritalin was a dangerous dog as defined by the statute

prohibiting possession of and dealing in dangerous drugs).   However, no such evidence was

presented by the Commonwealth, and the court did not take judicial notice of the applicable

federal statutes in the presence of the jury.

    Instead, during the charge to the jury, the court stated:

> In this case the Commonwealth alleges that the defendant
> was required to report the transactions under the following
> provisions of law:  Under the Federal United States Code, Title
> 315, 313 reports on domestic coins/currency transactions are found
> in the Federal Code of Regulations, Title 31, Part 103.22; b, a
> financial institution other than casinos.  Each financial
> institution other than a casino shall file a report of each deposit, withdrawal,
> exchange or currency or other payment or transfer, by, through or
> such other financial institution which involves a transaction of
> currency of more than $10,000.

N.T., pp. 286-287.

    Appellate counsel contends that the court's charge to the jury cannot be construed as

judicial notice of the applicability of 31 U.S.C. §5313 and 103 C.F.R. §103.22  as federal

regulations which Mr. Stoltzfoos sought to avoid.  Rather, the court merely stated that this was

the Commonwealth's contention, despite the fact that the Commonwealth had not placed

evidence regarding the aforementioned regulations before the jury in its case-in-chief.  See

Dream Mile Club v. Tobyhanna Township Board of Supervisors, 150 Pa. Commw. 309, 315, 615

A.2d 931, 933 (1992) (noting that "counsel should take the initiative  in requesting that the trial

court take judicial notice").

Under the aforementioned circumstances, the Commonwealth presented insufficient evidence of a state or federal transaction reporting requirement, which Mr. Stoltzfoos had allegedly avoided.

For the foregoing reasons, the judgment of sentence should be vacated, and the charges against Mr. Stoltzfoos dismissed.

V.  The $540,200 civil penalty, imposed pursuant to 18 Pa.C.S. §5111(c), constituted an

excessive fine and cruel and unusual punishment.

      The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail

shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

Article I, Section 13 of the Constitution of the Commonwealth of Pennsylvania, which states that

"[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel punishments

inflicted," is coextensive with the Eight Amendment.  Commonwealth v. Real Property Known

as 5444 Spruce Street, 574 Pa. 423, 428, 832 A.2d 396, 399 (2003).

      In the instant case, Mr. Stoltzfoos' sentence included a civil penalty of $540,200 under 18

Pa.C.S. §5111(c), which the court apparently interpreted as mandatory, as it noted that the

penalty "shall be imposed by the Court."[17]  N.S.H., p. 45.

      It is not entirely clear to appellate counsel that this penalty is mandatory, as the language

of subsection (c) states that "[a] person who conducts or attempts to conduct a transaction

described in subsection (a) is liable to the Commonwealth for a civil penalty of the greater of: (1)

the value of the property, funds or monetary instruments involved in the transaction; or (2)

$10,000."  Thus, this court must determine whether "is liable to the Commonwealth" means that

the penalty "shall be imposed by the Court," as the trial court found.  Unfortunately, appellate

counsel has not located any caselaw which discusses whether the words "is liable to" render the

civil penalty of 18 Pa.C.S. §5111(c) mandatory.  Regardless, appellate claims that the civil

penalty imposed is excessive under the Eighth Amendment.

      It should first be noted that this penalty appears to be completely separate from, and in

addition to, a forfeiture of the money.  The Commonwealth has already seized all $540,200

---

[17]     The word "shall" appears in subsection (b), which states that a person shall be sentenced to a fine or to
imprisonment, or both.  However, it does not appear in subsection (c).

which Mr. Stoltzfoos deposited, and that money has, in turn, been seized by the U.S. Attorney's office. N.S.H., p. 52. To the best of appellate counsel's knowledge, the U.S. Attorney's office is seeking the forfeiture of the money. It is appellate counsel's understanding that the civil penalty contemplates that Mr. Stoltzfoos is expected to pay an *additional* $540,200 beyond the $540,200 which has been seized.[18] This, too, is unclear under the statute. However, it appears that the total amount of money Mr. Stoltzfoos will lose as a result of this action, and the federal forfeiture action is at least $1,080,400, which is twice the amount of the instant financial transactions.

The Commonwealth correctly states that the closest parallel to the instant situation appears to be forfeiture law, though it is not clear exactly how the guidelines set forth by the United States Supreme Court and the Pennsylvania appellate courts in forfeiture cases are to be applied in the context of this case. Again, appellate counsel has located no caselaw on point with regard to this question.

In United States v. Bajakajian, the United States Supreme Court considered the case of a defendant who was discovered leaving the country with $357,144 cash which he had not reported as required by 31 U.S.C. §5316. 524 U.S. 321 (1998). Noting that the forfeiture was clearly punishment under the Eighth Amendment, the Court rejected the government's claim that forfeiture of the cash served a remedial purpose, and noted that the crime did not cause lost revenue to the government. Id. at 327-329. The Court also rejected the government's argument that the money should be forfeited as an instrumentality of the offense. Id. at 333-334.

The Court held that "a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." Id. at 334. In determining whether a forfeiture is grossly disproportionate to the offense, the Court held that the courts

---

[18]     The court appeared to believe that the $540,200 seized was to be used to pay the civil penalty, as it noted that the Motion for Return of Property was moot with regard to the money based on its order of civil penalty. N.S.H., p. 50.

should compare the amount of the forfeiture with the gravity of the defendant's offense. Id. at

336-337. The Court held that where Mr. Bajakajian's crime was "solely a reporting offense,"

which was "unrelated to any other illegal activities," and "was the proceeds of legal activity," a

forfeiture of the entire $357,144 would have been disproportionate to the offense. Id. at 337-338.

In "judging the gravity of the offense," the focus should be on the culpability of the

Our appellate courts have applied the Bajakajian test. The Commonwealth Court noted

that a forfeiture is a fine "and thus subject to review under the Excessive Fines Clause." 5444

Spruce Street at 428, 832 A.2d at 399.  In Commonwealth v. Smothers, our Commonwealth

Court held that under Bajakajian, a "a punitive forfeiture would violate the Excessive Fines

Clause if it is grossly disproportional to the gravity of a defendant's offense."  920 A.2d 922, 925

(Commw. 2007).  In determining whether a forfeiture, and presumably a fine, is excessive, the

court must compare the amount of the fine to the gravity of the offense.  The court should

consider the maximum penalty available,[19] whether "the violation was isolated or was part of a

pattern of misbehavior," and the "harm that resulted from the offense charged."  Id. at 925.  The

"trial court must weigh the evidence and draw any reasonable inferences from the evidence" to

determine whether the penalty is grossly disproportionate.[20]  Id. at 927.

In "judging the gravity of the offense," the focus should be on the culpability of the

specific defendant, rather than on the "severity of the crime in the abstract."  5444 Spruce Street

at 432, 832 A.2d at 402.  The court should also consider the penalty imposed as compared to the

maximum penalty available.  Id. at 433, 832 A.2d at 402.

---

[19]      It should be noted that the maximum fine available, pursuant to 18 Pa.C.S. §5111(b), may also be
excessive, in cases of a violation of 18 Pa.C.S. §5111(a)(3).  This issue has not been litigated and is not at issue in
the instant case.
[20]      In this case, the trial court did not weigh the evidence or draw an conclusions as to whether the fine was
grossly disproportionate, perhaps because it believed that the fine was mandatory.  Rather, the court stated that
"relative to the constitutionality issues," it "continues to agree with the Commonwealth and thus adopts its well-
reasoned analysis for purposes of appellate review."  Trial Court Opinion, March 26, 2009, p. 5.

In the instant case, however, it should be noted that although a violation of 18 Pa.C.S.

§5111(a)(3) is a first degree felony, punishable by ten to twenty years incarceration,[21] and a fine

of up to twice the value of the property involved, the newly enacted subsection three is

completely different in degree of criminal conduct from that required for subsections one and

two.  Conviction under subsection three requires neither that the defendant's financial

transactions have been the proceeds of unlawful activity, nor that he sought to avoid a cash

transaction report to further some criminal activity, such as tax evasion.  Similar to the defendant

in Bajakajian, Mr. Stoltzfoos' offense was essentially a reporting offense--he sought to avoid the

bank's production of cash transaction reports to the government.  The Commonwealth produced

no evidence, however, that the government lost revenue because of Mr. Stoltzfoos' offense.[22]

Under the circumstances of the instant case, the civil penalty of $540,200 was grossly

disproportionate to the offense, in violation of the Eighth Amendment to the United States

Constitution, and Article I, Section Thirteen of the Constitution of the Commonwealth of

Pennsylvania.

For the foregoing reasons, the civil penalty assessed in the instant case should be vacated.

If this Honorable Court finds that the trial court correctly concluded that the penalty was

mandatory, then subsection 18 Pa.C.S. §5111(c) must be struck down, and no civil penalty may

be assessed.  If this Court finds that the civil penalty was not mandatory, then the matter should

---

[21]     As noted in Argument Section I.A., *supra*, a change to §5111(a)(3) has been proposed in the legislature
which would reduce the grading of a violation of subsection three to a third-degree felony.  H.B. No. 1728, Session
of 2009, introduced June 17, 2009.
[22]     As is noted in Argument Section VII, *infra*, the Commonwealth argued at sentencing that Mr. Stoltzfoos'
money was ill-gotten.  Aside from the fact that this evidence was elicited improperly, and that the trial court refused
to allow Mr. Stoltzfoos' trial counsel to cross-examine the witnesses against him, this purported "evidence" in no
way established any loss to the government.  If there was a loss, it was to nameless victims which the
Commonwealth failed to produce, and for whom the Commonwealth sought no restitution.  Instead, the
Commonwealth seized all of the money which Mr. Stoltzfoos deposited, and now argues that a civil penalty of
another $540,200 from is not an  excessive fine.

be remanded for reconsideration in light of the guidelines set forth in <u>Bajakajian</u> and <u>5444 Spruce Street</u>.

VI. <u>The assignment of an Offense Gravity Score of eight to the newly created offense set forth in 18 Pa.C.S. §5111(a)(3), despite the significant difference in criminal liability from that required for a conviction under subsections (1) or (2), was a violation of Mr. Stoltzfoos' right to equal protection of the laws.</u>

In the instant case, Mr. Stoltzfoos claims that the court imposed an illegal sentence under the facts of this case because the Offense Gravity Score on which it relied violates Mr. Stoltzfoos' right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution and Article One, Section One of the Constitution of the Commonwealth of Pennsylvania.

As our Superior Court observed in <u>Commonwealth v. Bullock,</u>

> The essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly.  However, the principle does not absolutely prohibit the Commonwealth from classifying individuals for the purpose of receiving different treatment, . . . and does not require equal treatment of people having different needs. Indeed, the Commonwealth may create legislative classifications so long as the classifications rest upon some ground of difference which justifies the classification and have a fair and substantial relationship to the object of the legislation.

868 A.2d 516, 524 (Pa. Super. 2005) (internal citations and quotations omitted).

Where no suspect class is implicated, the challenged classification will be upheld if it is "rationally related to a legitimate governmental interest." <u>Bullock</u> at 524; see also <u>Chapman v. United States</u>, 500 U.S. 453, 464-465 (1991) (classification of punishment for persons convicted of crime subject to rational basis review, requiring that penalty may not be based on an arbitrary distinctions).  The classification will "survive equal protection scrutiny so long as it is not arbitrary and rests upon some ground having a fair and substantial relation to the object of the

legislation so that all persons in similar circumstances shall be treated alike." <u>Commonwealth v.</u> <u>Harley</u>, 924 A.2d 1273, 1281-1282 (Pa. Super. 2007) (internal citation omitted).

In the instant case, persons who have violated 18 Pa.C.S. §5111(a)(3) are subjected to the same maximum penalty (twenty years) and the same offense gravity score (eight), as persons convicted of violating subsections one and two, despite substantial differences in the criminal liability required for violation of these subsections. Such a classification is clearly arbitrary, is not rationally related to a legitimate government interest, and the reason for this arbitrary classification has no fair and substantial relation to the object of the legislation. This is, in large part, because persons convicted of a violation of 18 Pa.C.S. §5111(a)(3) have improperly been classified in the same manner as defendants dealing in the proceeds of unlawful activity, the classification which the title implies.

Persons convicted of violating subsections one or two must be conducting financial transactions with knowledge that the money is the proceeds of unlawful activity. 18 Pa.C.S. §5111(a)(1) and (2). To the contrary, persons convicted of violating subsection three need only have conducted a financial transaction to avoid a transaction reporting requirement--the Commonwealth need not show that the money was the proceeds of unlawful activity or that the transactions were conducted to further any criminal activity, such as tax evasion. Under these circumstances, there is a substantial difference in criminal liability between those persons violating subsections one or two, and those persons violating subsection three, yet all are subjected to the same penalty, an arbitrary classification without rational basis.

A finding that there is a significant difference between structuring, where the money involved need not have been the proceeds of unlawful activity, and dealing in proceeds of unlawful activities is consistent with the distinctions in penalty between money laundering and structuring in the federal code. See 18 U.S.C. §1956, Laundering of monetary instruments,

punishable by fine of not more than $500,000 and sentence of not more than twenty years; 31

U.S.C. §5324, Structuring transactions to evade reporting requirement, punishable by

imprisonment of not more than five years, unless structuring is shown to be "part of a pattern of

any illegal activity involving more than $100,000 in a 12-month period," in which case

punishable by not more than ten years.

Furthermore, there is no indication that the legislature enacted subsection three with any

clear intention of treating the crimes identically in terms of offense gravity score.  As noted in

Argument Section I.A., *supra*, a bill has been proposed in the legislature which would make a

violation of subsection three a third, rather than first, degree felony, suggesting that making the

newly created subsection three a first-degree felony was more of an oversight than an indication

of the legislature's intention.  H.B. No. 1728, Session of 2009, introduced June 17, 2009.  As a

felony three, the offense gravity score would be five, rather than eight, and the standard range of

the sentencing guidelines would call for a sentence of restorative sanctions to nine months

incarceration.  See 204 Pa. Code §304.3 (citing omnibus offense gravity scores).

In United States v. Averso, the District Court of New Hampshire gave a significant

downward departure to the defendants' sentences for structuring because it noted a significant,

apparently unintentional, discrepancy in the sentencing guidelines for structuring.  762 F.Supp.

441 (D.N.H. 1991).  The Court noted that "a banker who knows that it is illegal to neglect to file

a CTR, but does not will have a base level of 5, but a person who does not know structuring is

illegal and structures will have a base level of 13."  Id. at 450.  While the court did not engage in

a formal equal protection analysis, it is clear that equal protection was the basis for the court's

departure from the guidelines.

The trial court erred in ruling that an offense gravity score of eight for a violation of 18

Pa.C.S. §5111(a)(3) did not constitute a violation of Mr. Stoltzfoos' right to the equal protection

of the laws.  Treating the offense set forth in subsection three as the criminal equivalent of the offenses set forth in subsections one and two created a significant inequity, unsupported by any rational basis.

For the foregoing reasons, the judgment of sentence should be vacated, and the matter remanded for resentencing, with an offense gravity score of five.

VII.  The trial court erred in refusing to exclude the Commonwealth's Sentencing Memorandum,
and in permitting the testimony of Daniel Licklider and Santo Bocchinfuso, where the purpose of
the Memorandum and testimony were to attempt to prove that the money Mr. Stoltzfoos had
deposited was the proceeds of unlawful activity.

A decision on the admission or exclusion of evidence is within the sound discretion of the
trial court and will not be disturbed absent an abuse of that discretion.  Commonwealth v. Cohen,
529 Pa. 552, 605 A.2d 1212 (1992); Commonwealth v. Franklin, 397 Pa. Super. 265, 580 A.2d
25 (1990), allocatur denied, 527 Pa. 641, 593 A.2d 415 (1991).  To receive evidence excluded by
a rule of evidence is error.  Commonwealth v. Franklin, id.  The trial court, in its discretion, may
not ignore the rule of evidence.  Id.  An error in the admission or exclusion of evidence requires
reversal unless the Commonwealth establishes that the error was harmless.  Commonwealth v.
Story, 476 Pa. 391, 383 A.2d 155 (1978).  An error is harmless only if the reviewing court is
convinced beyond a reasonable doubt that such error was harmless.  Id.  In Commonwealth v.
Davis, the Superior Court observed:

> An error will be deemed harmless where the appellate court is
> convinced beyond a reasonable doubt that the error could not have
> contributed to the verdict.  Guidelines for determining whether an
> error is harmless include: (1) whether the error was prejudicial to
> the defendant, or if prejudicial, whether the prejudice was de
> minimis; (2) whether the erroneously admitted evidence was
> merely cumulative of other untainted evidence which was
> substantially similar to the erroneously admitted evidence; or (3)
> whether the evidence of guilt was so overwhelming as established
> by the properly admitted and uncontradicted evidence that the
> prejudicial effect of the error was so insignificant by comparison to
> the verdict.

438 Pa. Super. 425, 431, 652 A.2d 885, 888 (1995) (internal citations omitted).

On June 16, 2008, the Commonwealth filed a lengthy Sentencing Memorandum, with
seven attached "Exhibits."  This Memorandum alleged that Mr. Stoltzfoos' motive "was to

71

prevent the Internal Revenue Service (IRS) or other governmental agency from learning that he

had at least $540,000 in cash." Sentencing Memorandum, June 16, 2008, p. 1. The

Commonwealth claimed that Mr. Stoltzfoos' total income from 1987 to 1999 was $369,733, and

that his claim that the $540,000 he deposited in 2006 was "savings from his work history" was

"ludicrous and false." Id. at pp. 1-2. Rather, the Commonwealth claimed that the source of Mr.

Stoltzfoos' money was Mr. Stoltzfoos' alleged participation in two "scams"-- "a credit-card-bust

out and point-of-sale." Id. at p. 2. The Commonwealth based this allegation on alleged deposits

by Mr. Stoltzfoos between August 1995 and December 1999, totaling $433,736, deposits of

$105,017 between June and September 2001, debit transactions between August 1995 and

February 2003, totaling $454,528, the alleged deposit of $190,000 in cash into his safe deposit

box between August 26, 1999 and November 26, 1999, and alleged purchases and returns by Mr.

Stoltzfoos from Radio Shack and Sears between September and December 2002. Id. at p. 3.

Further, the Commonwealth alleged that Mr. Stoltzfoos did not save the money he earned, based

upon his alleged purchase of vehicles, clothing, compact discs, DVDs, gifts, and tickets to

sporting events, and its seizure from his residence of hundreds of pre-paid telephone calling

cards which it alleged he must have purchased or obtained "through criminal means." Id. at p. 3.

At sentencing, defense counsel objected to the Sentencing Memorandum filed by the

Commonwealth, arguing that it was improper hearsay, and that it alleged prior bad acts which

had been found inadmissible at trial. N.S.H., pp. 8-9. The Commonwealth argued that because

Mr. Stoltzfoos had claimed, in separate lawsuits and "throughout this trial" that "all this money

was legitimately earned," that the Sentencing Memorandum and testimony to support it were

appropriate at sentencing because Mr. Stoltzfoos had "made the source of those funds an issue"

by requesting the return of the money seized. N.S.H. pp. 9-10. The Commonwealth noted that

the money which the Commonwealth had seized had been seized by the U.S. Attorney's Office,

but claimed that it was still entitled to offer evidence that the money was not obtained legally, because of Mr. Stoltzfoos' claim that he obtained the money legitimately. N.S.H., p. 10.

The court responded,

> With regard to these matters, I concur with the Commonwealth 100 percent. Mr. Stoltzfoos, through the course of his trial, with his comments continuously claims that every penny is his earned money. And if the Commonwealth wishes to show that that is a fabrication and an outright inappropriate way to categorize the funds which were used in the dealing of the proceeds that were unlawful activities of these offenses, it is certainly my belief that the Commonwealth has the right to bring that to my attention.

N.S.H., pp. 10-11.

The Commonwealth called Daniel Licklider, a field investigator for the Attorney General's Office, to testify. N.S.H., pp. 23-24. Agent Licklider testified regarding numerous items which were seized from Mr. Stoltzfoos' residence, including theater tickets, free food tickets, free movie tickets, and numerous buyer's club cards. N.S.H., pp. 25-30. Agent Licklider also testified that he had a conversation with Mr. Stoltzfoos about his credit card debt, and that Mr. Stoltzfoos had told him that the matter was civil, not criminal. N.S.H., p. 30. The Deputy Attorney General asked whether Mr. Stoltzfoos had indicated to him whether he ever intended to pay back the credit card money, and Mr. Licklider stated that he did not. N.S.H., p. 30.

The Commonwealth also called Agent Santo Bocchinfuso, a narcotics agent for the Pennsylvania Attorney General, to testify. N.S.H., pp. 31-32. Agent Bocchinfuso testified regarding items observed in the attic of Mr. Stoltzfoos' residence, including over 3,000 new DVD's and CDs, hockey equipment, electric fans, stereo equipment, lock sets, bicycle equipment, office supplies, and exercise equipment. N.S.H., pp. 32-33. Agent Bocchinfuso testified that he also reviewed $3,980 in prepaid telephone cards seized from Mr. Stoltzfoos' residence, $370 in postage stamps, and $8,268.81 in retail store gift cards. N.S.H., pp. 34-35.

In response to the Deputy Attorney General's question regarding his experience in "financial investigations," Mr. Bocchinfuso testified at length regarding his experience in investigating economic crime and scams. N.S.H., pp. 33-34. He also testified that gift cards and store cards, such as those in Mr. Stoltzfoos' possession, are obtained when items are returned without a receipt. N.S.H., p. 35.

The trial court held, in its Order denying the Post-Sentence Motion, and in its Opinion, that it admitted the Commonwealth's Sentencing Memorandum, and the testimony of the Commonwealth's witnesses to rebut or contradict Mr. Stoltzfoos' claims that he was a simple, Amish man. Order Denying Post-Sentence Motion, September 9, 2008, p. 1; Trial Court Opinion, March 26, 2009, p. 14. The court's claim regarding its purpose in admitting the Commonwealth's Sentencing Memorandum and the testimony of Daniel Licklider and Santo Bocchinfuso is belied by its comments and rulings at sentencing, and by the nature and contents of the  Commonwealth's Sentencing Memorandum and the witnesses' testimony.

The clearly stated purpose of the Commonwealth's Sentencing Memorandum was to prove that Mr. Stoltzfoos' claims about the source of the money he deposited were false, and that the money was obtained unlawfully through Mr. Stoltzfoos' participation in scams. Sentencing Memorandum, June 16, 2008, pp. 1-2. The Sentencing Memorandum contained numerous allegations regarding the allegedly fraudulent manner in which Mr. Stoltzfoos allegedly obtained the money he deposited, and the items discovered in his home. The Exhibits attached to the Sentencing Memorandum likewise contained allegations regarding the source Mr. Stoltzfoos' money as being his alleged participant in credit card scams. It was highly improper for the court to admit and consider the Sentencing Memorandum and attached Exhibits.

Proof that its allegations of theft and fraud were true was the reason the Commonwealth sought to present detailed testimony regarding the items seized and the items observed in Mr.

74

Stoltzfoos' residence, and was the reason the court admitted the Sentencing Memorandum and the testimony of the Commonwealth's witnesses. N.S.H., pp. 10-11. Thus, the testimony of the Commonwealth's witnesses must be considered in light of the allegations contained in the Sentencing Memorandum.

Having chosen to prosecute Mr. Stoltzfoos under 18 Pa.C.S. §5111(a)(3), so that it was not required to prove that Mr. Stoltzfoos' financial transactions involved the proceeds of unlawful activity, the Commonwealth was not entitled to present at sentencing, through hearsay, implication, and speculation, what it chose not to attempt to prove at trial.   Although a "proceeding held to determine sentence is not a trial, and the court is not bound by the restrictive rules of evidence properly applicable to trials," the evidence which the court receives at sentencing must still be relevant.  Commonwealth v. Medley, 725 A.2d 1225, 1229 (Pa. Super. 1999).  Where the source of Mr. Stoltzfoos' money was not at issue at trial, it was not relevant at sentencing.  The Commonwealth was not entitled to take the easy route to a conviction at trial, then to insinuate at sentencing, through its Sentencing Memorandum and the testimony of its investigators, that Mr. Stoltzfoos was involved in illegal activities which it was unable or unwilling to prove at trial.  Further, as is noted in Argument Section VIII, *infra*, this tactic for alleging the source of Mr. Stoltzfoos' money left the allegations largely unchallenged, due to the court's refusal to permit cross-examination of the Commonwealth's witnesses.

Notably, although the Commonwealth claimed Mr. Stoltzfoos' money was derived through illegal activities, it presented no victims from whom Mr. Stoltzfoos had allegedly stolen the money at issue.  No credit card companies or retail stores testified that they had been victimized by Mr. Stoltzfoos.  Furthermore, it is quite clear that the Commonwealth had not acted on behalf of any such victims in prosecuting Mr. Stoltzfoos, as it seized all of his money

for itself, leaving any alleged victims with nothing to obtain from Mr. Stoltzfoos if, in fact, such victims existed and were entitled to obtain relief through civil or criminal proceedings.

 For the foregoing reasons, the trial court erred in admitting and considering the Commonwealth's Sentencing Memorandum and in permitting and considering the testimony of Daniel Licklider and Santo Bocchinfuso.  The purpose of the Memorandum and testimony were to attempt to prove, through hearsay and speculation, that the money Mr. Stoltzfoos had deposited had been illegally obtained.  The judgment of sentence should be vacated, and the case remanded for resentencing, without consideration of the improper and prejudicial allegations contained in the Commonwealth's Sentencing Memorandum.

VIII.  By refusing to permit defense counsel for Mr. Stoltzfoos to cross-examine the Commonwealth's witnesses at sentencing, the trial court violated Mr. Stoltzfoos' right to the assistance of counsel, and his right to confront the witnesses against him.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . and to have the Assistance of Counsel for his defense." Likewise, Article One, Section Nine of the Constitution of the Commonwealth of Pennsylvania provides that "[i]n all criminal prosecutions the accused hath a right to be heard by himself and his counsel . . . [and] to meet the witnesses face to face."

"Criminal defendants have a constitutional right to confront witnesses against them, which includes the right to cross-examine." Commonwealth v. Robinson, 507 Pa. 522, 526, 491 A.2d 107, 110 (1985). This right extends to the right to cross-examine witnesses at sentencing. See Commonwealth v. Charles, 339 Pa. Super. 284, 292-293, 488 A.2d 11261, 1130 (1985) (noting that defendant was not denied the right to cross-examine witnesses at sentencing, because his attorney cross-examined the victim-witness thoroughly).

In the instant case, the Commonwealth presented the testimony of Commonwealth investigators Daniel Licklider and Santo Bocchinfuso, in support of its claim that the source of Mr. Stoltzfoos' money was Mr. Stoltzfoos' alleged participation in two "scams"-- "a credit-card-bust out and point-of-sale." Commonwealth Sentencing Memorandum, p. 2.

Agent Licklider testified regarding numerous items which were seized from Mr. Stoltzfoos' residence, including theater tickets, free food tickets, free movie tickets, and numerous buyer's club cards. N.S.H., pp. 25-30. Agent Licklider also testified that he had a conversation with Mr. Stoltzfoos about his credit card debt, and that Mr. Stoltzfoos had told him that the matter was civil, not criminal. N.S.H., p. 30. The Deputy Attorney General asked

whether Mr. Stoltzfoos had indicated to him whether he ever intended to pay back the credit card money, and Mr. Licklider stated that he did not. N.S.H., p. 30.

Agent Bocchinfuso testified regarding items observed in the attic of Mr. Stoltzfoos' residence, including over 3,000 new DVD's and CDs, hockey equipment, electric fans, stereo equipment, lock sets, bicycle equipment, office supplies, and exercise equipment. N.S.H., pp. 32-33. Agent Bocchinfuso testified that he also reviewed $3,980 in prepaid telephone cards seized from Mr. Stoltzfoos' residence, $370 in postage stamps, and $8,268.81 in retail store gift cards. N.S.H., pp. 34-35.

In response to the Deputy Attorney General's question regarding his experience in "financial investigations," Mr. Bocchinfuso testified at length regarding his experience in investigating economic crime and scams. N.S.H., pp. 33-34. He also testified that gift cards and store cards, such as those in Mr. Stoltzfoos' possession, are obtained when items are returned without a receipt. N.S.H., p. 35.

The court refused to permit defense counsel to cross-examine the Commonwealth's witnesses, stating defense counsel "had the opportunity to speak," and that it was the Commonwealth's "opportunity to speak." N.S.H., p. 31. The court also noted that it was not permitting cross-elimination of the witnesses because they had merely listed "things that were taken in the search warrant." N.S.H., p. 38. In its Opinion, the court held that "[d]efense counsel presented its issues for sentencing without interruption or cross-examination by the Commonwealth, the Court granted the same to the Commonwealth pursuant to Pa.R.Crim.P. 704(c)(1). Trial Court Opinion, March 26, 2009.

Pennsylvania Rule of Criminal Procedure 704(C)(1) merely permits counsel for both parties the opportunity to present information and argument relative to sentencing. The Rule certainly does not supercede Mr. Stoltzfoos' constitutional right to cross-examine the witnesses

78

against him.  The Commonwealth had no need to cross-examine anyone because the defense

presented no testimony.  Had the Commonwealth done likewise, the issue of cross-examination

would not have arisen.  It is simply irrelevant that the witnesses merely listed items seized.  The

right to cross-examination is not dependent on the type of testimony offered.  Furthermore, the

witnesses did more than simply list the items seized.  Had this been the sole purpose of the

witnesses, the Deputy Attorney General could simply have listed the items seized or observed

himself.  The purpose of the Commonwealth's witnesses was to support its Sentencing

Memorandum, claiming that the source of Mr. Stoltzfoos' money was Mr. Stoltzfoos' alleged

participation in two "scams"-- "a credit-card-bust out and point-of-sale."  Furthermore, the

witnesses testified to more than simply their observations--Mr. Licklider testified regarding Mr.

Stoltzfoos' answers to questions regarding his credit card debt, and Mr. Bocchinfuso testified

regarding the manner in which people acquire gift cards and store cards such as those in Mr.

Stoltzfoos' possession, suggesting that their acquisition was part of a scam.  N.S.H., pp. 30, 35.

The court's refusal to permit defense counsel to cross-examine the Commonwealth's

witnesses at sentencing was a violation of Mr. Stoltzfoos' right to the assistance of counsel and

his right to confront the witnesses against him.  Therefore, the judgment of sentence should be

vacated, and the case remanded for resentencing.

IX.  In imposing sentence, the trial court improperly based its sentence upon its belief, which
was neither alleged nor proved at trial, and evidence of which should not have been admitted at
sentencing, that the money Mr. Stoltzfoos deposited was the proceeds of unlawful activities.

A sentencing judge must weigh all mitigating and aggravating factors in arriving at an

appropriate sentence.  Commonwealth v. Cottam, 420 Pa. Super. 311, 616 A.2d 988 (1992).  Our

system in Pennsylvania calls for individualized sentences based on consideration of a number of

factors.  At a minimum, when considering total confinement, the Court, in addition to

considering the nature of the offense, must also consider the history, character, and condition of

the defendant.  42 Pa. C.S.A. §9725.  A sentencing court must consider all the relevant factors

and cannot rely exclusively on the seriousness of the offense.  Commonwealth v. Boyer, 856

A.2d 149, 152 (Pa. Super. 2004) (focusing solely on the serious nature of the crimes committed

raises a substantial question on appeal);  Commonwealth v. Ruffo, 360 Pa. Super. 180, 520 A.2d

43 (1987).

A sentencing judge's decision should be accorded great weight since the judge is in the

best position to weigh the various factors.  Commonwealth v. Fries, 362 Pa. Super. 163, 523 A.2d

1134 (1987); Commonwealth v. Catanch, 398 Pa. Super. 466, 581 A.2d 226 (1990).  "However,

this deference paid to the trial court does not necessitate a rubber stamped approval of the

sentences imposed by the sentencing court.  Appellate review of sentencing matters would

become a mockery and a sham if all sentences were routinely affirmed under the guise of

discretion of the trial court."  Commonwealth v. Smart, 387 Pa. Super. 518, 522, 564 A.2d 512,

514 (1989).  "It should also be understood that a finding of an abuse of discretion does not

necessarily equate with a finding of bias or wrongdoing on the part of the sentencing court, but

rather is consistent with a finding that a reviewing body believes the sentence inappropriate

under the circumstances to a degree beyond the bounds of reasonable discretion and deference to the sentencing court. Id.

The appellate courts retain the power and the duty to vacate sentences imposed where an abuse of discretion has been committed. Commonwealth v. Smithton, 429 Pa. Super. 55, 631 A.2d 1053 (1993). A sentence within the statutory limits constitutes an abuse of discretion where the sentence is so manifestly excessive as to constitute too severe a punishment. Commonwealth v. Martin, 328 Pa. Super. 498, 477 A.2d 555 (1984); Commonwealth v. Mehalic, 382 Pa. Super. 264, 555 A.2d 173 (1989). In addition, "[t]he appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds . . . the sentencing court sentenced within the guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable. 42 Pa.C.S. §9781(c)(2).

Information considered by the sentencing court must be relevant and accurate, and the court may not commit an error of law in sentencing. Commonwealth v. Losch, 369 Pa. Super. 192, 204, 535 A.2d 115, 120-121 (1987).

In the instant case, as is discussed in Argument Section VII, *supra*, the court improperly admitted the Commonwealth's Sentencing Memorandum and the testimony of Commonwealth investigators Daniel Licklider and Santo Bocchinfuso as evidence that the money Mr. Stoltzfoos had deposited was the proceeds of unlawful activity. This evidence was irrelevant and improper, and should not have been considered by the court in imposing sentence.

In its Opinion, the court held that "appellate counsel baldy asserts that the Court based its sentence upon the belief that Defendant's deposits were the proceeds of unlawful activity," but that the record "provides no support for this claim." Trial Court Opinion, March 26, 2009, p. 15. The court, citing a small and incomplete portion of its comments at sentencing, claimed that it found that "it need not determine whether the money was earned legitimately." Id.

In fact, there is significant evidence in the record to demonstrate that the court based its sentence on its belief that the money Mr. Stoltzfoos deposited was the proceeds of unlawful activity.  First, in admitting the Commonwealth's Sentencing Memorandum and the testimony of its investigators, the court found that the Commonwealth was entitled to show that "the funds which were used in the dealing of the proceeds that were unlawful activities of these offenses." N.S.H., pp. 10-11.  In imposing sentence, the court again referred to the Commonwealth's Sentencing Memorandum, noting that it had reviewed the Memorandum "relative to the issues that are pertinent to the charges before me," and that "it was Mr. Stoltzfoos' own greed and avarice" which were to blame for his charges and convictions.  N.S.H., pp. 41-44.

The court also demonstrated significant personal bias against Mr. Stoltzfoos, noting that Mr. Stoltzfoos had "used . . . the Amish faith . . . as an alleged defense," and that it found "that to be a clear slap in the face of the good law-abiding Amish citizens of Lancaster County."  Id.

Although the court noted that it was not for it to determine "a specific knowledge of unlawful activity," it neverless found that "it is extremely difficult for me to buy that you claim to be a simple man, yet the items found in your house show an extremely different schemed individual."  Id.

Clearly, the court based its sentence on its belief that the money Mr. Stoltzfoos deposited was the proceeds of unlawful activity.  This belief was based on irrelevant, improperly admitted, and prejudicial evidence regarding the source of Mr. Stoltzfoos' money.  Therefore, the judgment of sentence should be vacated and the case remanded for resentencing.

X.  By demanding that Mr. Stoltzfoos answer the trial court's hypothetical legal question about property rights in borrowed money, by refusing to permit Mr. Stoltzfoos to consult with his attorney regarding the court's question, and by refusing to permit defense counsel to address the court on Mr. Stoltzfoos' behalf, the trial court violated Mr. Stoltzfoos' right to remain silent at sentencing, and his right to the assistance of counsel.

The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  Similarly, Article One, Section Nine of the Constitution of the Commonwealth of Pennsylvania provides that "[i]n all criminal prosecutions the accused . . . cannot be compelled to give evidence against himself."

The right of the accused to remain silent remains at sentencing.  Mitchell v. United States, 526 U.S. 314, 326 (1999) ("[w]e reject the position that either petitioner's guilty plea or her statements at the plea colloquy functioned as a waiver of her right to remain silent at sentencing"); Estelle v. Smith, 451 U.S. 454, 462-463 (1981) ("[w]e can discern no basis to distinguish between the guilt and penalty phases of respondent's capital murder trial so far as the protection of the Fifth Amendment privilege is concerned").

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  Likewise, Article One, Section Nine of the Constitution of the Commonwealth of Pennsylvania provides that  "[i]n all criminal prosecutions the accused hath a right to be heard by himself and his counsel."

In the instant case, after defense counsel had spoken on behalf of Mr. Stoltzfoos, the court asked Mr. Stoltzfoos what he would like to say, and Mr. Stoltzfoos began reading a statement to the court, but stopped after the first sentence, stating "I can't do it."  N.S.H., p. 19.  Mr. Stoltzfoos

passed the statement to his attorney, who read the statement for him.  N.S.H., p. 19.

The court then directed a question to Mr. Stoltzfoos and the following exchange occurred:

THE COURT:  Mr. Stoltzfoos, do you believe that if I borrow $50,000 from anybody over here and I never intend to pay them back nor do I pay a penny of that back, that that's my money?[23]
    Mr. Stoltzfoos, this is for you to answer me and --

THE DEFENDANT:  Can you repeat the question?

THE COURT:  If I borrow $50,000 from a man over there and I never have the intention to pay that man back that $50,000, is that 50,000 my money or his money?

THE DEFENDANT:  It would be your money, but he would have the opportunity to sue you.

THE COURT:  I never intended to pay him back.  I stole the money from him didn't I?

THE DEFENDANT:  That wasn't my intent.  Maybe that was --

THE COURT:  Excuse me.  You're answering my question, not yours.

THE DEFENDANT:  Okay.  If that would have been your intention, I don't know what the law is on that.

MR. CONRAD:  Your Honor, if I could address one --

THE COURT:  No.  I wanted Mr. Stoltzfoos' response to that.
    The Commonwealth --

MR. CONRAD:  Your Honor, can I have the Court's indulgence just one moment?
    We've talked about that matter, sir.  If I could just -- just one moment sir.

THE COURT:  I believe it's the Commonwealth's turn.  We'll come back to you.

N.S.H. pp. 20-21.

---

[23]    Although this is not apparent from the record, after the court asked the question, Mr. Stoltzfoos attempted to confer with his attorney, which is when the court interrupted to tell Mr. Stoltzfoos that the question was for him to answer.  Appellate counsel for Mr. Stoltzfoos was in the courtroom during the sentencing hearing and observed Mr. Stoltzfoos attempt to confer with his trial counsel.

It was clear that not only was Mr. Stoltzfoos not free to refuse to answer the court's question, the court refused to permit his attorney to speak on his behalf in response to the question. Further, by discontinuing his reading of his statement and asking his attorney to read it for him, Mr. Stoltzfoos had clearly asserted his right to remain silent and to speak only through his counsel.

In its Opinion, the court held that the claim that it had violated Mr. Stoltzfoos' right to remain silent was "absurd," and noted that it had formed the question "as a hypothetical so as not to implicate Defendant," and that its question was "relevant to mitigation of sentence." Trial Court Opinion, March 26, 2009, pp. 14-15.

The fact that the court wanted an answer to its question did not entitle it to compel Mr. Stoltzfoos to answer. Further, if the court regarded the question as relevant to mitigation, the court's failure to mitigate the sentence shows that it penalized Mr. Stoltzfoos for his answer. Thus, the court erred by compelling Mr. Stoltzfoos to answer its question, refusing to permit his trial counsel to answer on his behalf, and penalizing him for his compelled, but unsatisfactory, answer. In so doing, the court violated Mr. Stoltzfoos' Fifth Amendment right to remain silent at sentencing, and his Sixth Amendment right to the assistance of counsel.

The judgment of sentence should be vacated and the case remanded for resentencing.

CONCLUSION

WHEREFORE, Levi Stoltzfoos respectfully requests that this Honorable Court grant relief as follows:

With respect to the claims that 18 Pa.C.S. §5111(a)(3) is void for vagueness and overbreadth, and the claim that the evidence was insufficient to sustain Mr. Stoltzfoos' conviction for 58 counts of dealing in unlawful proceeds, Mr. Stoltzfoos requests that this Honorable Court vacate the judgment of sentence, and dismiss the charges.

With respect to the claim that the trial court erred in instructing the jury that the Commonwealth was alleging that Mr. Stotlzfoos was guilty of a federal crime, Mr. Stoltzfoos requests that this Honorable Court vacate the judgment of sentence, and remand for a new trial.

With respect to the claim that the $540,200 civil penalty constituted an excessive fine and cruel and unusual punishment, Mr. Stoltzfoos requests that this Honorable Court vacate the civil penalty.

With respect to the claim that the assignment of an Offense Gravity Score of eight was a violation of the Due Process and Equal Protection Provisions of the United States and Pennsylvania Constitutions, Mr. Stoltzfoos requests that this Honorable Court vacate the judgment of sentence and remand for resentencing, with an Offense Gravity Score of five.

With respect to the sentencing claims set forth in Argument Sections VII through X, Mr. Stoltzfoos requests that this Honorable Court vacate the judgment of sentence and remand for resentencing.

Respectfully submitted,
OFFICE OF THE PUBLIC DEFENDER

BY: _MaryJean Glick_

MaryJean Glick
Attorney I.D. No. 76608
Senior Assistant Public Defender
Attorney for Defendant