# APPENDIX B

IN THE SUPERIOR COURT OF PENNSYLVANIA
MIDDLE DISTRICT

No. 30 MDA 2009

COMMONWEALTH OF PENNSYLVANIA
Appellee

v.

LEVI LAPP STOLTZFOOS
Appellant

Received in Superior Court

Nov 1 8 2009

MIDDLE

BRIEF FOR APPELLEE

Appeal from the Judgment of Sentence Entered July 22, 2008, at No. 5995-2006 in the Court of Common Pleas of Lancaster County

THOMAS W. CORBETT, Jr.
Attorney General

RICHARD A. SHEETZ, Jr.
Executive Deputy Attorney General
Director, Criminal Law Division

CHRISTOPHER D. CARUSONE
Chief Deputy Attorney General
Appeals and Legal Services Section

ANDREA F. McKENNA
Senior Deputy Attorney General
Appeals and Legal Services Section
Attorney ID 39717

Office of Attorney General
Appeals and Legal Services Section
16th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 787-6347
Date: November 18, 2009

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... iii

SCOPE AND STANDARD OF REVIEW ......................................................................... 1

COUNTER-STATEMENT OF THE CASE ..................................................................... 2

   *Form of Action and Procedural History* ....................................................................... 2

   *Judge Whose Determination Is To Be Reviewed* ......................................................... 2

   *Facts Necessary for Determination* ............................................................................. 2

SUMMARY OF ARGUMENT ......................................................................................... 6

ARGUMENT ................................................................................................................... 8

  I.     The Statute Which Prohibits The Conduct Of A Financial Transaction So As To Avoid State And Federal Reporting Requirements Is Not Void for Vagueness ............................................................................................................... 8

  II.    The Statute Which Prohibits The Conduct Of A Financial Transaction So As To Avoid State And Federal Reporting Requirements Is Not Overbroad. ................... 13

  III.   The Lower Court Did Not Instruct The Jury That The Defendant Was Guilty Of A Federal Crime. ............................................................................................. 16

  IV.   The Claim Of Insufficiency Of The Evidence Is Meritless. ............................... 18

  V.    The Civil Penalty Did Not Impose Cruel and Unusual Punishment. ................. 20

  VI.   The Sentencing Court Had No Discretion To Set Or Change The Offense Gravity Score And Did Not Violate The Constitutional Requirement Of Equal Protection By Applying The Designated Offense Gravity Score. ........................ 22

  VII.  The Commonwealth Is Permitted To Introduce At Sentencing Evidence Of The Character Of The Defendant. ....................................................................... 24

  VIII. Testimony At Sentencing Did Not Violate The Defendant's Constitutional Rights. ......................................................................................................... 27

  IX.   The Trial Court Properly Imposed Sentence Within The Confines Of The Law. ........ 28

  X.    The Sentencing Court Did Not Violate Stoltzfoos' Right To Remain Silent ............... 29

CONCLUSION ............................................................................................................. 32

# TABLE OF AUTHORITIES

<b>Page(s)</b>

## Cases

*Commonwealth v. Archer*, 722 A. 2d 203 (Pa. Super. 1998)..................................................... 22

*Commonwealth v. Barud*, 545 Pa. 297, 681 A.2d 162 (1966). ................................................ 8, 13

*Commonwealth v. Bell*, 512 Pa. 334, 516 A.2d 1172 (1986)................................................. 23, 24

*Commonwealth v. Bell*, 537 A.2d 558, 645 A.2d 211 (1994)...................................................... 8

*Commonwealth v. Biagini*, 540 Pa. 22, 655 A.2d 495 (1995). ............................................... 1, 18

*Commonwealth v. Campbell*, 758 A.2d 1231 (Pa. Super. 2000). ............................................... 12

*Commonwealth v. Carter*, 485 A.2d 802 (Pa. Super. 1984) ...................................................... 25

*Commonwealth v. Carter*, 543 A.2d 1232 (Pa. Super. 1988). .................................................... 21

*Commonwealth v. Davidson*, 595 Pa.1, 938 A.2d 198 (2007)............................................. 1, 9, 13

*Commonwealth v. DeFrancesco*, 481 Pa.595, 93 A.2d 321(1978).............................................. 8

*Commonwealth v. DeJohn*, 486 Pa. 32, 403 A.2d 1283 (1979).................................................. 14

*Commonwealth v. Duncan* ,752 A. 2d 404 (Pa. Super. 2000). ................................................... 13

*Commonwealth v. Gallagher*, 592 Pa. 262, 924 A.2d 636 (2007)........................................... 10, 11

*Commonwealth v. Goggins*, 748 A.2d 721 (Pa. Super. 2000). ................................................... 25

*Commonwealth v. Heinbaugh*, 467 Pa. 1,  54 A.2d 244 (1976) .................................................. 8

*Commonwealth v. Hunter*, 768 A.2d 1136 (Pa. Super. 2001) .................................................... 22

*Commonwealth v. Johnakin*, 502 A. 2d 620 (1985). ................................................................ 22

*Commonwealth v. Johnson*, 618 A. 2d 415 (Pa. Super. 1982). ............................................... 1, 22

*Commonwealth v. Jones*,  543 A. 2d 548 (Pa. Super. 1988)....................................................... 23

*Commonwealth v. Kramer*, 474 Pa. 341, 378 A.2d 824 (1977).................................................. 24

*Commonwealth v. Lurie*, 524 Pa. 56, 569 A.2d 329 (1990) ...................................................... 10

*Commonwealth v. Magwood*, 503 Pa. 169, 469 A.2d 115 (1983) .............................................. 12

*Commonwealth v. Martin*, 466  Pa. 118, 351 A.2d  650(1976). ................................................. 25

*Commonwealth v. McKeever*, 689 A.2d 272 (Pa. Super.1997) ............................................... 1, 18

*Commonwealth v. Medley*, 725 A.2d 1225 (Pa. Super. 1999)........................................... 26, 27, 30

*Commonwealth v. Minnich*, 662 A.2d 21 (Pa. Super. 1995) ..................................................... 24

*Commonwealth v. Orsino*, 178 A.2d 843 (Pa.Super.1962)........................................................ 25

*Commonwealth v. Parker White Metal Co.*, 512 Pa. 74, 92 A.2d 1358 (1986 )............................. 9

*Commonwealth v. Real Property and Improvements Commonly Known As 5444 Spruce Street*,
574 Pa. 423, 832 A.2d 396 (2003). ................................................................. 20

*Commonwealth v. Rekaskie*, 566 Pa. 85, 778 A. 2d 624 (2001) ............................................. 14, 15

*Commonwealth v. Saunders*, 529 Pa. 140, 602 A.2d 816 (1992). .................................................... 1

*Commonwealth v. Wright*, 508 Pa. 25, 494 A.2d 354 (1985) .................................................. 27, 30

*Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982) ............................................ 21

*Commonwealth v. Zewe*, 444 Pa. Super. 17, 663 A.2d 195 (1995). ........................................... 1, 17

*Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 1205, 51 L.Ed.2d 393 (1977) ................. 27, 30

*Hoffman v. United States*, 341 U.S. 479, 71 S. Ct. 814 (1951) ................................................. 30

*In re King Properties*, 535 Pa. 321 A.2d 128 (1993) ................................................................ 21

*In re Turner*, 403 A.2d 1346, 1348 (Pa. Commw. 1979) .......................................................... 10

*Jackson v. Hendrick*, 509 Pa. 456, 503 A.2d 400 (1986) ........................................................ 20

*Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) ........................... 15

*McDonough v. Widnall*, 891 F. Supp. 1439 (D.Colo 1995) .................................................... 14

*McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986).................. 27, 30

*Ohio Bureau of Employment Services v. Hodory*, 431 U.S. 471, 97 S.Ct. 1898, 52
L.Ed.2d 513 (1977) ............................................................................................ 24

*Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547 (1974). .............................................................. 9

*Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed. 2d 506 (1964)................................. 24

*Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962) ........................... 20

*Robinson v. United States*, 324 U.S. 282, 65 S.Ct. 666, 89 L.Ed. 944 (1945)........................... 9

*Rode v. Dellarciprete*, 845 F.2d 1195 (3d Cir. Pa. 1988) ...................................................... 9

*Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 100 S.Ct. 826,
63 L.Ed.2d 73 (1980) ......................................................................................... 13

*Smith v. Maryland*, 442 U.S. 735, 744, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) ...................... 14

*Trop v. Dulles*, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958)............................................ 21

*United States v. Davenport*, 929 F.2d 1169 (7th Cir. 1991) ................................................ 8

*United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 1624 (1976)......................................... 14

*United States v. Noske*, 117 F.3d 1053 (8th Cir. 1997) ...................................................... 8

*United States v. Pierce*, 920 F.2d 934 (6th Cir. 1990).......................................................... 8

*United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed. 2d 697 (1987) .................. 13

## Statutes

1 Pa.C.S. §1924 ........................................................................................ 12

18 Pa.C.S.§302(c) ................................................................................ 10, 11

18 Pa.C.S. §5111 ..................................................................................... 23

18 Pa.C.S. §5111(a)(1) and (2) ................................................................ 11

18 Pa.C.S. §5111(a)(3) ...................................................................... 2, 8, 16

18 Pa.C.S. §5111(b) ................................................................................. 21

18 Pa.C.S.§ 5111(c). ............................................................................... 20

31 U.S.C. §5313(a) .................................................................................. 16

31 U.S.C §5324 ................................................................................... 8, 16

42 Pa.C.S.§5327(c). ................................................................................ 19

42 Pa.C.S. §6801 ..................................................................................... 21

42 Pa.C.S. §8901 ..................................................................................... 12

42 Pa.C.S. §9721 ..................................................................................... 26

62 P.S. §1407 ........................................................................................... 11

## Other Authorities

204 Pa. Code §303.15 .............................................................................. 26

## SCOPE AND STANDARD OF REVIEW

Challenges to the constitutionality of a statute are matters of law.  The scope of review is plenary and the standard of review is *de novo*.  *Commonwealth v. Davidson*, 595 Pa. 1, 938 A.2d 198 (2007).

In determining whether the court properly instructed the jury, the reviewing court must consider the charge as a whole to determine whether it was fair and complete. It is the effect of the charge as a whole that is controlling.  *Commonwealth v. Saunders*, 529 Pa. 140, 144, 602 A.2d 816, 818 (1992).  Error will not be predicated upon isolated excerpts from the charge. *Commonwealth v. Zewe*, 444 Pa. Super. 17, 28, 663 A.2d 195, 201 (1995).

The standard of review for a challenge to the sufficiency of the evidence is whether viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth as verdict winner, the jury could have found that the defendant's guilt was established beyond a reasonable doubt.  *Commonwealth v. McKeever*, 689 A.2d 272 (Pa. Super.1997); *Commonwealth v. Biagini*, 540 Pa. 22, 655 A.2d 495 (1995).

Calculation of a prior record score or an offense gravity score are not matters within the trial court's discretion. *Commonwealth v. Johnson*, 618 A. 2d 415 (Pa. Super. 1982).

1

## COUNTER-STATEMENT OF THE CASE

### *Form of Action and Procedural History*

Levi Lapp Stoltzfoos appeals from the judgment of sentence entered July 22, 2008, following his conviction of 58 counts of conducting a financial transaction to avoid a transaction recording requirement under state or federal law, 18 Pa.C.S. §5111(a)(3).

Stoltzfoos was sentenced to an aggregate term of two to ten years in a state correctional facility. Stoltzfoos, through counsel, filed a motion to modify sentence which alleged that the lower court erred in applying an offense gravity score of "eight." The lower court denied the motion. Stoltzfoos then timely brought this appeal.

### *Judge Whose Determination Is To Be Reviewed*

Judgment of sentence was entered by the Honorable Howard F. Knisely of the Court of Common Pleas of Lancaster County

### *Facts Necessary for Determination*

As the result of a referral from an employee of Susquehanna Bancshares, agents of the Office of Attorney General began an inquiry into the banking habits of Levi Lapp Stoltzfoos. Stoltzfoos had aroused the suspicion of a bank official because he appeared to be making "structured deposits" so as to avoid state and federal reporting requirements. N.T. 75- 78.

The federal Bank Secrecy Act requires a financial institution to file a report, known as a Currency Transaction Report, when a customer deposits cash in excess of $10,000. This reporting obligation lies with the financial institution, and not the depositor. N.T. 124-26; 219. If the cash transaction is less than $10,000, the financial institution has discretion to report the transaction. N.T.pp.124-26. Employees of financial institutions are not permitted to advise customers on how to avoid triggering the transaction reporting requirement. An employee of a

financial institution may be held criminally and civilly liable for assisting in any suspicious activity as it relates to cash transactions. N.T. 221.

Investigators learned that Stoltzfoos had accounts at ten banks in the Lancaster area. During February, March and April of 2006, agents obtained search warrants for Stoltzfoos' accounts at the Bank of Lancaster County, Coatesville Savings Bank, Ephrata National Bank, Fulton Bank, Graystone Bank, M&T Bank, National Penn Bank, Northwest Savings Bank, Sovereign Bank and Susquehanna Bancshares. Commonwealth Exhibits 1-10. Through the execution of these warrants, law enforcement agents seized items such as monthly statements, signature cards and deposit tickets from each account held by Stoltzfoos at these ten financial institutions. In some instances, agents were able to obtain bank surveillance films which showed Stoltzfoos in the act of making a deposit. N.T. 81-88.

Items seized from the Bank of Lancaster County, Smoketown, Pa. showed cash deposits into Stoltzfoos' account as follows: January 6, 2006, $10,000; January 17, 2006, $9,000; January 19, 2006, $9,900; January 23, 2006, $9,500; January 27, 2006, $9,000; February 6, 2006, $9,000. N.T. 94-98; Commonwealth Exhibits, 31-37A.

Cash deposits were made to Stoltzfoos' account at Coatesville Saving Bank as follows: January 19, 2006, $9,900; January 21, 2006, $9,500; January 28, 2006, $9,000; February 4, 2006, $9,000; February 11, 2006, $5,200; N.T. 98-101; Commonwealth Exhibits 40-45.

Information obtained from Ephrata National Bank showed cash deposits into Stoltzfoos' account as follows: January 7, 2006, $9,900; January 14, 2006, $9,900; January 19, 2006, $9,900; January 21, 2006, $9,500; January 28, 2006, $9,000. N.T. 101-103; Commonwealth Exhibits 50-55.

Cash deposits were made to Stoltzfoos' account at Fulton National Bank as follows: January 14, 2006, $9,900; January 20, 2006, $9,900; January 21, 2006, $9,000; January 28, 2006, $9,000; February 4, 2006, $6,600; February 11, 2006, $9,000. N.T. 103-106; Commonwealth Exhibits 60-66A.

Cash deposits were made to Stoltzfoos' account at Graystone Bank as follows: January 14, 2006, $9,900; January 19, 2006, $9,900; January 21, 2006, $9,000; January 30, 2006, $9,000; February 11, 2006, $10,000. N.T. 107-109; Commonwealth Exhibits 70-75A.

Cash deposits were made to Stoltzfoos' account at M&T Bank as follows: January 7, 2006, $9,990; January 19, 2006, $9,900; February 5, 2006, $9,000. N.T.111-113; Commonwealth Exhibits 80-83.

Cash deposits were made to Stoltzfoos' account at Hometowne Heritage Bank, a division of National Penn Bank, as follows: January 9, 2006, $9,900; January 14, 2006, $9,900; January 19, 2006, $9,900; January 23, 2006, $9,000; January 28, 2006, $9,000; February 6, 2006, $9,000; February 13, 2006, $9,000. N.T. 113-116; Commonwealth Exhibits 90-97A.

Cash deposits were made to Stoltzfoos' account at Northwest Savings Bank as follows: January 9, 2006, $9,900; January 17, 2006, $9,900; January 19, 2006, $9,900; January 21, 2006, $9,500; January 28, 2006, $9,000; February 4, 2006, $9,000. N.T. 117-119; Commonwealth Exhibits 100-106.

Cash deposits were made to Stoltzfoos' account at Sovereign Bank as follows: January 7, 2006, $9,900; January 14, 2006, $9,900; January 19, 2006, $ 9,900; January 21, 2006, $9,000; January 28, 2006, $9,000; February 4, 2006, $9,000. N.T.120-21; Commonwealth Exhibits 110-116.

Cash deposits were made to Stoltzfoos' account at Susquehanna Banc as follows: January 14, 2006, $8,700; January 20, 2006, $9,900; January 30, 2006, $9,000; February 11, 2006, $9,000. N.T. 122-123; Commonwealth Exhibits 120-125A.

Stoltzfoos voluntarily met with law enforcement agents on March 17, 2006, and read a statement which Stoltzfoos brought to the meeting. In this statement Stoltzfoos recounted that had worked for more than 22 years and had kept money in a personal safe. In 2006 he decided to put money in the bank so that he could buy a new truck in the fall. The statement also said, "I knew that when you withdrew $10,000 cash or deposit $10,000 cash, a form has to be filled out." N.T. 90-92; Commonwealth Exhibit 20.

During the execution of a search warrant at Stoltzfoos' residence, agents found numerous credit cards, phone cards, movie passes, gift cards, store credits, reward cards, one thousand, 37 cent stamps, fans, stereo equipment, exercise equipment, office supplies,  and more than 3,000, brand-new DVDs and CDs.  These items were stored in the attic.  Stoltzfoos' financial history, including gross earnings reported to the Internal Revenue Service between 1999 and 2005 and earnings reported to the Social Security Administration for the years between 1987 and 1999, showed that he had earned markedly less than the million dollars he deposited to his numerous bank accounts during a six week period in 2006.  Sentencing N.T. pp. 24-33.

## SUMMARY OF ARGUMENT

Stoltzfoos, who knew since 1999 that cash deposits in excess of $10,000 triggered transaction reporting requirements, has no credible claim that the statute which prohibits the conduct of financial transactions so as to avoid state or federal reporting requirements should be declared void-for-vagueness.

Because there is no unfettered right to privacy in financial transactions, and because the Commonwealth obtained Stoltzfoos' banking records through the execution of a judicially-authorized warrant, he had no cognizable claim that section 5111(a)(3) of the Crimes Code is overbroad.

The lower court did not instruct the jury that Stoltzfoos had committed a federal crime.

The evidence of how Stoltzfoos conducted his banking activities during a six-week period in 2006, plus his admission that he was aware that cash deposits in excess of $10,000 triggered reporting requirements, is sufficient to support the verdicts of conducting financial transactions so as to avoid transaction reporting requirements.

The imposition of a civil penalty in an amount equal to the funds involved in illegal transactions is not disproportionate to the offense and does not constitute cruel and unusual punishment.

The sentencing court applied the proper offense gravity score and did not impose an illegal sentence.

The Commonwealth is permitted to introduce at sentencing evidence relevant to the character of the defendant.

Because sentencing is not a trial, the sentencing court did not violate the constitutional right to confront witnesses when it did not permit cross-examination of Commonwealth witnesses who merely listed items found at Stoltzfoos' residence.

Nothing in the record supports the claim that the court imposed sentence for an impermissible reason.

The sentencing court did not violate Stoltzfoos right to remain silent by posing a hypothetical question during the sentencing proceeding.

## ARGUMENT

I.     **The Statute Which Prohibits The Conduct Of A Financial Transaction So As To Avoid State And Federal Reporting Requirements   Is Not Void for Vagueness.**

During a six-week period in 2006 Stoltzfoos deposited $542,000 in cash, dividing it into 58 deposits at ten different banks. Each cash deposit was just under $10,000.  Stoltzfoos had known since 1999 that a cash deposit in excess of $10,000 triggered reporting requirements. Based on this banking activity, Stoltzfoos was convicted of section 5111(a)(3) of the Crimes Code  which  provides that is it a  first degree felony to conduct a financial transaction so as "[t]o avoid a transaction reporting requirement under State or Federal law." 18 Pa.C.S. §5111(a)(3).  [1]

Despite the evidence against him, Stoltzfoos now argues that section 5111(a)(3) is void for vagueness under  the Fifth and Fourteenth amendments to the United States Constitution and under Article One, Section Nine of the Pennsylvania Constitution[2] because there is no way for a person of ordinary intelligence to determine the requisite *mens rea* and because the offense described at section 5111(a)(3) bears no relation to the  title of the statute.   Neither of these claims have merit.

There is a strong presumption that legislative enactments are constitutional. A heavy burden of persuasion falls on the  one  challenging  the  constitutionality  of  a  statute. *Commonwealth v. Barud*, 545 Pa. 297, 304, 681 A.2d 162, 165 (1966).

---

[1]  The corresponding federal statute, 31 §U.S.C. 5324, reproduced herein at footnote 6, has survived challenges to both vagueness and overbreadth. *See, e.g. United States v. Noske*, 117 F.3d 1053 (8th Cir. 1997); *United States v. Davenport*, 929 F.2d 1169 (7th Cir. 1991); *United States v. Pierce*, 920 F.2d 934 (6th Cir. 1990).

[2]  The federal and state void for vagueness doctrines are not coextensive in all applications. *Commonwealth v. Bell*, 537 A.2d 558, 645 A.2d 211, 215 n. 9 (1994)(sentencing statutes that do not specify a maximum penalty are void for vagueness under state but not federal constitution). However, the general legal standards applicable to the claim are substantially the same under both constitutions. *See Commonwealth v. DeFrancesco*, 481 Pa.595, 93 A.2d 321(1978)(citing United States Supreme Court precedent for void for vagueness doctrine); *Commonwealth v. Heinbaugh*, 467 Pa. 1,  54 A.2d 244 (1976)(same).

8

"[A] statute will pass a vagueness constitutional challenge if the statute 'define[s] the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" *Commonwealth v. Davidson*, 595 Pa.1, 17, 938 A.2d 198, 207 (internal citation omitted). "[S]tatutes alleged to be vague are not 'to be tested against paradigms of draftsmanship. Rather, the requirements of due process are satisfied if the statute in question contains reasonable standards to guide the prospective conduct.'" *Commonwealth v. Parker White Metal Co.*, 512 Pa. 74, 92, 515 A.2d 1358, 1367 (1986 )(internal citations omitted).

The void for vagueness doctrine requires the person raising it to show that he himself has been injured by the overly broad language. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1200 (3d Cir. Pa. 1988) (statute must be vague as applied to person challenging it). "In determining the sufficiency of the notice, a statute must of necessity be examined in the light of the conduct with which a defendant is charged. *Robinson v. United States*, 324 U.S. 282, 65 S.Ct. 666, 89 L.Ed. 944 (1945)." *Parker v. Levy*, 417 U.S. 733, 757, 94 S.Ct. 2547, 2562 (1974).

Stoltzfoos is hard-pressed to demonstrate that the statute, as applied to him, should be declared void for vagueness. After the execution of a search warrant at his residence, but prior to the filing of charges against him, Stoltzfoos initiated a meeting with investigators where he read aloud from a handwritten statement he had brought to the meeting. In the statement he acknowledged the existence of reporting requirements: "I knew that when you withdrew $10,000 cash or deposit $10,000 in cash a form has to be filled out. I found this out in fall of 1999 before the new millennium." N.T. pp. 91-92. In a six-week period from January 7, 2006 to February 14, 2006, Stoltzfoos made 58 cash deposits in amounts just under $10,000 at accounts in ten different banks. No deposit was in excess of $10,000. The logical inference from his behavior

9

and from his admission is that Stoltzfoos was not victimized by a vague statute. He knew what he was doing, and why he was doing it. He has no rational support for his claim that the statute is void for vagueness.

Even in the face of evidence that he acted knowingly and intentionally in depositing more than half a million dollars in cash into ten different bank accounts in 58 deposits each just under $10,000, Stoltzfoos argues that the statute is unconstitutionally vague because the culpability requirement cannot be clearly determined from the statute itself. Brief for Appellant, p. 31.

Section 5111(a)(3) of Title 18 contains no express statement of "*mens rea.*" *Mens rea* refers to the mental state of the accused at the time a criminal act was committed and encompasses both reckless and negligent misconduct, as well as knowing and purposeful acts. *In re Turner*, 403 A.2d 1346, 1348 (Pa. Commw. 1979). "The fact that a criminal statute is silent with regard to a culpability requirement does not mean that the Legislature intended to dispense with the same." *Commonwealth v. Gallagher*, 592 Pa. 262, 267, 924 A.2d 636,639 (2007). Rather, section 302(c) of the Crimes Code provides: "When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto." 18 Pa.C.S.§302(c); *Commonwealth v. Gallagher*, 592 Pa. 262, 924 A.2d 636 (2007).

Stoltzfoos looks to *Commonwealth v. Lurie*, 524 Pa. 56, 569 A.2d 329 (1990), as instructive in construing the *mens rea* applicable to section 5111(a)(3). He notes that sections 5111(a)(1) and (a)(2) of Title 18 (dealing in proceeds of unlawful activities) require the actor to have "knowledge," more precisely "knowledge that the property involved represents the

proceeds of unlawful activity," [3]   and  that section (a)(3) omits the word "knowledge."  He notes

a similar drafting scheme in the Medicaid Fraud Control Act,  62 P.S. §1407.  In *Lurie*, the

Supreme Court construed all sub-sections of section 1407 of the Medicaid Fraud Control Act to

require intentional or knowing conduct because one sub-section of the Act specified knowing or

intentional conduct.  Focusing on the intent of the statute to prevent fraud, *Lurie* held "when the

proscribed conduct necessarily involves deceitful acts and acts of fraud, criminal intent or guilty

knowledge is an essential element of the offense."  524 Pa. at 64, 569 A.2d 329, 333.  Just as

with Medicaid fraud, conducting a financial transaction so as to avoid state or federal reporting

requirements involves deceitful behavior.

However, *Lurie* is of no particular help to Stoltzfoos.  His own knowledge that cash

deposits of $10,000 or more triggered reporting requirements implies that he acted knowingly

and intentionally in structuring 58 deposits to come just under the triggering amount.  The result

in *Lurie* also is consistent with section 302(c) of the Crimes Code provide which  provides:

"When the culpability sufficient to establish a material element of an offense is not prescribed by

law, such element is established if a person acts intentionally, knowingly or recklessly with

respect thereto."  18 Pa.C.S.§302(c);  *Commonwealth v. Gallagher*, 592 Pa. 262, 924 A.2d 636

(2007).

---

[3] A person commits a felony of the first degree if the person conducts a financial transaction
under any of the following circumstances:
   (1) With knowledge that the property involved represents the proceeds of unlawful
activity, the person acts with the intent to promote the carrying on of the unlawful activity.
   (2) With knowledge that the properly involved represents the proceeds of unlawful
activity and that the transaction is designed in whole or in part to conceal or disguise the nature,
location, source, ownership or control of the proceeds of unlawful activity.

18 Pa.C.S. §5111(a)(1) and (2).

Stoltzfoos also argues there is a "disconnect" between the language of section 5111(a)(3) and the title of the statute, "Dealing in proceeds of unlawful activities," because section 5111(a)(3) does not require "knowledge that the property involved represents the proceeds of unlawful activity." He asserts that this "disconnect" between the title and the elements of section 5111(a)(3) "creates an insurmountable obstacle" to the ability of the ordinary person to know what conduct is prohibited. Brief for Appellant, p. 46.

The rules of statutory construction instruct that the title of a statute "*may* be considered" in the construction of the statute." 1 Pa.C.S. §1924, emphasis supplied. However, the title "is in no sense conclusive, particularly when there is no ambiguity in the body of the statute or ordinance itself." *Commonwealth v. Campbell*, 758 A.2d 1231 (Pa. Super. 2000).

In *Commonwealth v. Magwood*, 503 Pa. 169, 469 A.2d 115 (1983), the defendant argued that his arrest by a McKees Rock police officer in the city of Pittsburgh was invalid because section 8901 of the Judicial Code, 42 Pa.C.S. §8901, is titled "Intrastate *Hot* Pursuit." The body of the statute provides that an arrest may be effectuated beyond the territorial limits of an officer's jurisdiction so long as "the officer continues in *pursuit* of" the offender" after the commission of the crime. Magwood argued that the title controlled and, because it took officers 35 minutes to apprehend him, they were not in "hot" pursuit. Therefore, he argued, his arrest in Pittsburgh by a McKees Rock police officer was invalid.

The Supreme Court rejected the argument and held, in conformance with the principles of statutory construction, that the title cannot control the plain words of the statute." *Magwood*, 503 Pa. at 177, 469 A.2d 115, 119. This same result should apply here.

12

**II.    The Statute Which Prohibits The Conduct Of A Financial Transaction So As To Avoid State And Federal Reporting Requirements Is Not Overbroad.**

Stoltzfoos asserts that section 5111(a)(3) of the Crimes Code is overbroad in that it punishes what he terms  the "constitutionally protected" activity of making bank deposits and therefore violates  the constitutional right to privacy in financial records.  Brief for Appellant, p. 50.   This claim is meritless because section 5111(a)(3) does not punish a substantial amount of constitutionally protected conduct.  See *Commonwealth v. Davidson*, 938 A. 2d  595 Pa. 1, 29, 938 A.2d 198, 214 (2007)(in determining whether a statute is unconstitutional due to  over breadth, a court must first determine whether the enactment reaches a substantial amount of constitutionally protected conduct.)

"A challenge to the constitutionality of a statute under the "overbreadth" doctrine is generally limited to the First Amendment. *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed. 2d  697 (1987)." *Commonwealth v. Davidson*, 595 Pa.1, 18, 938 A.2d 198, 208 (2007).   A statute is unconstitutionally overbroad only if it punishes lawful "constitutionally protected activity as well as illegal activity." *Commonwealth v. Barud*, 545 Pa. 297, 681 A.2d 162, 165 (1996).  "The doctrine is predicated on the danger that an overly broad statute, if left in place, may cause persons whose expression is constitutionally protected to refrain from exercising their rights for fear of criminal sanctions. *Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 634, 100 S.Ct. 826, 834, 63 L.Ed.2d 73 (1980)."

Stoltzfoos posits that his banking activities are due constitutional protection because he has an unfettered, constitutional right to privacy in all financial transactions.   The burden falls on him to demonstrate that the information he seeks to shield from disclosure "is constitutionally protected apart from one's desire to avoid being identified as a perpetrator of a crime." *Commonwealth v.  Duncan* ,752 A. 2d 404, 412 (Pa. Super. 2000).

13

Initially, the U.S. Supreme Court found no constitutionally protected expectation of privacy in financial records intended to be seen by a third party. *United States v. Miller*, 425 U.S. 435, 442-43, 96 S.Ct. 1619, 1624 (1976). Congressional enactment of the Financial Privacy Act has since modified the effect of *Miller* by giving statutory protection against *unrestricted government* access to financial records, but the constitutional ruling remains. [4] *See e.g. Smith v. Maryland*, 442 U.S. 735, 744, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979)(no expectation of privacy in telephone number).

In *Commonwealth v. DeJohn*, 486 Pa. 32, 403 A.2d 1283 (1979), our Supreme Court held that under the Pennsylvania Constitution, bank customers have a reasonable expectation of privacy in "records pertaining to their affairs kept at the bank." 486 Pa. at 49, 403 A.2d 1283, 1291. *DeJohn* held that Article I, Section 8 of the Pennsylvania Constitution prohibited the Commonwealth from obtaining a cancelled check by subpoena when no criminal charges had been filed. *DeJohn*, however, did not hold that financial records were immune from seizure by the execution of a judicially approved warrant. *See Commonwealth v. Rekasie*, 566 Pa. 85, 91, 778 A. 2d 624, 628 (2001). Stoltzfoos' bank records were not subpoenaed. They were obtained by the execution of a judicially issued search warrant.

Section 5111(a)(3) does not criminalize the act of depositing money in a bank. Rather, it prohibits structuring cash deposits in such a way as to avoid triggering either state or federal reporting requirements. Section 5111(a)(3) does not invest the Commonwealth with free and unrestricted access to bank records.

"Under Pennsylvania Constitutional jurisprudence, it is manifest that a citizen's expectation of privacy can extend, in some circumstances, to information voluntarily disclosed to

---

[4] *See McDonough v. Widnall*, 891 F. Supp. 1439, 1447-48, (D.Colo 1995)(construing purpose of Financial Privacy Act).

others." *Commonwealth v. Rekaskie*, 566 Pa. 85, 93, 778 A. 2d 624, 629 (2001). "For purposes of this Commonwealth's Constitutional jurisprudence, our court has also adopted the two-prong *Katz* [*v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576(1967)] construct as the appropriate inquiry for consideration of an individual's expectation of privacy under Article I, Section 8 of our Constitution." *Rekaskie*, 778 A. 2d at 92. The "*Katz*" criteria are whether: both the person's actual expectation of privacy and the societal recognition of such an expectation of privacy are reasonable. These criteria "take[s] into account the circumstances of the situation surrounding the disclosure of information as well as the individual's conduct." *Rekaskie*, 566 Pa. at 96, 778 A. 2d 624, 631.

In the matter before this Court, the "situation surrounding the disclosure of information" is an act of Assembly which criminalizes the structuring of financial transactions so as to avoid state and federal reporting requirements. The "situation" also encompasses the disclosure of information through the execution of a judicially approved search warrant —a search and seizure which Stoltzfoos never sought to challenge through a suppression motion. The individual conduct is the deposit of $542,000 in cash, in 58 separate deposits, each of them just under $10,000, made over the course of a six-week period by a person who knew that transactions over $10,000 triggered reporting requirements. Under the analysis of *Katz* and *Rekaskie*, it cannot reasonably be said that society recognizes a right of privacy in financial transactions intentionally conducted in a way so as to circumvent government reporting requirements. The judicially-approved search and seizure of records of such transactions did not violate any legitimate privacy interest of Stoltzfoos.

**III.     The Lower Court Did Not Instruct The Jury That The Defendant Was Guilty Of A Federal Crime.**

Stoltzfoos was charged with, and convicted of, conducting financial transactions so as "to avoid a transaction reporting requirement under State or Federal law." 18 Pa.C.S. §5111(a)(3).

The court instructed the jury, in part, as follows:

> Additionally, the Commonwealth alleges the defendant structured each transaction, in violation of 31 U.S.C., which is the United States Code, Section 5324, structuring transactions to evade reporting requirement prohibited. . . .

N.T. p.287.[5]  The federal statute which the court referenced states "no person shall. . . cause or attempt to cause a domestic financial institution to fail to file a report under section 5313(a) or 5325." 31 U.S.C. §5324.[6]  Title 31 U.S.C. §5313(a) and accompanying regulations impose reporting requirements on financial institutions.[7]

-----

[5] The objection to the charge is not a model of clarity. At the close of the court's instruction, defense counsel made a "technical objection." N.T. 293. Specifically counsel said, "Your honor, with regard to the court's instruction on the structuring—the verdict on structuring, I would make a technical objection to that. It's not anywhere in the statutes they've charged and it's not before the jury, so I want it placed on the record. N.T. 293.

[6] 31 U.S.C §5324 provides in full as follows:

> No person shall, for the purpose of evading the reporting requirements of section 5313(a) or 5325 or any regulation prescribed under any such section, the reporting or recordkeeping requirements imposed by an order issued under section 5326, or the recordkeeping requirements imposed by an regulation prescribed under any such section
>
> (i) cause or attempt to cause a domestic financial institution to fail to file a report under section 5313(a) or 5325.

On the Commonwealth's motion, the lower court took judicial notice of this statute as well as 31 U.S.C. §5313(a); 31 C.F.R., Part 103.22 and 31 U.S.C. §5324.

[7]   31 U.S.C. §5313(a) provides:

> When a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency . . . in an amount, denomination, or amount and denomination, or under circumstances the Secretary prescribes by regulation,

Stoltzfoos argues that this portion of the instruction to the jury was both irrelevant and prejudicial because, he claims, the instruction told the jury that the Commonwealth alleged that Stoltzfoos had violated federal law. The instruction did *not* state that Stotlzfoos violated federal law. The instruction stated "the Commonwealth alleges the defendant structured each transaction." This is the essence of the crime charged and conforms with testimony that the Bank Secrecy Act requires a financial institution to file a Currency Transaction Report, when a customer makes a deposit in excess of $10,000, and that this reporting obligation lies with the financial institution and not the depositor. N.T. 124-125.

In every charge to a jury, the court explains the crimes charged. Because section 5111(a)(c) prohibits conducting a financial transaction so as "to avoid a transaction reporting requirement under state or federal law," it is logical, when charging the jury, to reference a federal reporting requirement, which the lower court did. The complained of portion of the instruction served the basic purpose of instructing the jury about the crime charged. The complained of portion of the charge was not irrelevant. If the complained of portion of the charge was prejudicial, it was no more prejudicial than the effect of every standard charge to a jury which explains the nature of the crimes charged.

---

the institution and any other participant in the transaction the Secretary may prescribe shall file a report on the transaction at the time and in the way the Secretary prescribes. A participant acting for another person shall make the report as the agent or bailee of the person and identify the person for whom the transaction is being made.

The regulations for filing requirements mandated by section 5313 are at 31 C.F.R. §103.22(b) which states:

Each financial institution other than a casino shall file a report of each deposit, withdrawal, exchange or currency or other payment or transfer by, through or to such financial institution which involves a transaction in currency of more than $10,000...

In evaluating the effect of the court's charge to the jury, it is the over-all effect of the charge which is controlling. Error will not be predicated upon isolated excerpts from the charge. *Commonwealth v. Zewe*, 663 A.2d 195, 201 (Pa. Super. 1995). Stoltzfoos singles out three lines from the court's charge and asks for relief. The complained of portion did not instruct the jury that Stoltzfoos had committed a federal crime. Further the jury heard no testimony that would have led them to such a conclusion. This claim for relief is meritless and should be dismissed.

### IV. The Claim Of Insufficiency Of The Evidence Is Meritless.

Stoltzfoos asserts that because the Commonwealth did not prove the existence of a state or federal reporting requirement, the evidence was insufficient to prove violations of dealing in proceeds of unlawful activities, by conducting a financial transaction so as "[t]o avoid a reporting requirement under state or federal law." 18 Pa.C.S.5111(a)(3). Stoltzfoos finds the proof of reporting requirements deficient because neither Commonwealth witness who testified about reporting requirements citied to the specific federal statute or regulation which imposed the reporting requirement, and because the judicial notice of relevant federal statutes was not placed on the record.

The standard of review for a challenge to the sufficiency of the evidence is whether viewing *all the evidence* admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth as verdict winner, the jury could have found that the defendant's guilt was established beyond a reasonable doubt. *Commonwealth v. McKeever*, 689 A.2d 272 (Pa. Super.1997); *Commonwealth v. Biagini*, 540 Pa. 22, 655 A.2d 495 (1995).

The Commonwealth offered two witnesses who testified that the Bank Secrecy Act requires a financial institution to file a form, known as a Currency Transaction Report, when a customer makes a deposit in excess of $10,000. The reporting obligation lies with the financial

institution, not the depositor. Banks have discretion to report cash deposits in amounts less than $10,000. N.T. 124-125, 219.    In addition to testimony about the Bank Secrecy Act and its requirements, the Commonwealth also introduced an admission by Stoltzfoos that he knew reporting requirements attached to cash deposits in excess of $10,000, and that he had known this since 1999.

The evidence which supports the verdict is not insufficient because the verbatim language of the relevant federal legislation was not read to the jury.  What is essential is that the jury heard testimony that reporting requirements are triggered with deposits in excess of $10,000 and that banks may use their discretion in reporting deposits just under the triggering point.  The jury heard that Stoltzfoos knew that cash deposits in excess of $10,000 triggered reporting requirements.    The jury heard that over a six-week period he parceled out $540,200 in 58 deposits at ten different banks, each deposit just slightly under $10,000.    This is sufficient proof to support the conviction.

In the support of his allegation of insufficient evidence, Stoltzfoos now argues    that the substance of the federal    reporting requirements *could* have been a jury determination.  Brief for Appellant, p. 59. This assertion is contrary to law.   Section 5327 of the Judicial Code provides that "the court, not the jury, shall determine the law of any governmental unit outside this Commonwealth."  42 Pa.C.S.§5327(c).   The fact that the court took judicial notice of the *existence* of federal laws and accompanying regulations does not diminish the sufficiency of the evidence.

The jury learned that Stoltzfoos knew such laws existed and knew what behavior would trigger them. The jury also heard evidence of his systematic plan to avoid triggering reporting requirements by structuring a half million dollars into deposits of amounts just  under $10,000.

19

All of this evidence, and the reasonable inferences to be drawn from it, was sufficient to support the convictions.

## V. The Civil Penalty Did Not Impose Cruel and Unusual Punishment.

Imposition of a civil penalty in an amount equal to the money unlawfully deposited does not constitute an excessive fine so as to constitute cruel and unusual punishment.

Section 5111(c) of the Crimes Code provides for the imposition of a civil penalty upon a person who violates or attempts to violate any of the sub-sections of section 5111(a). The penalty is to be "the greater of the value of the funds involved in the transaction, or $10,000." 18 Pa.C.S.§ 5111(c). Here, the court imposed a civil penalty on Stoltzfoos in the amount of $540,200.00. This amount was the aggregate value of the 58 deposits made by him over a six-week period. N.T. 7/22/2008, p. 45.

To determine whether the Excessive Fines Clause has been violated, a court must consider whether the statutory provision imposes punishment; and if so, whether the fine is excessive. "The first question determines whether the Eighth Amendment applies; the second determines whether the Eighth Amendment is violated." *Commonwealth v. Real Property and Improvements Commonly Known As 5444 Spruce Street*, 574 Pa. 423, 428, 832 A.2d 396, 399 (2003).

The Eighth Amendment to the U.S. Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII. The Eighth Amendment is made applicable to the states through the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 664, 82 S.Ct. 1417, 8 L.Ed.2d

758 (1962). Article I, Section 13 of the Pennsylvania Constitution [8] is coextensive with the Eighth Amendment. *Jackson v. Hendrick*, 509 Pa. 456, 503 A.2d 400, 404 (1986). "A punishment authorized by a legislature violates the proscription against cruel and unusual punishment only if it is so disproportionate to an offense as to offend evolving standards of decency or a balanced sense of justice. *Trop v. Dulles*, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958); *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982)." *Commonwealth v. Carter*, 543 A.2d 1232 (Pa. Super. 1988).

Section 5111(a)(3) of the Crimes Code authorizes the imposition of a civil penalty. The Controlled Substances Forfeiture Act, 42 Pa.C.S. §6801 *et seq.* provides for a civil forfeiture. Our Supreme Court held that a civil forfeiture under the Controlled Substances Forfeiture Act, 42 Pa.C.S. §6801 *et seq.* is a fine and thus subject to review under the Excessive Fines Clause. *In re King Properties*, 535 Pa. 321 A.2d 128, 131 (1993)(holding that application of the Forfeiture Act was, at least in part, punitive).

In *Commonwealth v. Real Property Known As 5444 Spruce Street*, the Pennsylvania Supreme Court held that in a civil *in rem* forfeiture proceeding the "gross disproportionality test applies to all punitive forfeitures regardless of the form of the underlying proceedings." 574 Pa. at 435, 832 A. 2d 396, 402 (setting out methods of analysis for determining gross disproportionality).

The civil penalty imposed on Stoltzfoos was the exact equivalent of the money he deposited in ten bank accounts over a six-week period, and not a penny more. It cannot reasonably be said that the civil penalty was "grossly disproportionate" to the illegal conduct when the penalty was equivalent to the amount of the illegal deposits.

---

[8] Article I, Section 13 provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted."

Further, the amount of the civil penalty imposed pales in comparison to the potential fine which could have been levied. The statute provides that upon "conviction of a violation under subsection (a), a person shall be sentenced to a fine of the greater of $100,000 *or twice the value of the property involved in the transaction. . . .."* 18 Pa.C.S. §5111(b)(emphasis supplied).

The civil penalty was the exact value of the property involved in the transaction. Measured against the amount of the fine that could have been assessed, the $540,200.00 civil penalty cannot reasonably be said to constitute an "excessive fine." For all of these reasons, there is no merit to the claim that the civil penalty provided by section 5111(c) is an excessive fine in violation of the Eighth Amendment.

**VI.  The Sentencing Court Had No Discretion To Set Or Change The Offense Gravity Score And Did Not Violate The Constitutional Requirement Of Equal Protection By Applying The Designated Offense Gravity Score.**

Stoltzfoos argues that the court imposed an illegal sentence "because the Offense Gravity Score on which it relies" violate his right to equal protection as afforded by Fourteenth Amendment to the United States Constitution and Article One, Section One of the Pennsylvania Constitution.

The claim that the sentence is illegal because the lower court applied the offense gravity score as stated in the sentencing guidelines has no basis in law. An illegal sentence is one which exceeds the statutory limits. *Commonwealth v. Hunter*, 768 A.2d 1136 (Pa. Super. 2001). Claims relating to the application of the offense gravity score do not affect the legality of the sentence. *Commonwealth v. Archer*, 722 A. 2d 203 (Pa. Super. 1998)(*en banc*).

Moreover, "[o]ffense Gravity Scores are assigned by the Commission [on Sentencing]. The court has no discretion to set the Offense Gravity score for a crime." Sentencing Guidelines Implementation Manual, 6th edition, §303.3(a), June 3, 2005, unchanged in revised manual of

December 5, 2008.  Further, even the "[c]alculation of a prior record score or an Offense Gravity Score are not matters within the trial court's discretion. *Commonwealth v. Johnson*, 618 A. 2d 415,418 (Pa. Super. 1982). "Allowing the court such discretion would allow it to defeat the purpose of the guidelines." *Commonwealth v. Johnakin*, 502 A. 2d 620, 622 (1985).

Stoltzfoos also argues that the assignment of an offense gravity score of "eight" to all sub-sections of section 5111 of the Crimes Code violates the constitutional requirement of equal protection. While the proponent of an equal protection argument generally alleges that his rights have been violated because of disparate treatment, Stoltzfoos alleges that his rights have been violated because of identical treatment.  He points out that while sub-sections (1) and (2) each require "knowledge that the property involved represents the proceeds of unlawful activity," section 5111(a)(3)does not  contain such language. 18 Pa.C.S. §§5111).  Stoltzfoos proposes that this difference in language requires a difference in offense gravity scores, and that his right to equal protection has been violated by application of the same offense gravity score to all sections of the statute.

When addressing an equal protection challenge, a reviewing court must first determine the appropriate degree of scrutiny to which the challenged act should be subject. *Commonwealth v. Jones*,  543 A. 2d 548 (Pa. Super. 1988).  In *Commonwealth v. Bell*, 512 Pa. 334, 344-345, 516 A.2d 1172, 1178 (1986), our Supreme Court delineated the appropriate levels of scrutiny. Where the classification relates to who may exercise a fundamental right or is based on a suspect trait such as race or national origin, strict scrutiny is required and the classification must serve the achievement of a compelling state interest.  A classification which is either sensitive or important, but not fundamental, must serve an    important governmental interest and be substantially related to the achievement of that objective.   Classifications which fall into neither

of these two categories will be valid as long as they are rationally related to a legitimate governmental interest. *Ibid.*

Stoltzfoos has not established that persons convicted under section 5111 of Title 18 are members of a suspect or sensitive class nor has he established that the classification involves the exercise of a fundamental or important right. It is not likely that he could. An offense gravity score affects only one who awaits sentencing. It affects no fundamental right or suspect class; the classification is neither important nor sensitive. *See Commonwealth v. Bell*, 512 Pa. 334, 516 A.2d 1172 (1986) (holding that application of mandatory minimum sentencing provision does not implicate a fundamental liberty interest, as the defendant's fundamental right to be free from confinement, has already been forfeited.). The appropriate level of scrutiny is that the classification be rationally related to a legitimate government interest. *Ohio Bureau of Employment Services v. Hodory*, 431 U.S. 471, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977); *Commonwealth v. Minnich*, 662 A.2d 21, 23 (Pa. Super. 1995).

The concept of equal protection requires that uniform treatment be given to similarly situated parties. *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed. 2d 506 (1964); *Commonwealth v. Kramer*, 474 Pa. 341, 378 A.2d 824 (1977). All persons found guilty of any section of 5111 commit a felony of the first degree. All offenders, then, are similarly situated. Because each sub-section is graded as a first-degree felony, it is appropriate—and rational--that each sub-section be assigned the same offense gravity score.

The claimed constitutional violation is meritless. Stotlzfoos is not entitled to relief.

**VII.   The Commonwealth Is Permitted To Introduce At Sentencing Evidence Of The Character Of The Defendant.**

Stoltzfoos argues that because the Commonwealth charged an offense which did not require proof that financial transactions were the proceeds of unlawful activities, the trial court

erred in allowing the Commonwealth to introduce at sentencing testimony which tended to show that the money Stoltzfoos deposited was the fruit of unlawful activities.  Brief for Appellant, p. 75.

The disputed testimony came from two agents of the Office of Attorney General who testified that during the execution of a search warrant on Stoltzfoos' residence, agents found in the attic numerous credit cards, phone cards, movie passes, gift cards, store credits, reward cards, one thousand, 37 cent stamps, fans, stereo equipment, exercise equipment, office supplies, and more than 3,000, brand-new DVDs and CDs.   Sentencing N.T. pp. 24-33.

The claim that the sentencing court should not have heard this testimony is contrary to law.   A sentencing court has the duty to impose sentence in consideration of both the particular circumstances of the offense and the character of the defendant.  *Commonwealth v. Martin*, 466 Pa. 118, 351 A.2d   650(1976).  "The first responsibility of the sentencing judge [is] to be sure that he ha[s] before him sufficient information to enable him to make a determination of the circumstances of the offense and the character of the defendant." *Commonwealth v. Carter*, 485 A.2d 802, 804 (Pa. Super. 1984).   "[A]t a minimum, the court is [to be] apprised of the particular circumstances of the offense, not limited to those of record, as well as the defendant's personal history and background." *Commonwealth v. Goggins*, 748 A.2d 721 (Pa. Super. 2000). In support of this duty, a sentencing court has wide latitude in considering facts, regardless of whether the facts are produced by witnesses whom the court sees and hears. *Commonwealth v. Orsino*, 178 A.2d 843, 846 (Pa.Super.1962).

Stoltzfoos also renews the argument of trial counsel who argued at sentencing that the court erred in considering the Commonwealth's sentencing memorandum because the

memorandum was, itself, hearsay, and contained evidence of "prior bad acts." Sentencing  N.T. p. 8.

The designation of a sentencing memorandum as hearsay is a novel claim that, if accepted, would seemingly preclude the filing of all manner of memoranda, responses and briefs. Even if the memorandum were properly classified as "hearsay," it was not err for the sentencing court to consider its content. "A proceeding held to determine sentence is not a trial, and the court is not bound by the restrictive rules of evidence properly applicable to trials." *Commonwealth v. Medley*, 725 A.2d 1225, 1229 (Pa. Super. 1999). Further, the sentencing memorandum was offered to inform the court of the character of the defendant. The memorandum outlined, among other things, Stoltzfoos' financial history, including gross earnings reported to the Internal Revenue Service between 1999 and 2005 and earnings reported to the Social Security Administration for the years between 1987 and 1999. The amount of these composite earnings was far less than the half a million dollars in cash which Stoltzfoos distributed among his ten different bank accounts during a six-week period in 2006.   This information was made known to the court in refutation of Stoltzfoos position that he had legally earned the more than half a million dollars  he deposited to his ten, different bank accounts during a six-week period in 2006.  Sentencing N.T. pp. 9-8.

Further, Stoltzfoos presents no credible reason as to how the admission of this information at sentencing was prejudicial to him.  Based on his culpability alone, Stoltzfoos faced a maximum prison term of 1,160 years in prison and a fine of $1,080,400. For a defendant like Stoltzfoos, who had committed an offense assigned a gravity score of eight and who had a prior record score of one, the standard range calls for a minimum of 12 to 18 months in prison. 42 Pa. C.S. §9721, 204 Pa. Code §303.15.   Stoltzfoos was sentenced on count 1 to one to five

years in prison. On count 2 he was sentenced to one to five years in prison, the sentence to be served consecutively to count 1. On counts 3 through 58, he was sentenced to concurrent, one to five year sentences. This sentencing scheme places the sentence imposed at the low end of the applicable standard range of the guideline sentence.

The memorandum and the testimony admitted by the Commonwealth at sentencing were properly submitted in aid of sentencing. There is no merit to this claim of error.

## VIII. Testimony At Sentencing Did Not Violate The Defendant's Constitutional Rights.

This claim for relief also relates to the testimony of two agents of the Office of Attorney General who, at sentencing, testified that during the execution of a search warrant at Stoltzfoos' residence, agents found numerous credit cards, phone cards, movie passes, gift cards, store credits, reward cards, one thousand, 37 cent stamps, fans, stereo equipment, exercise equipment, office supplies, and more than 3,000, brand-new DVDs and CDs. Sentencing, N.T. pp. 24-33. Defense counsel sought permission to question the first of the two witnesses, Agent Daniel Licklider of the Office of Attorney General. The lower court denied the request. Sentencing N.T. p. 31.

Stoltzfoos argues that by denying the right to cross examine Agent Licklider, the sentencing court violated his constitutional right to confront witnesses. As the complained of violation occurred at sentencing, the claim lacks merit. "A proceeding held to determine sentence is not a trial, and the court is not bound by the restrictive rules of evidence properly applicable to trials." *Commonwealth v. Medley*, 725 A.2d 1225, 1229 (Pa. Super. 1999). "Although sentencing proceedings must comport with due process, the convicted defendant need not be accorded 'the entire panoply of criminal trial procedural rights.' " *Commonwealth v. Wright*, 508 Pa. 25, 36, 494 A.2d 354, 360 (1985), *quoting Gardner v. Florida*, 430 U.S. 349, 358 n. 9, 97

S.Ct. 1197, 1205 n. 9, 51 L.Ed.2d 393, 402 n. 9 (1977), *aff'd sub nom. McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986).

The sentencing court did not permit cross examination because the testimony offered was nothing more than a list of the items found at the Stoltzfoos' residence during the execution of a search warrant. (The testimony was offered to rebut defense counsel's characterization of Stoltzfoos as a simple man with an eighth grade education who worked in construction and hoarded his money. See N.T.pp. 244, 250 ). The lower court stated that if the Commonwealth's evidence went beyond a listing of items, "I will certainly give the opportunity for counsel to cross-examine." Sentencing N.T. 38. This was a reasonable accommodation given the nature of the testimony.

Again, Stoltzfoos presents no credible argument as to how the admission of this information at sentencing was prejudicial to him. His aggregate sentence after a finding of guilt on 58 felony counts was two to ten years in prison. The minimum sentences were at the low end of the standard range of the guideline sentences. Stoltzfoos was properly and lawfully sentenced, and he is entitled to no relief on this claim.

## IX. The Trial Court Properly Imposed Sentence Within The Confines Of The Law.

Stoltzfoos asserts that the trial court improperly imposed sentence based on the belief that the more than half a million dollars that Stoltzfoos deposited in ten banks over a six-week period was the proceeds of unlawful activity. Stoltzfoos bases this claim on a single comment at sentencing. The lower court noted that Stoltzfoos had pleaded with the court to find that his money had been legitimately earned. The sentencing court responded, "I need not make that determination today as I did keeping ( *sic* ) it out from the ears of the jury, but it is extremely

difficult for me to buy that you claim to be a simple man, yet the items found in your house show an extremely different schemed individual." Sentencing N.T. p. 43.

Because the sentence imposed was lawful and within the standard sentencing guideline range, it cannot be concluded that the sentence was the product of the court's bias. The sentencing court simply expressed an understandable skepticism that this marginally-employed, self-described "simple man" had lawfully purchased the huge array of merchandise stashed in his attic.

As stated previously, Stoltzfoos could have been sentenced to 1,160 years in prison. Sentencing N.T. p. 43. Instead, he received an aggregate sentence of two to ten years in prison on 58, first-degree felony counts. This sentence was composed of a one to five year sentence on count 2 and a consecutive one to five year sentence on Count 2. On Counts 3 through 58, Stoltzfoos was sentenced to one to five years in prison, each sentence to be concurrent with Count 2. Sentencing N.T. p. 44. The one year minimum sentences were at the low end of the standard guideline range for a person with a prior record score of one who was found guilty of committing an offense with a gravity score of eight.

Two to ten years in prison for the commission of 58, first degree felony offenses does not reflect that the sentence was crafted by an improper motive. This claim for relief should be denied and judgment of sentence affirmed.

## X. The Sentencing Court Did Not Violate Stoltzfoos' Right To Remain Silent

Stoltzfoos argues that when, at sentencing, he stopped reading his prepared statement, he demonstrated his intent to invoke his constitutional right to remain silent. Because of this "invocation" of his right to remain silent, Stoltzfoos argues that by posing a hypothetical question to him at sentencing, the sentencing court violated his right not to be a witness against

himself as guaranteed by the Fifth Amendment and Article I, Section 9 of the Pennsylvania Constitution.

This claim is not supported by either the record or the law.   The transcript demonstrates that Stoltzfoos started to read his statement and after completing one sentence and being urged to keep his voice up,  said, "I can't do it." Sentencing N.T. 19. He did not say, "I don't want to do it," but "I can't do it."  The inference to be drawn from the transcript is that Stoltzfoos was too emotionally overwrought to read the statement he had prepared.   Defense counsel then read his client's statement to the court.  Stoltzfoos acquiesced to this reading.   For appellate counsel to suggest that this scenario is equivalent to an invocation of a constitutional right to remain silent is absurd.

The Fifth Amendment right attaches when a person's compelled testimony is incriminating. *Hoffman v. United States*, 341 U.S. 479,486, 71 S. Ct. 814 (1951).  A sentencing proceeding is not a trial. *Commonwealth v. Medley*, 725 A.2d 1225, 1229 (Pa. Super. 1999).

Stoltzfoos stood at sentencing with the presumption of innocence extinguished.  It is because of this change of status that at sentencing, "the convicted defendant need not be accorded 'the entire panoply of criminal trial procedural rights.' " *Commonwealth v. Wright*, 508 Pa. 25, 36, 494 A.2d 354, 360 (1985), quoting *Gardner v. Florida*, 430 U.S. 349, 358 n. 9, 97 S.Ct. 1197, 1205 n. 9, 51 L.Ed.2d 393, 402 n. 9 (1977), aff'd sub nom. *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986).

Stoltzfoos made no invocation of a right to remain silent. It is doubtful whether such a right attaches at sentencing. By asking the defendant a hypothetical question, the sentencing court did not violate any constitutional right.  Further, even if the court did err in posing such a

question, Stoltzfoos   has no credible claim that he was prejudiced by the court's question.  The

sentence imposed was both legal and within the standard guideline range.

This claim for relief should be denied and judgment of sentence affirmed.

## CONCLUSION

For the reasons stated herein, the Commonwealth respectfully requests this Honorable

Court affirm the judgment of sentence entered July 22, 2008, at No. 5995-2006 in the Court of

Common Pleas of Lancaster County.

Respectfully submitted,

THOMAS W. CORBETT, Jr.
Attorney General

RICHARD A. SHEETZ, Jr.
Executive Deputy Attorney General
Director, Criminal Law Division

CHRISTOPHER D. CARUSONE
Chief Deputy Attorney General
Appeals and Legal Services Section


BY: _____
ANDREA F. McKENNA
Senior Deputy Attorney General
Appeals and Legal Services Section
Attorney ID 39717

Office of Attorney General
Appeals and Legal Services Section
16th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 787-6347

Date:  November 18, 2009

## CERTIFICATE OF SERVICE

I hereby certify that I am this day serving two copies of the foregoing *Brief for Appellee* upon the person(s) and in the manner indicated below:

*Service by first class mail*
*addressed as follows:*

**Mary Jean Glick, Esquire**
**Senior Assistant Public Defender**
**150 North Queen Street, Suite 210**
**Lancaster, Pennsylvania 17603**
**(717) 299-8131**
***(Counsel for Appellant)***

ANDREA F. McKENNA
Senior Deputy Attorney General
Attorney I.D. No. 39717

Office of Attorney General
Appeals and Legal Services Section
16th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 787-6347
(Fax) (717) 783-5431

Date: November 18, 2009