# APPENDIX C

J-S12019-10

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| vs. | : | |
| | : | |
| LEVI LAPP STOLTZFOOS, | : | |
| | : | |
| Appellant | : | No. 30 MDA 2009 |

Appeal from the Judgment of Sentence July 22, 2008
In the Court of Common Pleas of Lancaster County
Criminal, No. CP-36-CR-0005995-2006

BEFORE: FORD ELLIOTT, P.J., GANTMAN, AND COLVILLE*, JJ.

MEMORANDUM:          FILED: October 26, 2010

    Appellant, Levi Lapp Stoltzfoos, appeals from the judgment of sentence entered in the Lancaster County Court of Common Pleas, following his jury trial convictions for fifty-eight (58) counts of dealing in proceeds of unlawful activities.[1] We affirm.

    The relevant facts of this case are as follows:

> Between January 6, 2006 and February 11, 2006, [Appellant] made fifty-eight cash deposits, totaling five-hundred, forty-one thousand, one-hundred dollars ($541,100.00), to ten different banks. Specifically, the following deposits were made on the given days:
>
> January 6 & 7, 2006:

---

[1] 18 Pa.C.S.A. § 5111(a)(3).

---

*Retired Senior Judge assigned to the Superior Court.

J-S12019-10

    1.     Bank of Lancaster County        $9,900.00

| 2. | Sovereign Bank | $9,900.00 |
| 3. | Northwest Savings Bank | $9,900.00 |
| 4. | National Penn Bank | $9,900.00 |
| 5. | Ephrata National Bank | $9,900.00 |
| 6. | M&T Bank | $9,900.00 |

January 14, 2006:

| 7. | Coatesville Savings Bank | $9,900.00 |
| 8. | Bank of Lancaster County | $9,900.00 |
| 9. | Sovereign Bank | $9,900.00 |
| 10. | Susquehanna Bancshares, Inc. | $8,700.00 |
| 11. | Northwest Savings Bank | $9,900.00 |
| 12. | National Penn Bank | $9,900.00 |
| 13. | Fulton Savings Bank | $9,900.00 |
| 14. | Ephrata National Bank | $9,900.00 |
| 15. | M&T Bank | $9,900.00 |
| 16. | Graystone Bank | $9,900.00 |

January 19, 2006:

| 17. | Northwest Savings Bank | $9,900.00 |
| 18. | National Penn Bank | $9,900.00 |
| 19. | Ephrata National Bank | $9,900.00 |
| 20. | M&T Bank | $9,900.00 |
| 21. | Graystone Bank | $9,900.00 |
| 22. | Susquehanna Bancshares, Inc. | $9,900.00 |

January 20, 2006:

| 23. | Bank of Lancaster County | $9,900.00 |
| 24. | Sovereign Bank | $9,900.00 |
| 25. | Fulton Savings Bank | $9,900.00 |

January 21, 2006:

| 26. | Coatesville Savings Bank | $9,500.00 |
| 27. | Bank of Lancaster County | $9,500.00 |
| 28. | Sovereign Bank | $9,000.00 |
| 29. | Susquehanna Bancshares, Inc. | $9,000.00 |
| 30. | Northwest Savings Bank | $9,500.00 |
| 31. | National Penn Bank | $9,000.00 |
| 32. | Fulton Savings Bank | $9,000.00 |
| 33. | Ephrata National Bank | $9,500.00 |

| 34. | M&T Bank | $9,000.00 |
| 35. | Graystone Bank | $9,000.00 |

January 27, 2006:

| 36. | Bank of Lancaster County | $9,000.00 |

January 28, 2006:

| 37. | Coatesville Savings Bank | $9,000.00 |
| 38. | Sovereign Bank | $9,000.00 |
| 39. | Susquehanna Bancshares, Inc. | $9,000.00 |
| 40. | Northwest Savings Bank | $9,000.00 |
| 41. | National Penn Bank | $9,000.00 |
| 42. | Fulton Savings Bank | $9,000.00 |
| 43. | Ephrata National Bank | $9,000.00 |
| 44. | M&T Bank | $9,000.00 |
| 45. | Graystone Bank | $9,000.00 |

February 4, 2006:

| 46. | Coatesville Savings Bank | $9,000.00 |
| 47. | Bank of Lancaster County | $9,000.00 |
| 48. | Sovereign Bank | $9,000.00 |
| 49. | Northwest Savings Bank | $9,000.00 |
| 50. | National Penn Bank | $9,000.00 |
| 51. | Fulton Savings Bank | $6,600.00 |
| 52. | M&T Bank | $9,000.00 |

February 11, 2006:

| 53. | Coatesville Savings Bank | $5,200.00 |
| 54. | Bank of Lancaster County | $9,000.00 |
| 55. | Susquehanna Bancshares, Inc. | $9,000.00 |
| 56. | National Penn Bank | $9,900.00 |
| 57. | Fulton Savings Bank | $9,000.00 |
| 58. | Graystone Bank | $10,000.00 |

[Appellant] was charged, under Information 5995-2006, with 58 counts of dealing in proceeds of unlawful activity.[2] Prior to trial, the Commonwealth filed its Motion

---

[2] The Commonwealth also charged Appellant with one (1) count of receiving stolen property, 18 Pa.C.S.A. § 3925, for his possession of ninety-three (93)

> for Court to Take Notice of Federal Law and Regulation.
> The [court] granted the Commonwealth's motion [on] June
> 5, 2007.  [Appellant] filed his Omnibus Pretrial Motion on
> May 14, 2007.   In relevant part, [Appellant's] motion
> included a motion to quash counts 1 through 58 based on
> 18 Pa.C.S. § 5111(a)(3) not containing a *mens rea*
> element.    The [c]ourt heard argument regarding the
> pretrial motions prior to trial on May 5, 2008.  The [c]ourt
> denied [Appellant's] motion and referred to 18 Pa.C.S.
> 302(c), which directs the use of an intentional, knowing, or
> reckless culpability element when the culpability element
> sufficient to establish a material element of an offense is
> not prescribed by law.

(Trial Court Opinion, filed March 26, 2009, at 1-3) (internal footnote omitted).

Following trial, a jury convicted Appellant of all fifty-eight (58) counts of dealing in proceeds of unlawful activities.  On July 22, 2008, the court sentenced Appellant to an aggregate term of two (2) to ten (10) years of imprisonment.   The court also imposed a civil penalty of $540,200.00, pursuant to Section 5111(c).  On August 1, 2008, Appellant timely filed post-sentence motions.  The court denied Appellant's post-sentence motions on September 9, 2008.  Appellant did not file a notice of appeal.

On December 5, 2008, Appellant timely filed a counseled petition, pursuant to the Post Conviction Relief Act ("PCRA").[3]   In his petition, Appellant requested the restoration of his direct appeal rights *nunc pro tunc*.

---

Pennsylvania Turnpike toll tickets with a combined value of $8,390.00.  Prior to trial, the Commonwealth agreed to the court's entry of *nolle prosequi* for this count.

[3] 42 Pa.C.S.A. §§ 9541-9546.

J-S12019-10

Also on December 5, 2008, the court granted relief, instructing Appellant to file a notice of appeal within thirty (30) days.

Appellant timely filed the instant notice of appeal on December 31, 2008. On January 5, 2009, the court ordered Appellant to file a concise statement of matters complained of on appeal, pursuant to Pa.R.A.P. 1925(b). Appellant timely filed his Rule 1925(b) statement on January 26, 2009.[4]

Appellant now raises ten issues for our review:

> DID THE TRIAL COURT ERR IN RULING THAT 18 Pa.C.S. § 5111(a)(3) WAS NOT VOID FOR VAGUENESS?
>
> DID THE TRIAL COURT ERR IN RULING THAT 18 Pa.C.S. § 5111(a)(3) WAS NOT VOID FOR OVERBREADTH, WHERE THE STATUTE CRIMINALIZES THE DEPOSITING OF LAWFULLY ACQUIRED CASH INTO FINANCIAL INSTITUTIONS IN A MANNER INTENDED TO MAINTAIN [A] CONSTITUTIONAL RIGHT TO PRIVACY IN…FINANCIAL RECORDS?
>
> DID THE TRIAL COURT ERR IN INSTRUCTING THE JURY THAT THE COMMONWEALTH WAS ALLEGING THAT [APPELLANT] WAS GUILTY OF A FEDERAL CRIME, SET FORTH AT 31 U.S.C. § 5324, WHICH INSTRUCTION WAS IRRELEVANT, IMPROPER, AND HIGHLY PREJUDICIAL?
>
> WAS THE EVIDENCE INSUFFICIENT TO SUSTAIN [APPELLANT'S] CONVICTION FOR 58 COUNTS OF DEALING IN UNLAWFUL PROCEEDS WHERE THE COMMONWEALTH PRESENTED INSUFFICIENT EVIDENCE OF A STATE OR FEDERAL TRANSACTION REPORTING REQUIREMENT,

---

[4] On September 18, 2009, Appellant filed an application for relief with this Court, requesting permission to file a brief exceeding the page limit set forth in Pa.R.A.P. 2135. The decision on the motion was deferred to the merits panel. We now grant the motion. Appellant's brief is accepted as filed.

WHICH [APPELLANT] HAD ALLEGEDLY AVOIDED?

WAS THE $540,200.00 CIVIL PENALTY, IMPOSED PURSUANT TO 18 Pa.C.S. 5111(c), AN EXCESSIVE FINE AND CRUEL AND UNUSUAL PUNISHMENT?

WAS THE ASSIGNMENT OF AN OFFENSE GRAVITY SCORE OF EIGHT TO THE NEWLY CREATED OFFENSE SET FORTH IN 18 Pa.C.S. 5111(a)(3), DESPITE THE SIGNIFICANT DIFFERENCE IN CRIMINAL LIABILITY FROM THAT REQUIRED FOR A CONVICTION UNDER SUBSECTIONS (1) OR (2), A VIOLATION OF [APPELLANT'S] RIGHT TO EQUAL PROTECTION OF THE LAWS?

DID THE TRIAL COURT ERR IN REFUSING TO EXCLUDE THE COMMONWEALTH'S SENTENCING MEMORANDUM, AND IN PERMITTING THE TESTIMONY OF [INVESTIGATORS FROM THE ATTORNEY GENERAL'S OFFICE], WHERE THE PURPOSE OF THE MEMORANDUM AND TESTIMONY WERE TO ATTEMPT TO PROVE THAT THE MONEY [APPELLANT] HAD DEPOSITED WAS THE PROCEEDS OF UNLAWFUL ACTIVITY?

BY REFUSING TO PERMIT DEFENSE COUNSEL FOR [APPELLANT] TO CROSS-EXAMINE THE COMMONWEALTH'S WITNESSES AT SENTENCING, DID THE TRIAL COURT VIOLATE [APPELLANT'S] RIGHT TO THE ASSISTANCE OF COUNSEL, AND HIS RIGHT TO CONFRONT THE WITNESSES AGAINST HIM?

IN IMPOSING SENTENCE, DID THE TRIAL COURT IMPROPERLY BASE ITS SENTENCE UPON ITS BELIEF, WHICH WAS NEITHER ALLEGED NOR PROVED AT TRIAL, AND EVIDENCE OF WHICH SHOULD NOT HAVE BEEN ADMITTED AT SENTENCING, THAT THE MONEY [APPELLANT] DEPOSITED WAS THE PROCEEDS OF UNLAWFUL ACTIVITIES?

BY DEMANDING THAT [APPELLANT] ANSWER THE TRIAL COURT'S HYPOTHETICAL LEGAL QUESTION ABOUT PROPERTY RIGHTS IN BORROWED MONEY, BY REFUSING TO PERMIT [APPELLANT] TO CONSULT WITH HIS ATTORNEY REGARDING THE COURT'S QUESTION, AND BY REFUSING TO PERMIT DEFENSE COUNSEL TO ADDRESS

> THE COURT ON [APPELLANT'S] BEHALF, DID THE TRIAL
> COURT VIOLATE [APPELLANT'S] RIGHT TO REMAIN SILENT
> AT SENTENCING, AND HIS RIGHT TO THE ASSISTANCE OF
> COUNSEL?

(Appellant's Brief at 7-8).

In his first issue, Appellant asserts Section 5111(a)(3) is defective, because it does not include a *mens rea*. Appellant acknowledges Section 302 provides the *mens rea* of "intentionally, knowingly or recklessly" for statutes which do not otherwise provide a *mens rea*. Appellant also notes Section 5111(a)(1) and (2) require knowing and intentional conduct. Under these circumstances, Appellant maintains "there is no way for an ordinary person to determine whether [Section 5111(a)(3)] is a strict liability offense, whether it requires *mens rea* as set forth in [Section] 302, or whether the requisite *mens rea* is knowing and intentional conduct as is required in subsections one and two of the statute." (Appellant's Brief at 29).

Appellant further argues the title of Section 5111, "Dealing in proceeds of unlawful activities," describes conduct which is not mentioned in Subsection (a)(3). Because the title is not reconcilable with the offense described in Subsection (a)(3), Appellant contends "an ordinary person simply cannot [know] what conduct is prohibited, and the statute encourages arbitrary and discriminatory enforcement." (**Id.** at 48). Appellant concludes Section 5111(a)(3) is unconstitutionally vague on its face. We disagree.

"When an appellant challenges the constitutionality of a statute, the

- 8 -

appellant presents this Court with a question of law." ***Commonwealth v. Howe***, 842 A.2d 436, 441 (Pa.Super. 2004).

> Our consideration of questions of law is plenary. A statute is presumed to be constitutional and will not be declared unconstitutional unless it clearly, palpably, and plainly violates the constitution. Thus, the party challenging the constitutionality of a statute has a heavy burden of persuasion.

***Id.*** (internal citations omitted).

"The void for vagueness doctrine, as extensively developed by the United States Supreme Court, is a due process doctrine incorporating notions of fair notice and warning." ***Commonwealth v. Costa***, 861 A.2d 358, 361 (Pa.Super. 2004), *appeal denied*, 584 Pa. 672, 880 A.2d 1236 (2005) (quoting ***Commonwealth v. Potts***, 460 A.2d 1127, 1133 (Pa.Super. 1983)).

> The terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties…. A statute which either forbids or requires the doing of an act in terms so vague that [people] of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law. The void for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. Due process is satisfied if the statute provides reasonable standards by which a person may gauge his future conduct.

***Costa, supra*** at 361-62 (quoting ***Commonwealth v. Mayfield***, 574 Pa. 460, 467, 832 A.2d 418, 422 (2003)).

Vagueness challenges can be of two types. **Commonwealth v. Habay**, 934 A.2d 732 (Pa.Super. 2007), *appeal denied*, 598 Pa. 746, 954 A.2d 575 (2008).

> First, a challenge of facial vagueness asserts that the statute in question is vague when measured against any conduct which the statute arguably embraces. Second, a claim that a statute is vague as applied contends the law is vague with regard to the particular conduct of the individual challenging the statute.
>
> For a court to entertain challenges of facial vagueness, the claims must involve First Amendment issues. When a case does not implicate First Amendment matters, vagueness challenges are to be evaluated in light of the facts at hand—that is, the statute is to be reviewed as applied to the defendant's particular conduct.

**Id.** (internal citations omitted).

"A facial challenge, in this context, means a claim that the law is invalid *in toto*—and therefore incapable of any valid application." **Costa, supra** at 362 (internal quotation marks omitted).

> In cases that do not implicate First Amendment freedoms, facial vagueness challenges may be rejected where an appellant's conduct is clearly prohibited by the statute in question. Additionally, a vagueness challenge fails if a statute has a specific intent requirement, because an appellant cannot complain he did not understand the crime where he has been found to have had the specific intent of doing what is prohibited.

**Id.** (internal citations omitted).

Section 5111(a) provides as follows:

### § 5111.  Dealing in proceeds of unlawful activities

**(a)   Offense defined.**—A person commits a felony of the first degree if the person conducts a financial transaction under any of the following circumstances:

(1)   With knowledge that the property involved represents the proceeds of unlawful activity, the person acts with the intent to promote the carrying on of the unlawful activity.

(2)   With knowledge that the property involved represents the proceeds of unlawful activity and that the transaction is designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of the proceeds of unlawful activity.

(3)   To avoid a transaction reporting requirement under State or Federal law.

18 Pa.C.S.A. § 5111(a).

The Crimes Code also provides the general requirements for culpability when a statute is silent regarding *mens rea*:

**§ 302.  General requirements of culpability**

*        *        *

**(c)  Culpability required unless otherwise provided.**—When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto.

18 Pa.C.S.A. § 302(c).

"Whether a given statute is to be construed as requiring criminal intent is to be determined by the court, by considering the subject matter of the prohibition as well as the language of the statute, and thus ascertaining the intention of the legislature." ***Mayfield, supra*** at 475, 832 A.2d at 427

(quoting *Commonwealth v. Black*, 380 A.2d 911, 913 (Pa.Super. 1977)).

"The fact that a criminal statute is silent with regard to a culpability requirement does not mean that the Legislature intended to dispense with the same." *Commonwealth v. Gallagher*, 592 Pa. 262, 267, 924 A.2d 636, 638-39 (2007).

> Instead, there is a long-standing tradition, which is reflected in the plain language of Section 302, that criminal liability is not to be imposed absent some level of culpability. Thi s is because the imposition of absolute liability for a crime is generally disfavored and an offense will not be considered to impose absolute liability absent some indication of a legislative directive to dispense with *mens rea*.

*Id.* at 267, 924 A.2d at 639.

"A criminal statute that imposes absolute liability typically involves regulation of traffic or liquor laws." *Costa, supra* at 363-64 (quoting *Commonwealth v. Pond*, 846 A.2d 699, 706 (Pa.Super. 2004)).

> Such so-called statutory crimes are in reality an attempt to utilize the machinery of criminal administration as an enforcing arm for social regulation of a purely civil nature, with the punishment totally unrelated to questions of moral wrongdoing or guilt. Along these same lines, an additional factor to consider when determining if the legislature intended to eliminate the *mens rea* requirement from a criminal statute is whether the statute imposes serious penalties. The more serious the penalty, such as a lengthy term of imprisonment, the more likely it is that the legislature did not intend to eliminate the *mens rea* requirement (unless the legislature plainly indicates otherwise in the language of the statute, as for statutory rape).

*Costa, supra* at 363-64 (quoting *Pond, supra* at 706-07).  A determination

J-S12019-10

of whether the legislature intended to impose strict criminal liability also requires examination of the effect of the punishment on the defendant's reputation. *Id.*

"The title and preamble of a statute may be considered in the construction thereof." 1 Pa.C.S.A. § 1924. "The headings prefixed to titles, parts, articles, chapters, sections and other divisions of a statute **shall not** be considered to control but may be used to aid in the construction thereof." *Id.* (emphasis added).  The title of a statute "is in no sense conclusive, particularly when there is no ambiguity in the body of the statute or ordinance itself." ***Commonwealth v. Reefer***, 816 A.2d 1136, 1143 n.10 (Pa.Super. 2003), *appeal denied*, 574 Pa. 759, 831 A.2d 599 (2003) (quoting ***Commonwealth v. Campbell***, 758 A.2d 1231, 1237 (Pa.Super. 2000)). "[T]he title cannot control the plain words of the statute and…even in the case of ambiguity it may be considered only to resolve the uncertainty." ***Commonwealth v. Magwood***, 503 Pa. 169, 177, 469 A.2d 115, 119 (1983) (internal quotation marks omitted).

Instantly, Appellant made fifty-eight cash deposits between January 6, 2006 and February 11, 2006.  Appellant utilized ten different banks and deposited less than $10,000.00 on each occasion.  During the subsequent investigation, Appellant told police: "I knew that when you withdrew $10,000.00 cash or deposit $10,000.00 cash, a form has to be filled out." (***See*** N.T. Trial, 5/6/08, at 92.)  Appellant admitted he learned of the bank-

- 13 -

reporting requirements in 1999, and he did not want any part of "government investigation or harassment."[5]  (*See id.*)

The Commonwealth also presented witnesses who testified that federal law requires a bank to file a currency transaction report ("CTR") each time a customer makes a deposit in excess of $10,000.00.  Further, federal law criminalizes the structuring of financial transactions to avoid the filing of a CTR.  This evidence supports the application of Section 5111(a)(3) to Appellant's conduct, as the statute applies to all instances where financial transactions are structured to avoid a reporting requirement under state **or** federal law.  *See* Pa.C.S.A. § 5111(a)(3).

Additionally, Section 5111(a)(3) does not contain a plain indication that the legislature intended the statute to impose strict criminal liability or operate as an enforcing arm for social regulation of a purely civil nature.  A conviction under this statute constitutes a first degree felony; convictions can lead to serious criminal penalties and can significantly harm a

---

[5] The certified record belies Appellant's seemingly innocuous explanation for his conduct.  Specifically, the affidavit of probable cause posited the following explanation for the source of Appellant's funds:

> [I]t appears that [Appellant] would purchase an item from one of the merchant's stores, then go to the same or other stores owned by the merchant, and return the same item using a duplicate or bogus receipt.  It is believed that, in order for [Appellant] to complete his swindle, he would return an item taken off of the shelves from each of the stores.  I believe that [Appellant's] swindle enabled him to receive multiple credits on a single purchase.

(Affidavit of Probable Cause, dated 10/26/06, at 13).

defendant's reputation.  Nothing in the plain language of Section 5111(a)(3) shows a legislative directive to dispense with a *mens rea* requirement.  Thus, Section 302(c) applies.

Based upon the foregoing, Section 5111(a)(3) is not impermissibly vague on the ground that it contains no specific *mens rea* requirement.  **See Gallagher, supra**; **Mayfield, supra**; **Costa, supra**.  Moreover, there is no merit to Appellant's argument regarding the title of the statute, because the body of the statute is not ambiguous.  **See Reefer, supra**.  Although Appellant suggests the title of the statute, "Dealing in proceeds of unlawful activities," prevents an ordinary person from understanding the prohibited conduct in Section 5111(a)(3), Appellant's own statements demonstrated a keen awareness of exactly what acts the statute prohibited.  Therefore, Appellant is not entitled to relief on his first claim.

In his second issue, Appellant relies on **Commonwealth v. DeJohn**, 486 Pa. 32, 403 A.2d 1283 (1979), for the proposition that Pennsylvanians have a right to privacy in their financial records, even though these records are disclosed to their banks.  Despite this privacy right, Appellant asserts Section 5111(a)(3) criminalizes a depositor's decision to structure transactions to avoid reporting requirements, even if the money involved was lawfully acquired.  Under these circumstances, Appellant argues Section 5111(a)(3) violates an individual's right to privacy in his financial records "by criminalizing a person's attempts to keep private what the Pennsylvania

Constitution says he has a constitutional right to keep private." (Appellant's Brief at 51-52). Appellant further argues the state does not have a compelling interest to justify the criminalization of such conduct. Appellant concludes Section 5111(a)(3) is unconstitutionally overbroad. We disagree.

"A statute is unconstitutionally overbroad only if it punishes lawful constitutionally protected activity as well as illegal activity." *Commonwealth v. Davidson*, 595 Pa. 1, 18, 938 A.2d 198, 208 (2007) (internal quotation marks omitted).

> Thus, in determining whether a statute is unconstitutional due to overbreadth, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. The overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. Consequently, if a statute's overbreadth is substantial, it may not be enforced against anyone until it is narrowed to reach only unprotected activity.
>
> \*   \*   \*
>
> [The] function of overbreadth adjudication…attenuates as the prohibited behavior moves from pure speech towards conduct, where the conduct falls within the scope of otherwise valid criminal laws that reflect legitimate state interests…. [Further,] while such laws may implicate protected speech, at some point that potential effect does not justify invalidating a statute prohibiting conduct that a state has the power to proscribe.

*Id.* at 18-19, 938 A.2d at 208 (internal citations and quotation marks omitted).

"The rationale of the overbreadth doctrine is that third parties not presently before the court may refrain from exercising their constitutionally

protected rights for fear of criminal sanctions contained in an overly broad enactment." *Commonwealth v. Scott*, 878 A.2d 874, 879 (Pa.Super. 2005), *appeal denied*, 586 Pa. 749, 892 A.2d 823 (2005). "The overbreadth doctrine is an exception to the traditional rules of standing and allows a party to assert the First Amendment rights of those not before the court. The overbreadth doctrine applies in First Amendment cases which involve non-commercial speech." *Id.* at 879-80 (internal citation omitted).

In *DeJohn*, the defendant was a suspect in the murder of her husband. During their investigation, the authorities served two "subpoenas" on the defendant's bank, demanding copies of all information pertaining to her accounts with the victim. Pursuant to this request, the authorities obtained a cancelled check. The defendant filed a motion to suppress this evidence, which the court denied. On appeal, the defendant argued the subpoenas were unlawful, and the cancelled check should have been suppressed. The Commonwealth insisted, however, that a depositor lacks standing to challenge the seizure of her bank records.

In response to the Commonwealth's argument, our Supreme Court concluded:

> We are convinced that under...the Pennsylvania Constitution bank customers have a legitimate expectation of privacy in records pertaining to their affairs kept at the bank. Since the records seized in the instant case were taken pursuant to an invalid subpoena, and [the defendant] had a legitimate expectation of privacy in those records, [the defendant] has standing to challenge their admissibility.

- 17 -

***DeJohn, supra*** at 1291, 403 A.2d at 49.  Nevertheless, the Court stopped

short of creating a "banker-customer" privilege:

> The Commonwealth next argues that adopting ***Burrows***
> [***v. Superior Court of San Bernardino County***, 13
> Cal.3d 238, 118 Cal.Rptr. 166, 529 P.2d 590 (1974)]
> would amount to this [C]ourt's creation of banker-
> customer privileges, a task which should be left to the
> Legislature.  We do not believe, however, that our decision
> in any way creates such a privilege, as the holder of any of
> the traditionally recognized privileges cannot be compelled
> to waive said privilege.  A bank could always be compelled
> to turn over customers' records when served with a valid
> search warrant or some other type of valid legal process,
> such as a lawful subpoena.

***Id.*** at 1291, 403 A.2d at 48.

Instantly, Section 5111(a)(3) proscribes financial transactions

structured to avoid state or federal reporting requirements.  This

qualification to the term "financial transactions" narrows and limits the reach

of the statute.  In doing so, the legislature made clear it did not seek to

punish individuals for **routine** cash deposits and withdrawals from their

bank accounts.  Rather, the statute prohibits only those deposits and/or

withdrawals which are calculated to evade certain banking reporting

regulations.

There is a compelling state interest in punishing those who knowingly

evade reporting requirements.  CTRs and other bank records must be

maintained, because of their usefulness in criminal, tax, and regulatory

investigations and proceedings.  Contrary to Appellant's assertions, his right

- 18 -

J-S12019-10

to privacy in these records is not unfettered. **See DeJohn, supra**. Thus, the prohibitions set forth in Section 5111(a)(3) comport with constitutional principles, and the statute is not overbroad **on the ground alleged**. **See Davidson, supra**.

In his third issue, Appellant contends the trial court instructed the jury on Section 5324 of the United States Code. Appellant claims Section 5324 does not set forth any transaction reporting requirement that he was alleged to have avoided; instead, Section 5324 sets forth a separate, federal criminal offense. Appellant insists an instruction regarding Section 5324 was completely unrelated to the charges at issue, and the mere mention of this statute left the jury believing Appellant had been charged with a federal crime. Appellant concludes the court provided an erroneous and prejudicial jury charge, and this Court must grant a new trial on this basis. We disagree.

"An appellate court must assess the jury instructions as a whole to determine whether they are fair and impartial." **Commonwealth v. Collins**, 546 Pa. 616, 620, 687 A.2d 1112, 1113 (1996). A jury charge is erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. **Commonwealth v. Baker**, 963 A.2d 495 (Pa.Super. 2008).

> A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error.

- 19 -

> Consequently, the trial court has wide discretion in
> fashioning jury instructions.

*Id.* at 507 (quoting ***Commonwealth v. Brown***, 911 A.2d 576, 583

(Pa.Super. 2006), *appeal denied*, 591 Pa. 722, 920 A.2d 830 (2007)).

"We will not rigidly inspect a jury charge, finding reversible error for

every technical inaccuracy...." ***Commonwealth v. Jones, K.***, 858 A.2d

1198, 1200 (Pa.Super. 2004).

> Error cannot be predicated on isolated excerpts of the
> charge...it is the general effect of the charge that controls.
> ... The trial court may use its own form of expression to
> explain difficult legal concepts to the jury, as long as the
> trial court's instruction accurately conveys the law.  A
> verdict will not be set aside if the instructions of the trial
> court, taken as a whole, and in context, accurately set
> forth the applicable law.

*Id.* at 1201 (internal citations omitted).

Instantly, the court instructed the jury, in pertinent part, as follows:

> In this particular case, [Appellant] is charged under a
> section which is entitled dealing in proceeds of unlawful
> activities.  To find [Appellant] guilty of this offense, you
> must find that the following elements have been proven
> beyond a reasonable doubt.  First, [Appellant] conducted a
> financial transaction.
>
>           \*     \*     \*
>
> Here, the Commonwealth has charged that a financial
> transaction in which [Appellant] engaged was 58 separate
> transactions to ten separate banks in Lancaster County.
> Second, [Appellant] conducted these financial transactions
> to avoid a transaction reporting requirement under state or
> federal law.
>
> In this case, the Commonwealth alleges that [the
> institution] was required to report the transactions under

> the following provision of law: under the...Federal Code of
> Regulations, Title 31, Part 103.22....    Each financial
> institution other than a casino shall file a report of each
> deposit, withdrawal, exchange or currency or other
> payment or transfer, by, through or such other financial
> institution which involves a transaction of currency of more
> than $10,000.
>
> Additionally, **the Commonwealth alleges [Appellant]**
> **structured each transaction, in violation of 31 U.S.C.,**
> **which is the United States Code, Section 5324**,
> structuring transactions to evade reporting requirement
> prohibited, which states, in relevant part, the domestic
> coin and currency transactions involving financial
> institutions.  No person shall, for the purpose of evading
> the reporting requirements of Section 5313(a) or 5325, or
> any regulation prescribed under any such section,
> reporting or recordkeeping requirements imposed by any
> order issued under Section 5326 or the recordkeeping
> requirements imposed by any regulation prescribed under
> 21—Section 21 of the Federal Deposit Insurance Act, or
> that the person would cause or attempt to cause a
> domestic financial institution to fail to file such a report;
> and thirdly, the value of the property involved in the
> transaction was $542,000.
>
> Culpability required under this particular act is that to
> establish a material element of this offense, a person acts
> either intentionally, knowingly or recklessly with regard to
> the elements of the offense.

(**See** N.T. Trial, 5/7/08, at 285-87) (emphasis added).  At the conclusion of

the charge, but prior to the dismissal of the jury for deliberation, the court

asked counsel for any comments about the instructions.  Defense counsel

objected to the reference to Section 5324, stating: "Your Honor, with regard

to the court's instruction on the structuring...I would make a technical

objection to that.  It's not anywhere in the statutes [the Commonwealth]

charged and it's not before the jury, so I want [an objection] placed on the

record." (*See id.* at 293).  The court noted the objection for the record, but declined to alter the charge on this basis.

> In support of its instruction, the trial court observed:

> > The [c]ourt's mention of [S]ection 5324 was limited to its pertinent part, regarding structuring to avoid reporting requirements.  This limited section served to explain the action prohibited under 18 Pa.C.S. § 5111.  The remaining elements of [S]ection 5111(a)(3) are distinct from the federal statute and the [c]ourt instructed the jury accordingly.  The culpability requirement under the state statute, which differs from the federal statute, was clearly and concisely read into the record to the jury.  Specifically, the [c]ourt instructed the jury on three levels of culpability, intentionally, knowingly, and recklessly, pursuant to 18 Pa.C.S. § 302(c) (where no level of culpability is prescribed by law, such element is established if a person acted intentionally, knowingly, or recklessly).  A review of the entire charge reveals that the [c]ourt did not instruct the jury on the elements of the federal crime and the [c]ourt's instruction on 31 U.S.C.A. § 5324 was limited to the language on structuring transactions to avoid reporting requirements as this action is clearly contemplated by the Pennsylvania statute.

(Trial Court Opinion at 8-9) (internal citation omitted).  We accept this analysis.  Here, the court's use of federal law related to the charges at issue.  Although the court said what Appellant had done violated federal law, the court used Section 5324 merely to illustrate the type of financial "structuring" contemplated in Section 5111(a)(3).  The instruction did not necessarily impart that Appellant had actually been charged with a federal crime.  Thus, the charge was not misleading or confusing.  *See Baker, supra*.

In his fourth issue, Appellant avers the Commonwealth had to prove

the existence of a transaction reporting requirement under state or federal law, which Appellant attempted to avoid through the structuring of his financial transactions.    Appellant concedes the Commonwealth presented some evidence regarding a bank's obligation to complete a CTR for cash deposits over $10,000.00.  Appellant insists, however, the Commonwealth's witnesses did not cite a specific federal regulation which Appellant attempted to evade.   Although the court took judicial notice of the applicable federal regulations, Appellant complains the Commonwealth had to present some evidence of these regulations during its case-in-chief.    Under these circumstances,    Appellant    concludes    the    Commonwealth    presented insufficient evidence to support his convictions.  We disagree.

When examining a challenge to the sufficiency of evidence, our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.    In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder.    In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility  of  innocence.      Any  doubts  regarding  a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.  The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable  doubt  by  means  of  wholly  circumstantial evidence.  Moreover, in applying the above test, the entire record  must  be  evaluated  and  all  evidence  actually

received must be considered.  Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Jones, B.**, 874 A.2d 108, 120-21 (Pa.Super. 2005) (quoting **Commonwealth v. Bullick**, 830 A.2d 998, 1000 (Pa.Super. 2003)).

Additionally, decisions on foreign law are governed by statute as follows:

### § 5327.  Determination of foreign law

**(a)   Notice.—**A party who intends to raise an issue concerning the law of any jurisdiction or governmental unit thereof outside this Commonwealth shall give notice in his pleadings or other reasonable written notice.

**(b)   Materials to be considered.—**In determining the law of any jurisdiction or governmental unit thereof outside this Commonwealth, the tribunal may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the rules of evidence.

**(c)   Court decision and review.—**The court, not jury, shall determine the law of any governmental unit outside this Commonwealth. The determination of the tribunal is subject to review on appeal as a ruling on a question of law.

42 Pa.C.S.A. § 5327.

Instantly, Daniel Licklider, a field investigator from the Pennsylvania Attorney General's office, testified about his investigation of Appellant's financial transactions at issue.  The investigation commenced on February 13, 2006, when a Susquehanna Bancshares employee reported that

- 24 -

Appellant appeared to be making structured deposits. Beginning on February 23, 2006, Agent Licklider executed multiple search warrants, seizing Appellant's records from ten different banks. The bank records revealed Appellant had made fifty-eight deposits over a six-week period in January and February of 2006. Fifty-seven of the deposits consisted of cash in amounts slightly less than $10,000.00.

Regarding evidence of federal reporting requirements, the Commonwealth filed a pretrial motion asking the court to take notice of federal law and regulation. In this motion, the Commonwealth alleged Appellant had structured each of his deposits to avoid the filing of a CTR. The Commonwealth cited 31 U.S.C.A. § 5313 and Code of Federal Regulations, Title 31, Part 103.22. These provisions mandate that a CTR must be filed when, *inter alia*, a financial institution handles a cash deposit of $10,000.00 or more. (**See** Motion for Court to Take Notice of Federal Law and Regulation, filed 6/4/07, at 2.) The Commonwealth also cited 31 U.S.C.A. § 5324, which prohibits the structuring of transactions to avoid reporting requirements. (**Id.**) By order entered June 6, 2007, the court granted the Commonwealth's motion.

At the conclusion of trial, the court formally announced that it had taken judicial notice of the relevant federal provisions. (**See** N.T. Trial, 5/7/08, at 293-94.) Nevertheless, the Commonwealth's case-in-chief also included evidence about these federal provisions. Specifically, Agent

- 25 -

Licklider summarized the banks' reporting requirements under federal law.

(*See* N.T. Trial, 5/6/08, at 124-26.)    The Commonwealth also presented

testimony from Lisa Krick, a compliance officer from Susquehanna

Bancshares.  Ms. Krick explained the process of compiling a CTR as follows:

> [WITNESS]:                We are required by federal law
> to monitor cash activity; various reports are generated and
> various forms are required under the [Bank Secrecy Act]
> statute to be reported to the federal government.
>
> [COMMONWEALTH]:        Okay.  When you say "we," are
> you referring just to Susquehanna Bancshares or financial
> institutions such as banks in general?
>
> [WITNESS]:                Any      financial      institution
> governed by a federal regulator.
>
> [COMMONWEALTH]:        And what, if anything, happens
> with a [CTR] after it's generated by a financial institution?
>
> [WITNESS]:                That document is submitted and
> it is reviewed; and unless there is a problem, a financial
> institution normally doesn't hear anything regarding that
> report.
>
> *       *       *
>
> [COMMONWEALTH]:        Now,  banks  are  required  to
> generate a [CTR] on a cash deposit or withdrawal in
> excess of $10,000.00?
>
> [WITNESS]:                That is correct.
>
> [COMMONWEALTH]:        Are they required to do so on an
> amount less than that?
>
> [WITNESS]:                We are not required to generate
> a CTR on an amount less than that, no.
>
> [COMMONWEALTH]:        Under  the  statute,  does  any
> financial institution have the discretion to do so?

J-S12019-10

> [WITNESS]:                    Absolutely.    That is normally
> utilized, though, with another form.  It's not the CTR form.

(**See** N.T. Trial, 5/7/08, at 219-21.)

Here, Appellant conceded he arranged his deposits to avoid the reporting requirements. Contrary to Appellant's sufficiency argument, the Commonwealth did present evidence of the relevant federal reporting regulations and statutes. Importantly, the Commonwealth filed a pretrial motion for the court to take notice of the relevant federal law. **See** 42 Pa.C.S.A. § 5327. The court granted this motion and took judicial notice of the federal statutes and regulations. **See id.** Based upon the foregoing, sufficient evidence supported Appellant's convictions for dealing in proceeds of unlawful activities. **See Jones, B., supra**.

In his fifth issue, Appellant contends his sentence includes a civil penalty of $540,200.00. Relying on **United States v. Bajakajian**, 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998), Appellant asserts a punitive forfeiture violates the Eighth Amendment of the United States Constitution if it is grossly disproportionate to the gravity of the offenses. Appellant alleges the $540,200.00 fine is grossly disproportionate to the instant offenses, where Appellant merely sought to avoid the banks' reporting requirements. Appellant concludes the $540,200.00 civil penalty constitutes cruel and unusual punishment, and this Court must vacate the civil penalty. We disagree.

"The Eighth Amendment to the U.S. Constitution provides that excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." ***Commonwealth v. Real Property and Improvements Commonly Known As 5444 Spruce Street, Philadelphia***, 574 Pa. 423, 427, 832 A.2d 396, 398-99 (2003) (internal quotation marks omitted).

> The Eighth Amendment is made applicable to the states through the Fourteenth Amendment.  This Court has held that Article I, Section 13 of the Pennsylvania Constitution is coextensive with the Eighth Amendment.  [T]his Court [has previously] reasoned that the excessive fines provision of Article I, Section 13 of the Pennsylvania Constitution is governed by the federal treatment of the Eighth Amendment.
>
> To determine whether the Excessive Fines Clause has been violated, a court must consider whether the statutory provision imposes punishment; and if so, whether the fine is excessive.  The first question determines whether the Eighth Amendment applies; the second determines whether the Eighth Amendment is violated.

***Id.*** at 427-28, 832 A.2d at 399 (internal citations, quotation marks and footnote omitted).

"[A] punitive forfeiture would violate the Excessive Fines Clause 'if it is grossly disproportional to the gravity of a defendant's offense.'" ***Commonwealth v. Smothers***, 920 A.2d 922, 925 (Pa.Cmwlth. 2007), *appeal denied*, 594 Pa. 691, 934 A.2d 75 (2007) (quoting ***Bajakajian, supra*** at 334, 118 S.Ct. at 2036, 141 L.Ed.2d at 329).  "The [C]ourt [in ***Bajakajian***] also enumerated factors limited to the conduct of the

- 28 -

defendant for measuring the gravity of the offense, including a comparison of the penalty imposed to the maximum penalty available, a determination of whether the violation was isolated or was part of a pattern of misbehavior and an assessment of the harm that resulted from the offense charged." ***Id.***

"***Bajakajian's*** gross disproportionality test applies to all punitive forfeitures regardless of the form of the underlying proceedings." ***5444 Spruce Street, supra*** at 435, 832 A.2d at 403. ***See also In re King Properties***, 535 Pa. 321, 635 A.2d 128 (1993), *overruled on other grounds by **5444 Spruce Street, supra*** (holding application of civil forfeiture provision in Controlled Substances Forfeiture Act was punitive in part; therefore, forfeiture under act constituted "fine" subject to review under Excessive Fines Clause).

Further, Section 5111 authorizes the imposition of the following penalties:

### § 5111.  Dealing in proceeds of unlawful activities

*       *       *

**(b)  Penalty.—**Upon conviction of a violation under subsection (a), a person shall be sentenced to a fine of the greater of $100,000 or twice the value of the property involved in the transaction or to imprisonment for not more than 20 years, or both.

**(c)  Civil penalty.—**A person who conducts or attempts to conduct a transaction described in subsection (a) is liable to the Commonwealth for a civil penalty of the greater of:

J-S12019-10

> > (1) the value of the property, funds or monetary instruments involved in the transaction; or
> >
> > (2) $10,000.

18 Pa.C.S.A. § 5111(b), (c).

Instantly, the sentencing court acknowledged it could impose a maximum fine of $1,080,400.00, pursuant to Section 5111(b). (**See** N.T. Sentencing, 7/22/08, at 43.)   Nevertheless, the court elected to impose a civil penalty of $540,200.00, pursuant to Section 5111(c).  The civil penalty corresponded to the amount Appellant had deposited into his bank accounts during the six-week period in 2006.  Under these circumstances, the civil penalty was directly proportional to the gravity of Appellant's offenses. **See Smothers, supra**. **See also Commonwealth v. Mitchell**, 833 A.2d 1220 (Pa.Cmwlth. 2003) (holding forfeiture of vehicle was not grossly disproportional to gravity of offenses, especially where fines and forfeiture together were well below maximum fine authorized under statute). Therefore, Appellant is not entitled to relief on his claim of cruel and unusual punishment.

In his sixth issue, Appellant asserts that individuals convicted under Section 5111(a)(3) are subject to the same offense gravity score ("OGS") as individuals convicted under Section 5111(a)(1) and (2), despite substantial differences in the criminal conduct required under each subsection. Appellant submits:

> Persons convicted of violating subsections one or two must

- 30 -

J-S12019-10

> be conducting financial transactions with knowledge that the money is the proceeds of unlawful activity. 18 Pa.C.S. § 5111(a)(1) and (2). To the contrary, persons convicted of violating subsection three need only have conducted a financial transaction to avoid a transaction reporting requirement—the Commonwealth need not show that the money was the proceeds of unlawful activity or that the transactions were conducted to further any criminal activity, such as tax evasion. Under these circumstances, there is a substantial difference in criminal liability between those persons violating subsections one or two, and those persons violating subsection three, yet all are subjected to the same penalty….

(Appellant's Brief at 68). Appellant complains imposition of the same OGS for each subsection is arbitrary, and not rationally related to a legitimate government interest or substantially related to the object of the statute. Appellant concludes his sentence is illegal, because the court utilized an OGS which violated his equal protection rights. We disagree.

"The essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly." *Commonwealth v. Bullock*, 868 A.2d 516, 524 (Pa.Super. 2005), *cert. denied*, 550 U.S. 941, 127 S.Ct. 2262, 167 L.Ed.2d 1103 (2007).

> However, the principle does not absolutely prohibit the Commonwealth from classifying individuals for the purpose of receiving different treatment, … and does not require equal treatment of people having different needs. Indeed, the Commonwealth may create legislative classifications so long as the classifications rest upon some ground of difference which justifies the classification and [have] a fair and substantial relationship to the object of the legislation.

*Id.* (internal citations and quotation marks omitted).

- 31 -

"Once a classification is challenged, our standard of review depends upon the type of classification at issue." ***Commonwealth v. Bell***, 512 Pa. 334, 344, 516 A.2d 1172, 1177 (1986).

> If the classification implicates a suspect class or fundamental right, we subject the statute to strict scrutiny, and will find it to be valid only if necessary to the achievement of a compelling state interest. If the classification implicates an important though not fundamental right, we must determine whether the classification serves an important governmental interest and [is] substantially related to the achievement of that objective. Finally, the third type of classification, that which implicates neither a suspect class nor a fundamental or important right, will be valid as long as [it is] rationally related to a legitimate governmental interest.

***Id.*** (internal citations and quotation marks omitted).

"As a general matter, economic and social legislation, including legislation creating different categories among criminal offenders, receives rational basis review; however, legislation based on suspect classifications, such as race, national origin, or alienage, as well as classifications that affect fundamental rights are examined under strict scrutiny." ***Doe v. Miller***, 886 A.2d 310, 315 (Pa.Cmwlth. 2005), *affirmed*, 587 Pa. 502, 901 A.2d 495 (2006). "For equal protection purposes, 'fundamental rights' include such constitutional rights as the right to interstate travel, … the right to vote, … rights guaranteed by the First Amendment, … and the right to procreate…." ***Id.*** at 315-16 (internal citations omitted).

Instantly, the classification Appellant has identified—persons convicted under Section 5111—does not implicate a suspect class or a fundamental

right.  *See id.  See also Bell, supra* (explaining challenge to mandatory minimum sentencing provision did not implicate fundamental right; appellant's fundamental right, *i.e.*, freedom from confinement, had already been forfeited).    Further, Section 5111 does **not** distinguish between individuals who commit an offense under Subsection (a)(1), (a)(2), or (a)(3).  An individual convicted of any of these subsections commits a first degree felony and receives an OGS of eight; thus, all offenders are similarly situated.  Because Section 5111 does not classify individuals for the purpose of receiving disparate punishments, there is no equal protection violation. *See Bullock, supra*.  *See also Kramer v. W.C.A.B. (Rite Aid Corp.)*, 584 Pa. 309, 883 A.2d 518 (2005) (explaining no equal protection violation existed where statutory provision did not create classification for unequal distribution of benefits or imposition of burdens).  Therefore, Appellant is not entitled to relief on his equal protection claim.

In his final four issues, Appellant contends the court imposed an aggregate term of two to ten years' imprisonment based upon its belief that the money Appellant had deposited was the proceeds of unlawful activities. Appellant supports this contention by referencing the court's alleged "negative reaction" to his answer for a hypothetical question the court had posed.    Appellant complains the court demanded an answer to this hypothetical, which violated Appellant's right to remain silent at the sentencing proceeding.

Further, Appellant contends the court relied on improper evidence, including the Commonwealth's sentencing memorandum and sentencing hearing testimony from the Commonwealth's investigators. Appellant insists the court compounded its errors by refusing to permit defense counsel to cross-examine the Commonwealth's witnesses at sentencing. Appellant concludes this Court must vacate his sentence and remand the matter for re-sentencing. Appellant's claims challenge the discretionary aspects of his sentence. **See Commonwealth v. Bromley**, 862 A.2d 598 (Pa.Super. 2004), *cert. denied*, 546 U.S. 1095, 126 S.Ct. 1089, 163 L.Ed.2d 863 (2006) (reiterating claim that sentencing court relied upon impermissible factors constitutes challenge to discretionary aspects of sentence).

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. **Commonwealth v. Sierra**, 752 A.2d 910, 912 (Pa.Super. 2000). Prior to reaching the merits of a discretionary sentencing issue:

> [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P.902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 1410 [now Rule 720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Commonwealth v. Martin**, 611 A.2d 731, 735 (Pa.Super. 1992) (most internal citations omitted).

- 34 -

J-S12019-10

When appealing the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. ***Commonwealth v. Mouzon***, 571 Pa. 419, 812 A.2d 617 (2002); Pa.R.A.P. 2119(f). "The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to **exceptional** cases." ***Commonwealth v. Williams***, 562 A.2d 1385, 1387 (Pa.Super. 1989) (*en banc*) (emphasis in original) (internal quotation marks omitted).

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. ***Commonwealth v. Anderson***, 830 A.2d 1013 (Pa.Super. 2003). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Sierra, supra*** at 912-13. "[A] claim that the sentencing court relied on impermissible factors in sentencing raises a substantial question." ***Bromley, supra*** at 605.

Here, Appellant's post-sentence motion and Rule 2119(f) statement

- 35 -

properly preserved his claims regarding the court's alleged reliance upon impermissible sentencing factors. As presented, Appellant's claims appear to raise a substantial question as to the discretionary aspects of his sentence. *See id.*

Our standard of review concerning the discretionary aspects of sentencing is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Hyland*, 875 A.2d 1175, 1184 (Pa.Super. 2005), *appeal denied*, 586 Pa. 723, 890 A.2d 1057 (2005) (quoting *Commonwealth v. Rodda*, 723 A.2d 212, 214 (Pa.Super. 1999) (*en banc*)).

"[A] court is required to consider the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa.Super. 2002), *cert. denied*, 545 U.S. 1148, 125 S.Ct. 2984, 162 L.Ed.2d 902 (2005). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." *Id.*

"Precisely because of the wide latitude afforded sentencing courts and because we recognize the court's ability to arrive at a balanced judgment

when possessed of all the facts, it becomes imperative that the facts relied upon by the sentencing court be **accurate**...." ***Commonwealth v. Medley***, 725 A.2d 1225, 1229 (Pa.Super. 1999), *appeal denied*, 561 Pa. 672, 749 A.2d 468 (2000) (quoting ***Commonwealth v. Kerstetter***, 580 A.2d 1134, 1135 (Pa.Super. 1990)) (emphasis in original).

> However, a proceeding held to determine sentence is not a trial, and the court is not bound by the restrictive rules of evidence properly applicable to trials. Rather, the court may receive any relevant information for the purposes of determining the proper penalty.
>
> Although sentencing proceedings must comport with due process, the convicted defendant need not be accorded the entire panoply of criminal trial procedural rights. In fact, the due process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure.

***Medley, supra*** (internal citations and quotation marks omitted).

Instantly, the court conducted Appellant's sentencing hearing with the benefit of a pre-sentence investigation ("PSI") report. At the conclusion of the hearing, the court provided the following on-the-record statement:

> The court imposes sentence for the following reasons.
>
> [Appellant] is 39 years of age, which shows he has sufficient maturity to understand the significance of his acts. [Appellant] is intelligent enough to understand the significance of his acts since he did complete the eighth grade of school and has had a consistent work history since that time. He can read, write and understand the English language.
>
> As indicated by counsel, in addition to that which was covered in the [PSI], he has had a consistent work history, predominantly in the cabinet making, woodworking areas,

and the court has noted that. It does indicate that he can follow directions.

[Appellant] does have a prior criminal record, which includes a retail theft in 1992, a retail theft in 1994, criminal mischief in 2002, simple assault in 2002, retail theft in 2002, disorderly intoxication in 2004, resisting an officer in 2004, and defiant trespass in 2004.

I have reviewed the sentencing memorandum relative to the issues that are pertinent to the charges before me. I find that although [Appellant] was clearly a hardworking man, he certainly has failings. Whether it is the distrust of the government or the Y2K matters that he brings to the court's attention, it is not the government that caused these charges or convictions. It was [Appellant's] own greed and avarice which are solely to blame.

On 58 separate times, he made deposits for which he has been found guilty. He knew from the very beginning in almost the first contact with the bank employees that what he was planning on doing was wrong, that there were consequences to that wrong act. Yet over the next two months, [he] continued on 58 separate occasions to violate the laws....

He knew from the very first contact with the bank employee, who explained to him what they were doing and why, that he was planning to subvert the recording requirements, which is what this statute is all about.

[Appellant] purposely used 10 different banks to subvert those reporting requirements and to distribute hundreds of thousands of dollars in January and February of 2006 in an effort to avoid IRS and Pennsylvania reporting requirements.

I note that [Appellant] has never been married and has no children; also that he has no learning disabilities.

Although he was raised Amish, he left the church in the early 1990s and, of course, as counsel indicated, has since been shunned by that church.

- 38 -

> You have used, both at trial and today, the Amish faith, I assume, as an alleged defense. I find that to be a clear slap in the face of the good law-abiding Amish citizens of Lancaster County. You are not Amish and you did not behave like the good, honest Amish people of Lancaster County.
>
> As indicated by the sentencing guidelines, … the standard range of sentencing here is 12 to 18 months for each individual count.[6]   And there is a plus or minus nine months as the mitigated and aggravated range for each count.
>
> *   *   *
>
> [Y]ou clearly, through all of your statements, have begged the court to understand that you are a simple man and that all of this was earned legitimately.
>
> **I need not make that determination today**…but it is extremely difficult for me to buy that you claim to be a simple man, yet the items found in your house show an extremely different…individual.

(**See** N.T. Sentencing at 40-43) (emphasis added).

Contrary to Appellant's argument, the court expressly stated it did not need to determine whether the funds in question constituted proceeds of unlawful activities. Admittedly, the court was skeptical of Appellant's portrayal of himself as a "simple man." The court's reaction was justified in light of the evidence adduced at trial, the information contained in the PSI report, as well as the evidence offered at sentencing. The court's expression of doubt about Appellant's self-portrait does not automatically demonstrate

---

[6] With an OGS of eight (8) and a prior record score of one (1), the standard range of the sentencing guidelines provides for a minimum term of twelve (12) to eighteen (18) months' imprisonment.

J-S12019-10

reliance upon impermissible sentencing factors.  In sentencing Appellant, the court properly based its sentence on the particular circumstances of the offenses, emphasizing Appellant's knowledge of the reporting requirements. **See Griffin, supra**.  Thus, we see no reason to disturb the sentence.[7]  **See Hyland, supra**.  Accordingly, we affirm.

Judgment of sentence affirmed.

*PRESIDENT   JUDGE   FORD   ELLIOTT   FILES   A   DISSENTING MEMORANDUM.

*JUDGE COLVILLE FILES A CONCURRING STATEMENT.


Judgment Entered.

Deputy Prothonotary

Date: _____October 26, 2010_____

---

[7] Moreover, the court utilized a PSI report and imposed standard range sentences.   Therefore,   we   can   presume   Appellant's   sentence   was reasonable.   **See Commonwealth v. Cruz-Centeno**, 668 A.2d 536 (Pa.Super. 1995), *appeal denied*, 544 Pa. 653, 676 A.2d 1195 (1996) (explaining combination of PSI and standard range sentence, absent more, cannot be considered as excessive or unreasonable sentence).

J. S12019/10

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| LEVI LAPP STOLTZFOOS, | : | No. 30 Middle District Appeal 2009 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, July 22, 2008,
in the Court of Common Pleas of Lancaster County
Criminal Division at No. CP-36-CR-0005995-2006

BEFORE:  FORD ELLIOTT, P.J., GANTMAN AND COLVILLE,* JJ.

DISSENTING MEMORANDUM BY FORD ELLIOTT, P.J.
FILED:  October 26, 2010

I respectfully dissent.  I agree with appellant that 18 Pa.C.S.A.

§ 5111(a)(3) is unconstitutionally overbroad, at least as interpreted by the

majority.  My concern with the lead opinion is that it seems to divorce

Subsection (a)(3) from the title of the statute, "Dealing in proceeds of

unlawful activities."  In my view, the clear purpose of the statute is to

prevent criminals and criminal organizations, including drug dealers and

terrorist groups, from hiding their assets.  While the majority correctly

points out that the title of a statute does not control, "In interpreting any Act

of the Assembly, it is important to consider the title of the Act."

***Commonwealth v. Derstine***, 418 Pa. 186, 189, 210 A.2d 266, 268 (1965)

(citation omitted).  "In ***City Stores Co. v. City of Philadelphia***, 376 Pa.

---

* Retired Senior Judge assigned to the Superior Court.

J. S12019/10

482, at pages 487-488, 103 A.2d 664, at page 667, the Court said: 'The title is always a part of a statute or ordinance and, as such, must be considered in construing the enactment[.]'" **Id.** (additional citations omitted).

There was absolutely no allegation, nor was it ever proved at trial, that appellant's funds were derived from unlawful activities.[1]   His allegedly criminal conduct consisted solely of structuring his financial transactions in such a way as to avoid generating a currency transaction report ("CTR").  I note that violation of Section 5111 is a first-degree felony punishable by a maximum of 20 years' imprisonment and a $100,000 fine.  Section 5111 also provides for a "civil penalty" of the greater of the funds involved in the transaction or $10,000, which in this case resulted in the Commonwealth seizing over $540,000 of appellant's money.  Again, it was never alleged at trial that this money was obtained by illegal means.

Theoretically, an otherwise perfectly law-abiding individual, with no criminal intent other than simply avoiding a CTR, could make a cash deposit of $9,900 of honest money into his savings account at the local bank and spend the next 20 years in a state penitentiary.  I refuse to believe that the General Assembly intended such an unconscionable and absurd result when

---

[1] The majority observes that in the affidavit of probable cause, it was alleged that appellant obtained these funds through some sort of merchandise scheme. (Majority Memorandum at 13 n.5.)  However, this was never pursued at trial and appellant was convicted only of violating Section 5111.  The Commonwealth withdrew a count of receiving stolen property prior to trial and appellant was not ultimately charged with any theft offenses. (**Id.** at 3 n.2.)

J. S12019/10

it enacted Section 5111.  By failing to consider the statute's title, "Dealing in proceeds of unlawful activities," I believe the majority disregards the statute's actual purpose.

I am also convinced by appellant's argument that Subsection (a)(3), at least as interpreted by the majority as essentially a strict liability statute, prohibits constitutionally protected activity.

> Strictly speaking, unconstitutional over-breadth only pertains relative to First Amendment free speech concerns.  However, the term is sometimes used in non-speech cases to mean that the challenged statute either sweeps excessively broadly so as to be beyond the state's legitimate police powers, and/or by criminalizing a significant amount of constitutionally protected activity, or is arbitrary and capricious because it leads to the imposition of punishment bearing little relation to any legitimate governmental interest.

*Commonwealth v. Duda*, 592 Pa. 164, 185, 923 A.2d 1138, 1150 (2007) (citations omitted).

I am not as persuaded as the majority that "There is a compelling state interest in punishing those who knowingly evade reporting requirements," at least not as applied in this case, where there is no connection between the funds and any criminal activity.  (Majority Memorandum at 17.)  As the Fourth Circuit has stated, in applying a similar federal statute:[2]

> [*Ratzlaf v. United States*, 510 U.S. 135, 114 S.Ct. 655 (1994)] expressly rejected the argument "that

---

[2] 31 U.S.C. § 5324(a)(3).

- 3 -

J. S12019/10

> § 5324 violators, by their very conduct, exhibit a purpose to do wrong." 510 U.S. at 143, 114 S.Ct. at 660. The ***Ratzlaf*** Court pointed out that structuring a financial transaction is not an "inevitably nefarious" activity. ***Id.*** at 144, 114 S.Ct. at 661. Law abiding citizens frequently structure transactions to avoid a report, regulation, or tax without violating the law. ***Id. See Helvering v. Gregory***, 69 F.2d 809, 810 (2d Cir. 1934) (L.Hand, J.) ("Anyone may so arrange his affairs that his taxes shall be as low as possible; he is not bound to choose that pattern which will best pay the Treasury; there is not even a patriotic duty to increase one's taxes"), ***aff'd***, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935).

***United States v. Ismail***, 97 F.3d 50, 57 (4th Cir. 1996). I see nothing inherently wrong with structuring a banking transaction to avoid generating a CTR, in the absence of some underlying criminal purpose.[3] Here, there was no evidence introduced at trial of any evil motive on appellant's part. Indeed, appellant stated simply that he "don't [sic] want no [sic] part of government investigation or harassment." (Appellant's brief at 52 n.14.)

Furthermore, as the majority acknowledges, the Supreme Court of Pennsylvania has recognized a legitimate expectation of privacy in banking records. ***Commonwealth v. DeJohn***, 486 Pa. 32, 49, 403 A.2d 1283, 1291 (1979), ***cert. denied***, 444 U.S. 1032 (1980). ***Cf. Commonwealth v. Duncan***, 572 Pa. 438, 451, 817 A.2d 455, 463 (2003) (holding that there is no right of privacy in a bank customer's name and address, distinguishing

---

[3] In fact, even if a cash deposit is made in an amount ***less than*** $10,000, the bank retains the discretion to issue a CTR. (Commonwealth's brief at 2); ***Ismail***, 97 F.3d at 53. Therefore, making a deposit of $9,900 versus $10,000 is no guarantee of avoiding a CTR.

- 4 -

J. S12019/10

"the disclosure of substantive bank records that was the subject of the standing decision in **DeJohn**"). On its face and without due consideration of the title of the statute, I believe that Subsection 5111(a)(3) applies to a wide range of constitutionally protected activity.

In the absence of any nexus established at trial between the funds deposited by appellant and unlawful activity, and in line with the title of the statute and its purpose in preventing criminal wrongdoers from hiding their criminal activity and the fruits thereof by avoiding reporting requirements, I conclude that Subsection 5111(a)(3) is unconstitutionally overbroad both as applied to appellant in this case, and generally. Therefore, I am compelled to dissent.

- 5 -

J-S12019-10

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| vs. | : | |
| | : | |
| LEVI LAPP STOLTZFOOS, | : | |
| | : | |
| Appellant | : | No. 30 MDA 2009 |

Appeal from the Judgment of Sentence July 22, 2008
In the Court of Common Pleas of Lancaster County
Criminal, No. CP-36-CR-0005995-2006

BEFORE:  FORD ELLIOTT, P.J., GANTMAN, AND COLVILLE*, JJ.

CONCURRING STATEMENT BY COLVILLE, J.:  FILED:  October 26, 2010

At the close of the jury charge, Appellant made an unclear objection to the court's instructions.  In my view, the objection did not preserve the challenge to the jury instructions that he now pursues.  As such, I would find Appellant is not entitled to relief on that basis.

I observe also that Appellant's purported equal protection argument simply does not constitute such a claim.

In all other respects, I concur Appellant's judgment of sentence should be affirmed.

*RECEIVED*

OCT 27 2010

*Appeals & Legal
Services Section*

_____
*Retired Senior Judge assigned to the Superior Court.