# APPENDIX D

IN THE SUPREME COURT OF PENNSYLVANIA

MIDDLE DISTRICT

COMMONWEALTH OF PENNSYLVANIA

vs.

LEVI LAPP STOLTZFOOS, Petitioner/Appellant

No. 30 Middle District Appeal 2009

PETITION FOR ALLOWANCE OF APPEAL

Petition for Allowance of Appeal from the Order of the Superior Court of Pennsylvania
entered October 26, 2010,
affirming the Judgment of Sentence
the Court of Common Pleas of Lancaster County, Pennsylvania
Criminal Information Number 5995 of 2006
imposed July 28, 2008
as finalized by September 9, 2008 denial of Post-Sentence Motion
Right to Direct Appeal restored by the Court of Common Pleas,
which granted Defendant's Motion for Post Conviction Collateral Relief
on December 5, 2008

OFFICE OF THE PUBLIC DEFENDER
MaryJean Glick, Esq.
Senior Assistant Public Defender
Attorney I.D. No. 76608
150  N. Queen Street
Suite 210
Lancaster, Pennsylvania 17603
Telephone:  (717) 299-8131

## TABLE OF CONTENTS

PAGE

Table of Citations . . . . . . . . . iii

Petition for Allowance of Appeal. . . . . . . . 1

Order in Question . . . . . . . . . 2

Statement of Questions Presented . . . . . . 3

Statement of the Case . . . . . . . . . 4

Reasons Relied upon for Allowance of Appeal . . . 9

I. The Superior Court erred in ruling that 18 Pa.C.S. §5111(a)(3) is not void for
vagueness . . . . . . . . . 9

A. 18 Pa.C.S. §5111(a)(3) is void for vagueness because subsection three contains
no mens rea, the catchall provision of 18 Pa.C.S. §302 provides for a mens rea of
intentionally, knowingly or recklessly, yet the mens rea for subsections one and two
of the statute require knowing and intentional conduct; thus, the ordinary person is
required to guess as to the necessary mens rea for the proscribed offense . . 11

B. 18 Pa.C.S. §5111(a)(3) is void for vagueness because the title of the statute:
"Dealing in proceeds of unlawful activities," contains an element not required by
subsection three, thus leaving the ordinary person to guess at the conduct which is
proscribed . . . . . . . . 28

II. The Superior Court erred in ruling that 18 Pa.C.S. §5111(a)(3) is not void for
overbreadth, where the statute criminalizes the depositing of lawfully acquired
cash into financial institutions in a manner intended to maintain the depositor's
constitutional right to privacy in his financial records . . . . 32

III. The $540,200 civil penalty, imposed pursuant to 18 Pa.C.S. §5111(c),
constituted an excessive fine and cruel and unusual punishment . . . 36

Conclusion . . . . . . . . . 41

Appendix A – Memorandum Opinion and Order of the Superior Court

Appendix B – Trial Court Opinion Denying Postsentence Motion, September 9, 2008

Appendix C – Trial Court Rule 1925 Opinion, March 26, 2009

Proof of Service . . . . . . . . . 42

## TABLE OF CITATIONS

CONSTITUTIONS                                                   PAGE

Pennsylvania Constitution, Article I, Section Eight  .      .      .      .      .      33.

Pennsylvania Constitution, Article I, Section Nine   .      .      .      .      .      9, 32

Pennsylvania Constitution, Article I, Section Thirteen   .      .      .      .      7, 36, 39

Pennsylvania Constitution, Article III, Section Three   .      .      .      .      30

United States Constitution, Fifth Amendment   .      .      .      .      .      9, 32

United States Constitution, Eighth Amendment   .      .      .      .      .      7, 36, 39

United States Constitution, Fourteenth Amendment  .      .      .      .      .      7, 9, 32

STATUTES

1 Pa.C.S. §1924   .      .      .      .      .      .      .      .      28

1 Pa.C.S. §1928   .      .      .      .      .      .      .      .      10

7 U.S.C. §2024    .      .      .      .      .      .      .      .      21, 22

18 Pa.C.S. §302   .      .      .      .      .      .      5, 6, 10, 13, 14, 15, 16, 18

18 Pa.C.S. §2506  .      .      .      .      .      .      .      .      16

18 Pa.C.S. §2910  .      .      .      .      .      .      .      .      15

18 Pa.C.S. §3925  .      .      .      .      .      .      .      .      4

18 Pa.C.S. §5111  3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 25, 26, 27, 28, 30, 31
                  32, 33, 34, 35, 36, 38, 39

23 Pa.C.S. §5312  .      .      .      .      .      .      .      .      29

26 U.S.C. §2503   .      .      .      .      .      .      .      .      24

31 C.F.R. §103.22 .      .      .      .      .      .      .      .      25

31 U.S.C. §5313   .      .      .      .      .      .      .      .      23

31 U.S.C. §5316   .      .      .      .      .      .      .      .      37

| STATUTES | PAGE |
|---|---|
| 31 U.S.C. §5322 | 23 |
| 31 U.S.C. §5324 | 23, 24, 25 |
| 42 Pa.C.S. §9796 | 15 |
| 62 P.S. §1407 | 17 |
| 205 Illinois Statutes 685 §7 | 31 |
| Act 82 of 2002 | 11 |
| Arizona Revised Statute §13-2317 | 31 |
| Florida Statute §869.104 | 31 |
| H.B. No. 1728, Session of 2009 | 14, 39 |
| Nevada Revised Statutes §207.195 | 31˙ |
| New Jersey Code 2C:21-25 | 31 |
| Rhode Island Statute §11-9.1-15 | 31 |

RULES

| Pennsylvania Rule of Appellate Procedure 1925 | 1, 8 |
|---|---|

CASES

| Carey v. Population Services, 431 U.S. 678 (1977) | 34 |
|---|---|
| Cheek v. United States, 498 U.S. 192 (1991) | 20 |
| Colautti v. Franklin, 439 U.S. 379 (1979) | 12, 20 |
| Commonwealth v. Archino, 56 Pa. Super. 645 (1914) | 30 |
| Commonwealth v. Barbono, 56 Pa. Super. 637 (1913) | 30 |
| Commonwealth v. Barnhart, 722 A.2d 1093 (Pa. Super. 1998) | 31 |
| Commonwealth v. Barud, 545 Pa. 297, 681 A.2d 162 (1996) | 9, 10, 28, 32 |
| Commonwealth v. Brady, 470 Pa. 420, 368 A.2d 699 (1977) | 30 |

CASES                                                                    PAGE

Commonwealth v. Cotto, 562 Pa. 32, 753 A.2d 217 (2000) .        .        .        9.

Commonwealth v. Davidson, 595 Pa. 1, 938 A.2d 198 (2007)       .        .        .        9, 10, 32

Commonwealth v. DeJohn, 486 Pa. 32, 403 A.2d 1283 (1979)       .        .        .        33

Commonwealth v. Derstine, 418 Pa. 186, 210 A.2d 266 (1965)     .        .        .        29, 30

Commonwealth v. Duda, 592 Pa. 164, 923 A.2d 1138 (2007)        .        .        .        33, 35

Commonwealth v. Duncan, 572 Pa. 438, 817 A.2d 522 (2003)       .        .        .        33

Commonwealth v. Gallagher, 592 Pa. 262, 924 A.2d 636 (2007)    .        .        13, 14, 15, 16

Commonwealth v. Hess, 532 Pa. 607, 617 A.2d 307 (1992) .       .        .        .        34

Commonwealth v. Ludwig, 593 Pa. 6, 874 A.2d 623 (2005)         .        .        .        9, 15, 16

Commonwealth v. Lurie, 524 Pa. 56, 569 A.2d 329 (1990) .       .        .        .        17, 18

Commonwealth v. Parmar, 551 Pa. 318, 710 A.2d 1083 (1998)      .        .        .        13, 14

Commonwealth v. Pond, 846 A.2d 699 (Pa. Super. 2004) .         .        .        13, 14, 15

Commonwealth v. Real Property Known as 5444 Spruce Street, 574 Pa. 423,

     832 A.2d 396 (2003) .        .        .        .        .        .        . 36, 38, 39, 40

Commonwealth v. Rekaskie, 566 Pa. 85, 778 A.2d 624 (2001)      .        .        .        33

Commonwealth v. Smothers, 920 A.2d 922 (Commw. 2007)           .        .        .        38

Gonzales v. Carhart, 550 U.S. 124 (2007)     .        .        .        .        .        .        12

H.L. v. Matheson, 450 U.S. 398 (1981)        .        .        .        .        .        32

Helsel v. Puricelli, 927 A.2d 252 (Pa. Super. 2007) .        .        .        .        29

Liparota v. United States, 471 U.S. 419 (1985)       .        .        .        .20, 21, 22, 23

Morissette v. United States, 342 U.S. 246 (1952)     .        .        .        . 18, 19, 20

Pirillo v. Takiff, 462 Pa. 511, 341 A.2d 896 (1975) .        .        .        .        34

| CASES | PAGE |
|---|---|
| Ratzlaf v. United States, 510 U.S. 135 (1994) | 23, 24, 25 |
| United States v. Averso, 762 F.Supp. 441 (D.N.H. 1991) | 20, 24, 25 |
| United States v. Bajakajian, 524 U.S. 321 (1998) | 37, 38, 39 |
| United States v. Caldwell, 408 U.S. 665 (1972) | 32 |
| United States v. Ismail, 97 F.3d 50 (4th Cir. 1996) | 25 |
| United States v. MacPherson, 42 F.3d 183 (2d Cir. 2005) | 24 |
| United States v. Miller, 425 U.S. 435 (1976) | 33 |
| United States v. Mussaleen, 35 F.3d 692 (2nd Cir. 1994) | 20 |

PETITION FOR ALLOWANCE OF APPEAL FROM THE ORDER OF
THE SUPERIOR COURT OF PENNSYLVANIA

TO THE HONORABLE, THE CHIEF JUSTICE AND THE ASSOCIATE JUSTICES OF THE
SAID COURT:

Levi Stoltzfoos, Appellant in the court below, by his attorney, MaryJean Glick, hereby
petitions Your Honorable Court to allow appeal from the October 26, 2010 Opinion and Order of
the Superior Court of Pennsylvania, Commonwealth v. Levi Stoltzfoos, 30 MDA 2009, affirming
the Judgment of Sentence of the Court of Common Pleas, Criminal Information Number 5995 of
2006, imposed July 28, 2008.  A copy of the Opinion and Order of the Superior Court dated
October 26, 2010, is attached hereto as Appendix "A".  A copy of the Opinion of the Trial Court,
denying the Postsentence Motion, filed September 9, 2008, is attached hereto as Appendix "B."
A copy of the Rule 1925 Opinion of the Trial Court, filed March 26, 2009, is attached hereto as
Appendix "C."

ORDER IN QUESTION

"Judgment of sentence affirmed.

*PRESIDENT JUGE FORD ELLIOTT FILES A DISSENTING MEMORANDUM.

*JUDGE COLVILLE FILES A CONCURRING STATEMENT."

Judgment Entered,

Milan K. Mrkobrad
Deputy Prothonotary

Date:  October 26, 2010

*Retired Senior Judge Assigned to the Superior Court.

2

## STATEMENT OF QUESTIONS PRESENTED

I.  Did the Superior Court err in ruling that 18 Pa.C.S. §5111(a)(3) is not void for vagueness?

    Answered in the negative by the Superior Court.


II.  Did the Superior Court err in ruling that 18 Pa.C.S. §5111(a)(3) is not void for overbreadth,

where the statute criminalizes the depositing of lawfully acquired cash into financial institutions

in a manner intended to maintain the depositor's constitutional right to privacy in his financial

records?

    Answered in the negative by the Superior Court.  President Judge Ford Elliott dissenting.


III.  Did the $540,200 civil penalty, imposed pursuant to 18 Pa.C.S. §5111(c), constitute an

excessive fine and cruel and unusual punishment?

    Answered in the negative by the Superior Court.

## STATEMENT OF THE CASE

By Information docketed to Number 5995 of 2006, Levi Stoltzfoos was charged with fifty-eight counts of dealing in proceeds of unlawful activity, a violation of 18 Pa.C.S. §5111, and one count of receiving stolen property, a violation of 18 Pa.C.S. §3925. The alleged violations of 18 Pa.C.S. §5111 arose from Mr. Stoltzfoos' deposits of cash, in amounts ranging from $5,200 to $10,000, into ten Lancaster County banks between January 6, 2006 and February 11, 2006.[1]

Defense counsel[2] for Mr. Stoltzfoos filed an Omnibus Pretrial Motion on May 11, 2007, in which he alleged, *inter alia*, that 18 Pa.C.S. §5111(a)(3) was unconstitutionally vague because it lacked a mens rea element, and because it did not require that the money deposited have been the proceeds of unlawful activity. The Omnibus Pretrial Motion also included Motions in Limine asking to exclude evidence of Mr. Stoltzfoos' credit card and cash advance activity, his purchasing and returning habits, and his possession of phone cards, movie passes, vouchers, gift cards and similar items from the trial, as Mr. Stoltzfoos was not charged with any offenses related to his acquisition and possession of these items. Finally, the Omnibus Pretrial Motion included a Motion for Return of Property, seeking return of the money seized from Mr. Stoltzfoos' bank accounts, alleging, *inter alia*, that the Commonwealth had not alleged that the money was the proceeds of unlawful activities, that Mr. Stoltzfoos' possession of the money was lawful, and that the money had been earned by Mr. Stoltzfoos over the previous twenty years.

A suppression hearing was held on May 5, 2008, before the Honorable Howard F. Knisely. After testimony was presented regarding suppression of Mr. Stoltzfoos' statement to

---

[1]  The receiving stolen property charge was nol prossed prior to trial. N.T., p. 22. It was not related to the other charges.

[2]  Mr. Stoltzfoos was represented by the firm of Pyfer and Reese from January 17, 2007, until November 8, 2007, when the court granted John Pyfer's Motion to Withdraw as Counsel. Jeffrey Conrad was appointed counsel for Mr. Stoltzfoos on February 29, 2008, and represented Mr. Stoltzfoos at trial.

police, the court noted that the Commonwealth had agreed not to introduce, in its case-in-chief, any of the evidence which defense counsel had sought to exclude; i.e., evidence of Mr. Stoltzfoos' credit card and cash advance activity, his purchasing and returning habits, and his possession of phone cards, movie passes, vouchers, gift cards and similar items, thus making the Motions in Limine moot, unless any of the aforementioned items were raised by the defense at trial. N.T.,[3] p. 23.

Defense counsel presented argument regarding the constitutionality of 18 Pa.C.S. §5111(a)(3), arguing that it was vague because there was no mens rea requirement. N.T., p. 24. Counsel further argued that in order to convict a defendant of a virtually identical federal statute, the government was required to prove that the defendant knew that structuring his deposits was illegal. N.T., pp. 24-25. Defense counsel further argued that, as written, §5111(a)(3) was essentially a strict liability statute and, therefore, unconstitutional. N.T., p. 25. Defense counsel also argued that the statute was vague and overbroad because it would reach anyone who deposited less than $10,000 in the bank, if their intent was to avoid the reporting requirement, and it criminalized a variety of protected lawful conduct. N.T., pp. 25-27. Defense counsel argued that because the statute did not criminalize only those who were depositing the proceeds of unlawful activities, it was overbroad. N.T., p. 28.

The Commonwealth argued that 18 Pa.C.S. §5111(a)(3) was a strict liability crime, reaching anyone who deposited cash with the intent of avoiding a cash transaction report, regardless of the amount deposited. N.T., pp. 28-29.

Defense counsel argued that although he believed the statute was unconstitutional, that if the court found the statute constitutional, it should apply the mens rea requirement set forth in 18 Pa.C.S. §302. N.T., pp. 29-30.

---

3   N.T. denotes notes of Suppression Hearing, Pretrial Motions and Trial, May 5-8, 2008.

The court denied the Motion to Suppress Evidence, finding that Mr. Stoltzfoos' statements were made when not in custody. N.T., p. 31. The court noted that the Motion to Dismiss Count 59 was moot, and denied the Motion to Quash Counts 1 through 58. N.T., pp. 31-32. Finally, the court ruled that a mens rea would apply to §5111(a)(3), as set forth in 18 Pa.C.S. §302(c), and that the Commonwealth must prove that Mr. Stoltzfoos acted intentionally, knowingly, or recklessly with respect to a material element of the offense. N.T., pp. 32-33. The court also held that it would not address the Motion for Return of Property until after the proceedings had been completed. N.T., p. 23.

A jury trial was held before Judge Knisely on May 5-8, 2008.

It was uncontested that Mr. Stoltzfoos made fifty-eight deposits of cash in Lancaster County banks in amounts under $10,000 to avoid the banks' making any report to the government regarding his deposits. N.T., pp. 61-63, 91-92, 245, 249, 251. There was evidence that the money which was being deposited had been withdrawn in 1999, before the turn of the century. N.T., pp. 145, 175.

Although Mr. Stoltzfoos deposited cash in amounts under $10,000 in order to avoid a report being made, there was no evidence that Mr. Stoltzfoos was aware that structuring cash deposits to avoid a report being made was illegal. N.T., pp. 161-162, 168, 184-185, 189, 193. Furthermore, there was evidence that Mr. Stoltzfoos had structured financial transactions in 1999 and 2001, in order to avoid having the bank fill out a form, without consequences; thus, he had no reason to believe that this conduct was illegal. N.T., pp. 146, 153, 247, 260.

At the close of trial, the jury found Mr. Stoltzfoos guilty of all fifty-eight counts of dealing in proceeds of unlawful activity. N.T., pp. 310-311.

Mr. Stoltzfoos appeared for sentencing before Judge Knisely on July 22, 2008.

Defense counsel objected to the seizure and forfeiture of the $540,200 which Mr.

6

Stoltzfoos had deposited as violative of the Eighth and Fourteenth Amendments to the United States Constitution and Article One, Section Thirteen of the Constitution of the Commonwealth of Pennsylvania. N.S.H., pp. 7-8. The court held that the civil penalty was constitutional. N.S.H., p. 8.

The court imposed an aggregate sentence of two to ten years incarceration, no fine, and the civil penalty, which it interpreted as a mandatory penalty under 18 Pa.C.S. §5111(c), of $540,200.

Trial counsel for Mr. Stoltzfoos made an oral motion for bail pending appeal, to which the Deputy Attorney General objected. N.S.H., pp. 45-46.

Appellate counsel for Mr. Stoltzfoos then entered her appearance on the record, and filed a Motion for Bail Pending Appeal. N.S.H., p. 46. In response to the oral and written motions for bail pending appeal, the court ordered that Mr. Stoltzfoos be remanded to the custody of the Department of Corrections. N.S.H., p. 47.

The court noted that the Motion for Return of Property was moot to the extent that it involved the money that had been seized, as Mr. Stoltzfoos had been assessed that amount as a civil penalty. N.S.H. p. 50. With regard to the personal items seized, the Deputy Attorney General indicated that he had been subpoenaed by the U.S. Attorney's Office and was required to turn over all of the personal items seized to them, thus rendering the issue of the return of any personal property moot. N.S.H., pp. 50-51.

Appellate counsel for Mr. Stoltzfoos filed a Post-Sentence Motion on August 1, 2008. On September 9, 2008,[4] the Court filed an Order, denying the Post-Sentence Motion.

Unfortunately, because the court ordered service of its Order, denying the Post-Sentence

---

4   The trial court signed the Order, denying the Post-Sentence Motion on August 9, 2008, but for some reason, the Order was not filed until September 9, 2008.

Motion, to Mr. Stoltzfoos' previous defense counsel, appellate counsel did not learn of the denial of the motion until November 13, 2008.  Upon learning of the denial of the Post-Sentence Motion, appellate counsel filed a Motion for Post Conviction Collateral Relief Act on December 5, 2008, seeking restoration of Mr. Stoltzfoos' direct appeal rights.  The court granted the Motion for Post Conviction Collateral Relief on December 5, 2008.

On December 31, 2008, appellate counsel for Mr. Stoltzfoos filed a timely Notice of Appeal.  Pursuant to Pennsylvania Rule of Appellate Procedure 1925, appellate counsel for Mr. Stoltzfoos filed a timely Statement of Errors Complained of on Appeal on January 26, 2009.  The Commonwealth filed a Response to Constitutional Claims Raised in Statement of Matters Complained of on Appeal on February 13, 2009.  The court filed an Opinion on March 26, 2009.

On October 26, 2010, the Superior Court filed a Memorandum Opinion, affirming the Judgment of Sentence of the Court of Common Pleas.  With regard to the issue of whether 18 Pa.C.S. §5111(a)(3) is void for overbreadth, President Judge Ford Elliott filed a dissenting Memorandum.

Further facts will be provided in the reasons relied upon for allowance of appeal section of this petition.

<u>REASONS RELIED UPON FOR ALLOWANCE OF APPEAL</u>

I.  <u>The Superior Court erred in ruling that 18 Pa.C.S. §5111(a)(3) is not void for vagueness.</u>

A claim that a statute is void for vagueness is a claim that it violates the substantive due process guarantees of the United States and Pennsylvania Constitutions, as set forth in the Fifth and Fourteenth Amendments to the United States Constitution, and Article One, Section Nine of the Constitution of the Commonwealth of Pennsylvania. <u>Commonwealth v. Barud</u>, 545 Pa. 297, 301, 681 A.2d 162, 163-164 (1996).

There is a "presumption that the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth when promulgating legislation." <u>Commonwealth v. Davidson</u>, 595 Pa. 1, 16, 938 A.2d 198, 207 (2007) (internal quotations omitted).  "[D]uly enacted legislation is presumed valid and unless it clearly, palpably and plainly violates the Constitution, it will not be declared unconstitutional." <u>Id.</u> at 16-17, 938 A.2d at 207.  Thus, "the party challenging the constitutionality of a statute bears a heavy burden of persuasion." <u>Id.</u>

"[A]s a general proposition, statutory limitations on our individual freedoms are reviewed by courts for substantive authority and content, in addition to definiteness or adequacy of expression." <u>Commonwealth v. Ludwig</u>, 593 Pa. 6, 16, 874 A.2d 623, 628 (2005).  "[T]he void for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." <u>Commonwealth v. Barud</u>, 545 Pa. 297, 304, 681 A.2d 162, 165 (1996).  "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." <u>Commonwealth v. Cotto</u>, 562 Pa.

9

32, 37, 753 A.2d 217, 220 (2000).  "Due process requirements are satisfied if the statute provides reasonable standards by which a person may gauge their future conduct." Barud at 305, 681 A.2d at 165.  The statute must "give fair warning of the conduct it criminalizes." Commonwealth v. Davidson, 595 Pa. at 17, 938 A.2d at 207.  It is unconstitutional if it is "so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application." Id.  Penal statutes must be construed strictly.  1 Pa.C.S. §1928.

In the instant case, Mr. Stoltzfoos contends that 18 Pa.C.S. 5111(a)(3) is void for vagueness because there is no way for an ordinary person to determine whether the statute is a strict liability offense, whether it requires mens rea as set forth in 18 Pa.C.S. §302, or whether the requisite mens rea is knowing and intentional conduct as is required in subsections one and two of the statute.  Further, the statute is void for vagueness because the title of the statute implies that subsection three applies only to persons dealing in unlawful activities, yet subsection three contains no such reference.

A. <u>18 Pa.C.S. §5111(a)(3) is void for vagueness because subsection three contains no mens rea,</u>

<u>the catchall provision of 18 Pa.C.S. §302 provides for a mens rea of intentionally, knowingly or</u>

<u>recklessly, yet the mens rea for subsections one and two of the statute require knowing and</u>

<u>intentional conduct; thus, the ordinary person is required to guess as to the necessary mens rea</u>

<u>for the proscribed offense.</u>

18 Pa.C.S. §5111 provides as follows:

§5111.  Dealing in proceeds of unlawful activities
(a) Offense defined.--A person commits a felony of the first degree
if the person conducts a financial transaction under any of the
following circumstances:

(1) With knowledge that the property involved represents the
proceeds of unlawful activity, the person acts with the intent to
promote the carrying on of the unlawful activity.

(2) With knowledge that the property involved represents the
proceeds of unlawful activity and that the transaction is designed in
whole or in part to conceal or disguise the nature, location, source,
ownership or control of the proceeds of unlawful activity.

(3) To avoid a transaction reporting requirement under State or
Federal law.

The statute was amended by Act 82 of 2002, approved June 28, 2002, which amended numerous

sections of Title 18, apparently as a response to the terrorist attacks of September 11, 2001.  The

Act states that it amends Title 18 "further providing for double jeopardy, for terroristic threats

and for bomb threats; providing for weapons of mass destruction; and further providing for false

alarms to agencies of public safety, for false reports to law enforcement authorities, for dealing

in proceeds of unlawful activities, for facsimile bombs, for interception of communications and

for possessing or dealing in firearms."  Act 82 of 2002.  Prior to Act 82, 18 Pa.C.S. §5111

provided as follows:

§5111.  Dealing in proceeds of unlawful activities

(a) Offense defined.  A person commits a felony of the first degree if the person, knowing that the property involved in a financial transaction represents the proceeds of unlawful activity, conducts a financial transaction which involves the proceeds of unlawful activity under any of the following circumstances:

(1) With the intent to promote the carrying on of the unlawful activity.

(2) Knowing that the transaction is designed in whole or in part:

(i) to conceal or disguise the nature, location, source, ownership or control of the proceeds of unlawful activity; or

(ii) to avoid a transaction reporting requirement under State or Federal law.

18 Pa.C.S. §5111, as it existed in 2001.

As amended, the culpability requirement for subsection (3) cannot be clearly determined, thus leaving the ordinary person to guess as to the necessary mens rea.  When evaluating the constitutionality of a statute, "scienter requirements alleviate vagueness concerns," they "narrow the scope" of a statute's prohibition, and "limit prosecutorial discretion."  Gonzales v. Carhart, 550 U.S. 124, 149-150 (2007).  "[T]he constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of mens rea."  Colautti v. Franklin, 439 U.S. 379, 395 (1979).  The absence of a scienter requirement may result in a statute which is "little more than a trap for those who act in good faith."  Id. (internal quotations omitted).

The apparently deliberate removal of the "knowing" mens rea from the newly created subsection (3), which had formerly been a part of subsection (2)(ii), creates the appearance that it was the legislature's intention to remove any mens rea from subsection (3), thus creating a strict liability offense.  In fact, this was the Deputy Attorney General's argument to the trial court during the suppression hearing.[5]  N.T., pp. 28-29.  This conclusion, however, is clearly

---

[5]   The court's basis for concluding that §5111(a)(3) was constitutional is unclear, as it provided no explanation at

inconsistent with appellate caselaw regarding strict liability offenses.

"The fact that a criminal statute is silent with regard to a culpability requirement does not mean that the Legislature intended to dispense with the same." Commonwealth v. Gallagher, 592 Pa. 262, 267, 924 A.2d 636, 638 (2007).   "Absolute criminal liability statutes are an exception to the centuries old philosophy of criminal law that imposed criminal responsibility only for an act coupled with moral culpability." Commonwealth v. Pond, 846 A.2d 699, 706 (Pa. Super. 2004) (internal quotations omitted).   "Such so-called statutory crimes are in reality an attempt to utilize the machinery of criminal administration as an enforcing arm for social regulation of a purely civil nature, with the punishment totally unrelated to questions of moral wrongdoing or guilt." Id.   "The more serious the penalty, such as a lengthy term of imprisonment, the more likely it is that the legislature did not intend to eliminate the mens rea requirement." Id. at 707.

"[T]he imposition of absolute liability for a crime is generally disfavored and an offense will not be considered to impose absolute liability absent some indication of a legislative directive to dispense with mens rea. Commonwealth v. Gallagher, 592 Pa. 262, 267, 924 A.2d 636, 639 (2007).   "When the General Assembly plainly indicates a legislative purpose to impose absolute liability . . . the Commonwealth does not have to establish a mens rea element to establish the defendant is guilty of a crime." Commonwealth v. Parmar, 551 Pa. 318, 330, 710 A.2d 1083, 1089 (1998) (plurality opinion).   No such plain indication of an intent to impose

---

trial for its ruling that the statute was constitutional.  The court did not interpret the statute as creating a strict liability offense, however, as it instructed the jury on the catchall mens rea provision of 18 Pa.C.S §302. N.T., pp. 287-289.  In its March 26, 2009 Opinion, the court did not engage in its own analysis of the constitutionality of the statute, but stated that "relative to the constitutionality issues," it "continues to agree with the Commonwealth and thus adopts its well-reasoned analysis for purposes of appellate review."  Trial Court Opinion, March 26, 2009, p. 5.  The Commonwealth's analysis changed considerably, however, as it argued that §5111(a)(3) was a strict liability offense at trial, but argued that the statute was not unconstitutional because the catchall mens rea provision of 18 Pa.C.S. §302 applied, in its response to the Statement of Errors.  N.N.T., pp. 28-29, Commonwealth's Response to Constitutional Claims Raised in Statement of Matters Complained of on Appeal, February 13, 2009, pp. 2-3.

strict liability is present in 18 Pa.C.S. §5111(a)(3).  The only evidence of such an intent in the

instant case is the apparently deliberate removal of the "knowing" mens rea from the newly

created subsection (3), which had formerly been a part of subsection (2)(ii), and had required

"knowing" conduct.

It bears noting, however, that an amendment to 18 Pa.C.S. §5111 has been proposed,

which amends subsection (3) to provide that "[a] person commits a felony of the third degree if

the person knowingly conducts a financial transaction to avoid a transaction reporting

requirement under State or Federal law."  H.B. No. 1728, Session of 2009, introduced June 17,

2009.  This suggests that the removal of the knowing mens rea from subsection (3) may have

been unintentional.  It also suggests, however, that the correct mens rea is not that set forth in 18

Pa.C.S. §302.

"In the absence of plain legislative intent, we must consider the purpose for the . . .

statute[], the severity of punishment and its effect on the defendant's reputation and, finally, the

common law origin of the crime[] to determine whether the legislature intended to impose

absolute criminal liability."  Parmar at 332, 710 A.2d at 1089.

In the instant case, a violation of 18 Pa.C.S. §5111 is a felony of the first degree,

punishable by up to twenty years incarceration, a criminal penalty of $100,000 or twice the value

of the property involved in the transaction, and a substantial civil penalty.  These penalties are

well beyond anything which may be considered a strict liability crime.  Parmar at 332-333, 710

A.2d at 1090 (crimes subject to one year incarceration and five years incarceration not intended

as strict liability offenses).

Citing Pond and Gallagher, the Commonwealth argues that the statute is not

unconstitutionally vague, because since there is no legislative intent or purpose to impose strict

liability, the mens rea provisions of 18 Pa.C.S. §302 apply.  Commonwealth's Response,

February 13, 2009, pp. 2-3.

18 Pa.C.S. §302(c) provides that "[w]hen the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto."

In Pond, our Superior Court concluded that the statute setting forth the penalty for failing to comply with Megan's Law registration requirements was not a strict liability statute despite the fact that it contained no mens rea requirement, because the catchall culpability provisions of 18 Pa.C.S. §302 applied.  846 A.2d 699, 706 (Pa. Super. 2004).  Unlike 18 Pa.C.S. §5111, however, the statute at issue in Pond (then codified at 42 Pa.C.S. §9796) did not contain a different culpability level in other subsections of the statute, from that provided in the subsection at issue, or in 18 Pa.C.S. §302.  Pond, 846 A.2d at 704-705.

In Gallagher, our Supreme Court held that although 18 Pa.C.S. §2910, Luring a child into a motor vehicle or structure, did not contain a mens rea requirement, it was not a strict liability statute.  592 Pa. 262, 266-270, 924 A.2d 636, 638-641 (2007).  Instead, the Court held that the catchall provision set forth in 18 Pa.C.S. §302 applied.  Id.  As in Pond, the statute in Gallagher did not contain other subsections which set forth different culpability levels from that provided in the subsection at issue, or in 18 Pa.C.S. §302.

In the instant case, however, it is not clear whether the requisite culpability for 18 Pa.C.S. §5111(a)(3) is prescribed by the statute itself, since subsections (a)(1) and (a)(2) provide a culpability requirement of "knowledge" and "intent," or by 18 Pa.C.S. §302.  Under these circumstances, it is equally likely that the legislature's intention was to require intentional or knowing conduct to sustain a conviction for a violation of §5111(a)(3), thus making subsection (3) unconstitutionally vague.

In Commonwealth v. Ludwig, our Supreme Court considered the constitutionality of a

statute criminalizing drug delivery resulting in death, a violation of 18 Pa.C.S. §2506. 583 Pa. 6,

874 A.2d 623 (2005). The statute provided that "[a] person commits murder of the third degree

who administers, dispenses, delivers, gives, prescribes, sells or distributes any controlled any

controlled substance or counterfeit controlled substance in violation of section 13(a)(14) or (30)

of the . . . . Controlled Substance, Drug, Device and Cosmetic Act, and another person dies as a

result of using the substance. 18 Pa.C.S. §2506(a). The question was whether the statute was

void for vagueness, or whether it could be clearly determined whether the crime was a strict

liability offense, was subject to the mens rea requirements of 18 Pa.C.S. §302, or was subject to

the mens rea requirement for third degree murder. The Court found that the mens rea for third

degree murder was clearly set forth, that the culpability required for third degree murder was

malice, and that drug delivery resulting in death was defined as a form of third degree murder;

thus, the culpability requirements of §302 did not apply. Id. at 19-20, 874 A.2d at 630-631. In

so holding, the Court noted that §2506 is part of Chapter 25 of the Crimes Code, which sets forth

various degrees of criminal homicide, including third degree murder. Id. at 20, 874 A.2d at 631.

    In the instant case, however, the newly enacted subsection (3) of §5111 is so vague as to

the level of mens rea required that an ordinary person cannot understand what conduct is

prohibited. Even if this Honorable Court concludes that it is possible to determine the mens rea

required for a violation of §5111(a)(3), there remains a separate issue regarding whether that

level of culpability applies only to the element of avoiding a transaction reporting requirement,

or whether the Commonwealth must also show a level of culpability with regard to the fact that

structuring a financial transaction to avoid a reporting requirement is illegal. See, e.g.,

Commonwealth v. Gallagher, 592 Pa. 262, 268-270, 924 A.2d 636, 640-641 (2004) (requiring a

level of culpability not only with regard to the element of luring, but with regard to the age of the

child allegedly lured).

16

Subsections (1) and (2) of 18 Pa.C.S. §5111 not only require knowing and intentional conduct, these subsections require that the person know that the property with which they are dealing represents the proceeds of criminal activity. Under these circumstances, it would be improper to require the government to prove anything less than that a person charged with a violation of subsection (3) knew that structuring financial deposits to avoid a transaction reporting requirement was illegal. To hold otherwise would be to unfairly penalize a defendant for unknowingly breaking the law by structuring his financial transactions to the same harsh degree as someone who knew that his financial transactions involved the proceeds of criminal activity.

In Commonwealth v. Lurie, our Supreme Court held that in order to sustain a conviction of a defendant charged with violations of the Medicaid Fraud Abuse and Control Act, the Commonwealth must prove that he acted knowingly or intentionally in presenting a fraudulent claim, despite the fact that one section of 62 P.S. §1407(a) required knowing and/or intentional conduct, but other sections were silent on the question of mens rea. 524 Pa. 56, 64, 569 A.2d 329, 333 (1990). The Court noted that because each subsection of the statute charged required what was essentially fraudulent behavior, that each subsection required knowing or intentional conduct, i.e., "conduct involving guilty knowledge." Id. at 61-64, 569 A.2d 329, 331- 333. The Court further noted that this construction of the statute was appropriate because the penalties for a violation of any subsection of the statute were the same--each constituted a third-degree felony--and it would have been absurd for the legislature to permit the same substantial penalty for reckless or negligent conduct, as it had prescribed for similar knowing and intentional conduct. Id. at 62-63, 569 A.2d 329, 332. The Court observed that to require different mens rea for certain subsections despite equivalent penalties would be to unfairly penalize a "provider who recklessly or negligently submitted a claim for services not delivered," in the same manner as

17

one "who schemed to intentionally defraud the medical assistance program." Id. at 62-63, 569 A.2d 329, 332.

"[W]hen the proscribed conduct necessarily involves deceitful acts and acts of fraud, criminal intent or guilty knowledge is an essential element of the offense." Commonwealth v. Lurie, 524 Pa. 56, 64, 569 A.2d 329, 333 (1990) (finding that defendant charged with violations of the Medicaid Fraud Abuse and Control Act must have acted knowingly or intentionally in presenting a fraudulent claim).  In the instant case, it is clear that a violation of subsection (3) requires deceitful and/or fraudulent acts.  Thus, only criminal intent or guilty knowledge is sufficient to sustain a conviction, and that criminal intent or guilty knowledge requires that the defendant knew that his conduct was illegal.

Subsections (1) and (2) of 18 Pa.C.S. §5111 require knowledge and intent, and they require that the defendant know that the property involved in the financial transaction represents the proceeds of unlawful activity.  To the contrary, subsection (3) sets forth no mens rea, requiring only the actus reus of conducting a financial transaction to avoid a transaction reporting requirement.  To apply the mens rea requirements set forth in 18 Pa.C.S. §302, or to require only that the defendant knowingly avoided a transaction reporting requirement, without requiring that he knew that what he was doing was illegal would be absurd, permitting the same extremely serious penalty to a person who had been only reckless, and who was unaware that he was violating a law, as to someone knowingly dealing in the proceeds of unlawful activity. Morissette v. United States, 342 U.S. 246, 251-252, 263-265 (1952) (mens rea of intent cannot consist solely of an intent to commit the actus reus; rather, a guilty mind is required, one which intends to commit a crime or wrong).

In Morissette v. United States, the defendant was charged with knowingly converting the property of the United States when he salvaged spent bomb casings which he located on the site

of a practice bombing range. 342 U.S. 246, 247-248 (1952). The defendant argued that he believed the property was abandoned and had not intended to steal it. Id. at 248-249. The trial court refused to instruct the jury on the defendant's claim, informing them that if they believed the government's testimony—that he took the bomb casings without permission, that they belonged to the United States Government, and were worth one cent or more—that he was guilty. Id. at 249. The court further instructed the jury that "[t]he question on intent is whether or not he intended to take the property," and it overruled defense counsel's objection, arguing that the court should instruct that the defendant's intent must have been felonious. Id. at 249.

The United States Supreme court noted that "[t]he contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion." Id. at 250. Crime arises from "concurrence of an evil-meaning mind with an evil-doing hand." Id. at 251. "It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil." Id. The Court noted that the crimes of stealing, larceny, and its "variants and equivalents," had always required intent. Id. at 261. The Court also noted that Congress had "at times required a specific intent or purpose which will require some specialized knowledge or design for some evil beyond the common-law intent to do injury." Id. at 264-265. The Court found that "knowing conversion requires more than knowledge that defendant was taking the property in his possession," and that "he must have had knowledge of the facts, though not necessarily the law, that made the taking a conversion." Id. at 270-271.

In Morissette, the government had to prove not only that the defendant intended to take the property, but that he did so knowing that it was wrong--that it was the property of someone else. Similarly, in the instant case, to sustain a conviction for structuring, the Commonwealth should have been required to prove that Mr. Stoltzfoos not only knew that he was structuring, but

19

that he knew doing so was illegal.

"The requirement that [an] act must be willful or purposeful . . . relieve[s] the statute of the objection that it punishes without warning an offense of which the accused was unaware." Colautti v. Franklin, 439 U.S. at 395 f.n.13. Under numerous circumstances, appellate courts have "required actual knowledge of the illegality of certain conduct to support a conviction." United States v. Mussaleen, 35 F.3d 692, 698 (2nd Cir. 1994) These cases have involved statutes "that either explicitly or through judicial interpretation require[d] actual knowledge [of the illegality of the conduct] to satisfy the mens rea element of the crime." Id. Generally, they have involved offenses which are not common law offenses, but are statutorily-created offenses, the criminality of which is not immediately apparent to the ordinary citizen. See, e.g., Morissette v. United States, 342 U.S. 246, 265 (1952) (the law has "at times required a specific intent or purpose which will require some specialized knowledge or design for some evil beyond the common-law intent to do injury").

One such example is the federal laws prohibiting failure to file an income tax return and attempting to evade income taxes. The United States Supreme Court held that the mens rea of "willfully" required the government to prove the specific intent to violate the law in both instances. United States v. Averso, 762 F.Supp. 441 (D.N.H. 1991), citing Cheek v. United States, 498 U.S. 192, 201 (1991). In requiring the government to prove an intentional violation of the law, the Supreme Court cited the "proliferation of statutes and regulations" in the area of tax law, and noted the complexity of the tax laws and the difficulty of the average citizen in understanding them. Cheek at 199-200.

In Liparota v. United States, the defendant was charged with knowingly using, transferring, acquiring, altering or possessing food stamps in any manner not authorized by the statute or the regulations. 471 U.S. 419 (1985). The trial court had instructed the jury that the

word "knowingly" required that the jury found that the defendant knew what he was doing and was aware of the nature of his conduct, but refused to instruct the jury that the defendant had to have known that what he was doing violated the law. Id. at 422. On appeal, the Commonwealth argued that it was not required to prove any mental state with regard to the fact that the acquisition of food stamps was not authorized by statute or regulation. The defendant argued that without applying knowledge to the element that his conduct was illegal, the court had "dispense[d] with the only morally blameworthy element in the definition of the crime." Id. at 423.

The United States Supreme Court held that "[a]bsent indication of contrary purpose in the language or legislative history of the statute, we believe that [7 U.S.C.] §2024(b)1) requires a showing that the defendant knew his conduct to be unauthorized by statute or regulations." Id. at 425. The Court further noted:

> . . . The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. Thus, in United States v. Gypsum Co., we noted that certainly far more than the simple omission of the appropriate phrase from the statutory definition is necessary to justify dispensing with an intent requirement and that criminal offenses requiring no mens rea have a generally disfavored status. Similarly, in this case, the failure of Congress explicitly and unambiguously to indicate whether mens rea is required does not signal a departure from this background assumption of our criminal law.
> This construction is particularly appropriate where, as here, to interpret the statute otherwise would be to criminalize a broad range of apparently innocent conduct. For instance, §2024(b)(1) declares it criminal to use, transfer, acquire, alter, or possess food stamps in any manner not authorized by statute or regulations. The statute provides further that 'coupons issued to eligible households shall be used by them only to purchase food in retail food stores which have been approved for participation in the food stamp program at prices prevailing in such stores.' This seems to be the only authorized use. A strict reading of the statute with no

21

knowledge-of-illegality requirement would thus render criminal a food stamp recipient who, for example, used stamps to purchase food from a store that, unknown to him, charged higher than normal prices to food stamp participants.  Such a reading would also render criminal a nonrecipient of food stamps who 'possessed' stamps because he was mistakenly sent them through the mail due to administrative error, 'altered' them by tearing them up, and 'transferred' them by throwing them away.  Of course, Congress could have intended that this broad range of conduct be made illegal, perhaps with the understanding that prosecutors would exercise their discretion to avoid such harsh results.  However, given the paucity of material suggesting that Congress did so intend, we are reluctant to adopt such a sweeping interpretation.

In addition, requiring mens rea is in keeping with our longstanding recognition of the principle that ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.  Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability.  Although the rule of lenity is not to be applied where to do so would conflict with the implied or expressed intent of Congress, it provides a time-honored interpretive guideline when the congressional purpose is unclear.  In the instant case, the rule directly supports petitioner's contention that the Government must prove knowledge of illegality to convict him under §2024(b)(1).

Id. at 425-429 (some internal citations, quotations, footnotes, and emphasis omitted).

In holding that the government was required to prove that the defendant knew his conduct was illegal, the court noted that a violation of §2024(c) required that the defendant knew that the food stamps he presents have been received, transferred or used in violation of the statute or the regulations.  Since this subsection of the statute required that the defendant know that his conduct was illegal, the Court was unwilling to interpret the same "knowing" requirement in another subsection of the statute such that the defendant was not required to know that his conduct was illegal.  Id. at 429-430.

Finally, the court noted that the possession of food stamps was not the sort of public welfare offense which may be deemed criminal without a mental element, such as possession of

an unregistered firearm, or adulterated or misbranded drugs, which presented a danger to the public, without the defendant's knowledge of the illegality of his conduct. Id. at 433.

The United States Supreme Court faced a question similar to that in the instant case in Ratzlaf v. United States, when it was asked to determine whether the federal structuring statute, set forth at 31 U.S.C. §§5322 and 5324, required the government to prove not only that the defendant knowingly structured financial transactions to avoid a transaction reporting requirement, but that he did so, knowing that structuring was illegal. 510 U.S. 135, 136 (1994). The Court held that the government was required to prove that the defendant "acted with knowledge that his conduct was unlawful." Id. Although the United States Supreme Court based its holding on the use of the word "willfully" in §5322, many of the principles which the Court considered in deciding the case are equally applicable here.

The Court observed:

> Undoubtedly there are bad men who attempt to elude official reporting requirements in order to hide from Government inspectors such criminal activity as laundering drug money or tax evasion. But currency structuring is not inevitably nefarious. Consider, for example, the small business operator who knows that reports filed under 31 U.S.C. §5313(a) are available to the Internal Revenue Service. To reduce the risk of an IRS audit, she brings $9,500 in cash to the bank twice each week, in lieu of transporting over $10,000 once each week. That person, if the United States is right, has committed a criminal offense, because she structured cash transactions 'for the specific purpose of depriving the Government of the Information that Section 5313(a) is designed to obtain.' . . . Nor is a person who structures a currency transaction invariably motivated by a desire to keep the Government in the dark. But under the Government's construction an individual would commit a felony against the United States by making cash deposits in small doses, fearful that the bank's reports would increase the likelihood of burglary, or in an endeavor to keep a former spouse unaware of his wealth.
>
> Courts have noted many occasions on which persons, without violating any law, may structure transactions in order to avoid the impact of some regulation or tax. This court, over a century ago,

23

supplied an illustration:

> The Stamp Act of 1862 imposed a duty of two cents upon a bank-
> check, when drawn for an amount not less than twenty dollars. A
> careful individual, having the amount of twenty dollars to pay,
> pays the same by handing to his creditor two checks of ten dollars
> each. He thus draws checks in payment of his debt to the amount
> of twenty dollars, and yet pays no stamp duty. . . .While his
> operations deprive the government of the duties it might
> reasonably expect to receive, it is not perceived that the practice is
> open to the charge of fraud. He resorts to devices to avoid the
> payment of duties, but they are not illegal. He has the legal right to
> split up his evidences of payment, and thus to avoid the tax.
>
> In current days, as an amicus noted, countless taxpayers each year
> give a gift of 10,000 on December 31 and an identical gift the next
> day, thereby legitimately avoiding the taxable gifts reporting
> required by 26 U.S.C. §2503(b).
>
> In light of these examples, we are unpersuaded by the argument
> that structuring is so obviously "evil" or inherently "bad" that the
> "willfulness" requirement is satisfied irrespective of the
> defendant's knowledge of the illegality of structuring.

510 U.S. 135, 144-146.

Thus, as in cases of criminal violations of the tax code, and criminal violations of food

stamp regulations, the Court found that the defendant must know that his conduct is illegal, i.e.,

morally blameworthy, in order to be convicted, at least in part because the act of structuring itself

is not obviously wrong, or obviously illegal.[6]

As the United States District Court of New Hampshire observed, with regard to the

federal structuring statute set forth in 31 U.S.C. §5324, "[u]nderstanding one's duties under the

structuring statute is certainly more difficult and less common than understanding one's duty to

file a tax return." United States v. Averso, 762 F.Supp. 441, 447 (D.N.H. 1991). "In order to

understand one's legal duty not to structure a currency transaction one must be familiar with one

---

6    31 U.S.C. §5324 was amended in 1994, so that criminal sanctions for structuring are now contained within
     §5324, and to eliminate the requirement that structuring be willful. Pub.L. No. 103-325, 108 Stat. 2160, 2253.
     See United States v. MacPherson, 42 F.3d 183, 188-189 (2d Cir. 2005). Since that time, the federal appellate
     courts have held that a defendant may be convicted of structuring without knowing that structuring is illegal. Id.

federal regulation, 31 C.F.R. §103-22(a)(1), and one statute prohibiting the conduct.  31 U.S.C. §5324."  Id.  To know that structuring is a criminal act, one must be familiar with an additional federal statute.  31 U.S.C. §5322(a)"  Id.

Nothing about the act of structuring financial transactions to avoid a reporting requirement is inherently evil or criminal.  "Law abiding citizens frequently structure transactions to avoid a report, regulation, or tax without violating the law."  United States v. Ismail, 97 F.3d 50, 57 (4th Cir. 1996).

As the United States District Court of New Hampshire observed in United States v. Averso:

> There are many occasions in the life of a businessman in which he structures transactions in order to avoid the impact of some regulation or tax.  One may structure a company to reduce tax liability, one may structure a transaction over the course of several years to change the way a regulation affects them.  If one is not trying to deprive the government of something to which the government is entitled, there is nothing illegal about such structuring.

762 F.Supp. 441, 446 (D.N.H. 1991).

Thus. where the mens rea applicable to 18 Pa.C.S. §5111(a)(3) is ambiguous, both regard to the level of culpability, and with regard to whether a defendant must know that structuring is illegal in order to be convicted thereof, the rule of lenity must apply, to give the defendant "fair warning . . . of what the law intends to do if a certain line is passed."  Ratzlaf v. United States, 510 U.S. 135, 148 (1994).

In holding that the law was not void for vagueness, the Superior Court suggests that Mr. Stoltzfoos' conduct was not innocuous.  Citing the affidavit of probable cause, the Court suggests that Mr. Stoltzfoos' money was obtained through a complex credit card "swindle."  Superior Court Opinion, October 26, 2010, p. 14, f.n.5.  The Superior Court's suggestion that

somehow the law is not void for vagueness because Mr. Stoltzfoos' conduct may have been criminal, i.e. that he really *was* dealing in the proceeds of unlawful activities, is both irrelevant and highly improper.  See Superior Court Opinion, October 26, 2010, Ford Elliott, P.J. dissenting, p. 2, text and f.n. 1.  Mr. Stoltzfoos was charged pursuant to 18 Pa.C.S. §5111(a)(3), which requires absolutely no evidence that the money deposited was the proceeds of unlawful activities, and no such evidence was produced at trial.  Therefore, the unproved claims of the Commonwealth are not only irrelevant, it is improper to consider them when deciding whether the law is unconstitutionally vague.

Similarly, the Superior Court found that the law was not unconstitutionally vague because "[a]ppellant's own statements demonstrated a keen awareness of exactly what acts the statute prohibited."  Superior Court Opinion, October 26, 2010, p. 15.  This statement is simply false.  The record is very clear that Mr. Stoltzfoos had no idea that avoiding a reporting requirement was a violation of the law.

It was uncontested that Mr. Stoltzfoos made fifty-eight deposits of cash in Lancaster County banks in amounts under $10,000 to avoid the banks' making any report to the government regarding his deposits.  N.T., pp. 61-63, 91-92, 245, 249, 251.  There was evidence that the money which was being deposited had been withdrawn in 1999, before the turn of the century.  N.T., pp. 145, 175.

Although Mr. Stoltzfoos deposited cash in amounts under $10,000 in order to avoid a report being made, there was no evidence that Mr. Stoltzfoos was aware that structuring cash deposits to avoid a report being made was illegal.  N.T., pp. 161-162, 168, 184-185, 189, 193.  Furthermore, there was evidence that Mr. Stoltzfoos had structured financial transactions in 1999 and 2001, in order to avoid having the bank fill out a form, without consequences; thus, he had no reason to believe that this conduct was illegal.  N.T., pp. 146, 153, 247, 260.

26

For the foregoing reasons, this Honorable Court should hold that 18 Pa.C.S. §5111(a)(3) is void for vagueness.  In the alternative, this Honorable Court should find that to be constitutional, a conviction for a violation of §5111(a)(3) requires that the accused have knowingly violated the law prohibiting structuring, knowing that such structuring was illegal.

B. <u>18 Pa.C.S. §5111(a)(3) is void for vagueness because the title of the statute: "Dealing in proceeds of unlawful activities," contains an element not required by subsection three, thus leaving the ordinary person to guess at the conduct which is proscribed.</u>

18 Pa.C.S. §5111 provides, in relevant part, as follows:

> §5111.  Dealing in proceeds of unlawful activities
> (a) Offense defined.--A person commits a felony of the first degree if the person conducts a financial transaction under any of the following circumstances:
>
> . . .
>
> (3) To avoid a transaction reporting requirement under State or Federal law.

Although the title of the statute is "Dealing in proceeds of unlawful activities," there is no mention of this element of the offense in the newly created subsection three.  The ordinary person would understand, given the title of the statute, that he would not run afoul of it unless he was, in fact, conducting financial transactions which involved the proceeds of unlawful activity.  In fact, however, no such requirement is contained in the definition of the offense set forth in subsection three.

1 Pa.C.S. §1924 provides that "[t]he title and preamble of a statute may be considered in the construction thereof."  The statute also provides that "[t]he headings prefixed to titles, parts, articles, chapters, sections and other divisions of a statute shall not be considered to control but may be used to aid in the construction thereof."  1 Pa.C.S. §1924.  Although it does not explicitly so state, the statute strongly suggests that although the headings prefixed to the title are not controlling, the title should be considered relevant in its construction.  In the instant case, the title creates an insurmountable obstacle to the ordinary persons ability to understand what conduct is prohibited, and it encourages the arbitrary and discriminatory enforcement of the statute. <u>Commonwealth v. Barud</u>, 545 Pa. 297, 304, 681 A.2d 162, 165 (1996).

Numerous Pennsylvania cases have considered the title of a statute in its construction, with varying results.  It should be noted, however, that the issue before this Honorable Court is not merely the proper construction of the statute, but whether the statute's meaning can be determined with sufficient clarity to save it from being unconstitutional, given the disconnect between the title and subsection three.

In Helsel v. Puricelli, our Superior Court considered the claim of a grandfather for visitation rights under 23 Pa.C.S. §5312, entitled "When parents' marriage is dissolved or parents are separated."  927 A.2d 252 (Pa. Super. 2007).  The parents had previously separated for more than six months, but were reconciled at the time the grandfather sought visitation rights.  Id. at 254.  The statute provided that "when parents have been separated for six months or more" the court may grant partial custody or visitation rights upon application of a grandparent.  23 Pa.C.S. §5312.  The Court held that the grandfather could not apply for visitation rights under the statute, finding that the title clearly showed that the statute applied only when the parents' marriage is dissolved or the parents are separated.  Id. at 256.  Thus, the Court used the title of the statute to limit the conditions under which a grandparent could seek visitation rights.

In Commonwealth v. Derstine, our Supreme Court considered the application of the Small Loans Act to a $200 loan made by the defendant to a businessman, for the operation of his business.  418 Pa. 186, 187, 210 A.2d 266, 267 (1965).  The title of the act was "Regulating the business of loaning money in sums of six hundred dollars or less, either with or without security, to individuals pressed by lack of funds to meet immediate necessities, fixing the rates of interest and charges therefor; requiring the licensing of lenders; and prescribing penalties for the violation of this act."  Id. at 188, 210 A.2d at 268.  The Court noted that "[t]he title is always a part of a statute or ordinance and, as such, must be considered in construing the enactment."  Id. at 189, 210 A.2d at 268 (citations omitted).  Thus, the Court found that the lender was not in

violation of the act, because although the loan was for less than $600, at a rate of interest greater than 6% per annum, it was not covered by the statute because the Commonwealth had not proved that the defendant "was engaged in the business of lending money to individuals pressed by lack of funds to meet immediate necessities." Id.

In Commonwealth v. Brady, our Supreme Court held that the Immunity Act could not be used to confer immunity or any witness called to testify before an indicting grand jury, but applied only those witnesses who testified before investigative grand juries. 470 Pa. 420, 426-427, 368 A.2d 699, 702-703 (1977). In reaching this conclusion, the Court looked to the title of the act, which referred to "certain" grand juries, as well as the "entire thrust of the act." Id. at 427, 368 A.2d at 703.

Similarly, if this Honorable Court finds that the structuring statute is not void for vagueness, it should use the title of the statute, "Dealing in proceeds of unlawful activities," to limit the persons to whom the prohibition against structuring applies.

In the instant case, appellate counsel for Mr. Stoltzfoos contends that the body of the statute contains sufficient ambiguity that it is impossible to construe it without consideration of the title. When the title is considered, it is clear that subsection three either includes elements regarding the source of the money not specifically stated in subsection three, or that the subsection is misplaced in §5111.[7]

Appellate counsel for Mr. Stoltzfoos has located no other state which criminalizes the act of structuring financial transactions to evade a reporting requirement, with a misleading title,

---

7    It appears that a challenge to 18 Pa.C.S. §5111(a)(3) should have been made on the basis that it violates Article III, Section Three of the Constitution of the Commonwealth of Pennsylvania, which provides that "[n]o bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compiling the law or a part thereof." This provision has been interpreted to mean that "[w]hile the title of an act need not be complete index to its contents, a misleading title is neither in letter nor in spirit a compliance with the constitutional mandate that the subject of the bill must be clearly expressed in the title." Commonwealth v. Barbono, 56 Pa. Super. 637 (1913); see also Commonwealth v. Archino, 56 Pa. Super. 645 (1914).

requiring that the money used have been illegally obtained.  See Arizona Revised Statute §13-2317, titled "Money laundering; classification; definitions;" Florida Statute §869.104, titled "Structuring transactions to evade reporting or registration requirements prohibited;" 205 Illinois Statutes 685 §7, titled "Prohibitions; structuring a transaction;" Nevada Revised Statutes §207.195, titled, "Use of monetary instrument proceeding or derived from unlawful activity; conducting financial transaction with intent to evade regulation governing records of casinos;" New Jersey Code 2C:21-25, titled., "Money laundering and illegal investment; crime;" Rhode Island Statute §11-9.1-15, titled, "Laundering of monetary instruments."

While, arguably, the title "money laundering" has traditionally been applied to illegally obtained money, the term could conceivably include financial transactions with lawfully obtained money, which were structured to evade a cash transaction report.  To the contrary, "Dealing in proceeds of unlawful activities" clearly refers to persons whose financial transactions involve the proceeds of unlawful activities, not just persons seeking to evade a reporting requirement.

Because the title of §5111 is not reconcilable with the offense described in subsection three, an ordinary person simply cannot what conduct is prohibited, and the statute encourages arbitrary and discriminatory enforcement.  See, e.g., Commonwealth v. Barnhart, 722 A.2d 1093, 1098 (Pa. Super. 1998) (noting that for conviction under section 5111, "an underlying illegal activity" must first occur).

For the foregoing reasons, this Honorable Court should hold that 18 Pa.C.S. §5111(a)(3) is void for vagueness.

II.  The Superior Court erred in ruling that 18 Pa.C.S. §5111(a)(3) is not void for overbreadth, where the statute criminalizes the depositing of lawfully acquired cash into financial institutions in a manner intended to maintain the depositor's constitutional right to privacy in his financial records.

A claim that a statute is overbroad is a claim that it violates the substantive due process guarantees of the United States and Pennsylvania Constitutions, as set forth in the Fifth and Fourteenth Amendments to the United States Constitution, and Article One, Section Nine of the Constitution of the Commonwealth of Pennsylvania. Commonwealth v. Barud, 545 Pa. 297, 301, 681 A.2d 162, 163-164 (1996).

"A statute is overbroad if by its reach it punishes constitutionally protected activity as well as illegal activity."[8] Commonwealth v. Barud, 545 Pa. at 305, 681 A.2d at 165. "[I]n determining whether a statute is unconstitutional due to overbreadth, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." Commonwealth v. Davidson, 595 Pa. 1, 18, 938 A.2d 198, 208 (2007) (internal quotations omitted). "The overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." Id. at 18-19, 938 A.2d 208. "[I]f a statute's overbreadth is substantial, it may not be enforced against anyone until it is narrowed to reach only unprotected activity." Id. at 19, 938 A.2d 208 (internal quotations omitted).

A statute may also be overbroad if it "sweeps excessively broadly so as to be beyond the

---

8  Although the Commonwealth suggests that overbreadth claims are generally limited to the First Amendment, any constitutionally protected right may be abridged by an overbroad law. See e.g., H.L. v Matheson, 450 U.S. 398, 434 (1981) Marshall, Brennan and Blackmun, JJ., dissenting (noting numerous privacy rights established by the United States Constitution which may not be abridged by law, including the right to an abortion, the decision to marry, to procreate, and to use contraceptives). In addition to the more traditionally recognized First Amendment right of free speech which may be abridged by an overbroad law, the United States Supreme Court has recognized a right of philosophical or associational privacy which must be protected. United States v. Caldwell, 408 U.S. 665, 719 f.n.2 (1972) Douglas, J, dissenting (citing numerous cases recognizing the right of privacy in one's philosophy, opinions, and associations).

state's legitimate police powers . . . or is arbitrary and capricious because it leads to the

imposition of punishment bearing little relation to any legitimate governmental interest."

Commonwealth v. Duda, 592 Pa. 164, 185, 923 A.2d 1138, 1150 (2007) (internal citations

omitted).

The Commonwealth correctly observes that the United States Supreme Court has held

that a person has no right to privacy in his bank records.  United States v. Miller, 425 U.S. 435

(1976).  As the Commonwealth concedes, however, Pennsylvania has rejected Miller, holding

that under Article One, Section Eight of the Constitution of the Commonwealth of Pennsylvania,

Pennsylvanians have a right to privacy in their financial records even though they have been

disclosed to their banks.  Commonwealth v. DeJohn, 486 Pa. 32, 49, 403 A.2d 1283, 1292 (1979)

(departing from holding of Miller, and finding that "under Article I, Section 8 of the

Pennsylvania Constitution bank customers have a legitimate expectation of privacy in records

pertaining to their affairs kept at the bank"); see also Commonwealth v. Duncan, 572 Pa. 438,

449, 817 A.2d 522, 462 (2003) (same);  Commonwealth v. Rekaskie, 566 Pa. 85, 94, 778 A.2d

624, 630 (2001) ("an individual's bank records [are] constitutionally protected, even though such

records constitute[] information disclosed to a third party").

18 Pa.C.S. §5111(a)(3) criminalizes a depositor's decision to structure his financial

transactions so that the state and federal government are not notified, by way of a cash

transaction report, of his financial dealings.  The statute criminalizes certain cash transactions

even if the money involved has been lawfully acquired, and there is no evidence that the

structuring of those transactions is being done to further a crime, such as tax evasion.

Under these circumstances, 18 Pa.C.S. §5111(a)(3) violates the right to privacy in one's

bank records, in violation of Article I, Section Eight of the Constitution of the Commonwealth of

Pennsylvania, by criminalizing a person's attempts to keep private what the Pennsylvania

Constitution says he has a constitutional right to keep private.[9]  Furthermore, as the statute

requires no underlying criminal conduct, nor any allegation that the structuring at issue is being

done for an illegal purpose, the government has no legitimate interest in violating that privacy

interest. See Carey v. Population Services, 431 U.S. 678, 686 (1977) (where law infringes on

constitutional right, the law "may be justified only by compelling state interests, and must be

narrowly drawn to express only those interests") ; Pirillo v. Takiff, 462 Pa. 511, 529, 341 A.2d

896, 905 (1975) (state must have compelling interest to justify infringement of constitutional

rights).  As enacted, §5111(a)(3) does not just infringe on a person's right to privacy in his bank

records, it criminalizes the mere exercise of that right.  Where the Pennsylvania Constitution

protects a person's right of privacy in his bank records, the legislature may not criminalize the

mere act of structuring his financial transactions so that this privacy is preserved.

     In order to justify criminalizing structuring, given the right to privacy in one's bank

records, the state must have a compelling interest.  Commonwealth v. Hess, 532 Pa. 607, 620,

617 A.2d 307, 314 (1992) (in balancing state interests with individual constitutional guarantees,

"four factors must be considered:  (1) Whether the state interest sought to be achieved can be

effectively accomplished in some manner which will not infringe upon interests protected by

constitutional rights; (2) Whether the state interest is sufficiently compelling when compared

with the interests affected, justifies any infringement of those interests; (3) Whether the state

interest is sufficiently compelling to justify the degree of infringement that is necessary to

effectuate that interest; (4) Whether the provision under challenge represents the narrowest

possible infringement consistent with effectuating the state interest involved").  Such a

---

9  Clearly, this is precisely what Levi Stoltzfoos did.  He made a statement to police that he "decided to put money in bank and have one year CD's opened by 4/23/06 . .. so that he could "buy new truck this fall." N.T., p. 91-92. Indicating that he "knew that when you withdrew $10,000 cash or deposit $10,00 cash, a form has to be filled out," he further stated that he "don't want no part of government investigation or harassment." N.T., p. 92. Thus, he made all cash deposits in amounts less than $10,000, to keep his bank records private.

compelling interest would exist if the state was seeking to regulate some underlying criminal conduct, beyond the act of structuring itself, such as regulating financial transactions which are the proceeds of unlawful activity, or which are being structured to accomplish an illegal purpose, such as tax evasion.  See Commonwealth v. Duda, 592 Pa. 164, 185, 923 A.2d 1138, 1150 (2007) (statute is overbroad if it "sweeps excessively broadly so as to be beyond the state's legitimate police powers . . . or is arbitrary and capricious because it leads to the imposition of punishment bearing little relation to any legitimate governmental interest").  Such is the case with Section 5111(a)(1) and (2).  However, Section 5111(a)(3) infringes on the constitutional right to privacy in one's bank records without any legitimate, let alone compelling, interest in doing so.  See Superior Court Opinion, October 26, 2010, Ford Elliott, P.J., dissenting, pp. 2-5.

For the foregoing reasons, this Honorable Court should hold that 18 Pa.C.S. §5111(a)(3) is void for overbreadth.

III.  The $540,200 civil penalty, imposed pursuant to 18 Pa.C.S. §5111(c), constituted an

excessive fine and cruel and unusual punishment.

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not

be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."   Article

I, Section 13 of the Constitution of the Commonwealth of Pennsylvania, which states that

"[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel punishments

inflicted," is coextensive with the Eight Amendment.  Commonwealth v. Real Property Known

as 5444 Spruce Street, 574 Pa. 423, 428, 832 A.2d 396, 399 (2003).

In the instant case, Mr. Stoltzfoos' sentence included a civil penalty of $540,200 under 18

Pa.C.S. §5111(c), which the court apparently interpreted as mandatory, as it noted that the

penalty "shall be imposed by the Court."[10] N.S.H., p. 45.

It is not entirely clear to appellate counsel that this penalty is mandatory, as the language

of subsection (c) states that "[a] person who conducts or attempts to conduct a transaction

described in subsection (a) is liable to the Commonwealth for a civil penalty of the greater of: (1)

the value of the property, funds or monetary instruments involved in the transaction; or (2)

$10,000."  Thus, this court must determine whether "is liable to the Commonwealth" means that

the penalty "shall be imposed by the Court," as the trial court found.  Unfortunately, appellate

counsel has not located any caselaw which discusses whether the words "is liable to" render the

civil penalty of 18 Pa.C.S. §5111(c) mandatory.  Regardless, appellate claims that the civil

penalty imposed is excessive under the Eighth Amendment.

It should first be noted that this penalty appears to be completely separate from, and in

addition to, a forfeiture of the money.  The Commonwealth has already seized all $540,200

---

10 The word "shall" appears in subsection (b), which states that a person shall be sentenced to a fine or to
    imprisonment, or both.  However, it does not appear in subsection (c).

which Mr. Stoltzfoos deposited, and that money has, in turn, been seized by the U.S. Attorney's office. N.S.H., p. 52. To the best of appellate counsel's knowledge, the U.S. Attorney's office is seeking the forfeiture of the money. It is appellate counsel's understanding that the civil penalty contemplates that Mr. Stoltzfoos is expected to pay an *additional* $540,200 beyond the $540,200 which has been seized.[11] This, too, is unclear under the statute. However, it appears that the total amount of money Mr. Stoltzfoos will lose as a result of this action, and the federal forfeiture action is at least $1,080,400, which is twice the amount of the instant financial transactions.

The Commonwealth correctly states that the closest parallel to the instant situation appears to be forfeiture law, though it is not clear exactly how the guidelines set forth by the United States Supreme Court and the Pennsylvania appellate courts in forfeiture cases are to be applied in the context of this case. Again, appellate counsel has located no caselaw on point with regard to this question.

In United States v. Bajakajian, the United States Supreme Court considered the case of a defendant who was discovered leaving the country with $357,144 cash which he had not reported as required by 31 U.S.C. §5316. 524 U.S. 321 (1998). Noting that the forfeiture was clearly punishment under the Eighth Amendment, the Court rejected the government's claim that forfeiture of the cash served a remedial purpose, and noted that the crime did not cause lost revenue to the government. Id. at 327-329. The Court also rejected the government's argument that the money should be forfeited as an instrumentality of the offense. Id. at 333-334.

The Court held that "a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." Id. at 334. In determining whether a forfeiture is grossly disproportionate to the offense, the Court held that the courts

---

11  The court appeared to believe that the $540,200 seized was to be used to pay the civil penalty, as it noted that the Motion for Return of Property was moot with regard to the money based on its order of civil penalty. N.S.H., p. 50.

37

should compare the amount of the forfeiture with the gravity of the defendant's offense.  Id. at
336-337.  The Court held that where Mr. Bajakajian's crime was "solely a reporting offense,"
which was "unrelated to any other illegal activities," and "was the proceeds of legal activity," a
forfeiture of the entire $357,144 would have been disproportionate to the offense.  Id. at 337-
338.

Our appellate courts have applied the Bajakajian test.  The Commonwealth Court noted
that a forfeiture is a fine "and thus subject to review under the Excessive Fines Clause."  5444
Spruce Street at 428, 832 A.2d at 399.   In Commonwealth v. Smothers, our Commonwealth
Court held that under Bajakajian, a "a punitive forfeiture would violate the Excessive Fines
Clause if it is grossly disproportional to the gravity of a defendant's offense."  920 A.2d 922, 925
(Commw. 2007).  In determining whether a forfeiture, and presumably a fine, is excessive, the
court must compare the amount of the fine to the gravity of the offense.  The court should
consider the maximum penalty available,[12] whether "the violation was isolated or was part of a
pattern of misbehavior," and the "harm that resulted from the offense charged."  Id. at 925.  The
"trial court must weigh the evidence and draw any reasonable inferences from the evidence" to
determine whether the penalty is grossly disproportionate.[13]  Id. at 927.

In "judging the gravity of the offense," the focus should be on the culpability of the
specific defendant, rather than on the "severity of the crime in the abstract."  5444 Spruce Street
at 432, 832 A.2d at 402.  The court should also consider the penalty imposed as compared to the
maximum penalty available.  Id. at 433, 832 A.2d at 402.

---

12  It should be noted that the maximum fine available, pursuant to 18 Pa.C.S. §5111(b), may also be excessive, in
    cases of a violation of 18 Pa.C.S. §5111(a)(3).  This issue has not been litigated and is not at issue in the instant
    case.
13  In this case, the trial court did not weigh the evidence or draw any conclusions as to whether the fine was grossly
    disproportionate, perhaps because it believed that the fine was mandatory.  Rather, the court stated that "relative
    to the constitutionality issues," it "continues to agree with the Commonwealth and thus adopts its well-reasoned
    analysis for purposes of appellate review."  Trial Court Opinion, March 26, 2009, p. 5.

In the instant case, however, it should be noted that although a violation of 18 Pa.C.S. §5111(a)(3) is a first degree felony, punishable by ten to twenty years incarceration,[14] and a fine of up to twice the value of the property involved, the newly enacted subsection three is completely different in degree of criminal conduct from that required for subsections one and two.  Conviction under subsection three requires neither that the defendant's financial transactions have been the proceeds of unlawful activity, nor that he sought to avoid a cash transaction report to further some criminal activity, such as tax evasion.  Similar to the defendant in Bajakajian, Mr. Stoltzfoos' offense was essentially a reporting offense—he sought to avoid the bank's production of cash transaction reports to the government.  The Commonwealth produced no evidence, however, that the government lost revenue because of Mr. Stoltzfoos' offense.[15]

Under the circumstances of the instant case, the civil penalty of $540,200 was grossly disproportionate to the offense, in violation of the Eighth Amendment to the United States Constitution, and Article I, Section Thirteen of the Constitution of the Commonwealth of Pennsylvania.

For the foregoing reasons, the civil penalty assessed in the instant case should be vacated. If this Honorable Court finds that the trial court correctly concluded that the penalty was mandatory, then subsection 18 Pa.C.S. §5111(c) must be struck down, and no civil penalty may be assessed.  If this Court finds that the civil penalty was not mandatory, then the matter should be remanded for reconsideration in light of the guidelines set forth in Bajakajian and 5444

---

14 As noted in Argument Section I.A., *supra*, a change to §5111(a)(3) has been proposed in the legislature which would reduce the grading of a violation of subsection three to a third-degree felony.  H.B. No. 1728, Session of 2009, introduced June 17, 2009.

15 The Commonwealth argued at sentencing that Mr. Stoltzfoos' money was ill-gotten.  Aside from the fact that this claim was not presented at trial, and was not an element of the crime with which Mr. Stoltzfoos was charged, this claim in no way established any loss to the government.  If there was a loss, it was to nameless victims which the Commonwealth failed to produce, and for whom the Commonwealth sought no restitution.  Instead, the Commonwealth seized all of the money which Mr. Stoltzfoos deposited, and now argues that a civil penalty of *another* $540,200 is not an excessive fine.

Spruce Street.

CONCLUSION

WHEREFORE, Mr. Stoltzfoos respectfully requests that Your Honorable Court grant allowance of appeal.

Respectfully submitted,
OFFICE OF THE PUBLIC DEFENDER

BY:  *MaryJean Glick*
MaryJean Glick, Esq.
Senior Assistant Public Defender
Attorney I.D. No. 76608
Attorney for Defendant

41