# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LEVI LAPP STOLZFOOS  :  CIVIL ACTION
      Petitioner  :
        :
        :
      v.  :
        :
JOHN E. WETZEL ET AL.  :  No. 13-6747
      Respondent  :

## PETITIONER'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND REOCMMENDATIONS

Pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 72.1, Petitioner Levi Lapp Stoltzfoos objects to the Magistrate Judge's Report and Recommendation (R&R) filed March 31, 2015.  The Report and Recommendation denying Petitioner's Writ of Habeas Corpus should not be followed and Petitioner's Motion should be granted.

## De Novo Review

As a preliminary matter, under Federal Rule of Criminal Procedure 59(b), the district judge must consider any objections to a Magistrate's Recommendation de novo. See Fed. R. Crim. P. 59(b)(3).  Any party may serve and file objections to the proposed findings and recommendations of the Magistrate Judge.

## Factual and Procedural History

Between the period of January 6, 2006 and February 6, 2006, Petitioner made fifty-eight cash deposits, totaling $541,000,000 to ten different banks in amounts under $10,000 to avoid the banks making any report to the government regarding his deposits (N.T. pp. 61-63, 91-92).   A jury trial was held before the Honorable Howard F. Knisely of the Lancaster Court of Common Pleas on May 5-8, 2008.  Petitioner testified that his sole reason for making the deposits in that manner was because he "want no (sic) part of government investigation or harassment." N.T. pp 161-162.  Although Petitioner deposited cash amounts under $10,000 to avoid reports being made, there was no evidence he was aware that structuring cash deposits to avoid a report being made was illegal.  N.T. pp. 162, 168, 184-5.   Furthermore, there was evidence that Petitioner had structured financial transactions in 1999 and 2001 in order to avoid having to fill out a form without consequences—thus, he had no reason to believe his conduct to be illegal.  Nevertheless, Petitioner was convicted of 58 Counts of dealing in proceeds of unlawful activity under 18 Pa.C.S. § 5111(a)3).  On July 22, 2008, the trial court sentenced Petitioner to an aggregate term of 2-10 years' incarceration and a civil penalty of $540,200.

Defendant filed a direct appeal which upheld his sentence on October 26, 2010.  Judge Ford-Elliot of the Pennsylvania Superior Court filed a dissenting

opinion, where she held that18 Pa.C.S. § 5111(a)(3) was unconstitutionally overbroad.  See Commonwealth v. Stoltzfoos, 30 MDA 2009 (Pa. Super., October 26, 2010.   Petitioner sought an appeal to Pennsylvania Supreme Court, which denied his petition on June 16, 2011.  See Commonwealth v. Stoltzfoos, 854 MAL 2010.  Petitioner then filed for PCRA relief, which was dismissed by the trial court on February 3, 2012.  Petitioner appealed this dismissal, which was affirmed by the Pennsylvania Superior Court on June 13, 2012.  See Commonwealth v. Stoltzfoos, 2148 MDA 211 (Pa. Super. June 13, 2012).  Petitioner appealed to the Pennsylvania Supreme Court, and was denied review on October 31, 2012.  See Commonwealth v. Stoltzfoos, 517 MAL 2012 (Pa. Oct. 31, 2012).  Petitioner filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C.§ 2254. Magistrate Judge Richard A. Loret recommended that Petitioner's petition for habeas relief be denied.  This Court initially approved the Magistrate Court's recommendations on March 15, 2016, and Petitioner appealed.  On August 18, 2016, The Third Circuit remanded this case to this Court, for further consideration of the Petitioner's filings.[1]  On August 23, 2016, current counsel was appointed and directed to file Objections to the Report and Recommendations.

---

[1] Petitioner also appealed this Court's decision not to appoint counsel for his Petition for Writ of Habeas Corpus.

## Argument

**I.**    **The $540,200 penalty imposed pursuant to 18 Pa.C.S. § 5111(a)(3) was an excessive fine under the Eight Amendment of the United States Constitution.**

As the United States admitted in its Response to the *pro se* Petition for

Habeas Corpus, pro se litigants are entitled to less stringent pleading requirements,

and should be liberally construed with a measure of tolerance. (Response, p.22,

citing Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998).   Moreover, Petitioner did

not have the luxury of counsel representing him at the time of the filing, which

given Petitioner's documented health issues placed him at even a greater

disadvantage than the typical *pro se* litigant.[2]   Notably, in his Petition for Writ of

Habeas Corpus, Petitioner specifically requested that this Court "grant any and all

relief to correct this Petitioner's unlawful convictions." (Petition for Writ of

Habeas Corpus and Memorandum of Law, 10).   Likewise, in his handwritten

Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State

Custody, the Petitioner specifically mentions in "grounds raised" an Eighth

Amendment violation in sentencing.   Therefore, the Magistrate Court erred in not

addressing Petitioner's Eighth Amendment argument.   Consequently, this Court

---

[2] On August 24, 2015 Petitioner was found not guilty by reason of insanity in Berks County CP CP-06-CR-0003344-2014.

should consider, and indeed find, that Petitioner's fine in this matter violates the Eighth Amendment of the United States Constitution.

Specifically, the Eighth Amendment of the United States Constitution provides that "excessive bails shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted."  In the instant case, the Petitioner's penalty included a civil penalty of $540,200, which is a patently excessive fine and in clear violation of the Eighth Amendment.[3]

From the language of the trial court, Petitioner's sentence included a civil penalty of $540,2000, which was interpreted by the trial court as mandatory. (Notes of Sentencing Hearing, 7/22/08, 45).  The Commonwealth presented absolutely no evidence that this money was acquired through illegal means.  In fact, as the Magistrate Judge points out in dismissing the argument that the statute Petitioner was convicted under was not overbroad, the penalty imposed under 18 Pa.C.S. § 5111(a)(3) has nothing to do at all with "the proceeds of unlawful activities." *See infra.* Conviction under subsection three requires no evidence that the transactions are ill-gotten gains, rather it is a reporting violation. There is no victim named, no crime alleged, and no person for whom the government sought restitution.  Now incredibly, in addition to seizing the entire $540,000, the Commonwealth would now have him pay a mandatory fine of another $540,200.

---

[3] The Eighth Amendment is made applicable to the states through the Fourteenth Amendment

The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish. In Waters-Pierce Oil v Texas, 212 U.S. 86 (1909), the Supreme Court held that excessive fines are those which are "so grossly excessive as to amount to a deprivation of property without due process of law." In Austin v United States, 509 U.S. 602 (1993) the Court, noting the lack of precedent regarding what constituted an excessive fine, applied a proportionality test like the one described in Solem v. Helm, 463 U.S. 277 (1983) in assessing what amounted to cruel and unusual punishment. In that case, the Court described several "objective factors" to be used in evaluating whether a punishment was cruel and unusual. These factors included the gravity of the offense, the harshness of the penalty imposed, the relative seriousness of sentences imposed on other criminals in the same jurisdiction, and the sentences imposed for the same crime in other jurisdictions. Id. at 627.

The Court has gone on to hold that "a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportionate to the offense". United States v. Bajakajian, 524 U.S. 321, 334 (1998). In determining what defines grossly disproportionate to the offense, the Court stated that courts should compare the amount of the fine with the gravity of the defendant's offense, a determination

6

of whether the violation was isolated or was part of a pattern of misbehavior **and an assessment of the harm that resulted from the offense charged**.  Id. at 337 (emphasis added).  In Bajakajian, the defendant left the country without reporting $357, 514, and was fined the full amount of the money he failed to report.   The Court in holding the fine excessive, found that the defendant's offense was solely a reporting offense. This is strikingly analogous to the matter before this court.   The Commonwealth failed to show any actual harm that resulted from the offense charged.  Petitioner's fine of $540,200 for what amounts to merely a reporting offense is the very definition of an excessive fine, and the mandatory fine should be stricken in violation of the United States Constitution's excessive fine clause under the Eighth Amendment.

## II.   18 Pa.C.S. § 5111(a)(3) is unconstitutionally overbroad, where the statute criminalizes the depositing of lawfully acquired cash into financial institutions, and is overbroad as applied to Petitioner, who was not proven to engage in any unlawful activity.[4]

18 Pa.C.S. Section 5111 is titled "Dealing in Proceeds of Unlawful

Activities.  Subsection(a)(3), which the Petitioner was convicted under, provides

that a person is guilty of a felony in the first degree if he conducts a financial

transaction "to avoid a transaction reporting requirement under State or Federal

law."   At trial the court took judicial notice of 31 U.S.C. § 5324 (a), which

provides that "No person shall , for the purposes of evading the reporting

requirements of Section 5313 (a) or 5325….shall cause or attempt to cause a

domestic financial institution to fail to file a report under section 5313(a) or 5325."

The regulations for filing requirements mandated by section 5313 were also taken

notice of by the trial court, and provide that "Each financial institution other than a

casino shall file a report of each deposit, withdrawal, exchange or currency or other

payment or transfer by, through or to such financial institution which involves a

transaction in currency of more than $10,000."   Petitioner was convicted under 18

---

[4] The United States in its Response to Petition for Writ of Habeas Corpus attempts to argue that this claim was not properly exhausted.   The Petitioner however raised challenges to both the Fifth and Fourteenth Amendment, as well as to the Pennsylvania Constitution in his previous appeals.   As the Magistrate Judge points out, the lack of exhaustion claim is patently incorrect, and the state courts were clearly on notice that he was pursuing a federal claim (See Report and Recommendations, 8)   Merely because the state court elected not to address the federal constitutional argument, and instead dismiss the case on state grounds does not invalidate the federal claim—in fact, as the Magistrate Judge correctly points out, the federal overbreadth claim is therefore to be decided under a de novo standard of review. (See Report and Recommendations, 9).

Pa.C.S. § 5111(a)(c) despite the fact there was absolutely no allegation, nor was it proven at any way in trial, that Petitioner's funds were derived from unlawful activities.  Because Section 5111(a)(c) allows for this punishment without any proof of criminal intent, it is unconstitutionally overbroad as written.

A claim that a statute is overbroad is a claim that it violates the substantive due process guarantees set forth in the Fifth and Fourteenth Amendments of the United States Constitution.  A statute is "overbroad" if by its reach it punishes constitutionally protected activity as well as illegal activity. Grayned v. City of Rockford, 408 U.S. 104, 114) (1972).  The language of the statute in question literally encompasses a variety of protected lawful conduct. Id., see also NAACP v. Alabama, 377 U.S. 288, 307(1969) ("`a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms.'").  Although Constitutional overbreadth arguments ordinarily pertain to First Amendment free speech concerns, a challenged statute can be held to sweep excessively so broadly as to be beyond the state's legitimate police powers, or be arbitrary and capricious because it leads to the imposition of punishment bearing little relation to any legitimate governmental interest.  See City of Chicago v, Morales, 527 U.S. 41 (1999); NAACP v. Button, 371 U.S. 415 (1963).

The Third Circuit has outlined four factors necessary to make a facially overbreadth determination, namely: 1) the number of valid applications, 2) the historic or likely frequency of conceivably impermissible applications, 3) the nature of the activity or conduct sought to be regulated and 4) the nature of the state interest underlying the regulation.  See Gibson v. Mayor & Council City of Wilmington, 355 F.3d 215,226 (3d. Cir. 2004).

Unlike subsections (1) and (2) of 18 Pa C.S. § 5111, which require that the defendant knew the property involved in the financial transaction was proceeds obtained from an unlawful activity, subsection (3) of the statute only provides that a defendant knowingly avoided a transactional reporting requirement.  There is no mens rea requirement beyond the actual act of conducting a financial transaction to avoid a transactional reporting requirement.  A statute written to only require that the defendant knowingly avoided a transactional reporting requirement, without requiring that the concurrent conduct illegal act is on its face overbroad, applying a serious criminal penalty to an offender with no mens rea to commit any actual crime.  See Morissette v. United States, 342 U.S. 246, 263-5 (1952) (mens rea of intent cannot consist solely of any intent to commit an actus reus; rather a guilty mind is required, one which intends to commit a crime or wrong).

In her dissent in the instant matter before the Pennsylvania Superior Court, Judge Ford-Elliott pointedly noted that "an otherwise perfectly law-abiding

individual with no criminal intent other than simply avoiding a currency transaction report could make a cash deposit of $9,900 of honest money into his savings account at the local bank, and spend the next 20 years in the state penitentiary." <u>Commonwealth of Pennsylvania v. Levi Lapp Stoltzfoos</u>, (No. 30 MDA 2009, Dissent Ford Elliot, P.J., 2). Judge Ford-Elliot held that Subsection (a)(3) was unconstitutionally overbroad both as applied to the Petitioner in this case, and generally. <u>Id</u>. at 5.

In applying a similar federal statute, <u>Ratzlaf v. United States</u>,510 U.S.135 (1994) is instructive on this matter. Federal law requires banks and other financial institutions to file a currency transaction report (CTR) with the Secretary of the Treasury for any cash transaction exceeding $10,000. 31 U.S.C. § 5313 (1994). A related provision forbids structuring a transaction for the purpose of evading a financial institution's requirement to file CTRs. 31 U.S.C. § 5324 (1994). The Fourth Circuit rejected the argument that Section 5324 violators by their very conduct, exhibit a purpose to do wrong. <u>Id</u>. at 143. The Court further elaborated that structuring a financial transaction is not an "inevitably nefarious activity," and that law-abiding citizens frequently structure private transactions to avoid a report, regulation, or tax without violating the law. <u>Id</u>. at 144.

There is nothing about the act of structuring financial transactions to avoid a reporting requirement that is inherently evil. "Law abiding citizens frequently

structure transactions to avoid a report, regulation, or tax without violating the law. United States v. Ismail, 97 F.3d 50, 57 (4th Cir. 1996). Evidence of structuring alone cannot provide basis for inference, proving beyond a reasonable doubt that defendant knew that structuring violated law. Id. In United States v. Averso, 762 F.Supp. 441 (D.N.H. 1991) the United States District Court of New Hampshire noted that there are many occasions in the life of a businessman in which he structures transactions to avoid the impact of some regulation or tax. Id. at 446. "One may structure a company to reduce tax liability, one may structure a transaction over the course of several years to change the way a regulation affects them. If one is not trying to deprive the government of something to which the government is entitled, there is nothing illegal about such structuring." Id.

In Liparota v United States, 471 U.S. 419 (1985), the defendant was charged with knowingly using, transferring, acquiring, altering, or possessing food stamps in any manner not authorized by statute or regulation. The trial court instructed the jury that the word "knowingly" required that the jury find that the defendant knew what he was doing and was aware of the nature of his conduct, but refused to instruct the jury that the defendant had to have known that what he was doing violated the law. On appeal, the Commonwealth argued that it was not required to prove any mental state regarding the fact that the acquisition of food stamps was not authorized by statute or regulation. The United State Supreme Court held that

the statute in question (absent indication of contrary purpose) requires a showing that the defendant knew his conduct to be unauthorized by statute or regulation. Id. at 425.   The Court held that this construction is particularly appropriate where "to interpret the statute otherwise would be to criminalize a broad range of apparently innocent conduct." Id. at 427.  Further, in Cheek v. United States, 498 U.S. 192, 199-201 (1991), the Supreme Court in requiring the government to prove an intentional violation of the law, cited the proliferation of statutes and regulations in the area of tax law, and noted the complexity of the tax laws and the difficulty of the average citizen in understanding them.

In his Report and Recommendations, the Magistrate Judge asserts that the action of structuring the transaction is the "thrust" of the statute, and not the source of the funds themselves.  See Report and Recommendations, March 31, 2015 at 12. However, this contention is belied by the actual Title of the Act itself "Dealing in Proceeds of Unlawful Activities."  While it is true that the title of the statute does not control, it is still important to consider the title of the act, as it is a part of the statute.  See City Stores Co. v. City of Philadelphia, 103 A.2d 664, 667 (1954).

If the Magistrate Court was correct, then surely the title of the statute itself would not mention unlawful activities, and the first two subjections would not detail various illegal means by which funds could be obtained.  Surely the "thrust" of the statute should become apparent from its title and first two subjections.

Logically, subsection (3) would not be included with the rest of 18 Pa. Section 5111 if it was not linked in any way to unlawful activities. The interpretation that is more intuitively sound is that the entire statute, subsection included, seeks to offer an additional and serious penalty for trying to hide from the government illicitly obtained proceeds.   It is inherently contradictory for the Commonwealth to concede that the title demonstrates that it was aimed at punishing individuals who conducted financial transactions with money derived from unlawful activities as the Magistrate Judge points out, but to then argue that the thrust of the statute is structuring, not the criminal activity (Report and Recommendation, 12).  Instead what is clear is that this statute was intended to punish the structuring of illicitly acquired funds, and that any other interpretation disregards the statute's actual purpose.

Further, while it is true, as the Magistrate Judge indicates, that <u>Ratzlaf</u> and <u>Ismail</u> are interpreting a federal statute, and not the Pennsylvania statute in question—the discussion and interpretation of what constitutes a constitutionally overbroad statute certainly applies with force to the Pennsylvania Statute, which must, of course, meet Federal Constitutional muster.  Additionally, although Petitioner was indeed aware of reporting requirements, that does not change the fact he did not know this conduct was illegal, or perhaps even more importantly the fact that the statute is overbroad on its face.

In the instant matter, although Petitioner deposited the amounts of $10,000 in order to avoid a report being made, there was no evidence that he was aware that structuring cash deposits to avoid a report being made was illegal.  (N.T. pp 145, 175).  There was simply no evidence produced at trial of any evil motive on Petitioner's part and no connection between the funds and any criminal activity. Moreover, as Judge Ford-Elliot pointed out in her dissent, the statute applies to a wide range of constitutionally protected activity beyond just the actions of Petitioner. Therefore, Subsection 5111(a)(3) is unconstitutionally overbroad both generally, and as applied to Petitioner in the instant case.

## Conclusion

The Magistrate's Report and Recommendations issued on March 31, 2015 upholds the petitioner's conviction under 18 Pa.C.S. § 5111(a)(3)   As set forth above, this Report is erroneous.  Therefore, the Magistrate's Report denying Petitioner's Petition for a Writ of Habeas Corpus should not be followed and Petitioner's Writ should be granted.

Respectfully Submitted,

 [s] Joseph S. Mitchell, III [s]
Joseph S. Mitchell, III, Esq.
Attorney for Petitioner,
Levi Lapp Stoltzfoos

## **Certificate of Service**

I certify that this document was served on all parties by filing it electronically on November 28, 2016.

/s/ Joseph S. Mitchell, III